**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| WILMER GARCIA RAMIREZ, SULMA HERNANDEZ ALFARO, on behalf of themselves and others similarly situated, | ) ) ) ) | Case No. |
| *Plaintiffs,* | ) ) ) | Class Action |
| v. | ) ) | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE); THOMAS HOMAN, Acting Director of ICE; DEPARTMENT OF HOMELAND SECURITY; KIRSTJEN NIELSEN, Secretary of Homeland Security, | ) ) ) ) ) ) ) ) | |
| *Defendants.* | ) ) | |

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

**I.      INTRODUCTION**

Plaintiffs are immigrant teenagers who were summarily locked up by Defendant U.S. Immigration and Customs Enforcement (ICE) in adult detention facilities, without any consideration of less restrictive alternatives—such as release to a sponsor or placement in a group home—when they turned 18. This was in clear violation of 8 U.S.C. § 1232(c)(2)(B), which expressly and unambiguously requires that ICE consider Plaintiffs' placement in "the least restrictive setting available after taking into account [their] danger to self, danger to the community, and risk of flight," and that ICE make available to them alternatives to detention, "utilizing a continuum of alternatives based on [their] need for supervision," including placement "with an individual or an organizational sponsor, or in a supervised group home."   8 U.S.C.

§ 1232(c)(2)(B).  Plaintiffs seek a temporary restraining order and preliminary injunction on their own behalf, and on behalf of a class of similarly situated immigrant teenagers, to enjoin this violation and order that Defendants comply with 8 U.S.C. § 1232(c)(2)(B).

In 2008, Congress enacted the Trafficking Victims Protection Reauthorization Act (TVPRA) to govern the protection and custody of immigrant children who come to the United States without a parent or guardian.  *See* Pub. L. 110-457 (codified at 8 U.S.C. § 1232). The TVPRA requires that federal officials screen unaccompanied immigrant children for certain vulnerabilities, including whether they are victims of trafficking and whether they fear persecution in their home countries, and requires ICE and other federal agencies to transfer unaccompanied immigrant children into the care and custody of the Department of Health and Human Services Office of Refugee Resettlement (ORR).  *See* 8 U.S.C. § 1232(a)(4).  The TVPRA also enacted procedures for ensuring "safe and secure placements" for unaccompanied immigrant children, *see* § 1232(c)(1), and mandated that ORR promptly place such immigrant children in the "least restrictive setting," including releasing them to a parent or family member. 8 U.S.C. § 1232(c)(2)(A).

In 2013, Congress enacted an amendment to the TVPRA, Section 1232(c)(2)(B), which extends many of these same protections to unaccompanied immigrant children who have turned 18 and been transferred from ORR to the custody of ICE.  Section 1232(c)(2)(B) requires that ICE "shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight."  It further requires that such individuals "shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement

. . . with an individual or an organizational sponsor, or in a supervised group home." 8 U.S.C. § 1232(c)(2)(B).

Each of the named Plaintiffs was recently transferred by ORR to ICE when they turned 18 years of age.   However, after transfer ICE did not comply with the requirements of Section 1232(c)(2)(B). ICE did not "consider placement in the least restrictive setting available" or make "alternatives to detention programs" available to Plaintiffs.   Quite the opposite, ICE placed Plaintiffs in adult detention, without considering any alternatives to detention.

Upon information and belief, Plaintiffs' experience is not unique.   Since Congress's enactment of Section 1232(c)(2)(B) in 2013, ICE has routinely and systemically failed to comply with its requirements.   It has also failed to establish any policies, programs, or procedures implementing   Section 1232(c)(2)(B)'s   requirements.     Instead,   ICE   summarily   places unaccompanied immigrants who have turned 18 into adult detention without considering or making available the least restrictive (or other) alternatives.

Plaintiffs ask this Court to issue a temporary restraining order and preliminary injunction enjoining ICE from detaining Plaintiffs and similarly situated unaccompanied teenagers without evaluating their placement in the least restrictive setting and making alternatives to detention available. *See* Fed. R. Civ. P. 65(a)-(b). Because of ICE's failure to comply with the requirements of Section 1232(c)(2)(B), Plaintiffs are likely to succeed on their claims.  Further, Plaintiffs are suffering irreparable harm that increases with each day they are unlawfully held in detention without an evaluation of, and placement into, the "least restrictive setting available." The balance of harms therefore weighs in their favor.  Finally, a preliminary injunction is in the public interest, as evidenced by the fact that Congress sought to protect this class of unaccompanied teenagers

from unnecessary and unwarranted detention, and all Plaintiffs seek is to enforce its unambiguous statutory directive.

