```
 1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2

 3    WILMER GARCIA RAMIREZ,        )
      et al.,                       )
 4                                  )    Civil No. 18-508
             Plaintiffs,            )
 5                                  )
        v.                          )
 6                                  )    Washington, D.C.
      U.S. IMMIGRATION AND          )
 7    CUSTOM ENFORCEMENT,           )
                                    )    Thursday, March 8, 2018
 8           Defendant.             )
      _____  )
 9

10                TRANSCRIPT OF MOTION HEARING
            BEFORE THE HONORABLE RUDOLPH CONTRERAS
11               UNITED STATES DISTRICT JUDGE

12
                      APPEARANCES:
13
      For the Plaintiffs:       Stephen R. Patton, Esq.
14                              KIRKLAND & ELLIS
                                300 North LaSalle
15                              Chicago, Illinois  60654
                                   -and-
16                              Tia T. Trout Perez, Esq.
                                KIRKLAND & ELLIS LLP
17                              655 15th Street, NW
                                Suite 1200
18                              Washington, D.C.  20015
                                   -and-
19                              Katherine E.M. Goettel, Esq.
                                NATIONAL IMMIGRANT JUSTICE CENTER
20                              208 LaSalle St.
                                Ben Franklin Station
21                              Suite 1300
                                Chicago, Illinois  60604
22

23

24                              (Appearances continued on next page)

25
```

```
 1     For the Defendants:      Colin Abbott Kisor, Esq.
                                Cara Elizabeth Alsterberg, Esq.
 2                              Christina Parascandola, Esq.
                                UNITED STATES DEPARTMENT OF JUSTICE
 3                              P.O. Box 868
                                Ben Franklin Station
 4                              Washington, D.C. 20044

 5
       Also Present:      Theo Nickerson
 6

 7     Court Reporter:      PATRICIA A. KANESHIRO-MILLER, RMR, CRR
                            U.S. Courthouse, Room 4700A
 8                          333 Constitution Avenue, NW
                            Washington, DC 20001
 9                          (202) 354-3243

10
       Proceedings reported by stenotype shorthand.
11     Transcript produced by computer-aided transcription.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                   P R O C E E D I N G S
 2                       (3:04 p.m.)
 3            THE DEPUTY CLERK:  This is Civil Action 18-508,
 4    Wilmer Garcia Ramirez, et al. versus U.S. Immigration and
 5    Customs Enforcement.
 6            Counsel, please step forward to the podium and state
 7    your appearances for the record.
 8            MR. PATTON:  Good afternoon, Your Honor.  My name is
 9    Steve Patton, and I represent the plaintiffs.
10            THE COURT:  Good afternoon.
11            MR. KISOR:  Good afternoon, Your Honor.  Colin Kisor
12    from the U.S. Justice Department for the defendants.
13            THE COURT:  Good afternoon.
14            All right.  It's plaintiffs' motion.  Let me hear
15    from you first.  I have read the papers.  It's elegant in its
16    simplicity.  I'm sure the government will tell me it's not
17    that simple.  Just run me through it.
18            Let me ask you a couple of preliminary questions.
19            MR. PATTON:  Sure.
20            THE COURT:  I gather that you're trying to change the
21    status quo, not preserve it.
22            MR. PATTON:  Well, we really are.  We're trying to
23    change it to what it should be under the law, Your Honor,
24    that's true.
25            THE COURT:  With respect to when your clients were
```

1    turned over to ICE, it seems like one of them was late 2017

2    and one of them was early 2018.  Is that right?

3              MR. PATTON:  That's right.  September of 2017 for the

4    male plaintiff, Wilmer; and January, I believe, for the

5    female.

6              THE COURT:  And a TRO is an emergency type thing.

7    What was the delay, especially for the 2017 one?

8              MR. PATTON:  The folks, including the National

9    Immigrant Justice Center, who actually got me and my firm

10   involved in this -- and Kate Goettel, who is with us today,

11   may address the Court -- there is a group of folks that deal

12   with detainees, and I think there was a realization that

13   something is not right here.  And then we went through a

14   period of finding a plaintiff, and the problem is these

15   plaintiffs are transitory.  Folks would come up but then

16   their petition for asylum would be granted or they would be

17   released, something would happen.  So we went through some

18   delay and, quite frankly, a fair amount of time just making

19   sure that we knew as best we could what was going on here.

20   So once these plaintiffs were identified, we moved very

21   quickly, but there were a series of plaintiffs before then.

22   I won't say a long series.  But their cases changed, although

23   we believe that there is an ongoing class that may change

24   over time of people who were being detained in some cases for

25   relatively prolonged periods, months, certainly weeks and

1    months and maybe even more, where we believe based on the

2    information we have been able to discern that ICE is not

3    complying with what we think are the simple and

4    straightforward requirements of this 2013 statute.

5         I guess, Your Honor, I would say on your point -- so

6    if this has been going on we think since 2013, what is the

7    rush now -- my response to that would be that the irreparable

8    harm that we're complaining about is occurring now, and it's

9    occurring every day that this situation continues without

10   being remedied.  And the fact that there was a period where

11   that irreparable harm occurred and somebody didn't say, hey,

12   wait a minute, there's a problem here, doesn't in any way

13   undermine the legitimacy and the urgency of relief when the

14   situation is brought to the Court's attention.

15        Now, I would say beyond that we are not asking the

16   Court to rule on a nationwide basis on a TRO today.  We do

17   believe and will respectfully ask the Court to enter a TRO as

18   to these named plaintiffs.  And I'm sure my able counsel will

19   have a flip side on that and we'll have some back-and-forth,

20   but we are arguing a TRO as to them and asking for a

21   preliminary injunction hearing in due course but promptly and

22   that Your Honor set a briefing schedule.  The seven days, as

23   specified by the local rule for their response, that would

24   take us to the 13th.  We would ask for the ability to file a

25   reply two or three days after that and, subject to Your

1    Honor's availability, respectfully request the opportunity to

2    come back for a hearing on preliminary injunction at that

3    time, probably the week after next, to address the issue of a

4    broader preliminary injunctive relief that would not apply

5    only to these two named plaintiffs but others similarly

6    situated.

7         THE COURT:  All right.  Let me ask you a question

8    with respect to these two named plaintiffs.  The relief

9    you're requesting on the TRO, how does that differ than the

10   merits of the case, if at all?

11        MR. PATTON:  This is one of those cases where I think

12   that the ruling on the legal question we're presenting should

13   also resolve the merits.  Now, obviously, the defendants are

14   entitled to some procedural safeguards before a final

15   injunction is entered.  But our argument, Your Honor, will be

16   the same.  And we do believe that we are dealing with largely

17   a legal question in terms of the application, the compliance

18   with the statute, that we think is straightforward,

19   unambiguous, has certain requirements that we believe, based

20   on the information we have been able to gather, is just not

21   being complied with.

22        THE COURT:  Okay.

23        MR. PATTON:  So I'm going to try not to -- and I hope

24   I'm successful -- repeat stuff that you already know.  But I

25   do want to, I guess, highlight a few things.  I invite

1    questions, Your Honor, because that is how I can be most

2    helpful to you because you have read the papers.

3            Just to frame the issues, we represent two

4    unaccompanied children who turned 18, came to the United

5    States on their own without a parent or another adult.  When

6    they were apprehended at or near the border, they, pursuant

7    to federal immigration law, went into the custody of the

8    Office of Refugee Resettlement, ORR, which is part of the

9    Department of Health and Human Services.  And they were put

10    in, not in adult jails or detention, but they were put in a

11    less restrictive form of custody.  They were quite happy with

12    those.  They were able to take courses.  The female

13    plaintiff, Sulma, was diagnosed with posttraumatic stress

14    syndrome.  They were receiving psychiatric evaluation and

15    care.  When they turned 18, all of that changed immediately,

16    5:00 in the morning in both cases.  So ORR, as it is

17    required, the Office of Refugee Resettlement turns them over

18    to ICE.  ICE immediately summarily puts them into adult

19    detention.

20            THE COURT:  Let me ask you this question:  You

21    indicate in your pleadings or in your complaint -- I forget

22    which -- that ICE has no mechanism by which to apply this

23    least restrictive placement requirement.  Do you have

24    statistics to back that up, or it is all anecdotal?

25            MR. PATTON:  Your Honor, that's on information and

1    belief.  We thought that we know, or think we know, the facts

2    concerning these two plaintiffs.  And I believe based on a

3    conversation I had with counsel -- I'm not going to

4    anticipate his argument -- that he may join issues.  In a

5    minute, I will tell you what we think happened here.  But

6    again, based on the anecdotal evidence of folks that practice

7    day in, day out like Ms. Goettel in this area that this is

8    not an isolated situation.

9         Now, we are only seeking relief, though, on behalf of

10   those individuals who are unaccompanied children in the

11   custody of ICE as to whom ICE has not complied.  This is

12   purely hypothetical.  If ICE is complying for some of these

13   individuals or in some offices, we are seeking relief only

14   commensurate with the violation or the non-compliance with

15   the statute.  And separately, although I think to get the

16   kind of broad injunctive relief we're asking for, we don't

17   need to certify a class because this is so transitory.  We

18   have separately -- I'm not asking you to rule on that or

19   asking for briefing -- but we have sought a class, but we

20   have carefully defined that class as not just unaccompanied

21   children who turn 18 that are in ICE custody but those as to

22   whom ICE has not complied with the statutory requirements.

23        So at bottom, this case is, the way we see it, about

24   a statute.  You have that in front of you.  I'm happy to hand

25   up a copy of it.

1          A little bit of background to kind of set the stage.

2     Since at least 1997, a settlement, an agreement in the *Flores*

3     case, immigration law, federal immigration law has been very

4     clear and consistent that unaccompanied children who come

5     here alone, not with an adult, are uniquely vulnerable and

6     are therefore entitled to special treatment, not just like

7     every other immigrant that ICE detains when they cross the

8     border, and that critical to that special treatment is that

9     rather than just automatically or presumptively or most of

10    the time placing these unaccompanied children in an adult

11    jail with potentially hardened criminals that the relevant

12    authorities have to look for the least restrictive setting.

13    Now, that can vary.  In some cases it might be jail, you

14    know, someone who has a criminal background or who is a

15    danger to the community.  But where it's not, that the law

16    has been clear that these children should go in something

17    less.  Typically, that is to the custody of a parent or

18    guardian or a family friend.  Oftentimes there is someone in

19    the United States.

20         Our two plaintiffs have places that they have lined

21    up who say we're happy to take these folks, as I'll get to in

22    a minute.  For Wilmer, it is a family friend, Mr. Hernandez,

23    who lives -- not Mr. Hernandez -- Mr. Ramirez who lives in

24    Pennsylvania.  As to Sulma, who is in San Benito, Texas, it

25    is a religious shelter run by nuns called La Posada

1    Providencia.  We have attached to our application a letter

2    from La Posada saying we would welcome her, quote/unquote,

3    and we are happy to provide support and make sure she gets

4    counseling for her PTSD.

5         There is a long history dating back to 1997, at least

6    25 years, of the special recognition that this is a

7    vulnerable population and they're entitled to special

8    treatment, and critical to that special treatment is custody

9    in the least restrictive setting consistent with the

10   well-being of the child.

11        Fast forward to 2013.  Congress amended the

12   Immigration and Nationality Act to add a new provision.

13   That's the provision we're dealing with here, 1232(c)(2)(B).

14   And basically what they said was just because somebody turns

15   18 doesn't mean that magically they're no longer vulnerable,

16   magically that they necessarily have to be placed in a jail

17   locked up, incarcerated, in an adult detention facility.  So

18   Congress extended some of those protections that have existed

19   for 25 years for immigrant children to those immigrant

20   children after they turn 18 and the law requires that the ORR

21   turn them over to ICE, that supervision.  And the two

22   operative really provisions in 1232(c)(2)(B), first -- and I

23   emphasize the language is mandatory in both of these

24   provisions -- it says "shall," both of these sentences.  But

25   it requires that the secretary, quote, shall consider

1       placement of such teenagers, quote, in the least restrictive

2       setting available after taking into account the alien's

3       danger to self, danger to the community and risk of flight.

4              Then the statute goes further to make it clear that

5       this is not supposed to be some presumptive -- it's a real

6       determination.  And it means looking and making available

7       alternatives.  And it says that these individuals, quote,

8       shall be eligible to participate in alternative-to-detention

9       programs, utilizing a continuum of alternatives based on the

10      alien's need for supervision, which may include placement of

11      the alien with an individual or an organizational sponsor or

12      in a supervised group home.

13             So I want to briefly address the two plaintiffs as to

14      whom we are seeking relief today, a TRO, to be followed by

15      preliminary injunction.

16             THE COURT:  Let me ask you this question first:  Is

17      it your position that ICE has ever complied with that

18      requirement?

19             MR. PATTON:  We don't know.  We don't know.  And

20      again, I don't want to foreshadow my adversary's remarks.  I

21      think they will contend that they are.  And I guess what I

22      would say to that -- we do know the facts, we think, as to

23      these two plaintiffs.  Again, let me mention those.

24             THE COURT:  Is there any statutory or regulatory

25      requirement that that decision be memorialized in writing?

1        MR. PATTON:  No, we're not aware.  Typically, on

2    something like this, the agency of course would, in

3    fulfilling the statutory mandate, adopt programs, enact

4    procedures and protocols.  And there may be writings to that

5    effect that we just don't know about, but the Federal

6    Register does not contain regulations implementing this.

7    Their website doesn't contain -- I mean we have searched the

8    public sources, and it doesn't contain anything that

9    constitutes the kind of infrastructure that one would expect

10   to implement an important statutory provision like this.

