**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| WILMER GARCIA RAMIREZ, SULMA HERNANDEZ ALFARO, on behalf of themselves and others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE); THOMAS HOMAN, Acting Director of ICE; DEPARTMENT OF HOMELAND SECURITY; KIRSTJEN M. NIELSEN, Secretary of Homeland Security,<br><br>Defendants. | Civil Action No. 1:18-cv-00508-RC<br><br>Class Action |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION AS TO NAMED PLAINTIFFS**

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................1

STATUTORY, REGULATORY, AND LEGAL FRAMEWORK ............................................ 5

    A.  The Homeland Security Act of 2002 ........................................................... 5

    B.  Trafficking Victims Protection Reauthorization Act of 2008 ............................................ 5

    C.  U.S. Department of Health and Human Services' Policies ................................. 6

    D.  Title 8 U.S.C. § 1232(c)(2)(B) .................................................................... 7

    E.  Congress Conferred Broad Authority Upon the Secretary of Homeland Security to Carry out Immigration Laws ..................................................................................... 8

FACTUAL BACKGROUND .................................................................................................. 9

STANDARD OF REVIEW ................................................................................................... 11

ARGUMENT ....................................................................................................................... 12

    I.    Plaintiffs claims' are moot ................................................................... 13

    II.    Each Plaintiff fails to state a claim upon which relief can be granted ........................14

    III.    Plaintiffs do not demonstrate a strong likelihood of success on the merits because ICE has issued guidance to its field offices regarding 8 U.S.C. § 1232(c)(2)(B) .............. 16

        A.  After the enactment of the TVPRA, ICE provided, and continues to provide, guidance to the field and training for its employees on how to comply with 8 U.S.C. § 1232 (c)(2)(B) ............................................................................17

        B.  Neither Plaintiff can demonstrate a reviewable final agency in their cases ....18

        C.  Plaintiffs have another adequate remedy available to them............................20

    IV.    Plaintiffs' alleged irreparable harm is nonexistent, and in any event, is insufficient for a preliminary injunction .............................................................................22

    V.    The balance of harms and public interest weigh in favor of the Government ........... 25

CONCLUSION..................................................................................................................... 26

## TABLE OF AUTHORITIES

**Cases**

*Allina Health Servs. v. Sebelius,*
   756 F. Supp. 2d 61 (D.D.C. 2010) ...................................................................... 12

*Am. Bar Ass'n v. Fed. Trade Comm'n,*
   636 F.3d 641, 394 U.S. App. D.C. 344 (D.C. Cir. 2011) ....................................... 13

*Anderson v. Carter,*
   419 U.S. App. D.C. 362, 802 F.3d 4 (2015) .......................................................... 1

*Aref v. Lynch,*
   833 F.3d 242 ......................................................................................................... 13

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .............................................................................................. 14

*Bark v. United States Forest Serv.,*
   37 F.Supp. 3d 41 (D.D.C. 2014) ...................................................................... 19, 20

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .............................................................................................. 14

*Bennett v. Spear,*
   520 U.S. .................................................................................................................. 18

*Blackie's House of Beef, Inc. v. Castillo,*
   659 F.2d 1211 (D.C. Cir. 1981) ............................................................................ 26

*Bonnell v. Lorenzo,*
   241 F.3d 800 (6th Cir. 2001) ................................................................................ 24

*Boutilier v. INS,*
   387 U.S. 118 (1967) ............................................................................................... 9

*Bowen v. Massachusetts,*
   487 U.S. 879 (1988) ......................................................................................... 20, 21

*C.V.*, 901 F. Supp. 2d 54 (D.D.C. 2012) ................................................... 11, 12, 24

*Century Telesis Joint Venture v. FCC,*
   318 F.3d 192, 355 U.S. App. D.C. 1 (D.C. Cir. 2003) ......................................... 13

*CityFed Fin. Corp. v. Office of Thrift Supervision,*
   58 F.3d 738 (D.C. Cir. 1995) ............................................................................ 22

*Cobell v. Kempthorne,*
   455 F.3d 301 (D.C. Cir. 2006) .......................................................................... 20

*Demore v. Kim,*
   538 U.S. ............................................................................................................. 25

*Dorfmann v. Boozer,*
   414 F.2d 1168 (D.C. Cir. 1969) ........................................................................ 12

*Federation Internationale De Football Ass'n v. Nike, Inc.,*
   285 F.Supp.2d 64 (D.D.C. 2003) ...................................................................... 11

*Fiallo v. Bell,*
   430 U.S. 787 (1977) ............................................................................................ 9

*Indep. Bankers Asso. v. Conover,*
   603 F. Supp. 948 (D.D.C. 1985) ...................................................................... 11

*Iron Arrow Honor Society v. Heckler,*
   464 U.S. 67, 104 S. Ct. 373, 78 L. Ed. 2d 58 (1983) ....................................... 11

*King v. Leavitt,*
   475 F. Supp. 2d 67 (D.D.C. 2007) ................................................................... 12

*Kleindienst v. Mandel,*
   408 U.S. 753 (1972) ........................................................................................ 8, 9

*Latif v. Obama,*
   677 F.3d 1175 (D.C. Cir. 2011) ........................................................................ 17

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990) .................................................................................... 19, 20

*Mazurek v. Armstrong,*
   520 U.S. 968 (1997) .......................................................................................... 11

*Mdewakanton Sioux Indians of Minnesota v. Zinke,*
   255 F. Supp. 3d 48 (D.D.C. 2017) .............................................................. 11, 22

*Nat'l Ass'n of Home Builders v. Norton,*
   415 F.3d 8 (D.C. Cir. 2005) .............................................................................. 19

iv

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
    434 U.S. 1345 (1977)......................................................................... 26

*Nken v. Holder*,
    556 U.S. 418 (2009)........................................................................... 25

*Norton v. S. Utah Wilderness*,
    *All.*, 542 U.S. 55 (2004).................................................................... 17

*Preiser v. Newkirk*,
    422 U.S. 395, 95 S. Ct. 2330, 45 L. Ed. 2d 272 (1975)...................... 11

*Reliable Automatic Sprinkler Co.*,
    324 F.3d (D.C. Cir. 2006)................................................................... 19

*Reno v. Flores*,
    507 U.S. ............................................................................................ 21

*Sampson v. Murray*,
    415 U.S. 61 (1974)............................................................................. 22

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
    739 F.2d 1415 (9th Cir. 1984) ........................................................... 24

*Trump v. Int'l Refugee Assistance Project*,
    137 S. Ct. 2080 (2017)....................................................................... 25

*United States ex rel. Knauff v. Shaughnessy*,
    338 U.S. 537 (1950)............................................................................. 8

*United States v. Brignoni-Ponce*,
    422 U.S. 873 (1975)........................................................................... 26

*United States v. Flores-Montano*,
    541 U.S. 149 (2004)............................................................................. 8

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981)........................................................................... 12

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977)............................................................ 11

*Wing Wong v. U.S.*,
    163 U.S. ............................................................................................ 25

v

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. ............................................................................................................ 23, 25