## II.   FACTUAL BACKGROUND

Plaintiffs are teenagers who came to the United States prior to the age of 18, unaccompanied by a parent or guardian, and were placed by the federal government in the custody of ORR as an "unaccompanied alien child." 6 U.S.C. § 279(g).  ORR subsequently transferred each Plaintiff into the custody of ICE upon his or her eighteenth birthday.

Plaintiff Wilmer Garcia Ramirez is an 18 year-old from Guatemala who entered the United States without inspection on March 26, 2017, at age 17.  Ex. A (Notice to Appear).  In September 2017, on his eighteenth birthday, ORR transferred Wilmer to ICE custody.  Since that time, ICE has detained him at Eloy Detention Center in Eloy, Arizona.  Wilmer has a petition for Special Immigrant Juvenile Status (SIJS) pending, which, if approved, would entitle him to lawful permanent status. *See* Ex. B (SIJS Receipt Notice).  He meets all of the statutory requirements for SIJS, including a state court dependency order.  Ex. C (Arizona State Court Order); *see also* 8 U.S.C. § 1101(a)(27)(J).

Plaintiff Sulma Hernandez Alfaro is an 18 year-old from Honduras.  After suffering severe and serial abuse by her uncle, she fled Honduras and entered the United States without inspection in December 2016, at age 16.  Sulma was housed at an ORR shelter for more than a year.  In November 2017, she filed an asylum application with U.S. Citizenship and Immigration Services, and an asylum officer interviewed her on that application on January 16, 2018.  Ex. D (Asylum Filing Receipt).  Her asylum claim remains pending.

At the end of January 2018, on her eighteenth birthday, ORR transferred Sulma to the custody of ICE.  She is currently detained at Port Isabel Service Detention Center in Los Fresnos, Texas.

III.   **LEGAL BACKGROUND**

    A.   **Legal Requirements Regarding the Care and Custody of Unaccompanied Immigrant Children**

The federal government's treatment and custody of unaccompanied immigrant children is governed by three intersecting statutes and agreements: the 1997 *Flores* Settlement Agreement, the Homeland Security Act of 2002, and the TVPRA of 2008. The *Flores* Settlement Agreement arose out of a lawsuit filed by a group of immigrant children challenging their detention and seeking their release to family members and sponsors within the United States. *See Flores v. Sessions*, 862 F.3d 863, 869 (9th Cir. 2017) (discussing the history of the *Flores* litigation). In 1997, the children entered into a consent decree with the federal government that created a nationwide policy for the custody and release of immigrant children by immigration authorities. *Flores v. Reno*, No. CV 85-4544, Settlement Agreement, *available at* https://cliniclegal.org/sites/default/files/attachments/flores_v._reno_settlement_agreement_1.pdf ("Flores Settlement Agreement"). Among other things, the agreement requires: (a) release without unnecessary delay, (b) release to an adult caregiver, with parents and other family members given priority, and (c) placement in the "least restrictive setting appropriate to the minor's age and special needs." *Flores* Settlement Agreement ¶ 11.

At the time of the *Flores* Settlement Agreement, a single agency—the Immigration and Naturalization Service (INS)—administered the custody, detention, and deportation of immigrant children. In 2002, Congress enacted the Homeland Security Act (HSA), which abolished the INS, created a new Department of Homeland Security, and transferred all functions related to the care and custody of unaccompanied immigrant children to ORR, a sub-department of the Department of Health and Human Services. Pub. L. 107–296, 116 Stat. 2135 (Nov. 25, 2002). Section 462 of the HSA extended the key terms of the *Flores* Settlement Agreement to all unaccompanied

immigrant children, including the requirement that ORR place such children in the least restrictive setting. *Id.*

In 2008, Congress further strengthened the protections for unaccompanied children through the TVPRA. *See* Pub. L. 110–457, 122 Stat. 5044 (Dec. 23, 2008). Like the *Flores* Settlement Agreement, the TVPRA mandates that an unaccompanied child "*shall* be promptly placed in the *least restrictive setting* that is in the best interest of the child." *Id.* at Sec. 235 (emphasis added). Under the TVPRA, ORR endeavors to place each unaccompanied immigrant child with a suitable sponsor, such as a parent or family member. A sponsor is suitable if he or she is "capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A); *see also* ORR, Children Entering the United States Unaccompanied: Section 2, *available at* https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2.