11        So as to these two plaintiffs, first of all, Wilmer

12   Ramirez Garcia -- and I'm going to call him "Wilmer" just

13   because it is less of a mouthful -- I'm not going to go

14   through all of the statutes, but the ones that I think are

15   salient here.  He made a written request.  Remember, the

16   statute doesn't say only if the immigrant child requests

17   this; it says there's an affirmative obligation in each and

18   every case for ICE to do this.  In this situation, Wilmer's

19   counsel wrote on January 5th of 2018 to the local ICE

20   specifically invoking this statutory provision and saying, we

21   have a family friend in Pennsylvania who is willing, so

22   please consider him.  But it went through -- and it carefully

23   and I think very conclusively went through the factors that

24   the statute considers.  Is he a risk of flight?  Well, no, he

25   has a petition pending for special immigrant juvenile status,

1    SIJS, for those folks that deal with this, that if granted as

2    it should be will make him a legal resident of the United

3    States.  He wants to be here, and he wants to be here

4    legally.  He has made an application that has been pending

5    for several months.  That application is premised on a prior

6    state court determination by a state court in Arizona last

7    fall finding that because he was neglected in his home

8    country of Guatemala that he should not be returned there, it

9    is not in his best interests, that he should remain in the

10   United States.  And those are the same factual findings that

11   would be required for a successful special immigrant juvenile

12   status claim.  So he has a meritorious claim pending.  He is

13   not a flight risk.  He's made clear he wants to see this

14   thing through, be here legally.  He's not a danger to the

15   community.  He has been in custody for several months now,

16   has not been a problem to anyone.  He wasn't in an adult jail

17   until he turned 18.  He has no criminal history.  And for

18   similar reasons he is not a threat to himself.

19         So whatever my able adversary may tell you is

20   happening behind the scenes here -- and according to his

21   lawyer, they have received no response -- and I think this

22   may be disputed -- no response to that written request, let

23   alone any indication of an examination of these factors or a

24   determination as to these factors.  I guess the question that

25   I have is if today the government comes and says, oh, no, we

1    made that determination, well, what's the basis?  What are we

2    missing here?  This is all documentation we have provided,

3    Your Honor.  He has an SIJS application pending.  We have

4    submitted that.  He has a favorable court ruling finding that

5    the requirements for that application are satisfied, Arizona

6    State Court.  We have provided that.  He sent a letter to ICE

7    marshalling why there is no basis to not release him to a

8    less restrictive setting and, rather, to keep him in a jail

9    in adult detention.  So if they claim now that they're

10   complying, where is the evidence of it and where is some

11   indication that they've complied with the factors that are

12   unambiguously set forth in the statute?

13          THE COURT:  But that is a different case, isn't it?

14          MR. PATTON:  I don't think so.  I think that --

15          THE COURT:  Would I have jurisdiction over that issue

16   on an APA basis to determine whether they correctly made that

17   decision?

18          MR. PATTON:  If it's arbitrary and capricious, okay,

19   but I'm not sure if these -- when these facts -- we'll even

20   get to the arbitrary and capricious because I guess the way I

21   look at it is I grant you it is much simpler if they just

22   fess up and say, no, we didn't do that, we should.  If they

23   were to say that, we would work with them, we would be

24   reasonable, we want to fix a problem where we think that a

25   very clear congressional directive is not being abided by.

1      But that is a clearer case.

2           The other is, no, no, we don't have to comply with

3      that and we have some argument about some reason.  Based on

4      the preview I got, I think we're going to be in this middle

5      setting.  Oh, no, we did that.  And you can say you did

6      something, but what you did and how you -- the documentation

7      you have of what you did doesn't comply with the clear

8      directives of the statute, I think that is an APA case of the

9      one that we have alleged in our complaint.  If in fact we

10     move into the area where there was a determination and it's

11     not -- even if it is not so clear-cut as they're not

12     complying with the statute, then that would be arbitrary and

13     capricious.  I would agree, Your Honor, if it is a matter of

14     reviewing the exercise of discretion, we're not claiming

15     jurisdiction under the APA.  And there will be cases, I

16     suppose, where reasonable minds could disagree.  And we're

17     not trying to foreclose the result.  There are, I'm sure,

18     similarly situated individuals that should go into adult

19     detention.  But not these two and, based on the anecdotal

20     evidence, not many others.

21          Briefly, on the other plaintiff -- again I'm going to

22     focus on the facts relevant to the issue that we're talking

23     about today -- on February 2, '18 -- and her name is Sulma

24     Hernandez Alfaro, Sulma's lawyer likewise wrote ICE invoking

25     Section 1232 and again saying, hey, we have lined up somebody

 1     here locally, these nuns, they have a shelter for immigrants,

 2     La Posada Providencia, and here's their letter where they say

 3     they would be happy to take Sulma and provide for her.  And

 4     then the lawyer goes on to marshal that she has an asylum

 5     claim pending that she made last fall and again appears to be

 6     very meritorious.  Again, without getting into details, this

 7     young woman was subject to horrific abuse by an uncle

 8     repeated over some period of time.  And her family was unable

 9     to protect her from it.  The authorities were unable to

10     protect her from it.  She took two and a half months to come

11     over to escape that to come to the United States.

12          Like Wilmer, her lawyer also explained why she's got

13     a real stake.  She's got a valid asylum claim.  She's not

14     going to go anyplace.  She wants to win her asylum claim and

15     have the right, legal right, to stay in the United States.

16     And also, no hint of any kind of a criminal history or

17     background or problem whatsoever.  Vulnerable, traumatized

18     teenager in a strange place in an adult condition.  When we

19     get to irreparable harm, I will talk a little bit about her

20     personal situation.  So clear statutory requirements based on

21     what we know.  These are facts we've documented.  I'm not

22     just coming and telling you.  As you know, we've got

23     affidavits, we've got documentation on the written request,

24     we've got documentation from La Posada, the applications for

25     permanent relief and so forth.

1          So with that are the requirements for a TRO

2     satisfied?  As Your Honor knows very, very well, there are

3     four requirements, and we respectfully submit that each and

4     every one of those is very clearly and compellingly satisfied

5     here.  I don't think this is a case where we're kind of weak

6     on one and we have to win on a balance of hardships.  I think

7     each of these factors, they decidedly weigh in favor of

8     emergency relief.

9          First of all, likelihood of success on the merits, I

10    have largely made the argument there.  The statute, clear,

11    unambiguous, there are certain requirements.  The factual

12    information we have submitted indicates very strongly that as

13    to the facts on the ground, if they complied with this, why

14    are either one of these individuals still in custody after

15    several months now?  Why are they still in adult detention?

16    And if so, what are the facts that gave rise to a concern

17    about flight risk or danger to themselves or danger to

18    community?  What was the basis?  Not to have the Court review

19    that individual determination but to determine whether ICE is

20    in fact making a determination of the type and as required by

21    the congressional statute, and that's the difference from an

22    APA standpoint.  You're right, we're not seeking the former,

23    and I think there would be questions, we're seeking the

24    latter.  But the statute is clear.  We think the facts are

25    clear as to these two individuals.  And the relief under the

 1      APA I think will likely be undisputed about the ability and

 2      the availability of judicial review and the ability of this

 3      Court to order declaratory injunctive relief where a statute

 4      is not being complied with, and that agency action within the

 5      meaning of the APA includes failure to act, lots of case law

 6      making it quite clear that this Court, if in fact ICE is not

 7      complying with the statute, or not complying fully, or even

 8      in good faith, or consistent with the clear congressional

 9      intent, this Court has authority to step in and to remedy

10      that.

11            Second, on irreparable harm, plaintiffs have suffered

12      and, absent preliminary relief, will continue to suffer

13      irreparable harm.  Each day plaintiffs spend in adult

14      detention without the statutorily required determination as

15      to whether they are appropriate for a less restrictive

16      setting and have the ability to be releasable at that less

17      restrictive setting is a day in which their fundamental

18      personal freedom, their liberty interests are at stake.  We

19      have submitted a lot of case law that says a potentially

20      illegal detention causes irreparable harm as a matter of law.

21      In fact, one could argue that the most severe form of harm is

22      where it is not just you have injury that you can't get money

23      damages for, your freedom is being deprived.  And here there

24      is the risk that that has occurred.  Again, not prejudging

25      what the conclusion is going to be but the possibility that

1    these individuals will be released if the statute is followed

2    clearly constitutes a risk of irreparable harm.

3         Here we have more than this.  I'm new to this area of

4    the law.  It is not just the liberty interests, because there

5    is a fairly well developed body of law, a lot of it has

6    happened recently, says that the secondary effects of

7    potentially illegal detention constitute irreparable harm in

8    their own right.  That includes things like the negative

9    physical and mental effects of ICE detention.  And boy, we

10   have got that detailed in droves in these affidavits.  That

11   includes the fact that these individuals are totally

12   isolated, cut off from any family or friends.  That wasn't

13   the case when they were in the custody of ORR, in a group

14   home or a shelter, but it is now.  They don't have the money

15   even to make a long-distance phone call.  Wilmer describes

16   how his mother doesn't even know where he is.  He doesn't

17   know how his family is.  And they don't know how he is or

18   even where he is located.  He has been in custody for almost

19   six months now.  It includes subpar or lack of medical

20   psychiatric care.

21        Sulma, we detail how she is suffering from PTSD.

22   When she was not in an adult detention facility, she was

23   diagnosed with PTSD.  If she is released to La Posada, she

24   will be able to get treatment for that.  She's not now.

25   That's irreparable harm.

1          Lack of educational opportunities that both Sulma and

2     Wilmer mentioned, when they were with ORR, they had a chance

3     to get some education, work on their English language skills

4     and so forth.

5          And also, the boredom.  They're idling away their

6     time, largely confined to their cells with nothing

7     constructive to do, as described by Plaintiff Wilmer.  He

8     says, "I'm sad."  Probably what he means is he would be --

9     and I would expect -- he would be pretty doggone depressed.

10    Nothing to do.  Someone who is used to working their entire

11    life.

12         There are a variety of harms here that we believe

13    exist as a matter of law under the case law but are

14    compelling for these individual plaintiffs.  They may be

15    representative of others; I don't know.  But I know as to

16    these, and that's why we're seeking relief today as to these

17    two individuals.

18         Third, the balance of harm is completely lopsided

19    here in favor of the plaintiffs.  All we're asking the

20    government to do is to abide by the law, one of their

21    governing statutes, do what Congress told them to do and do

22    it fully and in good faith.  No kind of sliding by and

23    calling it a determination if it is not a determination if we

24    get into that kind of issue and dispute, and I hope we don't.

25         The law is settled that where, as here, a plaintiff,

1      all they're asking is for the government to abide by the law,

2      to comply with their governing statutes, that again as a

3      matter of law the balance of harms is with the plaintiff

4      because that cannot be a legally cognizable harm.  The

5      government, no matter how much they may claim burden or

6      whatever, cannot be harmed by simply doing what Congress has

7      directed them to do or being ordered by a Court to do what

8      Congress has specifically ordered them to do.  And finally,

9      for similar reasons, injunctive relief is clearly in the

10     public interest.  The law is well settled.  We cite a whole

11     bunch of cases that say that where, as here, the relief that

12     is being requested is to enjoin an agency from not complying

13     with the law, which is in effect, in answering your earlier

14     question, is tantamount, has the same effect of requiring the

15     agency to comply with the law, that that's got to be in the

16     public interest.  It is in the public interest to have

17     agencies do what Congress has directed them to do.

18            So for all of those reasons -- and I guess I would

19     add -- and I'm thinking back on really your first

20     question -- I don't think what we're asking for here is

21     fairly legally characterized as an affirmative injunction.

22     If it were, I think we still make that clear and convincing

23     showing that we are required to.  And I'm not going to argue

24     that the effect of what we're asking for isn't really or

25     should not be -- and we hope it will be -- for them to go

1    with the program and comply with the law -- but often it is

2    the case in an injunction that says stop your failure to

3    comply, stop your violation of the law, that being a negative

4    injunction, should have the necessary consequence of

5    incenting the government to do and take affirmative acts it

6    needs to take to comply with the law.  I think that this is a

7    standard negative type injunction, but even if it were an

8    affirmative request for leave -- and I don't think it is --

9    that we would satisfy that requirement, too.

10          Your Honor, thank you.

11          THE COURT:  All right.  Thank you.

12          MR. KISOR:  Good afternoon again, Your Honor.

13          THE COURT:  Good afternoon.

14          MR. KISOR:  I did not read the plaintiffs' motion for

15   a TRO and PI -- it says nationwide in it on page 2 and 18 --

16   I understand now that they're just asking for a TRO for the

17   two people.  If I could talk about the two people first.

18          THE COURT:  Sure.

19          MR. KISOR:  And then I can talk about the larger

20   issues with respect to the Court's jurisdiction as well as

21   the time it would take me to gather documents and proof

22   related to policies, for example.

23          Relating to these two people, they have already

24   gotten these determinations.  Wilmer, his lawyer sent the

25   letter which is attached.  What the plaintiffs do not attach

1          is ICE's response, which they have given to me which I can

2          share with the Court and I can give a copy to plaintiffs if

3          you would like me to pass it up, Your Honor.

4                    THE COURT:   Sure.

5                    MR. KISOR:   This is dated January 23rd.   It is

6          written to Ms. Allende-Asparo, who wrote the letter, and it

7          says, "We have carefully reviewed all of the information that

8          you gave us."   The date stamp on it is January 23rd, which is

9          slightly after January 5, when the letter was sent.   And then

10         we have decided to deny this request.   So that's moot, and it

11         was moot before the case was filed here, Your Honor, because

12         all the statute requires is that ICE consider this.   Right?

13         I was able to obtain this, this piece of paper, in just a

14         couple of days.   The information that I have with respect to

15         the rest of it is preliminary, but I'm informed that with

16         respect to the other plaintiff, who sent the letter, that on

17         February 7th, there was a meeting between that person's

18         immigration attorney and ICE, where they verbally told her

19         we've considered your letter and we will deny it.   So I'm

20         going to obtain for our preliminary injunction response a

21         declaration and whatever other documentation I can.

22                    I just got this case on Monday.

23                    THE COURT:   I understand.   I know I have rushed you

24         faster than you wished, but I'm in trial next week.

25                    MR. KISOR:   Yes, Your Honor, for sure.

1          The point that I would like to make is with respect

2     to these two people, ICE has done its duty under the statute

3     and considered this and denied it.  That is the only evidence

4     that the plaintiffs have marshalled so far that ICE has

5     abandoned the statute.  I do not believe -- and I will gather

6     the evidence to prove that ICE hasn't.  But as Your Honor

7     knows, there is a bureaucracy involved.  It seems to be a

8     little busy at the moment.  What I do is reach out to the

9     headquarters people at ICE here and I say:  Gather whatever

10    policies, procedures, training materials that have to be

11    reviewed, redacted, whatever.  I need to show the Court that

12    you are all not blissfully unaware of the statute, as the

13    plaintiffs suggest.