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ................................................................................................ 9


## **FEDERAL REGULATIONS**

8 C.F.R. § 1003.19(f) ................................................................................................ 4


## **FEDERAL STATUTES**

5 U.S.C. § 704 .................................................................................................... 19, 20

5 U.S.C. § 706(1) ............................................................................................ 3, 15, 17

5 U.S.C. § 706(2)(a) .............................................................................................. 3, 16

5 U.S.C. § 706(2)(C) ............................................................................................. 3, 16

6 U.S.C. § 202(2) ...................................................................................................... 8

6 U.S.C. § 279 .......................................................................................................... 5

6 U.S.C. § 279(b)(l)(C) ............................................................................................. 5

6 U.S.C. § 279(b)(2)(A) ............................................................................................ 5

6 U.S.C. § 279(b)(2)(B) ............................................................................................ 5

6 U.S.C. § 279(D) ..................................................................................................... 5

8 U.S.C. § 1103(a)(5) ................................................................................................ 8

8 USC § 1226(a) ..................................................................................................... 21

8 U.S.C. § 1232(b)(1) ............................................................................................... 6

8 U.S.C. § 1232(c)(2)(A) ..................................................................................... 6, 7, 8

8 U.S.C. § 1232(c)(2)(B) .................................................................................. 1, ***passim***

8 U.S.C. § 1232(c)(3) ................................................................................................ 6

## FEDERAL RULE OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(1)............................................................................................. 13

Fed. R. Civ. P. 12(b)(6)............................................................................................. 13

## PUBLIC LAW

Pub. L. No. 107-296................................................................................................. 5

Pub. L. No. 110-457................................................................................................. 5

Pub. L. No. 133-4................................................................................................... 7

**INTRODUCTION**

Plaintiffs, two eighteen-year-old aliens from Honduras and Guatemala allege that their detention in adult detention facilities, violates 8 U.S.C. § 1232(c)(2)(B) because U.S. Immigration and Customs Enforcement ("ICE") allegedly never considered their placement in the least restrictive setting available.[1]  Pls.' Mem. of Points & Auths. in Supp. of Prelim. Inj. ("Pls.' Mem.") at 1, ECF No. 2-1.  However, Plaintiffs are demonstrably wrong, as prior to the filing of their Complaint on March 5, 2018, ICE had already considered placing each Plaintiff in the least restrictive setting available, and decided not to.  In fact, the evidence each Plaintiff presents with their Motion for a Preliminary Injunction actually disproves their allegations.  Pls.' Mem. at 9-10, ECF No. 2-1; *see* Tr. at 8, ECF No. 17.  Specifically, ICE carefully considered their requests to be removed to less restrictive settings, and their respective requests were denied.  Declaration of Deportation Officer Robert Cantu, ¶¶ 7-8; Declaration of Supervisory Deportation and Detention Officer Michael Leal, ¶ 10, Ex. 3.  Because ICE has unquestionably made these determinations, and considered each alien's request for release *prior to their filing of this lawsuit,* their claims are moot (regardless of whether or not Plaintiff Garcia's attorney, Mr. Nestor Allende-Asparo ever personally received the letter that ICE sent to his organization's office or not.)

That alone should be the beginning and the end of the inquiry on this preliminary injunction motion.  Therefore, before reaching the merits, Plaintiffs' motion fails at the threshold because both named Plaintiffs' claims were moot when this Complaint was filed, and remain

---

[1] Defendants' tailor their Opposition to Plaintiffs' Preliminary Injunction as to the Named Plaintiffs. Tr. at 37, ECF No. 17.

moot now, as they have in fact received the very relief that they state they are entitled to seek, and therefore, have not suffered cognizable injury.[2]

The statute in question is unambiguous, and requires no implementing regulations. *See* 8 U.S.C. § 1232(c)(2)(B). ICE issued guidance to the field when the statute was enacted in 2013. Declaration of Chief of the Juvenile and Family Residential Management Unit Mellissa B. Harper, ¶¶ 3-4, Exs. 1-5. The statute does not require ICE to send letters or notify individuals in any way of their placement, or document its decision-making process in any particular manner, instead, it states that ICE must "consider" placement in the least restrictive setting after taking into account the alien's danger to self, danger to the community, and risk of flight. *See* 8 U.S.C. § 1232(c)(2)(B).

Now, months after their placement into these adult detention centers, Plaintiffs allege that they are entitled to a preliminary injunction. *See* Pls.' Mot. at 4, ECF No. 2. Plaintiffs assert that their placements in adult detention is unlawful because ICE "never" considered their placement in the "least restrictive setting available" when they turned eighteen years of age. *See* Pls.' Mem. at 1, ECF No. 2-1. This is false. The only "evidence" that Plaintiffs provide for their claim is the unsupported, and untrue, assertion that "ICE has failed to adopt and implement any policies" and is "automatically and summarily placing such individuals in adult detention." Pls.' Mem. at 10, ECF No. 2-1. Yet, Plaintiffs have no admissible evidence to indicate that ICE is not following the statute, other than their belief that they themselves have been improperly placed into adult detention facilities rather than less restrictive settings. *See id.* Putative class counsel's belief that "people who practice in this area day in and day out" believe that ICE is not

---

[2] Nor can they serve as named representatives for a putative class, even if this Court could certify a class in violation of 8 U.S.C. § 1252(f)(1).

complying with the statute, simply is not evidence upon which this court could make a finding.[3] Tr. at 36, ECF No. 17.

Therefore, even assuming, *arguendo*, that this case is not moot, Plaintiffs nevertheless fail to state a claim upon which relief can be granted. Plaintiffs do not and cannot identify any written policy that states such consideration by ICE should be provided in a notice to individuals, and for good reason, because none exists. Nevertheless, as additional relief in this motion, they seek the Court to monitor Defendants' compliance with the statute, and thus seek to alter the *status quo* by somehow informing Plaintiffs of these determinations. Tr. at 3, ECF No. 17. ICE has already complied with the statute. Harper Decl., ¶¶ 3-4, Exs. 1-5. Further, Plaintiffs have already received from Defendants' information on the status of their placement in the least restrictive setting which goes above and beyond the statute requires.

Plaintiffs advance two theories of their case under the Administrative Procedure Act ("APA"). First, they claim that Defendants have acted in a way that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," Compl. at 17, ECF 1 (citing 5 U.S.C. § 706(2)(A)), and in excess of their jurisdiction or authority, *id*. (citing 5 U.S.C. § 706(2)(C); *see also* Pls.' Mem. at 10-11, ECF 2-1. Second, Plaintiffs claim that Defendants failed to undertake a mandatory action. *Id*. (citing 5 U.S.C. § 706(1)); Pls.' Mem. at 10-11, ECF 2-1. In support, Plaintiffs allege that Defendants automatically placed them into adult detention settings. But either theory fails, because no such automatic-placement policy exists, and

---

[3] Even if Plaintiff now submits declarations to the Court reflecting the general (and demonstrably uninformed) belief that ICE has simply ignored the requirement of 8 U.S.C. 1232(c)(1)(B) which is held by some public interest attorneys who represent aliens in immigration court, those declarations would have little relevance and, of course, would be inadmissible at trial. *See* Fed. R. Evid.802 and 602.