In 2013, Congress enacted a new statutory provision to address the detention of unaccompanied immigrant children who have turned 18 and been transferred by ORR into the custody of ICE. *See* Violence Against Women Act in 2013, Pub. L. 133-4, 127 Stat. 156, (codified at 8 U.S.C. § 1232(c)(2)(B)) (March 7, 2013). That provision, which was codified as Section 1232(c)(2)(B), requires that ICE "shall consider placement" of such 18-year olds "in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight." *Id.* Section 1232(c)(2)(B) further requires that these 18 year old detainees "shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement . . . with an individual or an organizational sponsor, or in a supervised group home." *Id.*

B.     **The Requirement That Unaccompanied Immigrant Children Be Placed In The "Least Restrictive Setting"**

The term "least restrictive setting" was first used in the *Flores* Settlement Agreement, which required the government to release children to the "least restrictive setting appropriate to the minor's age and special needs . . . ." *Flores* Settlement Agreement ¶ 11.   Congress then codified the term "least restrictive setting" in the TVPRA, requiring that a child "shall be promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A).

ORR has multiple placement options for unaccompanied children.   First, if a suitable sponsor is available, ORR will release the unaccompanied child to that sponsor.   *See* 8 U.S.C. §§ 1232(b)(2)(A); 1232(c)(3).   If a suitable sponsor is not available, ORR will house the child in one of three types of facilities—shelter care, a staff secure shelter, or a secure shelter. *Saravia v. Sessions*, No. 17-CV-03615-VC, 2017 WL 5569838, at *3 (N.D. Cal. Nov. 20, 2017)(appeal filed Jan 23, 2018).   A child shall not be placed in a secure facility absent a finding that he or she is a flight risk or dangerous.   8 U.S.C. § 1232(c)(2)(A).   If ORR determines that a child should be placed in a secure facility, ORR must review that placement every 30 days. *Id.*

When Congress amended Section 1232 in 2013, it chose to extend these same protections to unaccompanied children after they turn 18 and are transferred into ICE's custody.  *See* VAWA 2013, Pub. L. 113-4, § 1261.   Thus, Section 1232(c)(2)(B) requires that ICE "shall consider" such individuals for "placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight."   Section 1232(c)(2)(B) further requires that such individuals "shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include

placement . . . with an individual or an organizational sponsor, or in a supervised group home."
8 U.S.C. § 1232(c)(2)(B).

ICE has not complied with any of these requirements with respect to Plaintiffs or other unaccompanied children who are transferred by ORR to ICE when they turn 18. Instead, it summarily places such teenagers in adult detention, without considering "placement in the least restrictive setting" or allowing them "to participate in alternative to detention programs," such as placement with individual or organizational sponsors or in a supervised group home.

## IV.    ARGUMENT

Motions for a temporary restraining order are governed by the same standards as motions for a preliminary injunction. *See Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 72 (D.D.C. 2001) ("The court considers the same factors in ruling on a motion for a temporary restraining order and a motion for a preliminary injunction."). In evaluating whether to issue a preliminary injunction or a temporary restraining order, the court considers four factors: (1) the movant's likelihood of success on the merits; (2) irreparable harm to the movant; (3) the balance of equities; and (4) the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). Where the government is the defendant, the last two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). In *Winter*, the Supreme Court held that the likelihood of success is the most important factor, but a court must still "balance the strength of a plaintiff's arguments in each of the four elements when deciding whether to grant a preliminary injunction." *Mills v. District of Columbia*, 571 F.3d 1304, 1308 (D.C. Cir. 2009).

Each of these factors is satisfied by Plaintiffs here.