14          The plaintiffs say, going back to Mr. Wilmer on

15    page 8 of their complaint, paragraph 38, "To date, ICE has

16    failed to consider or make any determination."  That is what

17    they said when they filed this March 5th paper in front of

18    Your Honor.  Regardless of whether plaintiffs got it -- and I

19    do believe that if the plaintiffs' counsel had it, they would

20    have attached it to their pleading, in full candor to the

21    Court -- but it shows that ICE has not failed to consider.

22    ICE has made a determination on January 23rd, six weeks ago.

23    So perhaps it was mailed and this lawyer didn't receive it.

24    Perhaps this lawyer received it and didn't tell plaintiffs'

25    counsel.  Regardless, that determination was made unless they

1   ginned this letter up yesterday to give to me to commit a

2   fraud on the Court, which I doubt.  So I believe these

3   determinations have been made.

4        I will step back a little bit to make two other

5   points regarding the Court's jurisdiction and regarding

6   irreparable harm.  Regarding irreparable harm, both of these

7   people are adults and are eligible to request a bond hearing.

8   One has not requested a bond hearing before an immigration

9   judge.  So if they want freedom, that's one way to get it.

10  They haven't exhausted that.  That is a jurisdictional

11  problem.  The other did request a bond hearing and then

12  requested that it be canceled.  Both of these people are

13  represented by counsel, and neither one is pro se.  I will be

14  able to demonstrate all of that with documentation when I'm

15  able to get it and provide it attached to our preliminary

16  injunction response.

17       So the only evidence plaintiffs have that is beyond

18  their conjecture that ICE is not doing anything nationwide

19  about this at all, the two examples are both moot and easily

20  refuted as being not true.

21       So what I would like to do, what I would propose that

22  the Court do is collapse the merits of this litigation and

23  the preliminary injunction aspect of it under Rule 65.

24  Generally, the government gets 60 days to respond to a

25  complaint, and it usually takes me that long, quite frankly,

1    to work through the bureaucracy and to get all of the

2    relevant pieces of paper I need.  I understand that the Court

3    may want to move faster than that.  I would like to provide

4    an accurate and fulsome response to this Court in 30 days,

5    perhaps 45 days, to file an opposition to the preliminary

6    injunction nationwide that will require me and the Justice

7    Department to contact ICE and ICE would have to contact the

8    field offices nationwide and find out what materials they

9    have that can show that they have taken steps to comply with

10   this statute, which from the preliminary materials that I

11   have received, very preliminary, and from what my

12   conversations with ICE reveal, I don't think there is a

13   problem here.  And I'm not testifying because everything I

14   know is hearsay.

15        THE COURT:  And you've dealt with ICE long enough to

16   know that you can't unequivocally make those sorts of

17   statements.

18        MR. KISOR:  I do not make factual representations on

19   behalf of anyone unsupported by evidence, Your Honor.  All I

20   can tell you is the evidence before you here shows that one

21   of these people received it on January 23rd.  I am informed

22   that the other person received it on February 5th.  There

23   really isn't a good reason why plaintiffs should not have

24   known that, and that's all they have.  That's all they have

25   put before you on behalf of a nationwide class.

1          THE COURT:  Does the government take a different view

2     than the plaintiffs as to what the statute requires?

3          MR. KISOR:  Yes, in part.  The statute requires that

4     the Secretary of Homeland Security, which in this case would

5     be somebody at ICE, consider.  It does not require that that

6     decision be documented on any particular form or any

7     particular findings of fact be made.  I'm made to understand

8     that with respect to the first person, not the person related

9     to this letter, but the one who was given the verbal denial

10    in a meeting with that person's attorney on February 7th that

11    ICE had determined that that person was a flight risk.  The

12    statute certainly doesn't require anything -- and there may

13    or may not be an implementing regulation, I don't think there

14    is, I haven't been able to find one -- that requires some

15    particularized form or format, but it is required that ICE

16    consider this.  One of the things that it considers is danger

17    to the person's self, danger to others, and flight risk.  So

18    it is sort of a show stopper, if I determine somebody is a

19    flight risk, then the least restrictive setting is going to

20    be custody.  And if the person wants to get out of custody,

21    they just go to an immigration judge and have a bond hearing

22    if they're eligible, which both of these people are, which

23    brings me to one other sort of tangential point I would like

24    to make, which is their motion for class certification.  The

25    class is obviously way too broad.  It includes both mandatory

1   and non-mandatory people.  These two people are 236, 8 U.S.C.

2   1226(a).  They can request bond hearings before an

3   immigration judge and have an immigration judge review that,

4   and that has not happened.  So that goes to the irreparable

5   harm.  If the irreparable harm is that they're in jail, they

6   have not availed themselves of the mechanism to have an

7   immigration judge review that.  Instead they come to the

8   District Court and say, well, we want a district judge in

9   D.C. to decide somebody in Texas and somebody in Arizona

10  don't need to go to an IJ, they need a temporary restraining

11  order for ordering them released.  And the government submits

12  that that is improper, Your Honor.

13          With respect to my final points on jurisdiction,

14  which are we would intend, I think, to file a motion to

15  dismiss or for summary judgment in this case.  We believe

16  that under 12(b)(1) and 12(b)(6) any nationwide injunction

17  that you would enter would just be to comply with the law,

18  which would be a useless injunction.  You would have to

19  monitor it and sort of figure out what was actually going on

20  that was a violation.  It would be the plaintiffs' burden of

21  proof, and they haven't, and the government submits can't,

22  won't be able to.

23          So what I would like to do is respond with an

24  opposition to the preliminary injunction in writing,

25  attaching the documentation and, under Rule 65, make that a

1   motion for summary judgment, as well, and then, if that's

2   denied, brief class certification to litigate this case in

3   sort of an orderly and efficient fashion.

4           THE COURT:  Do you have anything else on the merits?

5           MR. KISOR:  No, Your Honor.

6           THE COURT:  Do you have any broader information about

7   how ICE implements this statutory requirement?

8           MR. KISOR:  Yes.  It will take me a while to gather

9   the documents and get them cleared, but when the statute was

10  enacted there was guidance that went from the headquarters to

11  the field offices saying here's the statute, this is what it

12  requires, this is what we're requiring you to do about that,

13  so those documents exist.  I do not have all of them.  I

14  don't think that I have anything close to the universe of

15  those.  I have a couple.  But like I said, I'm not clear to

16  release those as I sit here today.

17          THE COURT:  Sure.  To your knowledge, has any of that

18  guidance changed in the last 6 months or so?

19          MR. KISOR:  I don't think I can -- no, I don't think

20  I can answer that because the dates that I have seen on those

21  are over six months ago but I haven't seen the universe of

22  it.

23          I will say, though, that before opposing counsel

24  comes and files a complaint saying ICE has no policy on

25  something, they should at least ask ICE, FOIA request, do you

1    have a policy.  And then if ICE responds, no, we don't, there

2    is none, then that may be a basis for something.  They don't

3    assert in their complaint that they have done that here.

4         THE COURT:  All right.  Thanks.  I want to hear in

5    particular about the bond hearing issue.

6         MR. PATTON:  Yes.  Before I get to that, obviously

7    this is the first time I have seen this letter.  But on its

8    face it shows that, I would respectfully submit, they're not

9    complying with the statute.  And they don't understand, or

10   the person who wrote this letter doesn't understand what the

11   statute requires.

12        You have a copy of it there, sir?

13        THE COURT:  I do.

14        MR. PATTON:  They say, in the first paragraph, U.S.

15   Immigration and Custom Enforcement, ICE, blah, blah, blah,

16   Phoenix Field Office received your correspondence in which

17   you requested prosecutorial discretion in the form of release

18   from custody for your client.  That's not what was requested.

19   You can look at Exhibit G to our motion.  It doesn't request

20   release from custody.  They requested that ICE make the

21   determination, affirmative determination required by the

22   statute, considering risk of flight -- it got that one

23   right -- danger to self or danger to community.  Saying that,

24   hey, you requested prosecutorial discretion to let your guy

25   out of jail is not what was being requested and it's not the

1    relief we're seeking here.  By the same token, when counsel

2    closes by saying and suggesting a D.C. court shouldn't tell

3    the rest of the world to let people release them from

4    detention again, that's not what we're asking for, either.

5    We're not asking for determination on the merits as to

6    whether any particular individual or a group should or should

7    not be released from a particular form of custody.  And this

8    clearly shows a misunderstanding and a lack of even taking

9    the time to look at 1232(b), which is specifically cited in

10   the letter request that apparently this is responding to that

11   you do have dated January 5th, which is make this

12   determination -- here's why we think this person should

13   qualify for least restrictive and why he should go to his

14   friend, family friend in Pennsylvania, but it wasn't an

15   exercise of prosecutorial discretion.

16          On the question of immigration court bond, in a word,

17   it's a red herring.  It's comparing apples and oranges.  So

18   it is a different agency, a different standard, a different

19   timetable.  And even if that relief were granted, it wouldn't

20   eliminate the irreparable harm we're complaining about here.

21   And again, we're asking this Court to enforce a statute that

22   says ICE has to make a determination early on when it first

23   decides where to place that unaccompanied immigrant child,

24   what kind of custody.  Not just say, hey, let me out of jail.

25   No, make an affirmative determination:  Sulma is a flight

1    risk because of; or Wilmer is not a flight risk and so

2    therefore he can go to La Posada or he can go to his family

3    friend, and it is a totally different agency.  It is not the

4    immigration court, it's ICE.

5         THE COURT:  But what can you tell me factually about

6    each of these two plaintiffs as to whether they had a bond

7    hearing scheduled or waived it or canceled it?

8         MR. PATTON:  Yes.  What I can tell you, and it's why

9    I think at least as to Wilmer it undermines his point, he did

10   request a bond hearing.  His local immigration lawyer, after

11   asking both Wilmer and the family friend -- and this is in

12   Arizona -- where the judge -- and again I'm relating to you

13   just like he did what I understand -- the minimum bond is

14   $1,500.  They didn't have 1,500 bucks.  And that's a

15   particular judge who has adopted a very one could say

16   draconian requirement of requiring bonds systematically kind

17   of across the board far in excess.  But it doesn't matter.

18   The lawyer has told us that he withdrew the request because

19   his client and the client's friend said we couldn't afford it

20   even if it is granted.  So again, it goes to my point, and

21   it's a nice segue, why even it wasn't apples and oranges --

22        THE COURT:  How about with respect to the other

23   plaintiff?

24        MR. PATTON:  She has requested -- and let me make

25   sure I get this right because Kate just called, again talked

1      to her lawyer this morning.  She has requested asylum.  She

2      has asked for release, made a request to the immigration

3      court for release from custody separately as part of that

4      proceeding.  And the Court has recently responded and said,

5      well, that's only going to happen with the bond.  And so she

6      has not yet but intends to file a bond application.  Now,

7      whether she has the money to do that, I don't know.  But the

8      point being that even if bonds were always available and in

9      many cases they're not and they're subject to different

10     statutory framework and financial and other requirements,

11     even if they wouldn't eliminate the harm here, the first

12     time -- again, counsel will know this, and Ms. Goettel will

13     know this -- but I'm telling you what I understand to be the

14     case.  The earliest a bond could be granted is at the initial

15     or master hearing that occurs three to four weeks after the

16     onset of detention.  That's in a best case scenario.  In some

17     jurisdictions, the backlog is many months.  I'm told in New

18     York it is three months.  So you have a statute that says

19     before you even put these guys in jail, or at that time,

20     you're supposed to make a determination.  And counsel's

21     response is, well, there is no harm here because if they

22     really don't want to be in jail, they can just go to the

23     immigration court.  The earliest that can happen is three to

24     four weeks if it happens at all, and in many jurisdictions it

25     can be several months.  So there is some period in which

1    there is a risk of an unlawful detention because ICE is not

2    doing what it's required to do.

3              THE COURT:  Sure, but three or four weeks you waited

4    to file the PI, longer than that for both of these

5    plaintiffs.  If that was an available avenue, they

6    potentially could have gotten out.

7              MR. PATTON:  Well, I think Wilmer filed in a timely

8    basis and then found out and learned, through his

9    representation of his counsel, what the bond requirement

10   would be with this Court, and it is not because he didn't

11   want to get out of jail, it's because he didn't have the

12   money.  It was a futile act.  As to plaintiff Sulma, she

13   requested relief.  It's not like she has been sitting on her

14   rights.  She probably filed an asylum petition.  She is

15   trying to get that heard because her lawyer believes it will

16   result in permanent legal staff in the United States, and she

17   asked to be released from custody.  Now, the Court's recently

18   advised, well, that is only going to happen with the bond,

19   and she will apply for a bond.  But even if she gets that

20   bond, maybe she is now not in custody but somebody else is.

21   And Wilmer is.  And we believe there are other -- and if

22   there are not other individuals, then the relief we're

23   seeking will be limited only to that group, however large it

24   is, where their local office is not complying with the

25   statute.  And I don't want to concede that this is something

1    where ICE can say, hey, Congress passed this statute, comply

2    with it, make this determination and kind of wash your hands

3    of it and leave it to 204 ICE field offices to ensure

4    compliance with the statutory mandate.  Again, I know what I

5    have heard -- same as you -- from counsel.

6          But fundamentally I go back to the argument that I

7    made before.  We know this was not responding to the request.

8    This isn't worth the paper it is written on in terms of what

9    we're about here.  But if in fact there is some other piece

10   of paper that they come up with next Tuesday that says, yeah,

11   we made a determination, how can that be, where is the flight

12   risk?  They just asserted, oh, they're a flight risk or an

13   ICE office determines everybody is a flight risk, we're going

14   to keep them all in jail to the extent we have beds

15   available.  That is not complying with this statute.