Plaintiffs' placement determinations have each been adjudicated consistently with existing, policies and guidance.

Moreover, even assuming Defendants lack any policy implementing the statute or that Defendants did not comply with 8 U.S.C. 1232(c)(2)(B), the APA does not permit review where alternative remedies exist, and here, just such a remedy is available: a custody redetermination hearing for bond in the district of their confinement.  Additionally, Plaintiffs are not entitled to a preliminary injunction because they fail to demonstrate, as they must, any irreparable harm, given that they do not dispute their illegal status or challenge their detention, but merely dispute whether ICE ever "considered" them for placement in the least restriction setting available.  The balance of harms and public interest also favor the government because the public has a strong interest in the enforcement of immigration laws, and, as noted above, ICE has already performed the administrative tasks that encompass the relief in which Plaintiffs' seek.

In sum, Defendants request that this Court deny Plaintiffs' motion for a preliminary injunction as Plaintiffs cannot meet their extraordinary burden that this Court should enter a mandatory injunction altering the *status quo*.  Should Plaintiffs wish to be released from detention, they remain eligible to use the correct procedural vehicle – a petition for bond redetermination hearing – in the correct venues of Texas and Arizona immigration courts.  In fact, one named plaintiff requested bond hearing and was granted bond by an immigration judge and the other withdrew his request for a bond hearing.[4]  Cantu Decl., ¶ 16; Leal Decl., ¶ 9.  But Plaintiffs may not use the preliminary injunction device in this district to seek relief they have

---

[4] An alien who is dissatisfied with the result of an immigration court bond determination may appeal the immigration judge's bond determination to the Board of Immigration Appeals.  8 C.F.R. § 1003.19(f)

already received. This Court should, with respect to Plaintiffs' individual claims and also the

claims that "ICE has no policy or procedure" for complying with 8 U.S.C. § 1232(c)(2)(B),

either dismiss those claims with prejudice as moot, or grant summary judgment to Defendants --

as amending the Complaint would be futile and prolonging this litigation would serve no purpose

other than to expend the limited resourced of Defendants and this Court. *See* Fed. R. Civ. P.

65(a)(2).

## STATUTORY, REGULATORY, AND LEGAL FRAMEWORK

### A.  The Homeland Security Act of 2002

In 2002, Congress enacted the Homeland Security Act ("HSA"), which created the

Department of Homeland Security ("DHS") and transferred most immigration enforcement

functions formerly performed by the legacy INS to the newly formed DHS and its components.

Pub. L. No. 107-296.  The HSA also transferred to the Office of Refugee Resettlement ("ORR"),

a component of the U.S. Department of Health and Human Services ("HHS"), the responsibility

for making all placement decisions for unaccompanied alien children ("UACs"), and required

HHS to consult with DHS and others in making such decisions.  6 U.S.C. § 279(b)(l)(C), (D),

(b)(2)(A).  The HSA also prohibited HHS from releasing UACs on their own recognizance.  6

U.S.C. § 279 (b)(2)(B).

### B. Trafficking Victims Protection Reauthorization Act of 2008

In 2008, the Trafficking Victims Protection Reauthorization Act ("TVPRA") codified

further protections related to the processing, custody, and detention of UACs.  Pub. L. No. 110-

457 (codified at 8 U.S.C. § 1232).  The TVPRA built on the HSA and required that "the care and

custody of all unaccompanied alien children, including responsibility for their detention, where

appropriate, shall be the responsibility of the Secretary of Health and Human Services." 8 U.S.C. § 1232(b)(1).

The TVPRA makes clear that HHS is responsible for all placement decisions for UACs in Government custody, and provides guidelines for placing UACs with suitable custodians, including dictating the requirements for HHS to evaluate the suitability of any placement. 8 U.S.C. § 1232(c)(3). The statute further requires that UACs who remain in HHS custody be "promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). It delegates to the Secretary of HHS the authority to (1) make such placement decisions, considering "danger to self, danger to the community, and risk of flight," *id.*, and (2) create review "procedures" to be used when a UAC is placed in a secure facility. Specifically, secure placements "shall be reviewed, at a minimum, on a monthly basis, in accordance with procedures prescribed by the Secretary, to determine if such placement remains warranted." 8 U.S.C. § 1232(c)(2)(A). ORR has created a comprehensive policy guide for carrying out its statutory mandate. ORR Guide: Children Entering the United States Unaccompanied ("ORR Guide"), *available at* http://www.acf.hhs.gov/orr/resource/children-entering-theunitedstates-unaccompanied (last visited March 23, 2017).

### C.  U.S. Department of Health and Human Services' Policies

When a UAC is referred to ORR, the agency places the UAC with a care provider. ORR Guide § 3.1. The majority of care providers operate one of three types of facilities: shelter-type facilities, staff secure facilities, or secure facilities. *Id.* § 1.1.

When deciding placement, ORR places the child in the "least restrictive setting that is in the best interest of the child," subject to considerations of danger to self, danger to others, or risk of flight, in accordance with the TVPRA. 8 U.S.C. § 1232(c)(2)(A). By statute, ORR may only

place children in a secure facility if it determines that the child poses a danger to herself or others, or has been charged with a criminal offense.  8 U.S.C. § 1232(c)(2)(A); *see also* ORR Guide § 1.2.4.

After a child is placed in an appropriate facility, the care provider conducts ongoing assessments of the UAC's needs.  ORR Guide § 1.4.  If a care provider determines that a different placement would better meet the child's needs, care providers make a recommendation to ORR and ORR may transfer the child between ORR care providers.  *Id*.  ORR assesses each child in secure or staff secure care at least once every thirty days to determine if the child should remain in such care and may step-down the child to a less restrictive facility if the child's circumstances warrant the change.  *Id.* § 1.4.2.  Further, after thirty days in a secure facility, a UAC may ask the ORR Director to reconsider her placement.  *Id.* § 1.4.7.  ORR makes the final release decision.  *Id.* § 2.7.  For children in secure or staff secure facilities, or for children who have been in these facilities previously, the release decision is elevated to the ORR Director or his designee for a final decision.  *Id*.

### D. Title 8 U.S.C. § 1232(c)(2)(B)

On March 7, 2013, Congress enacted a new statutory provision to address the detention of UACs who have turned eighteen, where they are then transferred from ORR custody into ICE custody.  *See* Violence Against Women Act in 2013, Pub. L. No. 133-4, 127 Stat. 156, codified at 8 U.S.C. § 1232(c)(2)(B).  The provision states in full:

> If a minor described in subparagraph (A) reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary *shall consider* placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight.  Such aliens *shall be eligible* to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include

7

placement of the alien with an individual or an organizational sponsor, or in a
supervised group home.