A.      **Plaintiffs Are Likely To Succeed On The Merits**

1.      **Defendants Are Not Complying With 8 U.S.C. § 1232(c)(2)(B)**

Defendants are not complying with the clear and unambiguous requirements of Section 1232(c)(2)(B). Because of this, Plaintiffs are likely to succeed on the merits. This Court has jurisdiction to declare Defendants' non-compliance unlawful, to enjoin Defendants from continuing to fail to comply with Section 1232(c)(2)(B), and to order Defendants, and ICE in particular, to follow their statutory obligations and consider Plaintiffs' placement in the least restrictive setting, including alternatives to detention. 5 U.S.C. §§ 706(1)-(2).

The Immigration and Nationality Act sets out clear requirements for the detention of unaccompanied immigrant teenagers who turn 18 and are transferred by ORR into ICE's custody. *See* 8 U.S.C. § 1232(c)(2)(B). However, ICE is not complying with those requirements. With respect to each named Plaintiff, ICE failed to make any assessment or determination with respect to sponsors, group homes, shelters, or any other alternatives to detention as contemplated by the statute. Ex. E (Declaration of Wilmer Garcia Ramirez (Wilmer Decl.) at 5-6); Ex. F (Declaration of Sulma Hernandez Alfaro (Sulma Decl.) ¶ 19). Plaintiffs have received no communication from ICE regarding any effort to evaluate their suitability for, or place them in, the least restrictive setting. *Id.* And, ICE has failed to respond to counsel's request that it consider Plaintiffs' placement in the least restrictive setting and make available to them alternatives to detention, as required by Section 1232(c)(2)(B). *See* Compl. ¶¶ 38, 49; Ex. G (Release Request for Garcia Ramirez); Ex. H (Release Request for Hernandez Alfaro); *see also* Ex. I (Letter from La Providencia Shelter for Hernandez Alfaro).

Named Plaintiffs' experience is representative of that of other members of the proposed class of unaccompanied immigrant teenagers transferred by ORR to ICE's custody when they turn 18. On information and belief, ICE routinely and systematically fails to comply with the

requirements of Section 1232(c)(2)(B). And, it has failed to adopt and implement any policies, programs, or procedures to comply with Section 1232(c)(2)(B)'s requirements. Instead, ICE automatically and summarily places such individuals in adult detention without considering or making available any alternatives. Accordingly, Plaintiffs are likely to succeed on their request for a declaratory judgment that ICE is violating Section 1232(c)(2)(B) and for an injunction barring ICE's further non-compliance with Section 1232(c)(2)(B)'s requirements.

### 2.   ICE's Failure To Comply With Section 1232(c)(2)(B) Violates The Administrative Procedure Act

The APA provides the Court with authority to declare ICE's non-compliance unlawful, to enjoin ICE from continuing that non-compliance, and to order it to comply with Section 1232(c)(2)(B) in the future. The APA provides that a person, like Plaintiffs, who is "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA makes clear that "agency action" includes not only agencies' affirmative acts, but also their omissions and failures to act. *Id.*; 5 U.S.C. § 551(13). In such circumstances, the Court may "compel agency action unlawfully withheld or unreasonably delayed . . . ." 5 U.S.C. § 706(1). The APA also provides the Court authority to hold unlawful and set aside agency actions that violate or fail to comply with the agency's authorizing statues. In such cases, the Court may "hold unlawful and set aside agency action . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

To succeed on a claim under APA Section 706(1) (i.e., an agency's unlawful failure to act), Plaintiffs must show "that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted). Here, Section 1232(c)(2)(B) sets forth two discrete, nondiscretionary actions that ICE is required to take

with regards to 18 year-olds transferred into its custody.  First, ICE must consider placement in the "least restrictive setting" available.  Second, ICE shall make available to such 18 year-olds "alternatives to detention," including placement with an individual or organizational sponsor or in a supervised group home.  ICE does neither.  Plaintiffs are "suffering legal wrong" because of these failures and, accordingly, the Court may compel ICE to make those determinations and placements that have been "unlawfully withheld."  5 U.S.C. §§ 702; 706(1).