16         Now, again, we're not asking the Court to

17   individually review or make a predisposition as to good faith

18   exercise of discretion.  But we are saying that where the

19   best they can come up with is a piece of paper like this to

20   show that they made a determination and we have facts that I

21   don't hear any dispute that there are agencies available who

22   will take these people in, that they don't have any criminal

23   background or criminal history, that they have a documented

24   strong incentive not to flee because both have pending strong

25   requests for relief that would entitle them to legally remain

1        in the United States.  You can try to think of a good analogy

2        that is appropriate for court, but you can dress something

3        up, but if it oinks and has a curly tail, it is still a hog,

4        and you can't put lipstick on it or pretend or have some kind

5        of, "Oh, well, we made a determination, our determination is

6        we're not going to let them out of jail."  The statute

7        requires more than that.

8                Again, we're not saying that ICE doesn't have

9        discretion in terms of how it applies and how it enacts and

10       how it implements.  But if they are complying with this, I

11       don't think it would take even until today for counsel to be

12       able to provide Your Honor, yeah, here's our protocol, here's

13       the instructions, here's what we review to make sure that the

14       people that are exercising this discretion know what the

15       legal requirements are and are following the law.

16               And again, I believe, and as this lawsuit has gotten

17       publicity, we are being contacted by others, plaintiffs, that

18       it appears have similar situations.  I'm not going to burden

19       the Court with amending to add -- unless and until I think we

20       have to -- and also based on the due diligence of the people

21       that practice in this area day in and day out, there does not

22       appear to be compliance with these requirements.  And as a

23       result, people are automatically and summarily being placed

24       into adult detention from day one.

25               THE COURT:  Thank you.

1          I'm going to go ahead and deny the TRO.  In the end,

2     the plaintiffs are asking me to exercise my equitable powers.

3     They're asking for a change in the status quo, not a

4     preservation of the status quo, and the relief they're

5     seeking is essentially the same as the merits of the case.

6     Both sides have presented a number of assertions that are

7     proffers but aren't backed up with any evidence, I don't

8     think.  Plaintiff has met their burden to show a substantial

9     likelihood of prevailing on the merits at this point.

10          I think it would be equitable to give the government

11     more time to respond in writing to these allegations.  So

12     what I want the parties to do is to meet and confer and

13     see -- I don't want to be Pollyannish -- but see if they can

14     agree on a briefing schedule for the PI for these two

15     plaintiffs.  And the government is not going to get 45 days

16     to 60 days for these two plaintiffs.  I would consider a

17     longer briefing schedule for the broader issues involved in

18     the case, but I want the two of you to try to hammer those

19     things out if you can.  If not, submit competing proposals,

20     and I will decide those.  Submit that by tomorrow.

21          MR. KISOR:  Your Honor, may I ask a question?

22          THE COURT:  Of course.

23          MR. KISOR:  May I assume that our response date for

24     Tuesday is vacated?

25          THE COURT:  For the PI?

```
 1                    MR. KISOR:  For the PI.

 2                    THE COURT:  I am amenable to giving you more time

 3       than that --

 4                    MR. KISOR:  Thank you.

 5                    THE COURT:  -- for the two plaintiffs, but I want you

 6       guys to meet and confer on that.

 7                    MR. KISOR:  Also, Your Honor, I think under the local

 8       rules I would have to respond to the class certification

 9       motion.  Is the clock running on that of two weeks?  Can we

10       vacate that date?

11                    THE COURT:  Meet and confer on that, as well.  I will

12       say I'm not in a great rush to deal with the class

13       certification issue just yet, so I think the two of you can

14       be reasonable and reach some sort of meeting of the minds on

15       that.

16                    MR. KISOR:  Thank you.

17                    THE COURT:  Anything else we need to resolve today?

18                    MR. PATTON:  No.  Thank you, Your Honor, for hearing

19       us so promptly.

20                    THE COURT:  My pleasure.

21                    Thank you.  You're excused.

22                        (Proceedings adjourned at 4:05 p.m.)

23

24

25
```

1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3              I, Patricia A. Kaneshiro-Miller, certify that the

4       foregoing is a correct transcript from the record of

5       proceedings in the above-entitled matter.

6

7

8       /s/ Patricia A. Kaneshiro-Miller          March 8, 2018
        ------------------------------------     ---------------------
9       PATRICIA A. KANESHIRO-MILLER                      DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$1,500** [1] - 32:14

**'**

**'18** [1] - 15:23

**/**

**/s** [1] - 39:8

**1**

**1,500** [1] - 32:14
**12(b)(1** [1] - 28:16
**12(b)(6** [1] - 28:16
**1200** [1] - 1:17
**1226(a)** [1] - 28:2
**1232** [1] - 15:25
**1232(b** [1] - 31:9
**1232(c)(2)(B** [1] - 10:22
**1232(c)(2)(B)** [1] - 10:13
**1300** [1] - 1:21
**13th** [1] - 5:24
**15th** [1] - 1:17
**18** [7] - 7:4, 7:15, 8:21, 10:15, 10:20, 13:17, 22:15
**18-508** [2] - 1:4, 3:3
**1997** [2] - 9:2, 10:5

**2**

**2** [2] - 15:23, 22:15
**20001** [1] - 2:8
**20015** [1] - 1:18
**20044** [1] - 2:4
**2013** [3] - 5:4, 5:6, 10:11
**2017** [3] - 4:1, 4:3, 4:7
**2018** [4] - 1:7, 4:2, 12:19, 39:8
**202** [1] - 2:9
**204** [1] - 35:3
**208** [1] - 1:20
**236** [1] - 28:1
**23rd** [4] - 23:5, 23:8, 24:22, 26:21
**25** [2] - 10:6, 10:19

**3**

**30** [1] - 26:4
**300** [1] - 1:14
**333** [1] - 2:8
**354-3243** [1] - 2:9

**38** [1] - 24:15
**3:04** [1] - 3:2

**4**

**45** [2] - 26:5, 37:15
**4700A** [1] - 2:7
**4:05** [1] - 38:22

**5**

**5** [1] - 23:9
**5:00** [1] - 7:16
**5th** [4] - 12:19, 24:17, 26:22, 31:11

**6**

**6** [1] - 29:18
**60** [2] - 25:24, 37:16
**60604** [1] - 1:21
**60654** [1] - 1:15
**65** [2] - 25:23, 28:25
**655** [1] - 1:17

**7**

**7th** [2] - 23:17, 27:10

**8**

**8** [4] - 1:7, 24:15, 28:1, 39:8
**868** [1] - 2:3

**A**

**abandoned** [1] - 24:5
**Abbott** [1] - 2:1
**abide** [2] - 20:20, 21:1
**abided** [1] - 14:25
**ability** [4] - 5:24, 18:1, 18:2, 18:16
**able** [12] - 5:2, 5:18, 6:20, 7:12, 13:19, 19:24, 23:13, 25:14, 25:15, 27:14, 28:22, 36:12
**above-entitled** [1] - 39:5
**absent** [1] - 18:12
**abuse** [1] - 16:7
**according** [1] - 13:20
**account** [1] - 11:2
**accurate** [1] - 26:4
**act** [2] - 18:5, 34:12
**Act** [1] - 10:12
**Action** [1] - 3:3
**action** [1] - 18:4

**acts** [1] - 22:5
**add** [3] - 10:12, 21:19, 36:19
**address** [3] - 4:11, 6:3, 11:13
**adjourned** [1] - 38:22
**adopt** [1] - 12:3
**adopted** [1] - 32:15
**adult** [14] - 7:5, 7:10, 7:18, 9:5, 9:10, 10:17, 13:16, 14:9, 15:18, 16:18, 17:15, 18:13, 19:22, 36:24
**adults** [1] - 25:7
**adversary** [1] - 13:19
**adversary's** [1] - 11:20
**advised** [1] - 34:18
**affidavits** [2] - 16:23, 19:10
**afford** [1] - 32:19
**afternoon** [6] - 3:8, 3:10, 3:11, 3:13, 22:12, 22:13
**agencies** [2] - 21:17, 35:21
**agency** [6] - 12:2, 18:4, 21:12, 21:15, 31:18, 32:3
**ago** [2] - 24:22, 29:21
**agree** [2] - 15:13, 37:14
**agreement** [1] - 9:2
**ahead** [1] - 37:1
**aided** [1] - 2:11
**al** [2] - 1:3, 3:4
**Alfaro** [1] - 15:24
**alien** [1] - 11:11
**alien's** [2] - 11:2, 11:10
**allegations** [1] - 37:11
**alleged** [1] - 15:9
**Allende** [1] - 23:6
**Allende-Asparo** [1] - 23:6
**almost** [1] - 19:18
**alone** [2] - 9:5, 13:23
**Alsterberg** [1] - 2:1
**alternative** [1] - 11:8
**alternative-to-detention** [1] - 11:8
**alternatives** [2] - 11:7, 11:9
**amenable** [1] - 38:2
**amended** [1] - 10:11
**amending** [1] - 36:19
**amount** [1] - 4:18

**analogy** [1] - 36:1
**AND** [1] - 1:6
**anecdotal** [3] - 7:24, 8:6, 15:19
**answer** [1] - 29:20
**answering** [1] - 21:13
**anticipate** [1] - 8:4
**anyplace** [1] - 16:14
**APA** [6] - 14:16, 15:8, 15:15, 17:22, 18:1, 18:5
**appear** [1] - 36:22
**appearances** [1] - 3:7
**APPEARANCES** [1] - 1:12
**Appearances** [1] - 1:23
**apples** [1] - 31:17, 32:21
**application** [7] - 6:17, 10:1, 13:4, 13:5, 14:3, 14:5, 33:6
**applications** [1] - 16:24
**applies** [1] - 36:9
**apply** [3] - 6:4, 7:22, 34:19
**apprehended** [1] - 7:6
**appropriate** [2] - 18:15, 36:2
**arbitrary** [3] - 14:18, 14:20, 15:12
**area** [4] - 8:7, 15:10, 19:3, 36:21
**argue** [2] - 18:21, 21:23
**arguing** [1] - 5:20
**argument** [5] - 6:15, 8:4, 15:3, 17:10, 35:6
**Arizona** [4] - 13:6, 14:5, 28:9, 32:12
**Asparo** [1] - 23:6
**aspect** [1] - 25:23
**assert** [1] - 30:3
**asserted** [1] - 35:12
**assertions** [1] - 37:6
**assume** [1] - 37:23
**asylum** [6] - 4:16, 16:4, 16:13, 16:14, 33:1, 34:14
**attach** [1] - 22:25
**attached** [4] - 10:1, 22:25, 24:20, 25:15
**attaching** [1] - 28:25
**attention** [1] - 5:14
**attorney** [2] - 23:18, 27:10

**authorities** [2] - 9:12, 16:9
**authority** [1] - 18:9
**automatically** [2] - 9:9, 36:23
**availability** [2] - 6:1, 18:2
**available** [8] - 11:2, 11:6, 33:8, 34:5, 35:15, 35:21
**availed** [1] - 28:6
**Avenue** [1] - 2:8
**avenue** [1] - 34:5
**aware** [1] - 12:1

**B**

**back-and-forth** [1] - 5:19
**backed** [1] - 37:7
**background** [4] - 9:1, 9:14, 16:17, 35:23
**backlog** [1] - 33:17
**balance** [3] - 17:6, 20:18, 21:3
**based** [9] - 5:1, 6:19, 8:2, 8:6, 11:9, 15:3, 15:19, 16:20, 36:20
**basis** [7] - 5:16, 14:1, 14:7, 14:16, 17:18, 30:2, 34:8
**beds** [1] - 35:14
**BEFORE** [1] - 1:10
**behalf** [3] - 8:9, 26:19, 26:25
**behind** [1] - 13:20
**belief** [1] - 8:1
**believes** [1] - 34:15
**Ben** [2] - 1:20, 2:3
**Benito** [1] - 9:24
**best** [4] - 4:19, 13:9, 33:16, 35:19
**between** [1] - 23:17
**beyond** [2] - 5:15, 25:17
**bit** [3] - 9:1, 16:19, 25:4
**blah** [3] - 30:15
**blissfully** [1] - 24:12
**board** [1] - 32:17
**body** [1] - 19:5
**bond** [17] - 25:7, 25:8, 25:11, 27:21, 28:2, 30:5, 31:16, 32:6, 32:10, 32:13, 33:5, 33:6, 33:14, 34:9, 34:18, 34:19, 34:20
**bonds** [2] - 32:16,

33:8
**border** [2] - 7:6, 9:8
**boredom** [1] - 20:5
**bottom** [1] - 8:23
**Box** [1] - 2:3
**boy** [1] - 19:9
**brief** [1] - 29:2
**briefing** [4] - 5:22, 8:19, 37:14, 37:17
**briefly** [2] - 11:13, 15:21
**brings** [1] - 27:23
**broad** [2] - 8:16, 27:25
**broader** [3] - 6:4, 29:6, 37:17
**brought** [1] - 5:14
**bucks** [1] - 32:14
**bunch** [1] - 21:11
**burden** [4] - 21:5, 28:20, 36:18, 37:8
**bureaucracy** [2] - 24:7, 26:1
**busy** [1] - 24:8

**C**

**canceled** [2] - 25:12, 32:7
**candor** [1] - 24:20
**cannot** [2] - 21:4, 21:6
**capricious** [3] - 14:18, 14:20, 15:13
**Cara** [1] - 2:1
**care** [2] - 7:15, 19:20
**carefully** [3] - 8:20, 12:22, 23:7
**case** [22] - 6:10, 8:23, 9:3, 12:18, 14:13, 15:1, 15:8, 17:5, 18:5, 18:19, 19:13, 20:13, 22:2, 23:11, 23:22, 27:4, 28:15, 29:2, 33:14, 33:16, 37:5, 37:18
**cases** [8] - 4:22, 4:24, 6:11, 7:16, 9:13, 15:15, 21:11, 33:9
**causes** [1] - 18:20
**cells** [1] - 20:6
**CENTER** [1] - 1:19
**Center** [1] - 4:9
**certain** [2] - 6:19, 17:11
**certainly** [2] - 4:25, 27:12
**CERTIFICATE** [1] - 39:1
**certification** [4] -