8 U.S.C. § 1232(c)(2)(B) (emphasis added).  The statute does not require ICE to inform

individuals of its decision-making process or document its decision in any particular

manner or on any particular form.  Nor does it require ICE to perform such considerations

within any specified time frame[5], other than that it must do so after the unaccompanied

child turns eighteen and has been transferred to ICE custody.

### E. Congress Conferred Broad Authority Upon the Secretary of Homeland Security to Carry out Immigration Laws

The Secretary of Homeland Security is responsible for "[s]ecuring the borders,"

enforcing the immigration laws, and "control[ling] and guard[ing] the boundaries and borders of

the United States against the illegal entry of aliens."   6 U.S.C. § 202(2) and (3); 8 U.S.C. §

1103(a)(5).   The Supreme Court has long recognized that the political branches' broad power

over immigration is "at its zenith at the international border."  *United States v. Flores-Montano*,

541 U.S. 149, 152-53 (2004).  The power to admit or exclude aliens is a sovereign prerogative

vested in the political branches, and "it is not within the province of any court, unless expressly

authorized by law, to review [that] determination."  *United States ex rel. Knauff v. Shaughnessy*,

338 U.S. 537, 543 (1950); *see also Kleindienst v. Mandel*, 408 U.S. 753, 765-766 & n.6 (1972)

(noting that the Supreme Court's "general reaffirmations" of the political branches' exclusive

authority to admit or exclude aliens "have been legion").  Preserving the political branches'

---

[5] *Compare* 8 U.S.C. § 1232(c)(2)(A), which requires review of an unaccompanied alien child in
a secure facility to be done, at a minimum, on a monthly basis, with 8 U.S.C. § 1232(c)(2)(B),
which contains no specified time frame.

authority to control the border serves "the obvious necessity that the Nation speak with one voice" on such matters. *Zadvydas v. Davis*, 533 U.S. 678, 711 (2001) (Kennedy, J., dissenting).

Accordingly, the Supreme Court "without exception has sustained Congress's 'plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden.'" *Kleindienst*, 408 U.S. at 766 (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)). The Supreme Court has consistently upheld the Executive's inherent power to administer the immigration laws, stating that it is a "fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977).

## FACTUAL BACKGROUND[6]

Plaintiffs are two alien teenagers from Guatemala and Honduras. Plaintiff, Wilmur Garcia-Ramirez ("Garcia"), came to the United States from Guatemala and was initially placed in Southwest Key Glendale because of his status as a UAC. Plaintiff Sulma Hernandez Alfaro ("Hernandez"), came to the United States from Honduras and was placed in an ORR shelter for UACs. Upon turning eighteen, each was moved from the custody of ORR to the custody of ICE per 8 U.S.C. § 1232(c)(2)(B). Upon becoming an adult, each was placed into adult detention centers. Declaration of Supervisory Deportation and Detention Officer Jose A. Cortez, ¶ 25; Declaration of Supervisory Deportation and Detention Officer Christine Hoopes, ¶ 7; Leal Decl., ¶ 6. Nonetheless, Plaintiffs' falsely allege that ICE never "considered" their placement in the

---

[6] Even if ICE's letter never reached Nestor Allende-Asparo's desk at his organization, that would be immaterial because the determination was unquestionably made and the request was "considered". Defendants are not attempting to perpetrate a fraud on this Court. Tr. at 24-25, ECF No. 17.

least restrictive setting available, in accordance with 8 U.S.C. § 1232(c)(2)(B).  Both Garcia and Hernandez are represented by attorneys.

On January 5, 2018, Garcia's attorney wrote to ICE asking it to place him in a less restrictive setting.  Pls.' Ex. G, ECF No. 2-8.  On January 27, 2018, Deputy Field Office Director Albert E. Carter wrote to Garcia's attorney stating that this request was carefully reviewed and denied.  Leal Decl., Ex. 3, Carter Letter.  Similarly, on February 2, 2018, the attorney for Hernandez wrote to ICE seeking for her placement in the least restrictive setting available.  Pls.' Ex. H, ECF No. 2-9.  On February 7, 2018, Officer Cantu spoke to Hernandez's attorney and stated that this request was denied due to the fact that she was deemed a flight risk.  Cantu Decl., ¶¶ 6-8.

On November 7, 2017, Garcia, through counsel, requested a bond hearing before an immigration judge.  Leal Decl., Ex. 2.  The bond hearing was scheduled for November 21, 2017.[7]  *Id.*  However, on November 17, 2017, he withdrew his request.  *Id.*  He has not made another request for a bond hearing but will receive one if he requests it.  On March 16, 2018, after the TRO hearing in this case, Hernandez, through counsel, requested a bond hearing before an immigration judge.  Cantu Decl., ¶ 16.  Five days later on March 21, 2018, Hernandez was granted bond at $10,000.  *Id.*  He has not paid the bond, and may appeal it to the Board of Immigration Appeals.

---

[7] Contrary to the statements of Plaintiffs concerning the scheduling of bond hearings taking "many months", Garcia's bond hearing was scheduled within two weeks, and Hernandez's hearing was within five days.  Tr. at 33, ECF No. 17.

## STANDARDS OF REVIEW

This Court has no jurisdiction over moot controversies.  *Anderson v. Carter*, 802 F.3d 4, 10 (D. C. Cir. 2015).  "It has been held that a 'moot' case is beyond the jurisdiction of the federal courts because of the 'case or controversy' requirement, *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67 (1983), or because the opinion in a moot case would be merely advisory."  *Indep. Bankers Asso. v. Conover*, 603 F. Supp. 948, 954 (D.D.C. 1985) (citing *Preiser v. Newkirk*, 422 U.S. 395 (1975)).

However, even assuming, *arguendo*, that this case was not moot and that the Court has jurisdiction to decide Plaintiffs' claims, a preliminary injunction is still "an extraordinary and drastic remedy," and "should not be granted unless the movant, by a *clear* showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis added).  Generally, the movant must establish:

> (1) that it has a strong likelihood of success on the merits, (2) that it will suffer irreparable injury if injunctive relief is denied, (3) that other interested parties will not suffer substantial harm if injunctive relief is granted, and (4) that the public interest favors the granting of injunctive relief, (or at least, that the granting of injunctive relief is not adverse to the public interest).

*Paleteria La Michoacana, Inc., et al. v. Productos Lacteos Tocumbo S.A. de C.V.*, 901 F. Supp. 2d 54, 56 (D.D.C. 2012) (citing *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) and *Federation Internationale De Football Ass'n v. Nike, Inc.*, 285 F. Supp. 2d 64, 68 (D.D.C. 2003)).

To meet this burden, Plaintiffs must make a "clear showing" that they have met the burden of persuasion. *Mdewakanton Sioux Indians of Minnesota v. Zinke*, 255 F. Supp. 3d 48, 51 (D.D.C. 2017).  This standard, however, is "somewhat higher" when the relief requested has the effect of altering rather than preserving the *status quo*. *Paleteria La Michoacana*, 901 F. Supp.