To succeed on a claim under APA Section 706(2) (i.e., unlawful agency action), Plaintiffs must show "some 'agency action' that affects [them] in the specified fashion." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990).  Once again, "agency action" includes a "failure to act." 5 U.S.C. § 551(13).  Here, ICE's failure to consider Plaintiffs' placement in the least restrictive setting and to make alternatives to detention available is "agency action."  That agency action affects Plaintiffs and members of the class in the "specified fashion." *Lujan*, 497 U.S. at 882.  It means that, contrary to Section 1232(c)(2)(B), they are being detained without being considered for the least restrictive setting and being eligible for release to alternatives to detention. Accordingly, this Court also has jurisdiction to review ICE's failure to comply with the statute under APA Section 706(2) and to order compliance.

### 3.   All Other Requirements for APA Relief Are Met

Under the APA, this Court may set aside and enjoin unlawful agency action, and compel agency action unlawfully withheld, if it is (1) "final agency action," (2) "for which there is no other adequate remedy in a court," so long as (3) there are no "statutes [that] preclude judicial review" and "agency action is [not] committed to agency discretion by law."  5 U.S.C. §§ 701(a), 704. Plaintiffs satisfy each of these criteria here, and APA relief is therefore proper.

*Final Agency Action*.  An agency action is final where two conditions are satisfied: (1) "the action must mark the consummation of the agency's decisionmaking process," and (2) "the action

11

must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks and citations omitted); *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 806 (D.C. Cir. 2006).

ICE's failure to implement and comply with Section 1232(c)(2)(B) constitutes final agency action within the meaning of the APA. First, there is nothing preliminary or uncertain about that failure. ICE has denied and/or failed to respond to Plaintiffs' requests that it determine the "least restrictive setting" for them and make alternatives to detention available to them. That denial and failure to act was not interim or subject to potential review or revision. Second, ICE's failure to implement and comply with Section 1232(c)(2)(B) impacts Plaintiffs' and other class members' "rights or obligations" and is an action from which "legal consequences will flow." *Bennett*, 520 U.S. at 178 (internal quotation marks and citation omitted). The harm and legal consequences to Plaintiffs of continued detention are not theoretical or prospective. Plaintiffs and those similarly situated are injured every day they are in detention instead of being considered for—and potentially released to—some less restrictive setting.

*No Other Adequate Remedy.* Nor do Plaintiffs and members of the class have any other adequate remedy for their claims. The Supreme Court narrowly interprets the "other adequate remedy" limitation, stressing that it "should not be construed to defeat the central purpose of providing a broad spectrum of judicial review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988); *see also El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005) ("The Supreme Court has long instructed that the generous review provisions of the APA must be given a hospitable interpretation such that only upon a showing of clear and convincing evidence of a contrary legislative intent

should the courts restrict access to judicial review." (internal citations and quotations omitted)).

Instead, "Congress intended by that provision simply to avoid duplicating previously established special statutory procedures for review of agency actions." *Darby v. Cisneros*, 509 U.S. 137, 146 (1993).

Here, Plaintiffs and members of the class have no other statutory or other adequate remedy. The Immigration and Nationality Act does not allow Plaintiffs to bring their claims through the immigration court. Section 1232(c)(2)(B) requires that *ICE* shall make the determinations and provide the alternatives to detention at issue here—not the immigration courts: *ICE* "shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to community, and risk of flight," and *ICE* shall make available "alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision." ICE's detention decisions are separate and apart from an immigration court's consideration of Plaintiffs' substantive claims, and review by an immigration court does not address ICE's obligations under Section 1232(c)(2)(B). *See Gonzalez-Portillo v. U.S. Attorney General, Reno*, No. CIV. A. 00–Z–2080, 2000 WL 33191534, at *4 (D. Colo. Dec 20, 2000) ("[B]ecause the legality of Petitioner's detention pending removal is a separate issue from the legality of any final removal decision, the court finds that Petitioner need not wait until the BIA has issued a final decision on her removability to challenge the legal basis for her detention.").

*No Statutory Bar to Review.* Finally, no statute bars review of Plaintiffs' claims here, and Congress has done nothing to override "the strong presumption that Congress intends judicial review" of the administrative actions Plaintiffs challenge. *Bowen v. Mich, Acad. of Family Physicians*, 476 U.S. 667, 670-71 (1986).