27:24, 29:2, 38:8, 38:13
**certify** [2] - 8:17, 39:3
**chance** [1] - 20:2
**change** [4] - 3:20, 3:23, 4:23, 37:3
**changed** [3] - 4:22, 7:15, 29:18
**characterized** [1] - 21:21
**Chicago** [3] - 1:15, 1:21
**child** [3] - 10:10, 12:16, 31:23
**children** [8] - 7:4, 8:10, 8:21, 9:4, 9:10, 9:16, 10:19, 10:20
**Christina** [1] - 2:2
**cite** [1] - 21:10
**cited** [1] - 31:9
**Civil** [2] - 1:4, 3:3
**claim** [7] - 13:12, 14:9, 16:5, 16:13, 16:14, 21:5
**claiming** [1] - 15:14
**class** [10] - 4:23, 8:17, 8:19, 8:20, 26:25, 27:24, 27:25, 29:2, 38:8, 38:12
**clear** [15] - 9:4, 9:16, 11:4, 13:13, 14:25, 15:7, 15:11, 16:20, 17:10, 17:24, 17:25, 18:6, 18:8, 21:22, 29:15
**clear-cut** [1] - 15:11
**cleared** [1] - 29:9
**clearer** [1] - 15:1
**clearly** [4] - 17:4, 19:2, 21:9, 31:8
**CLERK** [1] - 3:3
**client** [2] - 30:18, 32:19
**client's** [1] - 32:19
**clients** [1] - 3:25
**clock** [1] - 38:9
**close** [1] - 29:14
**closes** [1] - 31:2
**cognizable** [1] - 21:4
**Colin** [2] - 2:1, 3:11
**collapse** [1] - 25:22
**COLUMBIA** [1] - 1:1
**coming** [1] - 16:22
**commensurate** [1] - 8:14
**commit** [1] - 25:1
**community** [5] - 9:15, 11:3, 13:15, 17:18, 30:23

**comparing** [1] - 31:17
**compelling** [1] - 20:14
**compellingly** [1] - 17:4
**competing** [1] - 37:19
**complaining** [2] - 5:8, 31:20
**complaint** [6] - 7:21, 15:9, 24:15, 25:25, 29:24, 30:3
**completely** [1] - 20:18
**compliance** [4] - 6:17, 8:14, 35:4, 36:22
**complied** [7] - 6:21, 8:11, 8:22, 11:17, 14:11, 17:13, 18:4
**comply** [10] - 15:2, 15:7, 21:2, 21:15, 22:1, 22:3, 22:6, 26:9, 28:17, 35:1
**complying** [11] - 5:3, 8:12, 14:10, 15:12, 18:7, 21:12, 30:9, 34:24, 35:15, 36:10
**computer** [1] - 2:11
**computer-aided** [1] - 2:11
**concede** [1] - 34:25
**concern** [1] - 17:16
**concerning** [1] - 8:2
**conclusion** [1] - 18:25
**conclusively** [1] - 12:23
**condition** [1] - 16:18
**confer** [3] - 37:12, 38:6, 38:11
**confined** [1] - 20:6
**Congress** [7] - 10:11, 10:18, 20:21, 21:6, 21:8, 21:17, 35:1
**congressional** [3] - 14:25, 17:21, 18:8
**conjecture** [1] - 25:18
**consequence** [1] - 22:4
**consider** [8] - 10:25, 12:22, 23:12, 24:16, 24:21, 27:5, 27:16, 37:16
**considered** [2] - 23:19, 24:3
**considering** [1] -

30:22
**considers** [2] - 12:24, 27:16
**consistent** [3] - 9:4, 10:9, 18:8
**constitute** [1] - 19:7
**constitutes** [2] - 12:9, 19:2
**Constitution** [1] - 2:8
**constructive** [1] - 20:7
**contact** [1] - 26:7
**contacted** [1] - 36:17
**contain** [3] - 12:6, 12:7, 12:8
**contend** [1] - 11:21
**continue** [1] - 18:12
**continued** [1] - 1:23
**continues** [1] - 5:9
**continuum** [1] - 11:9
**CONTRERAS** [1] - 1:10
**conversation** [1] - 8:3
**conversations** [1] - 26:12
**convincing** [1] - 21:22
**copy** [3] - 8:25, 23:2, 30:12
**correct** [1] - 39:4
**correctly** [1] - 14:16
**correspondence** [1] - 30:16
**Counsel** [1] - 3:6
**counsel** [12] - 5:18, 8:3, 12:19, 24:19, 24:25, 25:13, 29:23, 31:1, 33:12, 34:9, 35:5, 36:11
**counsel's** [1] - 33:20
**counseling** [1] - 10:4
**country** [1] - 13:8
**couple** [3] - 3:18, 23:14, 29:15
**course** [3] - 5:21, 12:2, 37:22
**courses** [1] - 7:12
**court** [9] - 13:6, 14:4, 31:2, 31:16, 32:4, 33:3, 33:23, 36:2
**Court** [23] - 2:7, 4:11, 5:16, 5:17, 14:6, 17:18, 18:3, 18:6, 18:9, 21:7, 23:2, 24:11, 24:21, 25:2, 25:22, 26:2, 26:4, 28:8, 31:21, 33:4, 34:10, 35:16, 36:19
**COURT** [37] - 1:1,

3:10, 3:13, 3:20, 3:25, 4:6, 6:7, 6:22, 7:20, 11:16, 11:24, 14:13, 14:15, 22:11, 22:13, 22:18, 23:4, 23:23, 26:15, 27:1, 29:4, 29:6, 29:17, 30:4, 30:13, 32:5, 32:22, 34:3, 36:25, 37:22, 37:25, 38:2, 38:5, 38:11, 38:17, 38:20, 39:1
**Court's** [4] - 5:14, 22:20, 25:5, 34:17
**Courthouse** [1] - 2:7
**criminal** [9] - 9:14, 13:17, 16:16, 35:22, 35:23
**criminals** [1] - 9:11
**critical** [2] - 9:8, 10:8
**cross** [1] - 9:7
**CRR** [1] - 2:7
**curly** [1] - 36:3
**custody** [19] - 7:7, 7:11, 8:11, 8:21, 9:17, 10:8, 13:15, 17:14, 19:13, 19:18, 27:20, 30:18, 30:20, 31:7, 31:24, 33:3, 34:17, 34:20
**CUSTOM** [1] - 1:7
**Custom** [1] - 30:15
**Customs** [1] - 3:5
**cut** [2] - 15:11, 19:12

**D**

**D.C** [5] - 1:6, 1:18, 2:4, 28:9, 31:2
**damages** [1] - 18:23
**danger** [10] - 9:15, 11:3, 13:14, 17:17, 27:16, 27:17, 30:23
**date** [4] - 23:8, 24:15, 37:23, 38:10
**DATE** [1] - 39:9
**dated** [2] - 23:5, 31:11
**dates** [1] - 29:20
**dating** [1] - 10:5
**days** [8] - 5:22, 5:25, 23:14, 25:24, 26:4, 26:5, 37:15, 37:16
**DC** [1] - 2:8
**deal** [3] - 4:11, 13:1, 38:12
**dealing** [2] - 6:16, 10:13
**dealt** [1] - 26:15
**decide** [2] - 28:9,

37:20
**decided** [1] - 23:10
**decidedly** [1] - 17:7
**decides** [1] - 31:23
**decision** [3] - 11:25, 14:17, 27:6
**declaration** [1] - 23:21
**declaratory** [1] - 18:3
**Defendant** [1] - 1:8
**Defendants** [1] - 2:1
**defendants** [2] - 3:12, 6:13
**defined** [1] - 8:20
**delay** [2] - 4:7, 4:18
**demonstrate** [1] - 25:14
**denial** [1] - 27:9
**denied** [2] - 24:3, 29:2
**deny** [3] - 23:10, 23:19, 37:1
**Department** [3] - 3:12, 7:9, 26:7
**DEPARTMENT** [1] - 2:2
**depressed** [1] - 20:9
**deprived** [1] - 18:23
**DEPUTY** [1] - 3:3
**described** [1] - 20:7
**describes** [1] - 19:15
**detail** [1] - 19:21
**detailed** [1] - 19:10
**details** [1] - 16:6
**detained** [1] - 4:24
**detainees** [1] - 4:12
**detains** [1] - 9:7
**detention** [16] - 7:10, 7:19, 10:17, 11:8, 14:9, 15:19, 17:15, 18:14, 18:20, 19:7, 19:9, 19:22, 31:4, 33:16, 34:1, 36:24
**determination** [25] - 11:6, 13:6, 13:24, 14:1, 15:10, 17:19, 17:20, 18:14, 20:23, 24:16, 24:22, 24:25, 30:21, 31:5, 31:12, 31:22, 31:25, 33:20, 35:2, 35:11, 35:20, 36:5
**determinations** [2] - 22:24, 25:3
**determine** [3] - 14:16, 17:19, 27:18
**determined** [1] - 27:11
**determines** [1] - 35:13

**developed** [1] - 19:5
**diagnosed** [2] - 7:13, 19:23
**differ** [1] - 6:9
**difference** [1] - 17:21
**different** [7] - 14:13, 27:1, 31:18, 32:3, 33:9
**diligence** [1] - 36:20
**directed** [2] - 21:7, 21:17
**directive** [1] - 14:25
**directives** [1] - 15:8
**disagree** [1] - 15:16
**discern** [1] - 5:2
**discretion** [2] - 15:14, 30:17, 30:24, 31:15, 35:18, 36:9, 36:14
**dismiss** [1] - 28:15
**dispute** [2] - 20:24, 35:21
**disputed** [1] - 13:22
**distance** [1] - 19:15
**District** [1] - 28:8
**DISTRICT** [3] - 1:1, 1:1, 1:11
**district** [1] - 28:8
**documentation** [7] - 14:2, 15:6, 16:23, 16:24, 23:21, 25:14, 28:25
**documented** [3] - 16:21, 27:6, 35:23
**documents** [3] - 22:21, 29:9, 29:13
**doggone** [1] - 20:9
**done** [2] - 24:2, 30:3
**doubt** [1] - 25:2
**draconian** [2] - 32:16
**dress** [1] - 36:2
**droves** [1] - 19:10
**due** [2] - 5:21, 36:20
**duty** [1] - 24:2

**E**

**E.M** [1] - 1:19
**earliest** [2] - 33:14, 33:23
**early** [2] - 4:2, 31:22
**easily** [1] - 25:19
**education** [1] - 20:3
**educational** [1] - 20:1
**effect** [4] - 12:5, 21:13, 21:14, 21:24
**effects** [2] - 19:6, 19:9
**efficient** [1] - 29:3

**either** [2] - 17:14, 31:4
**elegant** [1] - 3:15
**eligible** [3] - 11:8, 25:7, 27:22
**eliminate** [2] - 31:20, 33:11
**Elizabeth** [1] - 2:1
**ELLIS** [3] - 1:14, 1:16
**emergency** [2] - 4:6, 17:8
**emphasize** [1] - 10:23
**enact** [1] - 12:3
**enacted** [1] - 29:10
**enacts** [1] - 36:9
**end** [1] - 37:1
**enforce** [1] - 31:21
**ENFORCEMENT** [1] - 1:7
**Enforcement** [2] - 3:5, 30:15
**English** [1] - 20:3
**enjoin** [1] - 21:12
**ensure** [1] - 35:3
**enter** [2] - 5:17, 28:17
**entered** [1] - 6:15
**entire** [1] - 20:10
**entitle** [1] - 35:25
**entitled** [4] - 6:14, 9:6, 10:7, 39:5
**equitable** [2] - 37:2, 37:10
**escape** [1] - 16:11
**especially** [1] - 4:7
**Esq** [6] - 1:13, 1:16, 1:19, 2:1, 2:1, 2:2
**essentially** [2] - 37:5
**et** [2] - 1:3, 3:4
**evaluation** [1] - 7:14
**evidence** [9] - 8:6, 14:10, 15:20, 24:3, 24:6, 25:17, 26:19, 26:20, 37:7
**examination** [1] - 13:23
**example** [1] - 22:22
**examples** [1] - 25:19
**excess** [1] - 32:17
**excused** [1] - 38:21
**exercise** [4] - 15:14, 31:15, 35:18, 37:2
**exercising** [1] - 36:14
**exhausted** [1] - 25:10
**Exhibit** [1] - 30:19
**exist** [2] - 20:13,

29:13
**existed** [1] - 10:18
**expect** [2] - 12:9, 20:9
**explained** [1] - 16:12
**extended** [1] - 10:18
**extent** [1] - 35:14

**F**

**face** [1] - 30:8
**facility** [2] - 10:17, 19:22
**fact** [8] - 5:10, 15:9, 17:20, 18:6, 18:21, 19:11, 27:7, 35:9
**factors** [5] - 12:23, 13:23, 13:24, 14:11, 17:7
**facts** [9] - 8:1, 11:22, 14:19, 15:22, 16:21, 17:13, 17:16, 17:24, 35:20
**factual** [3] - 13:10, 17:11, 26:18
**factually** [1] - 32:5
**failed** [2] - 24:16, 24:21
**failure** [2] - 18:5, 22:2
**fair** [1] - 4:18
**fairly** [2] - 19:5, 21:21
**faith** [3] - 18:8, 20:22, 35:17
**fall** [2] - 13:7, 16:5
**family** [9] - 9:18, 9:22, 12:21, 16:8, 19:12, 19:17, 31:14, 32:2, 32:11
**far** [2] - 24:4, 32:17
**fashion** [1] - 29:3
**fast** [1] - 10:11
**faster** [2] - 23:24, 26:3
**favor** [2] - 17:7, 20:19
**favorable** [1] - 14:4
**February** [4] - 15:23, 23:17, 26:22, 27:10
**Federal** [1] - 12:5
**federal** [2] - 7:7, 9:3
**female** [2] - 4:5, 7:12
**fess** [1] - 14:22
**few** [1] - 6:25
**field** [2] - 26:8, 29:11, 35:3
**Field** [1] - 30:16
**figure** [1] - 28:19
**file** [5] - 5:24, 26:5,