2d at 56.  That is, because the purpose of temporary injunctive relief "is merely to preserve the relative positions of the parties until a trial on the merits can be held," *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981), the power to issue a mandatory injunction – one that alters the *status quo* – "should be sparingly exercised." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969).[8]  Thus, as this Court has explained, where, as here, movants seek to alter the *status quo*, they "face 'an additional hurdle' when proving their entitlement to relief." *Paleteria La Michoacana*, 901 F. Supp. 2d at 56-57 (quoting *King v. Leavitt*, 475 F. Supp. 2d 67, 71 (D.D.C. 2007)).  In such cases, courts "exercise extreme caution in assessing the [movant's] invitation to invoke the court's extraordinary equitable powers." *Id.* at 57.

## ARGUMENT

Plaintiffs have not sustained their burden to establish that they have met any, and certainly not all, of the four factors by either the "clear showing" standard, or the somewhat higher standard applicable when the injunction would alter the *status quo*.  First and foremost, Plaintiffs have not shown a likelihood of success on the merits, because this case is moot.  Second, plaintiffs cannot succeed on the merits of their claim that ICE has no policy or procedures regarding 8 U.S.C. § 1232(c)(2)(B) because it does.  *See* Compl. ¶ 82, ECF No. 1.  Third, Plaintiffs fail to state a claim upon which relief can be granted because their requests were considered.  Finally, Plaintiffs' claims fail under the APA because Plaintiffs' have failed to show

---

[8] While the Court of Appeals for the District of Columbia has neither adopted nor rejected a higher standard for mandatory injunctions that alter the *status quo*, *see Allina Health Servs. v. Sebelius*, 756 F. Supp. 2d 61, 69–70 n.5 (D.D.C. 2010), there is a common practice to proceed with "extreme caution" in these cases.  *Paleteria La Michoacana*, 901 F. Supp. 2d at 56 n.1.

that ICE did not take a discrete agency action, there is no final agency action for this Court to review, and both Plaintiffs have another adequate remedy available to them.

## I.      Plaintiffs claims' are moot

This case was moot well before the Preliminary Injunction Motion and Complaint were filed. Cantu Decl., ¶¶ 6-8; Leal Decl., Ex. 3.  The mootness doctrine ensures compliance with Article III's case and controversy requirement by "limit[ing] federal courts to deciding actual, ongoing controversies." *Aref v. Lynch*, 833 F.3d 242, 250 (D.C. Cir. 2016 (quoting *Am. Bar Ass'n v. Fed. Trade Comm'n*, 636 F.3d 641, 645 (D.C. Cir. 2011)).  Accordingly, mootness must be assessed at "all stages" of the litigation to ensure a live controversy remains. *21st Century Telesis Joint Venture v. FCC*, 318 F.3d 192, 198 (D.C. Cir. 2003).  A case is moot if the Court's decision "will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Am. Bar Ass'n*, 636 F.3d at 645.

The statute in question here, 8 U.S.C. § 1232(c)(2)(B), states only that the Secretary of Homeland Security shall "consider" placement in the least restrictive setting available.  Read unambiguously, the statute contains no temporal requirement that this be done within any particular amount of time or by any particular date or that it be documented in any particular manner.  Plaintiffs even concede that they are unaware of any statutory of regulatory requirement that the decision be memorialized in writing.  Tr. at 11-12, ECF No. 17.

Regardless, as the letters from Garcia's and Hernandez's attorneys (Pls.'Mem., Ex. G, ECF No. 2-8 and Pls.' Mem., Ex. H, ECF No. 2-9 to Pls.' Mot., ECF No. 2), and the responses from ICE (Cantu Decl., ¶¶ 6-8; Leal Decl., Ex. 3) demonstrate, ICE considered placement of each Plaintiff in the least restrictive setting available and decided against release for each Plaintiff.  In the letter from Deputy Field Office Director, Albert E. Carter, he states that after a

13

careful review of all the information provided by Garcia's attorney, that the request was denied. *Id.*  Additionally, in the oral conversation with Director Officer Cantu, Hernandez's attorney was informed that ICE determined that Hernandez was a flight risk and was therefore not going to be released.  Cantu Decl., ¶¶ 6-8.  ICE informed the individual Attorneys for Garcia and Hernandez of its determinations no later than January 23, 2018 for Garcia, and February 7, 2018 for Hernandez.  *Id.*  Accordingly, Plaintiffs' cases were moot several weeks before Plaintiffs filed their Complaint and Motion for Preliminary Injunction on March 5, 2018.  *See* Compl., ECF No. 1; *see* Pls.' Mot., ECF No. 2. Counsel for the Putative Class should have adequately investigated this case prior to filing it and moving this Court for an emergency TRO.  As there are no other Plaintiffs named in the present complaint, this Court must dismiss this entire putative class action for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because it is moot.

## II.      Each Plaintiff fails to state a claim upon which relief can be granted

Neither Plaintiff can demonstrate a likelihood of success on the merits for another reason as well -- because they have both failed to state a cognizable legal claim.  To survive a motion to dismiss under Federal Rule 12(b)(6), the pleading must contain enough factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint is "plausible on its face" when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  Here, Plaintiffs have failed to demonstrate any unlawful action taken by the agency. The only facts the allege is that they themselves have been placed into adult detention centers upon turning eighteen and that ICE did not "consider" the least restrictive setting, because it has no procedures to do so.  Pls.' Mem. at 10, ECF No. 2-1; Compl., ECF No. 1 at ¶ 82.

14

Plaintiffs allege that Defendants are *failing to consider* Plaintiffs' placement in the least restrictive settings (or alternatives) available, thereby preventing them from participating in alternative to detention programs.  Pls.' Mem., Proposed Order at 2, ECF No. 2-12 (seeking preliminary injunctive relief to enjoin ICE "from failing to consider Plaintiffs . . . for placement in the least restrictive setting available. . . .").  Plaintiffs, however, are incorrect.  They cannot show that ICE did not consider them for release (because it did) and they have already received the relief that they seek. They now seek to alter the *status quo* in forcing this Court to monitor ICE's compliance with the statute.  *See* Tr. at 7-8, ECF No. 17.  If Plaintiffs do not voluntarily dismiss their complaint under Rule 41 prior to the hearing on April 3rd, or the Court does not dismiss it after that hearing, Defendants intend to file a motion to dismiss or for summary judgment under Federal Rules of Civil Procedure 12(b) and 56.  However, Defendants propose that this Court collapse the merits of the dispositive issues in this case into the Preliminary Injunction litigation under Federal Rule of Civil Procedure 65, in order to efficiently resolve this matter.

In section 1232(c)(2)(B), Congress required ICE to consider UACs who have turned eighteen for placement in locations other than adult detention centers.  But ICE is required to also take into consideration their danger to self, danger to the community, and risk of flight as factors when making that decision.  Here, Plaintiffs' claim that they do not disagree with the fact that they are in detention or its form, but rather are alleging that ICE did not consider placement in a less restrictive setting.  Plaintiffs' merely allege bald claims of law under both 5 U.S.C. § 706(1), 706(2), but do not specify which sections or support their claims with evidence.  *See* Pls.' Mem. at 11, ECF No. 2-1.