**B.      Plaintiffs Have Suffered And Will Continue To Suffer The Threat Of Irreparable Harm**

Plaintiffs have suffered, and will continue to suffer, the threat of irreparable harm if the Court does not grant preliminary relief.   Each day Plaintiffs spend in immigration detention without ICE making a determination as to whether they can be held in a less restrictive setting and/or without ICE making alternatives to detention available, is a day in which Plaintiffs' freedom and fundamental liberty interests may be unlawfully deprived.   Such deprivations and illegal detentions, and the detainees' resulting loss of freedom, constitute irreparable harm as a matter of law.   *See, e.g., Al-Adahi v. Obama*, 672 F. Supp. 2d 81, 84 (D.D.C. 2009) ("A deprivation of liberty constitutes serious and irreparable injury."); *R.I.L.-R v. Johnson*, 80 F. Supp. 3d at 191 (holding that class action plaintiffs in immigration detention were suffering irreparable harm because "unlike economic harm, the harm from detention pursuant to an unlawful policy cannot be remediated after the fact.").   In addition, "the negative physical and mental effects" of ICE detention, the "subpar medical and psychiatric care" detainees receive in ICE detention facilities, and the "economic burdens imposed on detainees and their families as a result of detention," separately constitute irreparable harm.   *See, e.g., Hernandez v. Sessions*, 872 F.3d 976, 955 (9th Cir. 2017) (finding irreparable harm where plaintiffs were detained and highlighting the "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities" and the "economic burdens imposed on detainees and their families as a result of detention."); *Abdi v. Duke*, No. 1:17–CV–0721 EAW, 2017 WL 5599521, at *22 (W.D.N.Y. Nov. 17, 2017) (finding that "the negative physical and mental health effects of prolonged detention" constitute irreparable harm).

In short, the law is settled that detention imposes a variety of harms for which there is no remedy at law, and that if a preliminary injunction might result in a detained immigrant's release,

the immigrant can show irreparable harm. *See, e.g.*, *Hamama v. Aducci*, No. 17–cv–11910, 2018 WL 263037, at *14 (E.D. Mich. Jan. 2, 2018) ("Detention has inflicted grave harm on numerous detainees for which there is no remedy at law."); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). This case falls squarely within this settled authority. Plaintiffs ask the Court to order ICE to make alternatives to detention available and to consider their placement in the least restrictive setting. The possibility of release to an individual sponsor, an institutional sponsor, or group home—as specifically contemplated by Section 1232(c)(2)(B)—means that a preliminary injunction might result in Plaintiffs' (and other class members') release from detention.

Finally, the irreparable harm to this class of 18-year-old plaintiffs, who have been "adults" for only weeks or months, is particularly acute. Plaintiffs and other members of the class are mere teenagers who are locked in detention facilities, often in county jails and private prisons alongside adult convicted criminals. *See* Dep't Homeland Sec. Advisory Counsel, *Report of the Subcommittee on Privatized Immigration Detention Facilities* (2016), at 6, https://www.dhs.gov/ sites/default/files/publications/DHS%20HSAC%20PIDF%20Final%20Report.pdf. They are suffering mentally and emotionally (Ex. E (Wilmer Decl. at 6, ¶¶ 5-9); Ex. F (Sulma Decl. at 3, ¶¶ 13-15)), and their ongoing detention has the potential to cause even greater suffering. For example, Plaintiff Sulma Hernandez Alfaro has been diagnosed with Post-Traumatic Stress Disorder, which is not being treated while she is in detention, and is likely to worsen as a result of the stress associated with being incarcerated with adult detainees, many of whom have been convicted of serious crimes. Ex. F (Sulma Decl. ¶¶ 9, 15); *see also Saravia v. Sessions*, No. 17-CV-03615-VC, 2017 WL 5569838, at *19 (N.D. Cal. Nov. 20, 2017) (appeal filed Jan. 23, 2018) (summarizing evidence that shows that "the magnitude of the harm will increase as time [in detention] goes on"). Physically, Sulma suffers headaches, chest pain, heart palpitations, muscle

and bone aches, as well as hair loss. Ex. F (Sulma Decl. ¶ 13). Similarly, Wilmer Garcia Ramirez suffers from headaches and body aches while in ICE detention. Ex. E (Wilmer Decl. at 6, ¶ 8). Wilmer is confined to his cell almost all of the time, which is very cold. *Id.* at 6, ¶ 6. Emotionally, he is suffering daily from being incarcerated in a strange place, with nothing to do, and without any contact with family or friends. *Id.* at 5-6, ¶¶ 4-7.