28:14, 33:6, 34:4
**filed** [4] - 23:11, 24:17, 34:7, 34:14
**files** [1] - 29:24
**final** [2] - 6:14, 28:13
**finally** [1] - 21:8
**financial** [1] - 33:10
**findings** [2] - 13:10, 27:7
**firm** [1] - 4:9
**first** [12] - 3:15, 10:22, 11:16, 12:11, 17:9, 21:19, 22:17, 27:8, 30:7, 30:14, 31:22, 33:11
**fix** [1] - 14:24
**flee** [1] - 35:24
**flight** [13] - 11:3, 12:24, 13:13, 17:17, 27:11, 27:17, 27:19, 30:22, 31:25, 32:1, 35:11, 35:12, 35:13
**flip** [1] - 5:19
**Flores** [1] - 9:2
**focus** [1] - 15:22
**FOIA** [1] - 29:25
**folks** [6] - 4:8, 4:11, 4:15, 8:6, 9:21, 13:1
**followed** [2] - 11:14, 19:1
**following** [1] - 36:15
**FOR** [1] - 1:1
**foreclose** [1] - 15:17
**foregoing** [1] - 39:4
**foreshadow** [1] - 11:20
**forget** [1] - 7:21
**form** [6] - 7:11, 18:21, 27:6, 27:15, 30:17, 31:7
**format** [1] - 27:15
**former** [1] - 17:22
**forth** [4] - 5:19, 14:12, 16:25, 20:4
**forward** [2] - 3:6, 10:11
**four** [4] - 17:3, 33:15, 33:24, 34:3
**frame** [1] - 7:3
**framework** [1] - 33:10
**Franklin** [2] - 1:20, 2:3
**frankly** [2] - 4:18, 25:25
**fraud** [1] - 25:2
**freedom** [3] - 18:18, 18:23, 25:9
**friend** [8] - 9:18, 9:22, 12:21, 31:14,

32:3, 32:11, 32:19
**friends** [1] - 19:12
**front** [2] - 8:24, 24:17
**fulfilling** [1] - 12:3
**full** [1] - 24:20
**fully** [2] - 18:7, 20:22
**fulsome** [1] - 26:4
**fundamental** [1] -
18:17
**fundamentally** [1] -
35:6
**futile** [1] - 34:12

**G**

**Garcia** [2] - 3:4,
12:12
**GARCIA** [1] - 1:3
**gather** [6] - 3:20,
6:20, 22:21, 24:5,
24:9, 29:8
**generally** [1] - 25:24
**ginned** [1] - 25:1
**given** [2] - 23:1, 27:9
**Goettel** [4] - 1:19,
4:10, 8:7, 33:12
**governing** [2] -
20:21, 21:2
**government** [12] -
3:16, 13:25, 20:20,
21:1, 21:5, 22:5,
25:24, 27:1, 28:11,
28:21, 37:10, 37:15
**grant** [1] - 14:21
**granted** [5] - 4:16,
13:1, 31:19, 32:20,
33:14
**great** [1] - 38:12
**ground** [1] - 17:13
**group** [5] - 4:11,
11:12, 19:13, 31:6,
34:23
**guardian** [1] - 9:18
**Guatemala** [1] - 13:8
**guess** [6] - 5:5, 6:25,
11:21, 13:24, 14:20,
21:18
**guidance** [2] - 29:10,
29:18
**guy** [1] - 30:24
**guys** [2] - 33:19,
38:6

**H**

**half** [1] - 16:10
**hammer** [1] - 37:18
**hand** [1] - 8:24
**hands** [1] - 35:2
**happy** [5] - 7:11,

8:24, 9:21, 10:3, 16:3
**hardened** [1] - 9:11
**hardships** [1] - 17:6
**harm** [19] - 5:8, 5:11,
16:19, 18:11, 18:13,
18:20, 18:21, 19:2,
19:7, 19:25, 20:18,
21:4, 25:6, 28:5,
31:20, 33:11, 33:21
**harmed** [1] - 21:6
**harms** [2] - 20:12,
21:3
**headquarters** [2] -
24:9, 29:10
**Health** [1] - 7:9
**hear** [3] - 3:14, 30:4,
35:21
**heard** [2] - 34:15,
35:5
**hearing** [11] - 5:21,
6:2, 25:7, 25:8, 25:11,
27:21, 30:5, 32:7,
32:10, 33:15, 38:18
**HEARING** [1] - 1:10
**hearings** [1] - 28:2
**hearsay** [1] - 26:14
**helpful** [1] - 7:2
**Hernandez** [3] -
9:22, 9:23, 15:24
**herring** [1] - 31:17
**highlight** [1] - 6:25
**himself** [1] - 13:18
**hint** [1] - 16:16
**history** [4] - 10:5,
13:17, 16:16, 35:23
**hog** [1] - 36:3
**home** [3] - 11:12,
13:7, 19:14
**Homeland** [1] - 27:4
**Honor** [25] - 3:8,
3:11, 3:23, 5:5, 5:22,
6:15, 7:1, 7:25, 14:3,
15:13, 17:2, 22:10,
22:12, 23:3, 23:11,
23:25, 24:6, 24:18,
26:19, 28:12, 29:5,
36:12, 37:21, 38:7,
38:18
**Honor's** [1] - 6:1
**HONORABLE** [1] -
1:10
**hope** [3] - 6:23,
20:24, 21:25
**horrific** [1] - 16:7
**Human** [1] - 7:9
**hypothetical** [1] -
8:12

**I**

**ICE** [50] - 4:1, 5:2,
7:18, 7:22, 8:11, 8:12,
8:21, 8:22, 9:7, 10:21,
11:17, 12:18, 12:19,
14:6, 15:24, 17:19,
18:6, 19:9, 23:12,
23:18, 24:2, 24:4,
24:6, 24:9, 24:15,
24:21, 24:22, 25:18,
26:7, 26:12, 26:15,
27:5, 27:11, 27:15,
29:7, 29:24, 29:25,
30:1, 30:15, 30:20,
31:22, 32:4, 34:1,
35:1, 35:3, 35:13,
36:8
**ICE's** [1] - 23:1
**identified** [1] - 4:20
**idling** [1] - 20:5
**IJ** [1] - 28:10
**illegal** [2] - 18:20,
19:7
**Illinois** [2] - 1:15,
1:21
**immediately** [2] -
7:15, 7:18
**immigrant** [7] - 9:7,
10:19, 12:16, 12:25,
13:11, 31:23
**IMMIGRANT** [1] -
1:19
**Immigrant** [1] - 4:9
**immigrants** [1] -
16:1
**immigration** [14] -
7:7, 9:3, 23:18, 25:8,
27:21, 28:3, 28:7,
31:16, 32:4, 32:10,
33:2, 33:23
**Immigration** [3] -
3:4, 10:12, 30:15
**IMMIGRATION** [1] -
1:6
**implement** [1] -
12:10
**implementing** [2] -
12:6, 27:13
**implements** [2] -
29:7, 36:10
**important** [1] - 12:10
**improper** [1] - 28:12
**incarcerated** [1] -
10:17
**incenting** [1] - 22:5
**incentive** [1] - 35:24
**include** [1] - 11:10
**includes** [5] - 18:5,
19:8, 19:11, 19:19,

27:25
**including** [1] - 4:8
**indicate** [1] - 7:21
**indicates** [1] - 17:12
**indication** [2] -
13:23, 14:11
**individual** [4] -
11:11, 17:19, 20:14,
31:6
**individually** [1] -
35:17
**individuals** [10] -
8:10, 8:13, 11:7,
15:18, 17:14, 17:25,
19:1, 19:11, 20:17,
34:22
**information** [7] - 5:2,
6:20, 7:25, 17:12,
23:7, 23:14, 29:6
**informed** [2] - 23:15,
26:21
**infrastructure** [1] -
12:9
**initial** [1] - 33:14
**injunction** [15] -
5:21, 6:2, 6:15, 11:15,
21:21, 22:2, 22:4,
22:7, 23:20, 25:16,
25:23, 26:6, 28:16,
28:18, 28:24
**injunctive** [4] - 6:4,
8:16, 18:3, 21:9
**injury** [1] - 18:22
**instead** [1] - 28:7
**instructions** [1] -
36:13
**intend** [1] - 28:14
**intends** [1] - 33:6
**intent** [1] - 18:9
**interest** [3] - 21:10,
21:16
**interests** [3] - 13:9,
18:18, 19:4
**invite** [1] - 6:25
**invoking** [2] - 12:20,
15:24
**involved** [3] - 4:10,
24:7, 37:17
**irreparable** [14] - 5:7,
5:11, 16:19, 18:11,
18:13, 18:20, 19:2,
19:7, 19:25, 25:6,
28:4, 28:5, 31:20
**isolated** [2] - 8:8,
19:12
**issue** [6] - 6:3, 14:15,
15:22, 20:24, 30:5,
38:13
**issues** [4] - 7:3, 8:4,
22:20, 37:17

**J**

**jail** [13] - 9:11, 9:13,
10:16, 13:16, 14:8,
28:5, 30:25, 31:24,
33:19, 33:22, 34:11,
35:14, 36:6
**jails** [1] - 7:10
**January** [8] - 4:4,
12:19, 23:5, 23:8,
23:9, 24:22, 26:21,
31:11
**join** [1] - 8:4
**JUDGE** [1] - 1:11
**judge** [8] - 25:9,
27:21, 28:3, 28:7,
28:8, 32:12, 32:15
**judgment** [2] - 28:15,
29:1
**judicial** [1] - 18:2
**jurisdiction** [5] -
14:15, 15:15, 22:20,
25:5, 28:13
**jurisdictional** [1] -
25:10
**jurisdictions** [2] -
33:17, 33:24
**Justice** [3] - 3:12,
4:9, 26:6
**JUSTICE** [2] - 1:19,
2:2
**juvenile** [2] - 12:25,
13:11

**K**

**KANESHIRO** [2] -
2:7, 39:9
**Kaneshiro** [2] - 39:3,
39:8
**KANESHIRO-
MILLER** [2] - 2:7, 39:9
**Kaneshiro-Miller** [2]
- 39:3, 39:8
**Kate** [2] - 4:10, 32:25
**Katherine** [1] - 1:19
**keep** [2] - 14:8, 35:14
**kind** [14] - 8:16, 9:1,
12:9, 16:16, 17:5,
20:22, 20:24, 31:24,
32:16, 35:2, 36:4
**KIRKLAND** [2] -
1:14, 1:16
**KISOR** [17] - 3:11,
22:12, 22:14, 22:19,
23:5, 23:25, 26:18,
27:3, 29:5, 29:8,
29:19, 37:21, 37:23,
38:1, 38:4, 38:7,
38:16

**Kisor** [2] - 2:1, 3:11
**knowledge** [1] - 29:17
**known** [1] - 26:24
**knows** [2] - 17:2, 24:7

## L

**lack** [3] - 19:19, 20:1, 31:8
**language** [2] - 10:23, 20:3
**large** [1] - 34:23
**largely** [3] - 6:16, 17:10, 20:6
**larger** [1] - 22:19
**LaSalle** [2] - 1:14, 1:20
**last** [3] - 13:6, 16:5, 29:18
**late** [1] - 4:1
**latter** [1] - 17:24
**law** [25] - 3:23, 7:7, 9:3, 9:15, 10:20, 18:5, 18:19, 18:20, 19:4, 19:5, 20:13, 20:20, 20:25, 21:1, 21:3, 21:10, 21:13, 21:15, 22:1, 22:3, 22:6, 28:17, 36:15
**lawsuit** [1] - 36:16
**lawyer** [11] - 13:21, 15:24, 16:4, 16:12, 22:24, 24:23, 24:24, 32:10, 32:18, 33:1, 34:15
**learned** [1] - 34:8
**least** [10] - 7:23, 9:2, 9:12, 10:5, 10:9, 11:1, 27:19, 29:25, 31:13, 32:9
**leave** [2] - 22:8, 35:3
**legal** [6] - 6:12, 6:17, 13:2, 16:15, 34:16, 36:15
**legally** [5] - 13:4, 13:14, 21:4, 21:21, 35:25
**legitimacy** [1] - 5:13
**less** [6] - 7:11, 9:17, 12:13, 14:8, 18:15, 18:16
**letter** [13] - 10:1, 14:6, 16:2, 22:25, 23:6, 23:9, 23:16, 23:19, 25:1, 27:9, 30:7, 30:10, 31:10
**liberty** [2] - 18:18, 19:4

**life** [1] - 20:11
**likelihood** [2] - 17:9, 37:9
**likely** [1] - 18:1
**likewise** [1] - 15:24
**limited** [1] - 34:23
**lined** [2] - 9:20, 15:25
**lipstick** [1] - 36:4
**litigate** [1] - 29:2
**litigation** [1] - 25:22
**lives** [2] - 9:23
**LLP** [1] - 1:16
**local** [5] - 5:23, 12:19, 32:10, 34:24, 38:7
**locally** [1] - 16:1
**located** [1] - 19:18
**locked** [1] - 10:17
**long-distance** [1] - 19:15
**look** [4] - 9:12, 14:21, 30:19, 31:9
**looking** [1] - 11:6
**lopsided** [1] - 20:18

## M

**magically** [2] - 10:15, 10:16
**mailed** [1] - 24:23
**male** [1] - 4:4
**mandate** [2] - 12:3, 35:4
**mandatory** [3] - 10:23, 27:25, 28:1
**March** [3] - 1:7, 24:17, 39:8
**marshal** [1] - 16:4
**marshalled** [1] - 24:4
**marshalling** [1] - 14:7
**master** [1] - 33:15
**materials** [3] - 24:10, 26:8, 26:10
**matter** [7] - 15:13, 18:20, 20:13, 21:3, 21:5, 32:17, 39:5
**mean** [2] - 10:15, 12:7
**meaning** [1] - 18:5
**means** [2] - 11:6, 20:8
**mechanism** [2] - 7:22, 28:6
**medical** [1] - 19:19
**meet** [3] - 37:12, 38:6, 38:11
**meeting** [2] - 23:17, 27:10, 38:14