Plaintiffs' allegations are patently false.  Not only did ICE consider Plaintiffs' for less restrictive settings, but it also went beyond what the statute explicitly requires, by notifying each Plaintiff of its decision to deny their further requests for placement in less restrictive settings. Accordingly, because ICE acted within its statutory mandate by considering the required factors and placing Plaintiffs' in adult detention centers, its actions were not arbitrary and capricious or otherwise unlawful,  *see* 5 U.S.C. § 706(2)(A), or in excess of statutory authority or jurisdiction, 5 U.S.C. § 706(2)(C).  Nor has ICE unlawfully withheld or unreasonably delayed a required action, because it did exactly what the section 1232(c)(2)(B) requires it to do.  Thus, Plaintiffs cannot demonstrate the requisite likelihood of success on the merits of this case to justify a preliminary injunction as they fail to state a claim upon which relief can be granted.

### III.  Plaintiffs do not demonstrate a strong likelihood of success on the merits because ICE has issued guidance to its field offices regarding 8 U.S.C. § 1232(c)(2)(B)

Plaintiffs have not shown that they have a strong likelihood of success on the merits, let alone *any* likelihood of success on the merits. First, as noted above, their claims are moot as ICE informed both Plaintiffs that it had considered their placement in less restrictive settings. *Second, ICE actually has established guidance for which advises its officers regarding the obligation imposed by 8 U.S.C. 1232(c)(2)(b)[9]. Thus Plaintiffs' utterly fail to state a claim upon which relief can be granted.*  And, lastly, Plaintiffs have failed to allege a claim under the APA. Plaintiffs' are not likely to succeed on the merits of their claim under the APA because Plaintiffs' fail to show that ICE has not taken a discrete agency action, there is no cognizable final agency

---

[9] Plaintiffs nowhere allege that they filed a Freedom of Information Act request for ICE's policies and/or procedures prior to filing this lawsuit. The basis for Plaintiffs' allegation that ICE has "no policy or procedure" (Compl. ¶ 82, ECF No. 1) is therefore likely a result of inadequate investigation prior to filing.

action, and there is another adequate remedy available to Plaintiffs (in that they can seek a bond redetermination hearing in immigration court).  *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65 (2004) ("SUWA"); 5 U.S.C. §§ 706(1), 706(2).

> **A.    After the enactment of the TVPRA, ICE provided, and continues to provide, guidance to the field and training for its employees on how to comply with 8 U.S.C. § 1232(c)(2)(B)**

Plaintiffs have failed to show that ICE "failed to take a discrete agency action that it is required to take" because written, official policies, as to ICE's compliance with 8 U.S.C. § 1232(c)(2)(B), are in effect.  *SUWA*, 542 U.S. at 65; 5 U.S.C. § 706(1); *see* Harper Decl., Ex. 1, 2.  Moreover, the presumption of regularity applies, where, as here, there is no clear evidence to the contrary.  *Latif v. Obama*, 677 F.3d 1175, 1178 (D.C. Cir. 2011) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.").

Shortly after the implementation of 8 U.S.C. § 1232(c)(2)(B), ICE developed implementing guidance, which was broadcast to all ERO Field Office Directors and Deputy Field Office Directors via email on May 9, 2013, and subsequently made permanently available on the Juvenile and Family Residential Management Unit ("JFRMU") intranet page.  Harper Decl., ¶ 3.  This email specifically considers minors who reach the age of eighteen and "age-out" of ORR care, and states that the statute "comports with existing ICE practices in that custody determinations are made after considering the circumstances of each individual case."  Harper Decl., Ex. 1.  The email goes on to state that "this unique population of aliens may also be eligible to participate in the Alternatives to Detention ("ATD") programs based on the alien's need for supervision."  *Id.*  Additionally, as the General Accounting Office reports annually on this issue, the email attaches a spreadsheet to assist in providing monthly responses to the

JFRMU mailbox regarding ORR referrals who reach the age of eighteen. Harper Decl., ¶ 5; Harper Decl., Ex. 1.

Then, on November 3, 2013, ICE reiterated and clarified its previous guidance concerning custody determinations for former UACs.  Harper Decl., ¶ 4; Harper Decl., Ex. 2. This updated guidance was sent via email and instructed ICE to consider placement in the least restrictive setting based on the circumstances of each individual case based on the circumstances of each individual case and to assess an individual's danger to self, the community, and risk of flight, as well as the recommendations of ORR when making these custody determinations.  *Id.* *This guidance also reminded field offices that "a default to detention is never acceptable in these cases."  Id.*

Therefore, as ICE provided, and continues to provide, guidance to the field and training for its employees on how to comply with the statute, Plaintiffs' allegation that ICE never "considered" their placement in the least restrictive setting, is demonstrably false and therefore fails on the merits.

## B.   Neither Plaintiff can demonstrate a reviewable final agency action in their cases

Plaintiffs' APA claim under 5 U.S.C. 706(1) fails the test for finality under *Bennett v. Spear*, 520 U.S. 154, 178 (1997) ("First, the action must mark the consummation of the agency's decisionmaking process . . . second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow . . . ." (citations and internal quotations omitted)).

As an initial matter, Plaintiffs cannot invoke the APA as a basis to challenge their ongoing detention in restrictive settings because they do not allege any cognizable final agency action

promulgating or effecting an alleged policy of automatic placement into adult detention centers that is reviewable under the APA.  Pls.' Mem. at 10, ECF No. 2-1.  The APA provides that both agency action which is made unreviewable by statute, and final agency action "for which there is no adequate remedy in a court" may be subject to judicial review.  5 U.S.C. § 704.  When the agency action at issue is not made reviewable by statute, or when there is no final agency action, the complaint fails to state a cause of action under the APA.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'"); *see also Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm.*, 324 F.3d 726, 731 (D.C. Cir. 2006); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005).

The determinations by Defendants in the individual cases of these two Plaintiffs do not constitute "final agency action" that may be reviewed under the APA.  Plaintiffs have pointed to no regulation, letter, memorandum, or other form of written material that comprises this policy, or lack thereof, that they allege is being applied by Defendants.  This failure alone is fatal to Plaintiffs' claims.  *See Bark v. United States Forest Serv.*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014) ("Plaintiffs point to no written rules, orders, or even guidance documents of the Forest Service that set forth the supposed policies challenged here.  Instead, Plaintiffs' appear to have attached a 'policy' label to their own amorphous description of the Forest Service's practices.  But a final agency action requires more.").  Here, Plaintiffs have taken it upon themselves, apparently employing some informal survey method of immigration advocates, to observe various ICE placement determinations that were made on a case-by-case basis, and assemble them into a purportedly inflexible and automatic policy to place eighteen year old aliens into adult detention

centers without "considering" anything else.  Pls.' Mem. at 10, ECF No. 2-1.  Plaintiffs' do not

even have any statistics to support their claims that UACs who turn eighteen are automatically

placed in adult facilities. Tr. at 7-8, ECF No. 17 ("Your Honor, that's on information and

belief.").  However, as of fiscal year 2017, only 57% of UACs who turn eighteen were detained,

which indicates that detention in adult facilities is not automatic.  Harper Decl., ¶ 5.