Plaintiffs and other members of the class are indisputably suffering irreparable harm and will continue to suffer such harm absent an injunction.

### C.    The Balance Of Harms And The Public Interest Weigh In Favor Of An Injunction

The irreparable harm to Plaintiffs greatly outweighs any claimed harm to the government. As discussed above, each day Plaintiffs are held in detention results in a potential loss of the liberty Plaintiffs would enjoy if ICE complied with Section 1232(c)(2)(b) and released Plaintiffs to the least restrictive setting and/or made available to them alternatives to detention. It also leads to mental, emotional, and economic harm and suffering that Plaintiffs might not otherwise endure and for which they have no remedy at law. These ongoing harms to Plaintiffs far outweigh any injury Defendants might claim to suffer. The requested relief would require only that Defendants comply with Section 1232(c)(2)(B) by determining whether Plaintiffs can be released to a sponsor, group home, or some other type of non-detention. This determination would not overburden ICE, particularly given that it is statutorily required. But more importantly, complying with statutory requirements, no matter how burdensome ICE may claim them to be, cannot constitute harm, let alone irreparable harm, as a matter of law. *See, e.g. Rodriguez v. Robins*, 715 F.3d 1127, 1146 (9th Cir. 2013) ("[The government] cannot suffer harm from an injunction that merely ends an unlawful practice . . . ."), *rev'd on other grounds Jennings v. Rodriguez*, No. 15-1204, 2018 WL 1054878 (U.S. Feb. 27, 2018); *Haskins v. Stanton*, 621 F. Supp. 622, 629 (N.D. Ind. 1985) (finding

the balance of the harms tipped in plaintiffs' favor when an injunction "would merely require [defendants] to perform acts which [federal law] requires."); *Pinzon v. Lane*, 675 F. Supp. 429, 432 (N.D. Ill. 1987) (holding that defendants would not suffer harm when they "are being required only to comply with what the [legislature] and their own regulations provide.").

For similar reasons, the public interest indisputably favors an injunction here. There is a strong public interest in ensuring that a federal agency complies with its governing statutes. *See Bayer HealthCare, LLC v. U.S. Food & Drug Admin.*, 942 F. Supp. 2d 17, 27 (D.D.C. 2013) ("The public has an interest in federal agency compliance with its governing statute."); *Petties v. District of Columbia*, 238 F. Supp. 2d 114, 124-25 (D.D.C. 2002) ("The public interest lies in the proper enforcement of . . . the IDEA and in securing the due process rights of special education students and their parents provided by statute," and this public interest "out weigh[s] any asserted financial harm to DCPS."); *Boehringer Ingelheim Corp. v. Shalala*, 993 F. Supp. 1, 3 (D.D.C. 1997) ("[T]he public interest is served by the lawful application of statutes and requiring an agency to act lawfully and within its obligations under the APA."); *Rodriguez*, 715 F.3d at 1146 (stating that the burden to the government does not outweigh harm to a plaintiff when the burden "merely represent[s] the burdens of complying with the applicable statutes" and that "the public interest also benefits from a preliminary injunction that ensures that federal statutes are construed and implemented in a manner that avoids serious constitutional questions"); *R.I.L.-R v. Johnson*, 80 F. Supp. 3d at 191 ("The public interest is served when administrative agencies comply with their obligations under the APA.") (quotation marks and citation omitted)).  Plaintiffs simply ask ICE to determine Plaintiffs' suitability for alternative types of placements and make such alternatives to detention available to them.  Plaintiffs are not asking for automatic release.  Rather, they ask only that ICE make basic determinations required by statute, such as a detainee's risk of flight and danger to self

17

or others.   8 U.S.C. § 1232(c)(2)(B).   The public interest will be protected, not harmed, by requiring ICE to abide by these statutory obligations.