**memorialized** [1] - 11:25
**mental** [1] - 19:9
**mention** [1] - 11:23
**mentioned** [1] - 20:2
**meritorious** [2] - 13:12, 16:6
**merits** [8] - 6:10, 6:13, 17:9, 25:22, 29:4, 31:5, 37:5, 37:9
**met** [1] - 37:8
**middle** [1] - 15:4
**might** [1] - 9:13
**MILLER** [2] - 2:7, 39:9
**Miller** [2] - 39:3, 39:8
**minds** [2] - 15:16, 38:14
**minimum** [1] - 32:13
**minute** [3] - 5:12, 8:5, 9:22
**missing** [1] - 14:2
**misunderstanding** [1] - 31:8
**moment** [1] - 24:8
**Monday** [1] - 23:22
**money** [4] - 18:22, 19:14, 33:7, 34:12
**monitor** [1] - 28:19
**months** [12] - 4:25, 5:1, 13:5, 13:15, 16:10, 17:15, 19:19, 29:18, 29:21, 33:17, 33:18, 33:25
**moot** [3] - 23:10, 23:11, 25:19
**morning** [2] - 7:16, 33:1
**most** [3] - 7:1, 9:9, 18:21
**mother** [1] - 19:16
**MOTION** [1] - 1:10
**motion** [7] - 3:14, 22:14, 27:24, 28:14, 29:1, 30:19, 38:9
**mouthful** [1] - 12:13
**move** [2] - 15:10, 26:3
**moved** [1] - 4:20
**MR** [35] - 3:8, 3:11, 3:19, 3:22, 4:3, 4:8, 6:11, 6:23, 7:25, 11:19, 12:1, 14:14, 14:18, 22:12, 22:14, 22:19, 23:5, 23:25, 26:18, 27:3, 29:5, 29:8, 29:19, 30:6, 30:14, 32:8, 32:24, 34:7, 37:21, 37:23, 38:1, 38:4, 38:7,

38:16, 38:18

## N

**name** [2] - 3:8, 15:23
**named** [3] - 5:18, 6:5, 6:8
**National** [1] - 4:8
**NATIONAL** [1] - 1:19
**Nationality** [1] - 10:12
**nationwide** [7] - 5:16, 22:15, 25:18, 26:6, 26:8, 26:25, 28:16
**near** [1] - 7:6
**necessarily** [1] - 10:16
**necessary** [1] - 22:4
**need** [7] - 8:17, 11:10, 24:11, 26:2, 28:10, 38:17
**needs** [1] - 22:6
**negative** [3] - 19:8, 22:3, 22:7
**neglected** [1] - 13:7
**New** [1] - 33:17
**new** [3] - 10:12, 19:3
**next** [4] - 1:23, 6:3, 23:24, 35:10
**nice** [1] - 32:21
**Nickerson** [1] - 2:5
**non** [2] - 8:14, 28:1
**non-compliance** [1] - 8:14
**non-mandatory** [1] - 28:1
**none** [1] - 30:2
**North** [1] - 1:14
**nothing** [2] - 20:6, 20:10
**number** [1] - 37:6
**nuns** [2] - 9:25, 16:1
**NW** [2] - 1:17, 2:8

## O

**obligation** [1] - 12:17
**obtain** [2] - 23:13, 23:20
**obviously** [3] - 6:13, 27:25, 30:6
**occurred** [2] - 5:11, 18:24
**occurring** [2] - 5:8, 5:9
**occurs** [1] - 33:15
**OF** [4] - 1:1, 1:10, 2:2, 39:1
**office** [2] - 34:24,

35:13
**Office** [3] - 7:8, 7:17, 30:16
**offices** [4] - 8:13, 26:8, 29:11, 35:3
**OFFICIAL** [1] - 39:1
**often** [1] - 22:1
**oftentimes** [1] - 9:18
**oinks** [1] - 36:3
**once** [1] - 4:20
**one** [22] - 4:1, 4:2, 4:7, 6:11, 12:9, 15:9, 17:4, 17:6, 17:14, 18:21, 20:20, 25:8, 25:9, 25:13, 26:20, 27:9, 27:14, 27:16, 27:23, 30:22, 32:15, 36:24
**ones** [1] - 12:14
**ongoing** [1] - 4:23
**onset** [1] - 33:16
**operative** [1] - 10:22
**opportunities** [1] - 20:1
**opportunity** [1] - 6:1
**opposing** [1] - 29:23
**opposition** [2] - 26:5, 28:24
**oranges** [2] - 31:17, 32:21
**order** [2] - 18:3, 28:11
**ordered** [2] - 21:7, 21:8
**ordering** [1] - 28:11
**orderly** [1] - 29:3
**organizational** [1] - 11:11
**ORR** [5] - 7:8, 7:16, 10:20, 19:13, 20:2
**own** [2] - 7:5, 19:8

## P

**p.m** [2] - 3:2, 38:22
**P.O** [1] - 2:3
**page** [3] - 1:23, 22:15, 24:15
**paper** [6] - 23:13, 24:17, 26:2, 35:8, 35:10, 35:19
**papers** [2] - 3:15, 7:2
**paragraph** [2] - 24:15, 30:14
**Parascandola** [1] - 2:2
**parent** [2] - 7:5, 9:17
**part** [3] - 7:8, 27:3, 33:3
**participate** [1] - 11:8

**particular** [6] - 27:6, 27:7, 30:5, 31:6, 31:7, 32:15
**particularized** [1] - 27:15
**parties** [1] - 37:12
**pass** [1] - 23:3
**passed** [1] - 35:1
**PATRICIA** [2] - 2:7, 39:9
**Patricia** [1] - 39:3, 39:8
**Patton** [2] - 1:13, 3:9
**PATTON** [18] - 3:8, 3:19, 3:22, 4:3, 4:8, 6:11, 6:23, 7:25, 11:19, 12:1, 14:14, 14:18, 30:6, 30:14, 32:8, 32:24, 34:7, 38:18
**pending** [6] - 12:25, 13:4, 13:12, 14:3, 16:5, 35:24
**Pennsylvania** [3] - 9:24, 12:21, 31:14
**people** [17] - 4:24, 22:17, 22:23, 24:2, 24:9, 25:7, 25:12, 26:21, 27:22, 28:1, 31:3, 35:22, 36:14, 36:20, 36:23
**Perez** [1] - 1:16
**perhaps** [3] - 24:23, 24:24, 26:5
**period** [4] - 4:14, 5:10, 16:8, 33:25
**periods** [1] - 4:25
**permanent** [2] - 16:25, 34:16
**person** [7] - 26:22, 27:8, 27:11, 27:20, 30:10, 31:12
**person's** [3] - 23:17, 27:10, 27:17
**personal** [2] - 16:20, 18:18
**petition** [3] - 4:16, 12:25, 34:14
**Phoenix** [1] - 30:16
**phone** [1] - 19:15
**physical** [1] - 19:9
**PI** [5] - 22:15, 34:4, 37:14, 37:25, 38:1
**piece** [3] - 23:13, 35:9, 35:19
**pieces** [1] - 26:2
**place** [2] - 16:18, 31:23
**placed** [2] - 10:16, 36:23

**placement** [3] - 7:23, 11:1, 11:10
**places** [1] - 9:20
**placing** [1] - 9:10
**plaintiff** [10] - 4:4, 4:14, 7:13, 15:21, 20:25, 21:3, 23:16, 32:23, 34:12, 37:8
**Plaintiff** [1] - 20:7
**Plaintiffs** [2] - 1:4, 1:13
**plaintiffs** [32] - 3:9, 4:15, 4:20, 4:21, 5:18, 6:5, 6:8, 8:2, 9:20, 11:13, 11:23, 12:11, 18:11, 18:13, 20:14, 20:19, 22:25, 23:2, 24:4, 24:13, 24:14, 24:18, 25:17, 26:23, 27:2, 32:6, 34:5, 36:17, 37:2, 37:15, 37:16, 38:5
**plaintiffs'** [5] - 3:14, 22:14, 24:19, 24:24, 28:20
**pleading** [1] - 24:20
**pleadings** [1] - 7:21
**pleasure** [1] - 38:20
**podium** [1] - 3:6
**point** [7] - 5:5, 24:1, 27:23, 32:9, 32:20, 33:8, 37:9
**points** [2] - 25:5, 28:13
**policies** [2] - 22:22, 24:10
**policy** [2] - 29:24, 30:1
**Pollyannish** [1] - 37:13
**population** [1] - 10:7
**Posada** [6] - 9:25, 10:2, 16:2, 16:24, 19:23, 32:2
**position** [1] - 11:17
**possibility** [1] - 18:25
**posttraumatic** [1] - 7:13
**potentially** [4] - 9:11, 18:19, 19:7, 34:6
**powers** [1] - 37:2
**practice** [2] - 8:6, 36:21
**predisposition** [1] - 35:17
**prejudging** [1] - 18:24
**preliminary** [14] - 3:18, 5:21, 6:2, 6:4,

11:15, 18:12, 23:15, 23:20, 25:15, 25:23, 26:5, 26:10, 26:11, 28:24
**premised** [1] - 13:5
**Present** [1] - 2:5
**presented** [1] - 37:6
**presenting** [1] - 6:12
**preservation** [1] - 37:4
**preserve** [1] - 3:21
**presumptive** [1] - 11:5
**presumptively** [1] - 9:9
**pretend** [1] - 36:4
**pretty** [1] - 20:9
**prevailing** [1] - 37:9
**preview** [1] - 15:4
**pro** [1] - 25:13
**problem** [7] - 4:14, 5:12, 13:16, 14:24, 16:17, 25:11, 26:13
**procedural** [1] - 6:14
**procedures** [2] - 12:4, 24:10
**proceeding** [1] - 33:4
**Proceedings** [2] - 2:10, 38:22
**proceedings** [1] - 39:5
**produced** [1] - 2:11
**proffers** [1] - 37:7
**program** [1] - 22:1
**programs** [2] - 11:9, 12:3
**prolonged** [1] - 4:25
**promptly** [2] - 5:21, 38:19
**proof** [2] - 22:21, 28:21
**proposals** [1] - 37:19
**propose** [1] - 25:21
**prosecutorial** [3] - 30:17, 30:24, 31:15
**protect** [2] - 16:9, 16:10
**protections** [1] - 10:18
**protocol** [1] - 36:12
**protocols** [1] - 12:4
**prove** [1] - 24:6
**provide** [5] - 10:3, 16:3, 25:15, 26:3, 36:12
**provided** [2] - 14:2, 14:6
**Providencia** [2] - 10:1, 16:2

**provision** [4] - 10:12, 10:13, 12:10, 12:20
**provisions** [2] - 10:22, 10:24
**psychiatric** [2] - 7:14, 19:20
**PTSD** [3] - 10:4, 19:21, 19:23
**public** [4] - 12:8, 21:10, 21:16
**publicity** [1] - 36:17
**purely** [1] - 8:12
**pursuant** [1] - 7:6
**put** [5] - 7:9, 7:10, 26:25, 33:19, 36:4
**puts** [1] - 7:18

## Q

**qualify** [1] - 31:13
**questions** [3] - 3:18, 7:1, 17:23
**quickly** [1] - 4:21
**quite** [4] - 4:18, 7:11, 18:6, 25:25
**quo** [3] - 3:21, 37:3, 37:4
**quote** [3] - 10:25, 11:1, 11:7
**quote/unquote** [1] - 10:2

## R

**Ramirez** [3] - 3:4, 9:23, 12:12
**RAMIREZ** [1] - 1:3
**rather** [2] - 9:9, 14:8
**reach** [2] - 24:8, 38:14
**read** [3] - 3:15, 7:2, 22:14
**real** [2] - 11:5, 16:13
**realization** [1] - 4:12
**really** [6] - 3:22, 10:22, 21:19, 21:24, 26:23, 33:22
**reason** [2] - 15:3, 26:23
**reasonable** [3] - 14:24, 15:16, 38:14
**reasons** [3] - 13:18, 21:9, 21:18
**receive** [1] - 24:23
**received** [6] - 13:21, 24:24, 26:11, 26:21, 26:22, 30:16
**receiving** [1] - 7:14
**recently** [3] - 19:6, 33:4, 34:17

**recognition** [1] - 10:6
**record** [2] - 3:7, 39:4
**red** [1] - 31:17
**redacted** [1] - 24:11
**Refugee** [2] - 7:8, 7:17
**refuted** [1] - 25:20
**regarding** [3] - 25:5, 25:6
**regardless** [2] - 24:18, 24:25
**Register** [1] - 12:6
**regulation** [1] - 27:13
**regulations** [1] - 12:6
**regulatory** [1] - 11:24
**related** [2] - 22:22, 27:8
**relating** [2] - 22:23, 32:12
**relatively** [1] - 4:25
**releasable** [1] - 18:16
**release** [7] - 14:7, 29:16, 30:17, 30:20, 31:3, 33:2, 33:3
**released** [6] - 4:17, 19:1, 19:23, 28:11, 31:7, 34:17
**relevant** [3] - 9:11, 15:22, 26:2
**relief** [21] - 5:13, 6:4, 6:8, 8:9, 8:13, 8:16, 11:14, 16:25, 17:8, 17:25, 18:3, 18:12, 20:16, 21:9, 21:11, 31:1, 31:19, 34:13, 34:22, 35:25, 37:4
**religious** [1] - 9:25
**remain** [2] - 13:9, 35:25
**remarks** [1] - 11:20
**remedied** [1] - 5:10
**remedy** [1] - 18:9
**remember** [1] - 12:15
**repeat** [1] - 6:24
**repeated** [1] - 16:8
**reply** [1] - 5:25
**reported** [1] - 2:10
**REPORTER** [1] - 39:1
**Reporter** [1] - 2:7
**represent** [2] - 3:9, 7:3
**representation** [1] - 34:9
**representations** [1] -