Plaintiffs' claim constitutes a generalized complaint that the agency is not properly

following the statute in their cases. Yet, ICE's purported (and demonstrably non-existent)

unwritten general policy to automatically place eighteen year old individuals into adult detention

centers is a "'generalized complaint about agency behavior' that gives rise to no cause of action."

*Bark*, 37 F. Supp. 3d at 50 (quoting *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006)).

"While a single step or measure is reviewable, an on-going program or policy is not, in itself, a

'final agency action' under the APA." *Lujan*, 497 U.S. at 890. Accordingly, their causes of action

do not arise under the APA §706(1).

### C.    Plaintiffs have another adequate remedy available to them

Even if Plaintiffs could establish that ICE has a policy of automatically placing aliens

who turn eighteen into adult detention centers, that somehow supersedes official policies, and

that this policy constituted a final agency action, they fail to state a claim under the APA because

there is another adequate remedy available to them.  *See* 5 U.S.C. § 704.  The Supreme Court, in

considering this provision, explained that "[w]hen Congress enacted the APA to provide a

general authorization for review of agency action in the district courts, it did not intend that

general grant of jurisdiction to duplicate the previously established special statutory procedures

relating to specific agencies." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988).  According to

the Supreme Court, plaintiffs have "adequate remedies" when statutes creating administrative

agencies defined specific procedures for reviewing that particular agency's actions.  *Id.*

Plaintiffs' suggestion that immigration court review is not adequate ignores the vast history of case law reviewing issues related to immigration detention.  Even where courts have held that an individual's detention is unlawful, the remedy for any finding of unlawful detention for those in removal proceedings is that the individual may be afforded a bond hearing before an immigration judge. *See, e.g., Reno v. Flores*, 507 U.S. 292, 309 (1993) (holding that due process was satisfied where detained juveniles had the right to a hearing before an immigration judge).

At the TRO hearing in this case, Plaintiffs claimed that their irreparable injury is their continued detainment in adult detention centers without consideration for placement less restrictive (or alternative) settings.  *See* Tr. at 18, ECF No. 17.  In fact, Plaintiffs were unable to sidestep this Court's questions at the relevance of bond hearings to challenge their detention:

> On the question of immigration court bond, in a word, it's a red herring. It's comparing apples and oranges. So it is a different agency, a different standard, a different timetable. And even if that relief were granted, it wouldn't eliminate the irreparable harm we're complaining about here. And again, we're asking this Court to enforce a statute that says ICE has to make a determination early on when it first decides where to place that unaccompanied immigrant child, what kind of custody. Not just say, hey, let me out of jail. No, make an affirmative determination: Sulma is a flight risk because of; or Wilmer is not a flight risk and so therefore he can go to La Posada or he can go to his family friend, and it is a totally different agency. It is not the immigration court, it's ICE.

Tr. at 31-32, ECF No. 17.  However, because both Plaintiffs remain detained pursuant to 8 USC § 1226(a), Plaintiffs both have the opportunity to request bond in front of an immigration judge. Garcia had requested a bond hearing prior to the TRO hearing, but proceeded to vacate his request, and Hernandez sought one only after the TRO hearing.  Leal Decl., Ex. 2; Cantu Decl. ¶ 16; *see Castellar v. Nielsen*, No. 17-cv-0491, 2018 U.S. Dist. LEXIS 21174, at *10 (S. D. Cal. Feb. 8, 2018) (delineating that an alien may orally request a bond hearing to seek release from

DHS custody, and that following such a request, the immigration judge must schedule the bond hearing at the "earliest possible date.").

As Plaintiffs' state that they suffer from various conditions such as post-traumatic stress disorder, hair loss, and depression, Plaintiffs' should seek to be released from detention through the immigration courts. Pls.' Mem. Decl. of Hernandez at 2 (ECF No. 2-7). And, in fact, both Plaintiffs' have sought bond. Garcia sought a custody redetermination hearing for bond on November 7, 2017. Leal Decl., Garcia Motion for Custody Redetermination Hearing, Ex. 2. However, on November 17, 2017, he subsequently moved to vacate the bond hearing. Leal Decl., Garcia Unopposed Motion to Vacate Bond, Ex. 2.

Hernandez recently applied for bond on March 16, 2018, and was granted bond at $10,000. Cantu Decl., ¶ 16. If Hernandez believes this amount is too great, she may take appeal this decision up to the Board of Immigration Appeals if she desires. Therefore, Plaintiffs have another adequate remedy available to them.

For all of these reasons, Plaintiffs fail to demonstrate a substantial likelihood of success on the merits. This Court should deny Plaintiffs' motion for a preliminary injunction and should dismiss this entire case.

### IV.    Plaintiffs' alleged irreparable harm is nonexistent, and in any event,  is insufficient for a preliminary injunction

"Regardless of how the other three factors are analyzed, it is required that the movant demonstrate an irreparable injury." *Mdewakanton Sioux Indians of Minnesota*, 255 F. Supp. 3d 51 (footnote omitted). "The basis of injunctive relief in the federal courts has always been irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974); *see also CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). Significantly, the harm must be

likely, and the question is whether it would occur "in the absence of preliminary relief . . . ."
*Winter v. N.R.D.C. Inc.*, 555 U.S. 7, 20 (2008).  Plaintiffs fail to make this showing.

First, Plaintiffs seek an injunction that would require Defendants to provide the very same relief that Plaintiffs are seeking through their Complaint, simply on an expedited basis.  *See* Compl. at Prayer for Relief ¶¶ D-G (ECF No. 1); *see also* Pls.' Mem., Proposed Order at 2 (ECF No. 2-12).  A comparison of the Complaint's Prayer for Relief and the Motion for Preliminary Injunction Proposed Order demonstrates that the two are indistinguishable, except as to order of presentation, and the choice of a positive or negative injunction:

| Complaint<br>Prayer for Relief | Preliminary Injunction Proposed Order |
|---|---|
| D. and E. Declare that ICE's failure . . . violates U.S.C. § 1232(c)(2)(B) and 5 U.S.C. §§ 706(1) and 706(2) | 1. Defendants are restrained and preliminarily enjoined from failing to comply with 8 U.S.C. § 1232(c)(2)(B) |
| F. Order that ICE comply with 8 U.S.C. § 1232(c)(2)(B) by considering Plaintiffs . . . for, and placing them in, the l[e]ast restrictive setting available after taking into account their danger to self, danger to the community, and risk of flight | 2. Defendants are restrained and preliminarily enjoined from failing to consider Plaintiffs . . . for placement in the least restrictive setting available after taking into account their danger to self, danger to the community, and risk of flight |
| G. Order that ICE comply with 8 U.S.C. § 1232(c)(2)(B) by allowing Plaintiffs . . . to participate in alternative to detention programs utilizing a continuum of alternatives based on their need for supervision, which may include placement with an individual or an organizational sponsor, or in a supervised group home | 3. Defendants are restrained and preliminarily enjoined from failing to consider Plaintiffs . . . for participation in alternative to detention programs, utilizing a continuum of alternatives based on their need for supervision, which may include placement with an individual or an organizational sponsor, or in a supervised group home |

23

Compl. at Prayer for Relief ¶¶ D-G (ECF No. 1); Pls.' Mem., Proposed Order at 2 (ECF No. 2-12).