### D.      A Nationwide Injunction Is Appropriate

Finally, the issuance of a nationwide injunction is appropriate where—as here—Plaintiffs seek to enjoin an illegal practice or policy applied uniformly nationwide to persons similarly situated to themselves.  *See, e.g. Trump v. Int'l Refugee Assistance Project*, 137 S.Ct. 2080, 2087 (2017) (upholding a nationwide preliminary injunction in part as to those "parties similarly situated" to named plaintiffs); *City of Chicago v. Sessions*, 2017 WL 4572208, at *2 (denying a motion to stay a nationwide preliminary injunction where the "transgression is national in scope because the [policies]…were imposed nationwide."); *Hawaii v. Trump*, 859 F.3d 741, 788 (9th Cir. 2017) (vacated as moot in 874 F.3d 1112) (upholding a nationwide injunction and noting that "[n]arrowing the injunction to apply only to Plaintiffs would not cure the statutory violations identified, which in all applications would violate" the law).   "When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed."  *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (quotation marks and citation omitted).   This is because "the rule of law is undermined where a court holds that the [government] is likely engaging in legally unauthorized conduct, but nevertheless allows that conduct in other jurisdictions across the country."  *City of Chi. v. Sessions*, 17-cv-5720, 2017 WL 4572208, at *4 (N.D. Ill. Oct. 13, 2017), *appeal pending at City of Chicago v. Sessions*, 17-299, 7th Cir.

Importantly, courts have observed that nationwide injunctions are particularly appropriate in the immigration context because "the Constitution requires a uniform Rule of Naturalization, Congress has instructed that the immigration laws of the United States should be enforced vigorously and uniformly, and the Supreme Court has described immigration policy as a

comprehensive and unified system." *Texas v. United States*, 809 F.3d 134, 187-88 (5th Cir. 2015) (internal citations and quotations omitted). An injunction that does not reach the government's conduct nationwide may result in a "fragmented immigration policy [that] would run afoul of the constitutional and statutory requirement for uniform immigration law and policy." *Washington v. Trump*, 847 F.3d 1151, 1166-67 (9th Cir. 2017).[1]

## V.      CONCLUSION

All four of the factors courts consider in deciding whether to grant emergency injunctive relief weigh heavily in favor of Plaintiffs' request for a temporary restraining order and preliminary injunction here. Plaintiffs are likely to succeed on the merits. Defendants are not complying with the express and unambiguous requirements of Section 1232(c)(2)(B), and that failure clearly violates the APA and mandates declaratory and injunctive relief to remedy those violations. Moreover, the illegal detention that results from these violations, and the potential for Plaintiffs to be released from detention if those violations are enjoined, constitutes irreparable harm as a matter of law. Finally, an injunction would merely require Defendants to comply with their governing statute. There can be no harm to the Defendants from such statutory compliance. As a result, both the balance of harms and the public interest support an injunction here as a matter of law.

Plaintiffs' motion for a temporary restraining order and preliminary injunction should be granted.

---

[1] A nationwide injunction is independently appropriate because Plaintiffs seek to represent a class of similarly situated individuals located in detention centers throughout the United States. As explained in Plaintiffs' separately filed Complaint and Motion for Class Certification, the proposed class meets all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and 23(b)(2).

Dated:  March 5, 2018

Tia T. Trout Perez
D.C. Bar No. 990447
KIRKLAND & ELLIS LLP
655 Fifteenth St., NW
Washington, DC 20005
Tel.:  (202) 879-5000
Fax:  (202) 879-5200
tia.trout-perez@kirkland.com

Stephen R. Patton
Anne K.H. Reser
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel.:  (312) 862-2000
Fax:  (312) 862-2200
stephen.patton@kirkland.com
anne.reser@kirkland.com

Katherine Melloy Goettel
NATIONAL IMMIGRANT JUSTICE CENTER
208 South LaSalle Street, Suite 1300
Chicago, Illinois 60604
Tel:  (312) 660-1335
Fax:  (312) 660-1505
kgoettel@heartlandalliance.org

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 5th day of March, 2018, she caused a true and correct copy of the foregoing to be served via Federal Express Overnight and electronic mail delivery upon the following:

William Peachey
Director
Department of Justice
Office of Immigration Litigation
Email: William.Peachey@usdoj.gov

Colin Kisor
Deputy Director
Department of Justice
Office of Immigration Litigation
Email: Colin.kisor@usdoj.gov

Daniel Van Horn
Civil Chief
U.S. Attorney's Office
District of Columbia
Email: Daniel.VanHorn@usdoj.gov

Wynne Kelly
Assistant U.S. Attorney
U.S. Attorney's Office
District of Columbia
Email: Wynne.Kelly@usdoj.gov

Tia T. Trout Perez