26:18
**representative** [1] - 20:15
**represented** [1] - 25:13
**request** [16] - 6:1, 12:15, 13:22, 16:23, 22:8, 23:10, 25:7, 25:11, 28:2, 29:25, 30:19, 31:10, 32:10, 32:18, 33:2, 35:7
**requested** [11] - 21:12, 25:8, 25:12, 30:17, 30:18, 30:20, 30:24, 30:25, 32:24, 33:1, 34:13
**requesting** [1] - 6:9
**requests** [2] - 12:16, 35:25
**require** [3] - 26:6, 27:5, 27:12
**required** [8] - 7:17, 13:11, 17:20, 18:14, 21:23, 27:15, 30:21, 34:2
**requirement** [7] - 7:23, 11:18, 11:25, 22:9, 29:7, 32:16, 34:9
**requirements** [11] - 5:4, 6:19, 8:22, 14:5, 16:20, 17:1, 17:3, 17:11, 33:10, 36:15, 36:22
**requires** [9] - 10:20, 10:25, 23:12, 27:2, 27:3, 27:14, 29:12, 30:11, 36:7
**requiring** [3] - 21:14, 29:12, 32:16
**Resettlement** [2] - 7:8, 7:17
**resident** [1] - 13:2
**resolve** [2] - 6:13, 38:17
**respect** [9] - 3:25, 6:8, 22:20, 23:14, 23:16, 24:1, 27:8, 28:13, 32:22
**respectfully** [4] - 5:17, 6:1, 17:3, 30:8
**respond** [4] - 25:24, 28:23, 37:11, 38:8
**responded** [1] - 33:4
**responding** [2] - 31:10, 35:7
**responds** [1] - 30:1
**response** [10] - 5:7, 5:23, 13:21, 13:22, 23:1, 23:20, 25:16,

26:4, 33:21, 37:23
**rest** [2] - 23:15, 31:3
**restraining** [1] - 28:10
**restrictive** [10] - 7:11, 7:23, 9:12, 10:9, 11:1, 14:8, 18:15, 18:17, 27:19, 31:13
**result** [3] - 15:17, 34:16, 36:23
**returned** [1] - 13:8
**reveal** [1] - 26:12
**review** [6] - 17:18, 18:2, 28:3, 28:7, 35:17, 36:13
**reviewed** [2] - 23:7, 24:11
**reviewing** [1] - 15:14
**rights** [1] - 34:14
**rise** [1] - 17:16
**risk** [16] - 11:3, 12:24, 13:13, 17:17, 18:24, 19:2, 27:11, 27:17, 27:19, 30:22, 32:1, 34:1, 35:12, 35:13
**RMR** [1] - 2:7
**Room** [1] - 2:7
**RUDOLPH** [1] - 1:10
**rule** [3] - 5:16, 5:23, 8:18
**Rule** [2] - 25:23, 28:25
**rules** [1] - 38:8
**ruling** [2] - 6:12, 14:4
**run** [2] - 3:17, 9:25
**running** [1] - 38:9
**rush** [2] - 5:7, 38:12
**rushed** [1] - 23:23

---

# S

**sad** [1] - 20:8
**safeguards** [1] - 6:14
**salient** [1] - 12:15
**San** [1] - 9:24
**satisfied** [3] - 14:5, 17:2, 17:4
**satisfy** [1] - 22:9
**scenario** [1] - 33:16
**scenes** [1] - 13:20
**schedule** [1] - 5:22, 37:14, 37:17
**scheduled** [1] - 32:7
**se** [1] - 25:13
**searched** [1] - 12:7
**second** [1] - 18:11
**secondary** [1] - 19:6
**Secretary** [1] - 27:4
**secretary** [1] - 10:25

**Section** [1] - 15:25
**Security** [1] - 27:4
**see** [4] - 8:23, 13:13, 37:13
**seeking** [9] - 8:9, 8:13, 11:14, 17:22, 17:23, 20:16, 31:1, 34:23, 37:5
**segue** [1] - 32:21
**self** [3] - 11:3, 27:17, 30:23
**sent** [4] - 14:6, 22:24, 23:9, 23:16
**sentences** [1] - 10:24
**separately** [3] - 8:15, 8:18, 33:3
**September** [1] - 4:3
**series** [4] - 4:21, 4:22
**Services** [1] - 7:9
**set** [3] - 5:22, 9:1, 14:12
**setting** [8] - 9:12, 10:9, 11:2, 14:8, 15:5, 18:16, 18:17, 27:19
**settled** [2] - 20:25, 21:10
**settlement** [1] - 9:2
**seven** [1] - 5:22
**several** [4] - 13:5, 13:15, 17:15, 33:25
**severe** [1] - 18:21
**shall** [3] - 10:24, 10:25, 11:8
**share** [1] - 23:2
**shelter** [3] - 9:25, 16:1, 19:14
**shorthand** [1] - 2:10
**show** [5] - 24:11, 26:9, 27:18, 35:20, 37:8
**showing** [1] - 21:23
**shows** [4] - 24:21, 26:20, 30:8, 31:8
**side** [1] - 5:19
**sides** [1] - 37:6
**SIJS** [2] - 13:1, 14:3
**similar** [3] - 13:18, 21:9, 36:18
**similarly** [2] - 6:5, 15:18
**simple** [2] - 3:17, 5:3
**simpler** [1] - 14:21
**simplicity** [1] - 3:16
**simply** [1] - 21:6
**sit** [1] - 29:16
**sitting** [1] - 34:13
**situated** [2] - 6:6, 15:18

**situation** [5] - 5:9, 5:14, 8:8, 12:18, 16:20
**situations** [1] - 36:18
**six** [3] - 19:19, 24:22, 29:21
**skills** [1] - 20:3
**sliding** [1] - 20:22
**slightly** [1] - 23:9
**someone** [3] - 9:14, 9:18, 20:10
**sort** [5] - 27:18, 27:23, 28:19, 29:3, 38:14
**sorts** [1] - 26:16
**sought** [1] - 8:19
**sources** [1] - 12:8
**special** [7] - 9:6, 9:8, 10:6, 10:7, 10:8, 12:25, 13:11
**specifically** [1] - 12:20, 21:8, 31:9
**specified** [1] - 5:23
**spend** [1] - 18:13
**sponsor** [1] - 11:11
**St** [1] - 1:20
**staff** [1] - 34:16
**stage** [1] - 9:1
**stake** [2] - 16:13, 18:18
**stamp** [1] - 23:8
**standard** [2] - 22:7, 31:18
**standpoint** [1] - 17:22
**State** [1] - 14:6
**state** [3] - 3:6, 13:6
**statements** [1] - 26:17
**STATES** [3] - 1:1, 1:11, 2:2
**States** [8] - 7:5, 9:19, 13:3, 13:10, 16:11, 16:15, 34:16, 36:1
**Station** [2] - 1:20, 2:3
**statistics** [1] - 7:24
**status** [5] - 3:21, 12:25, 13:12, 37:3, 37:4
**statute** [35] - 5:4, 6:18, 8:15, 8:24, 11:4, 12:16, 12:24, 14:12, 15:8, 15:12, 17:10, 17:21, 17:24, 18:3, 18:7, 19:1, 23:12, 24:2, 24:5, 24:12, 26:10, 27:2, 27:3, 27:12, 29:9, 29:11, 30:9, 30:11, 30:22, 31:21, 33:18, 34:25,

35:1, 35:15, 36:6
**statutes** [3] - 12:14, 20:21, 21:2
**statutorily** [1] - 18:14
**statutory** [9] - 8:22, 11:24, 12:3, 12:10, 12:20, 16:20, 29:7, 33:10, 35:4
**stay** [1] - 16:15
**stenotype** [1] - 2:10
**step** [3] - 3:6, 18:9, 25:4
**Stephen** [1] - 1:13
**steps** [1] - 26:9
**Steve** [1] - 3:9
**still** [4] - 17:14, 17:15, 21:22, 36:3
**stop** [2] - 22:2, 22:3
**stopper** [1] - 27:18
**straightforward** [2] - 5:4, 6:18
**strange** [1] - 16:18
**Street** [1] - 1:17
**stress** [1] - 7:13
**strong** [2] - 35:24
**strongly** [1] - 17:12
**stuff** [1] - 6:24
**subject** [3] - 5:25, 16:7, 33:9
**submit** [4] - 17:3, 30:8, 37:19, 37:20
**submits** [2] - 28:11, 28:21
**submitted** [3] - 14:4, 17:12, 18:19
**subpar** [1] - 19:19
**substantial** [1] - 37:8
**success** [1] - 17:9
**successful** [2] - 6:24, 13:11
**suffer** [1] - 18:12
**suffered** [1] - 18:11
**suffering** [1] - 19:21
**suggest** [1] - 24:13
**suggesting** [1] - 31:2
**Suite** [2] - 1:17, 1:21
**Sulma** [8] - 7:13, 9:24, 15:23, 16:3, 19:21, 20:1, 31:25, 34:12
**Sulma's** [1] - 15:24
**summarily** [1] - 7:18, 36:23
**summary** [2] - 28:15, 29:1
**supervised** [1] - 11:12
**supervision** [2] - 10:21, 11:10

support [1] - 10:3
suppose [1] - 15:16
supposed [2] - 11:5, 33:20
syndrome [1] - 7:14
systematically [1] - 32:16

## T

tail [1] - 36:3
tangential [1] - 27:23
tantamount [1] - 21:14
teenager [1] - 16:18
teenagers [1] - 11:1
temporary [1] - 28:10
terms [3] - 6:17, 35:8, 36:9
testifying [1] - 26:13
Texas [2] - 9:24, 28:9
THE [38] - 1:1, 1:10, 3:3, 3:10, 3:13, 3:20, 3:25, 4:6, 6:7, 6:22, 7:20, 11:16, 11:24, 14:13, 14:15, 22:11, 22:13, 22:18, 23:4, 23:23, 26:15, 27:1, 29:4, 29:6, 29:17, 30:4, 30:13, 32:5, 32:22, 34:3, 36:25, 37:22, 37:25, 38:2, 38:5, 38:11, 38:17, 38:20
themselves [2] - 17:17, 28:6
Theo [1] - 2:5
therefore [2] - 9:6, 32:2
they've [1] - 14:11
thinking [1] - 21:19
third [1] - 20:18
threat [1] - 13:18
three [5] - 5:25, 33:15, 33:18, 33:23, 34:3
Thursday [1] - 1:7
Tia [1] - 1:16
timely [1] - 34:7
timetable [1] - 31:19
today [9] - 4:10, 5:16, 11:14, 13:25, 15:23, 20:16, 29:16, 36:11, 38:17
token [1] - 31:1
tomorrow [1] - 37:20
took [1] - 16:10
totally [2] - 19:11, 32:3

training [1] - 24:10
transcript [1] - 39:4
Transcript [1] - 2:11
TRANSCRIPT [1] - 1:10
transcription [1] - 2:11
transitory [2] - 4:15, 8:17
traumatized [1] - 16:17
treatment [5] - 9:6, 9:8, 10:8, 10:8, 19:24
trial [1] - 23:24
TRO [10] - 4:6, 5:16, 5:17, 5:20, 6:9, 11:14, 17:1, 22:15, 22:16, 37:1
Trout [1] - 1:16
true [2] - 3:24, 25:20
try [3] - 6:23, 36:1, 37:18
trying [4] - 3:20, 3:22, 15:17, 34:15
Tuesday [2] - 35:10, 37:24
turn [3] - 8:21, 10:20, 10:21
turned [4] - 4:1, 7:4, 7:15, 13:17
turns [2] - 7:17, 10:14
two [28] - 5:25, 6:5, 6:8, 7:3, 8:2, 9:20, 10:21, 11:13, 11:23, 12:11, 15:19, 16:10, 17:25, 20:17, 22:17, 22:23, 24:2, 25:4, 25:19, 28:1, 32:6, 37:14, 37:16, 37:18, 38:5, 38:9, 38:13
type [3] - 4:6, 17:20, 22:7
typically [2] - 9:17, 12:1

## U

U.S [5] - 1:6, 2:7, 3:4, 3:12, 30:14
U.S.C [1] - 28:1
unable [2] - 16:8, 16:9
unaccompanied [6] - 7:4, 8:10, 8:20, 9:4, 9:10, 31:23
unambiguous [2] - 6:19, 17:11
unambiguously [1] - 14:12

unaware [1] - 24:12
uncle [1] - 16:7
under [9] - 3:23, 15:15, 17:25, 20:13, 24:2, 25:23, 28:16, 28:25, 38:7
undermine [1] - 5:13
undermines [1] - 32:9
undisputed [1] - 18:1
unequivocally [1] - 26:16
uniquely [1] - 9:5
United [8] - 7:4, 9:19, 13:2, 13:10, 16:11, 16:15, 34:16, 36:1
UNITED [3] - 1:1, 1:11, 2:2
universe [2] - 29:14, 29:21
unlawful [1] - 34:1
unless [2] - 24:25, 36:19
unsupported [1] - 26:19
up [13] - 4:15, 7:24, 8:25, 9:21, 10:17, 14:22, 15:25, 23:3, 25:1, 35:10, 35:19, 36:3, 37:7
urgency [1] - 5:13
useless [1] - 28:18
utilizing [1] - 11:9

## V

vacate [1] - 38:10
vacated [1] - 37:24
valid [1] - 16:13
variety [1] - 20:12
vary [1] - 9:13
verbal [1] - 27:9
verbally [1] - 23:18
versus [1] - 3:4
view [1] - 27:1
violation [3] - 8:14, 22:3, 28:20
vulnerable [4] - 9:5, 10:7, 10:15, 16:17

## W

wait [1] - 5:12
waited [1] - 34:3
waived [1] - 32:7
wants [5] - 13:3, 13:13, 16:14, 27:20
wash [1] - 35:2
Washington [4] -

1:6, 1:18, 2:4, 2:8
weak [1] - 17:5
website [1] - 12:7
week [2] - 6:3, 23:24
weeks [6] - 4:25, 24:22, 33:15, 33:24, 34:3, 38:9
weigh [1] - 17:7
welcome [1] - 10:2
well-being [1] - 10:10
whatsoever [1] - 16:17
whole [1] - 21:10
willing [1] - 12:21
WILMER [1] - 1:3
Wilmer [16] - 3:4, 4:4, 9:22, 12:11, 12:12, 16:12, 19:15, 20:2, 20:7, 22:24, 24:14, 32:1, 32:9, 32:11, 34:7, 34:21
Wilmer's [1] - 12:18
win [2] - 16:14, 17:6
wished [1] - 23:24
withdrew [1] - 32:18
woman [1] - 16:7
word [1] - 31:16
world [1] - 31:3
worth [1] - 35:8
writing [3] - 11:25, 28:24, 37:11
writings [1] - 12:4
written [5] - 12:15, 13:22, 16:23, 23:6, 35:8
wrote [4] - 12:19, 15:24, 23:6, 30:10

## Y

years [2] - 10:6, 10:19
yesterday [1] - 25:1
York [1] - 33:18
young [1] - 16:7