Preliminary injunctions are improper procedural devices for the relief sought in the Motion because they are not intended to serve as "a preliminary adjudication on the merits but rather [as] a device for preserving the *status quo* and preventing the irreparable loss of rights before judgment." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984); *see, e.g., Guy v. Tanner*, 2014 U.S. Dist. LEXIS 85730, *7-8 (E.D. La. June 19, 2014) ("Guy's motion is no more than a veiled attempt to expedite the resolution of his habeas petition. This is not a proper basis for issuing an injunction."); *Guthrie v. Niak*, 2013 U.S. Dist. LEXIS 139984, *17-18 (S.D. Tex. Sep. 27, 2013) ("Moreover, it appears Plaintiff is merely trying to expedite the relief sought in his Complaint").

Second, Plaintiffs waited months before filing for their requested relief of placement in less restrictive settings. *See* Tr. at 35, ECF No. 17. If the form of detention is the problem, these claims are not the proper vehicle. If, on the other hand, the loss of liberty is the alleged harm, this was present on the first day of detention. *See, e.g.*, *Taylor v. Biglari*, 2013971 F. Supp. 2d 847, 854 (S.D. Ind. 2013) (collecting cases) ("plaintiff [who] has already been subjected to the putative harm…cannot credibly argue that pressing hardship requires injunctive relief in the interim before the underlying matter is resolved."). Ultimately, Plaintiffs' seem to conflate their continued placement in adult detention centers with an alleged lack of consideration for less restrictive placements.

Third, there is no presumption of harm where, as here, that is the ultimate question to be decided on the merits. *See e.g*. *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001). Finally,

as discussed above, Plaintiffs are not likely to succeed on the merits.  Therefore, there is no ongoing cognizable legal harm.  What Plaintiffs complain of— placement in adult detention centers—is necessarily a component of immigration enforcement by the political branches of government.  *See Demore v. Kim*, 538 U.S. 510, 528 (2003); *Wing Wong*, 163 U.S. 228, 235 (1896).

### V.      The balance of harms and public interest weigh in favor of the Government

The purpose of a preliminary injunction "is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward."   *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (citations omitted).    Therefore, even if preliminary relief is warranted, "a court 'need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case.'"  *Id.* (citation omitted).

The balance of equities and consideration of the public interest factors are also "pertinent in assessing the propriety of any injunctive relief" and the court must weigh them with "serious consideration."   *Winter*, 555 U.S. at 27, 32.  When the Government is a party, these last two factors merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  The balance of hardships and public interest weigh in favor of Defendants.  In this case, Plaintiffs seek an injunction from this Court enjoining the Defendants from their alleged failure to consider Plaintiffs for placement in the least restrictive (or alternative) setting available.  But to do this, this Court must alter the *status quo* to monitor ICE's compliance.  Tr. at 3, ECF No. 17.  Moreover, Plaintiffs seek to circumvent the ordinary course of litigation by filing for an injunction in this jurisdiction, even though their Complaint's prayer for relief requests the very same relief requested here.  Granting the preliminary injunctive relief  Plaintiffs seek would alter, rather than preserve, the *status quo*. Interference with the manner in  which ICE exercises its authority, and carries out its  statutory

mandates, 8 U.S.C. § 1232(c)(2)(B), on a preliminary basis, significantly harms the Government and is not within the public's interest.

It is well-settled that the public's interest in enforcement of U.S. immigration laws is paramount, and even more so where, as here, Congress has exercised its plenary legislative authority and control over the Nation's border. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878-79 (1975); *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1220-21 (D.C. Cir. 1981).   Here, Plaintiffs ask this Court to intervene in an area where the actions about which they complain are mandated by unambiguous statutory provisions, 8 U.S.C. § 1232(c)(2)(B).   It cannot be in the public's interest to disregard these statutory mandates.   Moreover, Plaintiffs have not met the higher standard necessary when seeking to alter the *status quo* when seeking a preliminary injunction. *See Paleteria La Michoacana, Inc.*, 901 F. Supp. 2d at 56.   Therefore, Plaintiffs' motion should be denied.

## **CONCLUSION**

This Court should deny Plaintiffs' Motion for Preliminary Injunction because the two named Plaintiffs' claims were moot before this complaint was ever filed.  This Court should also find that even if their cases were not moot, Plaintiffs do not have a likelihood of success on the merits of their claims that either ICE does not have procedures to consider the least restrictive setting for these two individuals or that they did not "consider" release in their cases. There is abundant evidence now before this Court that ICE did provide guidance to the field offices regarding 8 U.S.C. § 1232(c)(2)(B) and that ICE considered the requests of both Garcia and Hernandez.  Finally, because neither moot Plaintiff can serve as a class representative, and

amendment would be futile, this Court should dismiss this case in its entirety, with prejudice or grant summary judgment to Defendants. *See* Fed. R. Civ. P. 12, 56, 65.

Dated: March 29, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

*/s/ Colin A. Kisor*
COLIN A. KISOR
Assistant Director

*/s/ Cara E. Alsterberg*
CARA E. ALSTERBERG
CHRISTINA PARASCONDOLA
THEO NICKERSON
Trial Attorneys
U.S. Department of Justice
Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
T: (202) 532-4667
F: (202) 305-7000
Cara.E.Alsterberg@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE
Civil Action No. 1:18-cv-00508-RC

I HEREBY CERTIFY that on March 29, 2018, a true copy of this *Defendants'*

*Opposition to Plaintiffs' Motion for Preliminary Injunction* was filed with the Clerk of the Court

using the CM/ECF system which sent notification of such filing via e-mail to the following:

Tia T. Trout Perez
Kirkland & Ellis LLP
655 15th Street, NW
Suite 1200
Washington, DC 20015
Email: ttrout-perez@kirkland.com

Anne K. Reser
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Email: anne.reser@kirkland.com

Katherine E.M. Goettel
National Immigrant Justice Center
208 LaSalle St.
Ben Franklin Station
St. 1300
Chicago, IL 60604
Email: kgoettel@heartlandalliance.org

Stephen R. Patton
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Email: stephen.patton@kirkland.com

ATTORNEYS FOR PLAINTIFFS

*/s/ Cara E. Alsterberg*
CARA E. ALSTERBERG
Trial Attorney
United States Department of Justice

ATTORNEY FOR DEFENDANTS