# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                              )
**WILMER GARCIA RAMIREZ, SULMA**    )    **Civil Action No. 1:18-cv-00508-RC**
**HERNANDEZ ALFARO, ANA P. on**        )
**behalf of themselves and others**         )
**similarly situated,**                          )    **Class Action**
                                              )
      **Plaintiffs**                    )
                                              )
    **v.**                                  )
                                              )
                                              )
**U.S. IMMIGRATION AND CUSTOMS**      )
**ENFORCEMENT (ICE); THOMAS**          )
**HOMAN) Acting Director of ICE;**         )
**DEPARTMENT OF HOMELAND**            )
**SECURITY; KIRSTJEN M. NIELSEN,**     )
**Secretary of Homeland Security,**           )
                                              )
      **Defendants.**                  )
_____ )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

## INTRODUCTION

      This case concerns, at bottom, how U.S. Immigration and Customs Enforcement

("ICE") should document its consideration of placing former unaccompanied alien

children ("former UACs") in the least restrictive setting available.  Under 8 U.S.C.

§ 1232(c)(2)(B), former UACs who age out of Department of Health and Human

Services ("HHS") Office of Refugee Resettlement ("ORR") custody at 18 years old are

transferred to ICE custody as adults.[1]  Under the plain and unambiguous terms of section 1232(c)(2)(B), ICE considers placement in the least restrictive setting only *after* ICE assesses the individual's flight risk and dangerousness.[2]  Therefore, the statute only mandates that ICE consider the least restrictive setting *in light of* the flight-risk and danger posed by the former UAC.  Any contrary reading of the statute would conflict with the overall scheme, structure and purpose of the detention statutes in the Immigration and Nationality Act ("INA"), which confer broad discretionary authority under 8 U.S.C. § 1226(a), to the Department of Homeland Security ("DHS") to detain aliens deemed flight risks pending their removal proceedings—such as, Wilmer and Sulma in this case.  Likewise, it would flatly conflict with the mandatory detention statutes, such as 8 U.S.C. § 1225(b)(2), under which Ana P. is detained.

Here, because all three Plaintiffs have been deemed flight risks and were considered for placement in least restrictive settings, and because Ana P. is also subject to mandatory detention as an arriving alien, this case is moot and was moot when the amended complaint was filed.  Even if not moot when filed, this case is moot now because all three Plaintiffs have received the consideration section 1232(c)(2)(B) requires and such consideration has been documented as ordered by the Court.

Further, because the only issue capable of being redressed by this Court at all is the manner in which ICE documented its factual considerations in deciding whether to

---

[1] Defendants hereby incorporate the statutory, regulatory and legal framework describing the Trafficking Victims Protection Reauthorization Act and its implementing guidelines and policies, as outlined in the opposition to Plaintiffs' preliminary injunction motion. See ECF No. 21, pp. 5-9.
[2] As argued below, if the Court finds the statute's language ambiguous, it should defer to ICE's reasonable interpretation.  *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

detain these three former UACs—a decision that is itself ultimately unreviewable—Plaintiffs lack standing to bring this case.  As this Court lacks jurisdiction to review ICE's ultimate custody decisions, it likewise lacks jurisdiction to review the manner in which ICE documents those custody decisions.  To the extent that the INA permits review of ICE's custody decisions regarding individual aliens not subject to mandatory detention, that review is vested in the immigration courts, not the federal district courts, and further review is available at the Board of Immigration Appeals ("BIA") and in the federal circuit courts of appeal.  *See* 8 C.F.R. §§ 1003.1(b)(7), 1003.19(f), 1003.38, 1236.1(d).  For former UACs, like Ana P., subject to mandatory detention, review of ICE's custody decisions is prohibited even by an immigration judge ("IJ").  *See* 8 C.F.R. §1003.19(h)(2)(i).  This Court would further lack jurisdiction to review any discretionary determination to parole a former UAC mandatorily detained under section 1225(b).  *See* 8 U.S.C. § 1252(a)(2)B)(ii).

Indeed, nothing in section 1232(c)(2)(B)'s requirement that ICE consider an additional discretionary factor for former UACs usurps the broad and unreviewable statutory discretionary authority Congress conferred on DHS in deciding whether to detain an individual.  *See* 8 U.S.C. § 1226(e); *see also* 8 U.S.C. § 1252(a)(2)(b)(ii).  Nor does section 1232(c)(2)(B) indicate that the normal means of challenging detention decisions should be different in these circumstances, allowing for a district court's review of ICE's discretionary considerations regarding custody decisions where such review is otherwise statutorily precluded.  *Id.*  Additionally, nothing in the channeling and jurisdiction-stripping statutes provides that the federal district courts will supervise record keeping under the Administrative Procedures Act ("APA") in order to assist the

immigration courts.  There is no APA jurisdiction because record keeping is not a final

agency action.  With respect to custody decisions for bond-eligible former UACs, there

exists another adequate remedy at law, which is review of custody decisions in the

immigration courts, and channeling to the federal circuit courts of appeal for judicial

review under 8 U.S.C. § 1252.  Finally, this case cannot proceed as a class action because

8 U.S.C. § 1252(f) deprives the district courts of jurisdiction for that.[3]

## **ARGUMENT[4]**

## **THE COURT SHOULD DISMISS THIS CASE FOR LACK OF JURISDICTION**

This lawsuit amounts to a jurisdictionally impermissible request that this Court

review two ultimately discretionary decisions which are not subject to judicial review by

the federal district courts.

Plaintiffs improperly seek review in this Court of ICE's decision to detain Wilmer

and Sulma under 1226(a) because they are flight risks.  The ordinary determination that

Wilmer and Sulma are flight risks and the decision to detain them under 1226(a) are

discretionary determinations subject only to review by an IJ and the BIA and not subject

to judicial review by this Court under § 1226(e).  *See* 8 U.S.C. § 1226(e).  The statute at

issue in this case, § 1232(c)(2)(B), requires only that ICE consider least restrictive

settings for former UACs who have turned eighteen.  However, the right to have a factor

considered in a wholly discretionary determination is not tantamount to providing a right

---

[3] *See* ECF No. 30 (Defendants' opposition to motion for class certification).  Rather than repeat them, Defendants incorporate by reference the arguments made here.
[4] Defendants hereby incorporate by reference the facts of the case as detailed in the class cert opposition filed in this case on Friday May, 4, 2018.  *See* ECF No. 31 at pp.1-13.

to discretionary relief nor does it overcome the bar on this Court's jurisdiction to review ICE's discretionary custody decisions when they decide to detain Plaintiffs under 8 U.S.C. § 1226(a). *See* 8 U.S.C. § 1226(e). Ultimately, ICE's decision to release an alien to a less restrictive setting or to continue detention after considering a less restrictive setting remains under the broad discretionary authority of relevant detention statutes, such as § 1226(a) or § 1226(c) and is not be reviewable by this Court. *See* 8 U.S.C. § 1226(e).

In a veiled attempt to obtain improper review of the discretionary decision to detain them, Plaintiffs assert that the issue is whether a less restrictive setting was in fact considered as required by § 1232(c)(2)(B). However, in Wilmer and Sulma's cases, only the IJ and BIA have jurisdiction to review ICE's custody determinations under 1226(a). *See* 8 U.S.C. § 1226(e); *see also* 8 U.S.C. § 1252(b)(9); *Jennings v. Rodriguez* 138 S.Ct. 830, 833 (2018). Plaintiffs do not, and cannot, cite to any case that holds that it was Congress's intent that § 1232(c)(2)(B) switch the jurisdictional forum for challenging discretionary detention decisions under § 1226(a) to federal district court from immigration court under the guise of seeking compliance with a separate overlapping statute. Therefore, the only proper avenue for a challenge to a custody determination, which is essentially what this lawsuit represents, is immigration court. *See Jennings*, 138 S. Ct. 830 at 852. (Thomas, J. concurring) (holding that federal courts lack the jurisdiction to review decisions to detain aliens under 8 U.S.C. § 1252(b)(9)).

Even more so, this Court is precluded from reviewing ICE's decision to detain Ana P. because she is subject to mandatory detention as an arriving alien. *See*

8 U.S.C. § 1225(b).[5]  Nothing in § 1232(c)(2)(B) indicates the requirement to consider

less restrictive setting overrides the broad authority Congress conferred on DHS to

mandatorily detain arriving aliens under § 1225(b) or its discretion to detain aliens

pending removal proceedings under § 1226(a).  *See generally Jennings*, 138 S. Ct. 830.

This Court is precluded from reviewing those decisions and therefore, lacks jurisdiction

over this case.   Further, like the flight risk determinations and decision to detain

Plaintiffs, the consideration of a former UAC who is now an adult for the least restrictive

setting under section 1232(c)(2)(B) is an ultimately discretionary decision insulated from

judicial review by 8 U.S.C. § 1252(a)(2)(b)(ii).

At its core, Plaintiffs' complaint is really an attempt to conflate failure to provide

a certain discretionary relief—placement in a least restrictive setting—with failure to

"consider" that relief.  Named Plaintiffs maintain that because ICE found them to be

flight risks and Plaintiffs' counsel believe that they are not in fact flight risks, ICE

therefore must have failed to consider the least restrictive setting.  Not only is this

argument circular and unavailing, it is inappropriate to ask this Court to review the

---

[5] *See* 8 U.S.C. § 1225(b)(2)(A) which states, in relevant part, "if the examining
immigration officer determines that an alien seeking admission is not clearly and beyond
a doubt entitled to be admitted, the alien ***shall be detained*** for a [removal] proceeding
under [INA § 240]" (emphasis added).  The immigration regulations pertaining to
arriving aliens who are placed in removal proceeding under INA § 240 provide that: "any
arriving alien who appears to the inspecting officer to be inadmissible, and who is placed
in removal proceedings pursuant to section 240 of the [INA] ***shall be detained*** in
accordance with section 235(b) of the [INA].  Parole of such alien shall only be
considered in accordance with § 212.5(b) of this chapter.  *See* 8 C.F.R. § 235.3(c)
(emphasis added); *see also* 8 U.S.C. § 1182(d)(5)(A)(providing for parole of arriving
aliens in the discretion of the Attorney General) ; *see also* 8 C.F.R. § 212.5 (parole of
aliens into the United States); *see also Clark v. Martinez*, 543 U.S. 371, 373 (2005) ("the
alien may be detained, subject to the Secretary's discretionary authority to parole him into
the country").

agency's flight risk determination where it lacks the jurisdiction to do so.  *See* 8 U.S.C. 1226(e).  The Court should therefore dismiss this action because it lacks jurisdiction to review both ICE's ultimate custody decision to detain the Plaintiffs under the applicable statutory authority and ICE's decision as to the least restrictive setting available—particularly where, as here, ICE determined that Plaintiffs were flight risks. *See* 8 U.S.C. § 1232(c)(2)(B); *see also* § 1226(e). Nor can this matter proceed as a class action.  *See* 8 U.S.C. § 1252(f).

The Court should also dismiss the action because, as explained in full detail below, Plaintiffs cannot show that Congress required ICE to consider them for least restrictive settings *after* they were determined to be flight risks, because they are not "such aliens" as referenced in that clause of the statute.  Nor can they establish that in exercising its discretion ICE in fact failed to consider them for such placement.  At most, and as this Court implicitly found in issuing its preliminary injunction (ECF No. 32 at 28-29), the problem is one of mere documentation: For two of the named plaintiffs, ICE's documentation of its discretionary decision was of less than ideal clarity.

Finally, now that ICE has documented its consideration of all the relevant discretionary factors required by § 1232(c)(2)(B) for all three named Plaintiffs, this case is moot.  Plaintiffs have also failed to state a claim that ICE is routinely and systematically failing to consider these discretionary factors in placing former UACs or that it lacks policies and procedures implementing the relevant portions of the statute. For these reasons and the ones argued further below, the Court should dismiss this case in its entirety for lack of jurisdiction. *See* Fed R. Civ. P. 12(b)(1),12(b)(6).

I.   **THE COURT LACKS SUBJECT-MATTER JURISDICTION BECAUSE PLAINTIFFS CANNOT MEET THEIR BURDEN TO ESTABLISH STANDING AS REQUIRED BY ARTICLE III OF THE CONSTITUTION.**

A.  **Subject-matter jurisdiction under Rule 12(b)(1).**

Rule 12(b)(1) requires a liberal review of the complaint in a light favorable to the plaintiffs. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004). Claims that are patently insubstantial, however, must be dismissed for lack of subject-matter jurisdiction for failure to adequately present a federal question. *Appling County v. Municipal Elec. Authority of Georgia*, 621 F.2d 1301, 1305-06, 1308-09 (5th Cir. 1980) (internal citations omitted). As the party claiming subject-matter jurisdiction, plaintiffs bear the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).

B.  **Jurisdictional elements of standing**.

The Supreme Court has held that the irreducible constitutional minimum of standing contains three elements. *Allen v. Wright*, 468 U.S. 737, 751, (1984). First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, *Id.*, 468 U.S. at 756, 104; *see also Warth v. Seldin*, 422 U.S. 490 (1975); *see Sierra Club v. Morton*, 405 U.S. 727, 740–741, n. 16, and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102, (1983)).

Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42

(1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id*., at 38, 43.

The party invoking federal jurisdiction bears the burden of establishing these elements. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231; *Warth*, 422 U.S., at 508. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 883–889.

### C.  Plaintiffs cannot establish injury in fact.

Plaintiffs lack standing because they fail to demonstrate an injury in fact. The statute dictates that ICE shall "consider" the least restrictive setting available in determining whether to detain former UACs who have turned eighteen. However, Plaintiffs have suffered no injury in fact because they have no legally protected right to be placed in the least restrictive setting or to be free from detention particularly where, as here, Plaintiffs have been deemed to be a flight risk. Further, because the ultimate decision of whether to place an alien in the least restrictive setting is purely discretionary and statutorily insulated from judicial review by this Court, Plaintiffs have no legally cognizable or protected interest to such discretionary relief. Plaintiffs, therefore, have not met their burden to demonstrate that they have suffered an injury sufficient to establish the jurisdictional pre-requisite of standing.[6]

---

[6] Defendants have read the Court's memorandum opinion granting Plaintiffs' motion for preliminary injunction issued on April 18, 2018, and assert the following arguments to preserve them.

i.     **There is no injury in fact because the statute does not require consideration of least restrictive settings where an alien is a danger or flight risk.**

By its express terms, section 1232(c)(2)(B) dictates that ICE *shall* consider the least restrictive setting only *after* determining flight risk and dangerousness.  *See* 8 USC 1232(c)(2)(B) (emphasis added).  Notably, the statute does not dictate that aliens who have been deemed dangerous or a flight risk be considered for the least restrictive setting, irrespective of this determination, because that would make no sense.  Rather, the statute, by its plain and unambiguous language, mandates the opposite: that consideration of least restrictive settings be done only after a determination regarding dangerousness and flight risk has been made.  As argued below, if the statute required consideration of all least restrictive settings for those deemed flight risks and dangerous the terms "after" and "such aliens" in the statute would be rendered meaningless.[7]

To be sure, ICE may consider detention alternatives in its discretion, even where aliens may pose a flight risk, as it did here; however, the order of the clauses in the statute makes clear that ICE is not statutorily required to consider the least restrictive setting for aliens deemed dangerous or flight risks.  Rather the statute permits ICE to consider alternatives to detention on a continuum based on the initial flight risk and dangerousness finding.  A contrary reading of the statute would conflict with the broader framework and wide discretionary authority Congress conferred on the Attorney General under 1226(a) to detain aliens deemed dangerous or, in as this case, flight risks.  This is

---

[7] If the Court finds the statute is ambiguous, it should conduct a *Chevron* analysis and defer to ICE's reasonable interpretation of the statute.  *See Chevron,* 467 U.S. at 837.

even more so, in the case of Ana P., who is subject to mandatory detention under section 1225(b) as an arriving alien.

Rather, under section 1226(a), ICE possesses the discretionary authority to arrest and detain an alien during removal proceedings and may release on bond an alien whom it detains as a matter of discretion. *See* 8 U.S.C. § 1226(a)(2). Agency regulations detail the procedures ICE uses to determine whether such an alien may be released. Under those regulations, ICE makes an initial custody determination. If ICE decides not to release the alien, and the alien is statutorily eligible, the alien may seek a custody redetermination or bond hearing before an IJ and a review of the IJ's decision before the BIA. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(c)(8), 1236.1(d)(1) & (3); *see also Matter of Guerra*, 24 I&N Dec. 37, 37 (BIA 2006). At the bond hearing before an IJ, the alien bears the burden of justifying his discretionary release by showing that he is not a flight risk or a danger to the public. *See* 8 C.F.R. § 1236.1(d)(1); *see also Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009); *see also Matter of Adeniji*, 22 I&N Dec. 1102, 1110–11 (BIA 1999). The IJ then decides whether to release the alien or to modify any release conditions based on a variety of factors that attempt to predict whether the alien will endanger the community or abscond before his removal. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Under section 1226(a), an alien must establish to the satisfaction of the IJ and the BIA that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight. *See Matter of Adeniji*, 22 I&N Dec. 1102 (BIA 1999); *see also Jennings*, 138 S.Ct. at 833 (noting that § 1226(a) permits the Attorney General to issue warrants for the arrest and detention of these aliens

pending the outcome of their removal proceedings and that the Attorney General "may release" these aliens on bond, "[e]xcept as provided in subsection (c) of this section.")).

Nothing in section 1232(c)(2)(B) suggests Congress intended for the requirement that ICE consider least restrictive settings for former UACs to conflict with either the above-described statutory scheme set forth in § 1226(a) or the statutory mandate that arriving aliens, such as Ana P., be subject to mandatory detention under § 1225(b). As held by the Supreme Court, Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *See Whitman v. American Trucking Assns. Inc*., 531 U.S. 457, 468 (2001). Nor did Congress intend for the statute's requirement "to consider" least restrictive settings to undermine the broad discretionary authority Congress conferred on the Attorney General in § 1226(a) to enforce the nation's immigration laws by detaining aliens deemed to be flight risks or dangerous people. *Id.*

Rather, the opposite is true. The statutory language in § 1232(c)(2)(B) requiring that former UACs who have turned eighteen be considered for least restrictive settings only *after* flight risk or danger is determined indicates Congress's intent that it fit within the structure and operation of the broader framework of § 1226(a), whereby the Government has broad authority to discretionarily detain aliens it deems dangerous or flight risks. A contrary reading of the statute would severely handicap the federal government's ability to enforce its borders by requiring that those subject to mandatory detention, dangerous or flight risks be considered for release from detention. There is no evidence Congress intended 8 U.S.C. § 1232(c)(2)(B) to have such an effect.

ii.     **There is no injury in fact because Plaintiffs do not have a statutorily or constitutionally protected right to discretionary relief.[8]**

Section 1232(c)(2)(B) simply dictates a factor—the alien's status as a previously unaccompanied minor—that ICE shall consider in coming to a discretionary determination as to whether to detain the alien under §1226(a) or any other relevant detention authority, or to release them with or without supervision during the pendency of their removal proceedings. *See* 8 U.S.C § 1226(a); *see also* 8 U.S.C. § 1232(c)(2)(B). Although consideration of this factor is itself not discretionary, as the Court noted in its opinion on the preliminary injunction, the ultimate decision of whether to detain the individual does indeed fall within the Attorney General's broad discretionary authority to detain aliens pending removal proceedings under §1226(a)[9]. *Jennings*, 138 S.Ct. at 833. Because the ultimate decision is still discretionary, the statute does not confer a legal right to be placed in the least restrictive setting and therefore, Plaintiffs cannot establish an injury in fact. *See* 8 U.S.C. § 1252(a)(2)(b)(ii) (stating in relevant part that no court shall have jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be *in the discretion of the Attorney General or the Secretary of Homeland Security*" (emphasis added)).

Likewise, Plaintiffs do not have a constitutionally protected right to be placed in the least restrictive setting because it is discretionary relief.[10]  Aliens who seek only

---

[8] There is also no statutory requirement that consideration be documented or explained in any particular manner because it is not judicially reviewable.  That is why ICE has no form for documenting it that would become part of an Alien file.

[9] In the case of Ana P., her detention is mandated by statute.  *See* 8 U.S.C. § 1225(b).

[10] Plaintiffs do not make a constitutional due process claim anywhere in the Amended complaint.  *See* ECF No. 21.

discretionary relief have no constitutional right to receive that relief. *See Hernandez v. Gonzales*, 437 F.3d 341, 346 (3d Cir. 2006) (internal citations omitted). Failure to receive discretionary relief in the immigration context does not deprive an alien of a constitutionally protected liberty interest. *See Garcia–Mir v. Meese*, 788 F.2d 1446 (11th Cir. 1986); *see also Tefel v. Reno*, 180 F.3d 1286, 1300 (11th Cir. 1999)

An alien has no constitutionally-protected right to discretionary relief or to be eligible for discretionary relief. *See Mohammed v. Ashcroft*, 261 F.3d 1244, 1250 (11th Cir. 2001); *see*, *e.g.*, *Smith v. Ashcroft*, 295 F.3d 425, 430 (4th Cir. 2002) (noting that aliens have no protected liberty or property interest in a waiver of deportation under former INA § 212(c) because such relief is discretionary); *see also Yuen Jin v. Mukasey*, 538 F.3d 143, 156–57 (2d Cir. 2008)

In sum, because placement in least restrictive settings is a discretionary decision which this Court lacks jurisdiction to review under 8 U.S.C. § 1252(a)(2)(b)(ii), there can be no legally protected interest, either under the statute or the Constitution. Where there is no legally protected interest, Plaintiffs fail to establish an injury in fact.

### D. Plaintiffs cannot establish causation.

The second element Plaintiffs have failed to establish is causation. As noted previously, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Simon*, 426 U.S. at 41–42. Plaintiffs cannot show beyond mere speculation that the alleged failure of ICE to consider least restrictive settings resulted in them being detained and not placed in such settings. Rather, ICE's decision to detain

Sulma and Wilmer rested in their broad authority under § 1226(a) to detain aliens deemed a flight risk.  For Ana P., the decision to detain was exercised pursuant to the statute mandating detention of arriving aliens.  Accordingly, Plaintiffs cannot establish an injury where any alleged failure of ICE to consider the least restrictive environment is not the cause of their placement in detention.  Rather, irrespective of ICE's determination of this factor, Sulma and Wilmer would be detained under 8 U.S.C. § 1226(a) as they have been deemed to pose flight risks and Ana would be detained under 8 U.S.C. § 1225(b) mandatory detention as an arriving alien.

Plaintiffs cannot show that the decision to place each in immigration detention was a result of ICE's alleged failure to consider less restrictive settings.  Plaintiffs have failed to show either injury in fact or that the complained of Government action or inaction in this case, was the cause of any such injury.  Plaintiffs, therefore, fail to establish sufficient standing to invoke this Court's jurisdiction.

**E.  Plaintiffs cannot establish redressability**.

**i.       It is both unlikely and speculative that any relief ordered by this Court would redress Plaintiffs claims.**

The third and final factor Plaintiffs must establish to demonstrate standing is that the alleged injury is "fairly traceable to the challenged action of the defendant" and that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180–81 (2000).  It is unlikely that even if the Court did exactly as the Plaintiffs ask (that ICE reconsider its detention decision, or consider it in the first instance), that ICE would use its discretion to reach a different result. That is because ICE determined that Plaintiffs pose flight risks and there is no indication that as such,

15

they are eligible for the discretionary relief of being placed in a least restrictive setting.

Indeed, ICE upon reconsideration reached similar conclusions.  The only reason the

outcome was different for Sulma, was because she was conferred an immigration benefit

and is no longer subject to removal.  *See* ECF 30-1, ¶ 25  Ordering ICE to consider a

factor that arguably does not apply to them in mere speculation that it may achieve a

different result is too speculative to meet the Supreme Court's standard for redressability.

*See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992).  In this Court's

preliminary injunction, it ordered only that ICE undertake a reconsideration and

document its reconsideration in detail, without merely parroting the words of the statute.

(ECF No 28 at 39. 41.)  ICE has done so.  Accordingly, Plaintiffs lack standing for

anything further, or on a class-wide basis.

> ### ii.     The IJ and BIA have exclusive jurisdiction to review ICE's discretionary determination to detain under 1226(a) and the federal district courts lack jurisdiction to review their decisions.

This Court lacks jurisdiction to consider Plaintiffs challenges to ICE's

discretionary decision to detain them under § 1226(a).  *See* 8 U.S.C. § 1226(e).  It also

lacks jurisdiction to review ICE's determination that all three Plaintiffs pose a flight risk.

*Id.*  Nothing in § 1232(c)(2)(B) changes that.  Any challenge to a flight risk finding or a

discretionary decision to detain under § 1226(a), which this case essentially is, should be

done in immigration court.  *See generally* 8 U.S.C. § 1226(a).  Plaintiffs' assertions that

they cannot afford bond or the fact that they have already been deemed flight risks does

not change that an IJ and the BIA are the only ones with jurisdiction to entertain a

challenge to discretionary detention decisions under § 1226(a).  *Id.*  Ordering ICE to

reconsider least restrictive setting in light of ICE's flight risk findings would amount to

an impermissible review of those flight risk determinations. *See* 1226(e).  Moreover, Congress cannot have intended that an alien in removal proceedings be allowed to challenge ICE's detention decision in both immigration court and District Court at the same time. *See* 8 U.S.C § 1252(b)(2), *Jennings*, 138 S. Ct. at 830.

With respect to all three Plaintiffs, the decisions to detain them after finding that they are fight risks are discretionary determinations that are unreviewable by the Court under § 1226(e).  For all these reasons, the Court lacks jurisdiction to redress the Plaintiffs claims and they have thus, failed to establish standing as required by Article III of the Constitution.

### iii.   The Courts order granting Plaintiffs preliminary injunction motion makes clear it lacks the power to redress a legally protected interest.

Indeed, the Court's own order, granting Plaintiffs motion for preliminary injunction highlights the standing issues posed by the Plaintiffs' complaint.  In its decision, this Court found it likely that Defendants could establish the merits of their claim that ICE did not properly consider § 1232(c)(2)(B) in exercising its discretionary decision to detain Sulma and Wilmer under § 1226(a).  *See* ECF No. 28.  However, the only relief that the Court could grant was to require that ICE re-do and more clearly document its decision-making process specifically, its consideration of § 1232(c)(2)(B).  *See* ECF No. 28 at p. 42.  The Court could not order that ICE change its decision on whether to detain under § 1226(a) nor could it review the flight risk determinations.  *Id.* As the Court itself noted, it could not order Defendants to place them in the least restrictive setting.  *See* ECF No. 28.   The redressability requirement of standing dictates that there be "a likelihood that the requested relief will redress the alleged injury."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)  Unless the alleged injury

Plaintiffs sustained consisted only of not having the decision-making process documented in a particular manner, the Court's own order makes clear that it lacks the power to grant meaningful relief that redresses Plaintiffs alleged injury in the Complaint.

Instead, the Court's order itself demonstrates that the only alleged injury, capable of being redressed by this Court is not having ICE's consideration of § 1232(c)(2)(B) thoroughly documented: because the right to detain is an ultimately discretionary determination, the consideration required by § 1232(c)(2)(B) does not give rise to any legally protected right that is capable of being redressed by this Court.  Instead, as this Court lacks jurisdiction under § 1226(e), and § 1252(a)(2)(b)(ii) to order Plaintiffs be placed in a least restrictive setting where they have been deemed flight risks,  Plaintiffs have failed to show that ICE's alleged failure to consider section 1232(c)(2)(B) resulted in anything other than a lack of paperwork.  Indeed, this Court's own order demonstrates that this is the only claim capable of being redressed by the Court.  However, because the statute does not require any particular documentation, Plaintiffs cannot establish that any failure to document its decision making process with respect to section § 1232(c)(2)(B) resulted in a cognizable injury in fact.  *Lujan*, 504 U.S. at 560–561.

In sum, Plaintiffs fail to meet all three jurisdictionally required elements of standing because they: 1) cannot demonstrate that their right to have less restrictive settings considered under § 1232(c)(2)(B) resulted in the denial of a legally protected interest, 2) cannot establish that it caused them to be placed in detention or caused any legally cognizable right to be violated, and finally, 3) cannot show that any alleged injury is redressed by the only relief this Court can grant—requiring ICE to provide more documentation of a factor it considers in its discretionary detention authority.  It is

speculative at best that requiring ICE to document its decision would redress Plaintiff's complaint. *Lujan*, 504 U.S. at 560–561.

## II.    THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS' CLAIMS WERE MOOT WHEN THIS CASE WAS FILED AND REMAIN MOOT NOW.

### A.  Mootness standard.

This Court has no jurisdiction over moot controversies. *Anderson v. Carter*, 802 F.3d 4, 10 (D. C. Cir. 2015). "It has been held that a 'moot' case is beyond the jurisdiction of the federal courts because of the 'case or controversy' requirement, *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67 (1983), or because the opinion in a moot case would be merely advisory." *Indep. Bankers Asso. v. Conover*, 603 F. Supp. 948, 954 (D.D.C. 1985) (citing *Preiser v. Newkirk*, 422 U.S. 395 (1975)). The mootness doctrine ensures compliance with Article III's case and controversy requirement by "limit[ing] federal courts to deciding actual, ongoing controversies." *Aref v. Lynch*, 833 F.3d 242, 250 (D.C. Cir. 2016 (quoting *Am. Bar Ass'n v. Fed. Trade Comm'n*, 636 F.3d 641, 645 (D.C. Cir. 2011)). Accordingly, mootness must be assessed at "all stages" of the litigation to ensure a live controversy remains. *21st Century Telesis Joint Venture v. FCC*, 318 F.3d 192, 198 (D.C. Cir. 2003). A case is moot if the Court's decision "will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Am. Bar Ass'n*, 636 F.3d at 645.

As argued above, because Plaintiffs were deemed flight risks, and there were no suitable alternative settings available to mitigate that flight risk, Plaintiffs were not entitled to any further consideration for less restrictive settings under section 1232(c)(2)(B). Moreover, now that ICE has again considered Plaintiffs Wilmer and

19

Sulma for the least restrictive setting and thoroughly documented their consideration,

Plaintiffs claims are moot because they have received all of the relief to which they are

entitled under the statute.  Ana P.'s claim is also moot as the declaration from

Supervisory Detention and Deportation Officer ("SDOO") Linda Hyde makes clear that

she too was considered for placement in the least restrictive setting in compliance with

§ 1232(c)(2)(B), even despite that she is subject to mandatory detention as an arriving

alien under § 1225(b).  *See* Hyde Decl.

**B.  The plain language of Section 1232(c)(2)(B) requires former UAC aliens be considered for least restrictive settings based on their level of flight risk and danger.**

**i.      Standards of statutory interpretation.**

When looking at the interpretation of a statute, the Court first considers "whether

Congress has directly spoken to the precise question at issue," and whether "the intent of

Congress is clear."  *Chevron*, 467 U.S. at 837.  If so, "that is the end of the matter; for the

court, as well as the agency, must give effect to the unambiguously expressed intent of

Congress."  *Id.* at 842-43.  If, however, the Court determines that the statute is "silent or

ambiguous with respect to the specific issue," then the Court must proceed to *Chevron*'s

second step, and determine "whether the agency's answer is based on a permissible

construction of the statute."  *Id.* at 843.  The Court should not substitute its judgment for

that of the agency, even if the agency's interpretation is not "the reading the court would

have reached if the question had arisen in a judicial proceeding." *Id.* at 843 n.11.

Indeed, the Supreme Court has held that "[t]he cardinal canon of statutory

interpretation is that" a court "look[s] first to the text of the statute." *See Conn. Nat'l

Bank v. Germain*, 503 U.S. 249, 253 (1992). "Statutory construction must begin with the

language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc*., 469 U.S. 189, 194 (1985)) "In the absence of statutory definitions," the court "accord[s] words and phrases their ordinary and natural meaning and avoid[s] rendering them meaningless, redundant, or superfluous." *See CFTC v. Worth Bullion Grp., Inc*., 717 F.3d 545, 550 (7th Cir.2013) (internal quotation marks omitted).

Further, statutes should be construed "in a manner that gives effect to all of their provisions," *See United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933, The Supreme Court held that its duty, after all, is "to construe statutes, not isolated provisions." *See Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290, (2010) (internal quotation marks omitted).  "Statutory interpretation is a holistic endeavor and, at a minimum, must account for the statute's full text, language as well as punctuation, structure, and subject matter." *See United States Nat'l Bank of Or. v. Independent Ins. Agents*, 508 U.S. 439, 454–56, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993) (internal quotations and citations omitted).

In this circuit, "[w]hen interpreting a statute, the judicial task is to discern, and give effect to, the legislature's intent." *See A.R. v. F.C*., 33 A.3d 403, 405 (D.C.2011) (quoting *Grayson v. AT & T Corp*., 15 A.3d 219, 237 (D.C.2011) (en banc)). "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Peoples Drug Stores v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (en banc); *see also Wynn v. United States*, 48 A.3d 181, 188 (D.C. 2012).

ii.   **The statute is unambiguous and does not require that Plaintiffs be considered for lesser restrictive settings than they were, as they were deemed flight risks.**

The Court should begin its inquiry with the plain text of the statute, here**:**

"If a minor described in subparagraph (A) reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary *shall* consider placement in the least restrictive setting available *afte*r taking into account the alien's danger to self, danger to the community, and risk of flight. *Such aliens* shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home."

*See* 8 U.S.C. § 1232(c)(2)(B) (emphasis added).

Section 1232(c)(2)(B) is unambiguous.  By its plain statutory terms, it does not require Plaintiffs be considered for the least restrictive settings irrespective of the finding that they posed flight risks.  To hold otherwise would render the word "after," the phrase "such aliens" and the order and placement of these terms in the statute, meaningless. Indeed, the word "after" indicates that the determinations regarding flight risk and danger and the consideration of least restrictive settings are distinct and happen at separate times, with the determination as to flight risk and danger occurring first.  If the statute did not clearly separate the two considerations of:  1) flight risk and danger and 2) least restrictive settings by the word "after," the statute would indicate that all former UACs regardless of flight risk or danger shall be considered for the least restrictive setting. Yet, this reading of the statute would mandate that all former UACs, even dangerous criminals and those who pose a threat to national security or a significant flight risk, be considered for the least restrictive settings.   Such an interpretation is not only absurd, it is not what the plain language of the statute says.  Rather, the statute makes clear that the opposite is true – only "after" a determination has been made as to flight risk and danger

can the alien be considered for a least restrictive setting.  The Court should avoid

rendering meaningless the word "after" and the clear distinction Congress made between

these considerations by separating them with the word "after."  *See* 8 U.S.C.

§ 1232(c)(2)(B).   Further, the preeminence of the flight risk and danger determination

within the structure of the sentence is significant because it indicates that it acts as a

requisite determination, further highlighting that Congress intended for only aliens not

deemed a flight risk or danger to be considered for detention alternatives.  *Id.*

 The statute further states that "such aliens" shall be eligible to participate in

detention alternatives, signifying that after the flight risk and danger determination is

made only "such aliens," *not all*, will be eligible for the discretionary relief of being

placed in the least restrictive setting.  To assume that all aliens regardless of an

affirmative determination that they pose a flight risk or danger are eligible for detention

alternatives, would defy common sense and render the structure of the sentence and the

phrase "such aliens" meaningless.

Further, the broader statutory scheme governing the detention of aliens informs

that the statute should be read this way, otherwise, it would run counter to the vast

majority of Congress's legislative detention authority.  *See United Sav. Assn. of Tex. v.

Timbers of Inwood Forest Associates, Ltd.*, 108 S.Ct. 626 (1988) (holding "a provision

that may seem ambiguous in isolation is often clarified by the remainder of the statutory

scheme ... because only one of the permissible meanings produces a substantive effect

that is compatible with the rest of the law).  Nothing in section 1232(c)(2)(B) suggests

that Congress intended for the requirement that ICE consider least restrictive settings for

former UACs, to conflict with the larger statutory scheme of detention law or the broad

discretionary authority set forth in § 1226(a) and, certainly not the statutory mandate that

arriving aliens, such as Ana P, be subject to mandatory detention under 8 U.S.C.

§ 1225(b)(2).   Again, such an interpretation of the statute would require that former

UAC criminal aliens and those who pose a significant national security or flight risk be

considered for the least restrictive settings.  This cannot be what Congress intended.

    **C.  This case is moot because Plaintiffs have been afforded the only relief to which they are entitled or that they requested.**

    **i.    Sulma was considered for the least restrictive setting given her flight risk determination.**

On February 7, 2018, in a conversation with her attorney, Deportation Officer

Robert Cantu verbally denied Sulma's request to be placed in the least restrictive setting

because he determined that she posed a flight risk.  *See* Cantu Decl., ECF No. 21 Ex. A

¶¶ 7, 8.  In making his flight-risk determination, Mr. Cantu, took all the relevant factors

into consideration including, Sulma's status as a former UAC, her current age, lack of

criminal history, and her pending application with U.S. Citizenship and Immigration

Services.  *Id* ¶8.  He also considered her lack of any strong family ties in the United

States, her lack of a fixed stable address and her lack of an appropriate sponsor.  *Id.*

Based on all these factors, Mr. Cantu deemed Sulma a flight risk and recommended

detention under § 1226(a).  His supervisor concurred with the recommendation, taking

into account Sulma was a former UAC who had turned 18 and that "she posed a high risk

of absconding due to not having a sponsor or a fixed address" in the United States.  *See*

Cortez Decl., ECF No. 21, Ex. B ¶¶ 22, 23.  The only relief requested in Plaintiffs'

complaint is that a least restrictive setting be considered "after" a determination is made

as to flight risk and danger.  *See* ECF No. 21 at p. 23, Prayer for Relief ¶ G.  Here, that

determination was made and Sulma was found to be a flight risk and there was no suitable least restrictive setting based on this determination.  Cantu Decl., ECF No. 21 Ex. A ¶¶ 7, 8; Cortez Decl., ECF No. 21 Ex. B ¶¶ 22, 23.

Further, the evidence makes clear that ICE did in fact consider Sulma for the restrictive setting.  Officer Cantu specially considered the least restrictive setting in this case, La Posada Provincial.  Prior to his conversation with Sulma's lawyer, Officer Cantu reviewed the Abbreviated Alien File for Sulma which included a letter from La Posada Provincial indicating that it would host Sulma during her pending removal proceedings, if released her to their custody.  Cantu Decl., ECF No. 21 Ex. A ¶¶ 10, 13.  Officer Cantu's declaration makes clear that he specifically weighed the option of the least restrictive setting, La Posada Provincial, with other factors relating to discretionary detention including whether Sulma had a sponsor, a fixed permanent address, or family ties to the United States.  *Id.*  Further, when considering the least restrictive setting, Officer Cantu noted that relying on his colleagues' experience, La Posada Provincial was not an appropriate setting for Sulma, because people often leave soon after arriving as they are free to do so.  Officer Cantu's Supervisor also specifically considered the least restrictive setting for Sulma, La Posada Provincial.  *See* Cortez Decl., ECF No. 21 Ex. B. He agreed with Officer Cantu. *Id.*  SDDO Cortez found that in his professional experience, which includes over fifteen years as a Detention and Supervisory Detention and Deportation Officer, and the last six months as Supervisor of the Juvenile Unit in South Texas, that people released to La Posada Provincial often abscond and do not appear in immigration

court and that La Posada Provincial does not provide a forwarding address.[11] *Id.* at ¶ 12. Finally, SDDO Cortez indicated that ICE is not aware of any other appropriate supervised group homes or least restrictive settings that could adequately ensure that Sulma would not be a flight risk.  *Id.*

Given her flight risk determination and the unreliability of La Posada Provincial, ICE properly considered the least restrictive setting. In its discretion, it decided to detain Sulma under section 1226(a).[12]  Because she has received the consideration required by statute, Sulma's claim is moot.  Furthermore, her claim is moot because ICE has now reconsidered the same discretionary factors and come to the identical conclusion.  *See* ECF No. 30-1, ¶ 25.

However, Sulma has now been released since she was conferred legal status in the United States on April 30, 2018.  *Id. ¶* 26.  For all these reasons, her claim that ICE never considered her for the least restrictive setting is now undeniably moot.

---

[11] At the hearing on Plaintiffs' preliminary injunction Plaintiffs' counsel stated that she believes people who stay at La Posada Provincial are not free to leave.  However, she cited to no evidence or personal experience leading her to have formed this belief.  *See* Tr. at pp 5-6; *see also* ECF No. 25.  In contrast, SDDO Cortez cited to his direct professional experience as Director of the Juvenile Management Unit in South Texas where, he has personally handled cases where aliens staying at La Posada Provincial have absconded and failed to appear for immigration court.  It is Plaintiffs burden to establish jurisdiction and their claim for relief.  *See* Rule 12(b)(1).  Ultimately, the decision not to place Sulma at La Posada Provincial is not subject to this Court's jurisdiction and Plaintiffs cannot establish that ICE did not consider La Posada Provincial, which they do not contest is the least restrictive setting.

[12] Discussed further below, the Court lacks jurisdiction to review the decisions to detain Sulma and Wilmer under 8 U.S.C. § 1226(e).  Likewise, under 8 U.S.C § 1252(a)(2)(b)(ii), the Court lacks jurisdiction to review the decision not to place Sulma at La Posada Provincial and the decision not to release Wilmer on his own recognizance.

ii.    **ICE also considered Wilmer for the least restrictive setting given his flight risk determination.**

Like Sulma, Wilmer has already been considered for a least restrictive setting given his flight risk and his claim is moot.  Furthermore, because he was reconsidered yet again for the least restrictive setting and ICE has released him, his claim is also moot. *See generally* ECF No. 30-2.

Christine Hoopes, Supervisory Detention and Deportation Officer in Phoenix, Arizona, reviewed Wilmer's case and provided a declaration with accompanying documents regarding ICE's consideration of Wilmer for detention given his former UAC status.  *See generally* Hoopes Decl., ECF No. 21 Ex. D. SDDO Hoopes' declaration and attached documents make clear that all the relevant factors in § 1232(c)(2)(B) were considered, regardless of whether the statute was explicitly mentioned in the emails and other documents.[13]  *Id.*  Indeed, ICE considered all the necessary and relevant factors to make a proper consideration under § 1232(c)(2)(B) such as, potential sponsorship, family ties, whether Wilmer has a fixed address, his prior UAC status, and his pending relief application.  *Id.*  Further, ICE considered and responded to the letter from Wilmer's attorney which specifically identified him as UAC and requested the least restrictive setting, in his case, release on recognizance.  *Id.*  Because Wilmer has received a flight risk determination and been considered for the least restrictive setting, his claim too was moot when this suit was brought.  In any event, he has now been reconsidered for the last

---

[13] Notably, there is no requirement anywhere in Section 1232(c)(2)(B) that the statute be cited or the consideration listed in the statute be documented in any particular way. *See* 8 U.S.C. § 1232(c)(2)(B).

restrictive setting, ICE has documented its consideration and he has been released.  *See*

ECF No. 30-2.  His claim is now moot.

### iii.    Ana P. was deemed a flight risk, is mandatorily detained and she too was considered for least restrictive setting; her claim is moot.

In Ana P.'s case, she is subject to mandatory detention *and* was deemed to be a

flight risk.  *See* 8 U.S.C. § 1225(b)(2).  Although this ends the statutory inquiry and

renders her ineligible to be released, ICE went above what was statutorily required and

considered all the alternatives to detention in her case, including the least restrictive

setting such as release to a sponsor and release on her own recognizance.  *See* Hyde Decl.

Accordingly, Ana P.'s claim is moot because she was afforded all the relief to which she

is entitled.

SDDO Hyde found that because Ana P. had no fixed address and no family

connections in the United States, she posed a significant flight risk.  *Id ¶* 5.  Nevertheless,

SDDO Hyde considered placing Ana with a sponsor and reviewed ORR's attempts to

find a suitable sponsor.  *See* Hyde Decl. ¶¶ 3, 4.  She reviewed ORR's assessment of the

proposed sponsor and the reasoning for why the sponsor was found unsuitable and agreed

with that determination. *Id.*  She lists the reasons in her declaration. *Id.*  SDDO Hyde also

considered halfway houses or shelters that would accept Ana P., but was unaware of any.

*Id ¶* 4.  SDDO Hyde further considered release on an ankle bracelet or release on her own

recognizance but found that those were not viable options due to Ana P.'s lack of a fixed

address – a requirement to participate in those programs.  *Id. ¶* 5.  SDDO Hyde also

considered the fact that given that she had no address or sponsor, Ana P. would likely be

homeless upon release and this would pose a danger.  *Id.*  Finally, SDDO Hyde made a

decision, considering all these factors, including that Ana P. was deemed a flight risk, and

placed her in the least restrictive setting in the facility where she was placed, with other non-violent adult females.  *Id.* ¶ 6.

Because Ana P. has also been considered for the relief she has requested and more than required by statute, her claim is moot.

## III.    THE COURT LACKS SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1) OVER PLAINTIFFS' APA CLAIM.

### A.  Legal standards for APA claims.

The APA provides that a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action, is entitled to judicial review.  *See* 5 U.S.C. § 702.  However, the APA provides for judicial review only where plaintiffs have "no other adequate remedy in a court."  *See* 5 U.S.C. § 704; *see also Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (the language of 5 U.S.C. § 704 "makes it clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action").

Under the APA, a district court may "compel agency action unlawfully withheld or unreasonably delayed," and "hold unlawful and set aside agency action, findings and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," except when "statutes preclude judicial review" or the "agency action is committed to agency discretion by law."  *See* 5 U.S.C.  § § 701(a), 706.

**B. Plaintiffs cannot establish subject matter jurisdiction because the agency action they challenge is committed to agency discretion by law and is therefore unreviewable.[14]**

The APA exempts from judicial review agency action committed to agency discretion by law. *See* 5 U.S.C. § 701(a)(2). Indeed, 5 U.S.C. § 701(a) states, "[t]his chapter applies, according to the provisions thereof, except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." Before the Court may review any agency action under the APA, therefore, Plaintiffs must clear the hurdle of 5 U.S.C. § 701(a). They cannot do so here.

Although there is a "strong presumption" in favor of judicial review of agency action, *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971); *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006); *Electricities of N.C., Inc. v. S.E. Power Admin.*, 774 F.2d 1262, 1266 (4th Cir. 1985), such action has traditionally been considered unreviewable if it is "committed to agency discretion by law," *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 282 (1987) (internal quotations omitted). Agency action is "committed to agency discretion . . . in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Overton Park*, 401 U.S. at 410 (internal quotations omitted). There is no law to apply if "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985); *see also Collins Music Co., Inc. v. United States*, 21 F.3d 1330, 1335 (4th Cir. 1994). In other words, judicial review is foreclosed if the "agency action of

---

[14] Ana P.'s detention is mandatory rather than discretionary. *See* 8 U.S.C. § 1225(b)(2).

which plaintiff complains fails to raise a legal issue which can be reviewed by the court by reference to statutory standards and legislative intent." *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 346 (4th Cir. 2001) (quoting *Strickland v. Morton*, 519 F.2d 467, 470 (9th Cir. 1975)).  Nevertheless, if the underlying statute does not include meaningful (or manageable) standards, "regulations promulgated by an administrative agency in carrying out its statutory mandate can provide standards for judicial review." *Id.* (quoting *CC Distribs., Inc. v. United States*, 883 F.2d 146, 154 (D.C. Cir. 1989) (internal quotation marks omitted)).

In determining whether a "meaningful standard" for reviewing agency discretion exists, courts consider the particular language and overall structure of the statute in question, *see Webster v. Doe*, 486 U.S. 592, 600-01 (1988), as well as "the nature of the administrative action at issue," *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002); *Twentymile*, 456 F.3d at 156.  Though actions "committed to agency discretion by law" constitute a "very narrow exception" to the presumption favoring judicial review, *Overton Park*, 401 U.S. at 410, the Supreme Court and other courts have found numerous administrative decisions unreviewable under this standard, *see*, *e.g.*, *Lincoln v. Vigil*, 508 U.S. 182, 192-93 (1993) (decision to discontinue program funding); *Swift v. United States*, 318 F.3d 250, 252-53 (D.C. Cir. 2003) (decision to dismiss an action)

**C.  The action challenged is committed to the agency's discretion by law**.

First, the decision to detain Plaintiffs under 8 U.S.C. §1226(a) is committed to ICE's discretion by law under 8 U.S.C § 1226(e), which states in full:

> "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the

detention or release of any alien or the grant, revocation, or denial of bond or parole."

*See* 8 U.S.C. § 1226(e).  Second, ICE's discretionary determination as to whether to place Plaintiffs in the least restrictive setting is precluded from review by 8 U.S.C. § 1252(a)(2)(b)(ii), which insulates discretionary decisions from judicial review.

The APA is clear in 5 U.S.C. § 701(a) that its provisions do not apply "to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."   Here, because two statutes directly preclude judicial review of the action Plaintiff's challenge, Plaintiffs cannot establish subject matter jurisdiction under the APA.

On page sixteen of the Court's memorandum opinion granting Plaintiffs preliminary injunction motion, the Court noted that:

> "Defendants do not argue that judicial review of the challenged actions is precluded by statute, see 5 U.S.C. § 701(a)(1) (withdrawing judicial review under such circumstances), or that the decision whether to comply with 12 U.S.C. § 1232(c)(2)(B) is "committed to agency discretion by law" such that the decision is not subject to judicial review, see 5 U.S.C. § 701(a)(2). Accordingly, this Opinion does not reach these questions. It bears mention, though, that any argument on the latter point would be undermined by Defendants' apparent concessions that "[i]n section 1232(c)(2)(B), Congress required ICE to consider [unaccompanied alien children] who have turned eighteen for placement in locations other than adult detention centers" and that "ICE is required to also take into consideration their danger to self, danger to the community, and risk of flight as factors when making that decision." Defs.' Opp'n at 15."

Defendants concede that the statute requires, indeed mandates, consideration of a discretionary factor for those deemed not to be flight risks or dangerous.  However, the fact that the statute requires certain factors be taken into consideration does not negate the fact that the ultimate decisions to be made—whether to detain or place in a less restrictive setting—are wholly discretionary in nature.  Further, Defendants now point this Court to

8 U.S.C. § 1226(e) which deprives this Court of jurisdiction to review ICE's decision to detain Sulma and Wilmer under § 1226(a).  As established above, even review of whether the agency considered the proper factors in deciding to detain Wilmer and Sulma is proper only in immigration court, under § 1226(e).  Further, judicial review of the decision not to place Wilmer and Selma in a less restrictive setting is precluded from review by § 1252(a)(2)(b)(ii).   Plaintiffs challenge actions committed to agency discretion and they, therefore, fail to establish APA jurisdiction.

### D.  Plaintiffs cannot establish subject matter jurisdiction under the APA because there is no final agency action.

A claim under the APA to compel agency action unlawfully withheld or unreasonably delayed can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.  *See* 5 U.S.C.A. § 706(1); *Norton v. S. Utah Wilderness All*., 542 U.S. 55 (2004).  No such discrete agency action exists here.

The plain dictionary meaning of the term "consider" indicates that it is a purely mental inquiry that requires no specific action be taken as a result of such consideration.  *See Black's Law Dictionary* (10th ed. 2014), available at Westlaw BLACKS (defining "consider" as to "think about," "ponder," or "examine"); *see also* "consider." *Merriam-Webster Online Dictionary*. 2018. http://www.merriam-webster.com (25 April 2018) (defining "consider" as to "think about carefully" and to "think about especially in regard to taking a specific action.").  By definition taking a factor into consideration, although it may be required by a statute, such as here, does not compel a discrete agency action which can be challenged under the APA.  Indeed, the required-action limitation rules out

judicial direction of even discrete agency action that is not demanded by law. *Norton*, 542 U.S. at 55. No such agency action is demanded by law here. *Id.*

Notably, here, upon finding Plaintiffs could likely establish that ICE did not demonstrate that it considered the least restrictive setting, the Court's remedy was to order the agency to take an action not described in the statute at issue. *See* ECF No. 27; *see also* § 1232(c)(2)(B). Indeed, documenting its decision making process was not required of ICE by the statute. *See* § 1232(c)(2)(B). In fact, nothing in the plain meaning of the term consider requires that ICE take any specific discrete action whatsoever. However, "the only agency action that can be compelled under the APA is action legally required." *Norton*, 542 U.S. at 63 ("This limitation appears in § 706(1)'s authorization for courts to 'compel agency action unlawfully withheld.'"). Section 1232(c)(2)(B) requires only consideration of a certain factor and does not demand or require that any discrete agency action be taken, sufficient to sustain APA review of Plaintiff's claims. *Id.*

Further, to meet their burden to establish APA jurisdiction, Plaintiffs must show that the "agency action" in question is a "final agency action." *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."; *see also Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 883, (1990) (holding that "the party seeking review under § 702 must show that he has 'suffer[ed] legal wrong' because of the challenged agency action, or is 'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute.'").

The Supreme Court held in *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997), that two conditions must be met for agency action to be "final." First, the action must mark

the "consummation of the agency's decisionmaking process," *Id.* (citing *Chicago &*
*Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)—it must not
be of a merely tentative or interlocutory nature.  Second, the Supreme Court held that the
action must be one by which "rights or obligations have been determined," or from which
"legal consequences will flow," *Id* (citing *Port of Boston Marine Terminal Assn. v.*
*Rederiaktiebolaget Transatlanti*c, 400 U.S. 62, 71 (1970).

The consideration of a less restrictive setting, or even the lack of any such
consideration, does not mark the consummation of the agency's decision-making process
as custody determinations are by their very nature continuous and ongoing.  In its
opinion, the Court stated that Defendants do not "contend that Plaintiffs' placements
were subject to further consideration by the agency after DHS made its custody
determinations." *See* ECF No. 28 at p.21.  It further noted that "Defendants rejected
affirmative requests by counsel for each Plaintiff for changes in their respective
placements."  *Id.*  However, ICE indeed does continuously provide custody reviews and
reassess the discretionary factors in detention conditions on an ongoing case-by-case
basis.  In fact, the same day that this Court issued its preliminary injunction, an IJ
conducted another bond hearing for Sulma and declined to change the custody
determination based on the alleged change in circumstances.  *See* ECF 30-1, p.8.

Here, ICE cannot have made a final agency decision when it placed Plaintiffs in
detention as, even since this Court issued its opinion, the agency has reconsidered
Sulma's detention conditions and issued a new decision.  Simply because the IJ declined
to change the custody conditions does not undermine the fact that Sulma's detention
conditions were in fact reconsidered and thus ICE's initial placement of Plaintiffs was not

a final agency action.  Further, an IJ could issue a custody redetermination for Wilmer or Ana P. at any time and these custody decisions are appealable to the BIA.  The consideration of one of many discretionary factors in making an initial custody placement is not a discrete final agency action within the meaning of the APA, as it can be challenged and reconsidered by ICE, an IJ and on appeal to the BIA.  *Bennett*, 520 U.S. at 177–78.

In addition, this is not a final agency action within the meaning of the APA because it is not a decision through which legal consequences flow.  *Id.*  This Court reasoned in its opinion that ICE's alleged failure to consider least restrictive settings is a discrete action through which legal consequences flowed because it resulted in the Plaintiffs detention.  *See* ECF No. 28 at p.22 (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").  However, Plaintiffs were detained for superseding detention concerns and not due to a failure to consider the discretionary factor of a less restrictive setting.  Rather, all three Plaintiffs are detained because they were determined to be flight risks and indeed, Ana P. is subject to statutorily mandated detention under § 1225(b)(2) as an arriving alien.  *See* 8 U.S.C. § 1225(b)(2).  Therefore, because it was not the basis for Plaintiffs detention, any alleged failure to consider detention alternatives was not an "agency action" from which legal consequences flowed.  *See Bennett*, 520 U.S. at 177–78.

Finally, Plaintiffs' sweeping and overly broad allegation that ICE is failing to consider least restrictive settings across the board also constitutes a "'generalized

complaint about agency behavior' that gives rise to no cause of action" under the APA.

*See* ECF No. 21*, ¶* 4; *see also Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir.

2006)).  Indeed, "an on-going program or policy" or here, the alleged lack thereof, "is

not, in itself, a 'final agency action' under the APA.  Further, "while a single step or

measure is reviewable, an on-going program or policy is not, in itself, a 'final agency

action' under the APA." *Lujan*, 497 U.S. at 890.

　　　For all these reasons, Plaintiffs fail to establish that their cause of action arises

under the APA. *See* §706(1).

### E.  Plaintiffs cannot establish subject matter jurisdiction under the APA because there is another adequate remedy at law.

　　　The Supreme Court has held that in enacting 8 U.S.C. § 1252(a), Congress

eliminated any presumption of release pending deportation, committing that

determination to the discretion of the Attorney General.  *See Carlson v. Landon*, 342 U.S.

524, 538–540 (1952).  Even if detention becomes prolonged, the Supreme Court has long

held that the remedy for aliens in removal proceedings subject to prolonged detention is

an individualized bond hearing before an IJ.  *See Reno v. Flores*, 507 U.S. 292, 309

(1993) (holding that due process was satisfied where detained juveniles had the right to a

hearing before an IJ).

　　　Here, both Plaintiffs have sought bond. Wilmer sought a custody redetermination

hearing for bond on November 7, 2017.  *See* Leal Decl., Motion for Custody

Redetermination Hearing, ECF No. 21 Ex. E-2.  However, on November 17, 2017, he

subsequently moved to vacate the bond hearing.  *Id*.  Sulma recently applied for bond on

March 16, 2018, and was granted bond at $10,000.  *See* Cantu Decl., ECF No. 21 Ex. A

¶ 16.  On April 18, 2018, Sulma requested reconsideration before the IJ for her $10,000 bond but the IJ found there were no changed circumstances to merit reconsideration.  *Id.* Sulma may appeal this decision up to the BIA.  Therefore, Plaintiffs have another adequate remedy available to them.[15]

In its opinion, the Court found that because bond hearings did not address the right to not be placed in detention until sometime after Plaintiffs had been detained, it was not an adequate remedy.  *See* ECF No. 28 at p. (holding that "a non-citizen may quickly receive a bond hearing, but prompt action is not necessarily guaranteed.") However, there is no reason to think that a District Court would provide a faster remedy. In this case, Wilmer's bond hearing was scheduled within two weeks of the date he requested, and Sulma's bond hearing was schedule within five days of her initial request. *See* Tr. at 33, ECF No. 17.  Further, Sulma requested and received her second bond hearing custody redetermination prior to when the Court issued its preliminary injunction and she had not even requested it yet at the time of the hearing on the preliminary injunction.

In addition to the concern that bond hearings make take more time, Plaintiffs also claim that bond hearings are not adequate because they require that aliens who make bond pay money.  *See generally* ECF No. 19.   However, whether the remedy Congress has already created to challenge custody decisions, is less convenient for Plaintiffs is of no legal relevance whatsoever.  Indeed, "[t]he Constitution does not guarantee litigants the most effective means of judicial review for every type of claim they want to raise."

---

[15] Ana P. is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), therefore she is ineligible for a bond hearing.

*See Jennings*, 138 S. Ct. at 852.  (Thomas, J. concurring) (citing *Reno v. AADC*, 525 U.S. 471, 487–492 (rejecting a similar argument); *Heikkila v. Barber*, 345 U.S. 229, 237 (1953) (explaining that limitations on judicial review of deportation must be followed "despite [their] apparent inconvenience to the alien")).  "This is especially true in the context of deportation, where limits on the courts' jurisdiction have existed for almost as long as federal immigration laws, and where this Court has repeatedly affirmed the constitutionality of those limits." *Id.*  Congress has already developed a statutory and regulatory scheme for addressing detention challenges.  *See generally* 8 U.S.C. § 1226; *see also* 8 C.F.R. § 1236.1.  That a District Court may provide a faster remedy that is less expensive, is simply an insufficient legal basis to create another remedy at law, where one already exists.

Finally, this Court in its opinion found that "certainly, Defendants have not pointed to clear and convincing evidence that Congress intended immigration courts to provide the only source of relief for Plaintiffs' injuries." *See* ECF.  No.  28 at p. 25.  Defendants now point to § 1226(e) as this clear and convincing evidence.  *See* 8 U.S.C. § 1226(e).  Indeed, § 1226(e) clearly evinces Congress's intent to strip the Courts of jurisdiction to review discretionary detention decisions under § 1226(a), like those made with respect to Sulma and Wilmer.  *Id.*  Furthermore, Ana P. is subject to mandatory detention under § 1225(b)(2) which also clearly deprives this Court of jurisdiction over the decision to detain Ana P., as it is statutorily mandated.  *See* 8 U.S.C. § 1225(b)(2).

## IV.   THE COURT LACKS JURISDICTION BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM UNDER RULE 12(b)(6).

Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of

the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss under Rule 12(b)(6), the pleading must contain enough factual allegations to "state a claim to relief that is plausible on its face." *Id.* at 570. A complaint is "plausible on its face" when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

As established above, the statute does not require Plaintiffs be considered for the least restrictive setting as they have been deemed flights risks or subject to mandatory detention, and in any event, ICE considered such settings. For the same reasons this case is moot, Plaintiffs fail to state a claim under Rule 12(b)(6).

### A. Plaintiffs cannot demonstrate that ICE is uniformly failing to consider the least restrictive settings with respect to former UACs placed in ICE custody.

Plaintiffs assert that ICE is "routinely and systematically" failing to consider unaccompanied minor immigrants who "age-out" of ORR custody at age 18 for the "least restrictive setting. *See* ECF No. 21 ¶ 4. Plaintiffs evidence consisting of declarations from individual practitioners speculating as to internal procedures at ICE is insufficient to state a claim as sweeping as Plaintiffs assertion that ICE is failing to comply with 1232(c)(2)(B) across the board. *See* ECF No. 21, Exhibits A-E. Meanwhile, their own evidence attempting to establish that ICE is failing to consider least restrictive settings, refutes this very claim on its face.

In the statements from individual practitioners, they rely on their experience with ICE denying requests for least restrictive settings as "evidence" that ICE has utterly failed to consider those settings. However, a discretionary denial is not the same as failure to consider a discretionary factor. In contrast, Defendants can provide unrefuted

statistical evidence that makes clear ICE is both considering and placing former UACs transferred to ICE custody from ORR in least restrictive settings. *See* Harper Decl., ECF No. 21, Ex. C ¶ 5. According to ICE's statistics, only 57% of former UACs transferred from ORR are detained rather than placed in the least restrictive setting. *Id.*

Further, the statements form practitioners themselves clearly demonstrate that ICE is in fact considering least restrictive settings for former UAC aliens transferred to ICE custody. *See* Ex. A, Wu Declaration. For example, in her declaration, Attorney Wu describes many of her experiences advocating on behalf of UACs transferred to ICE custody. *Id.* Interestingly, she indicates that many of them are in fact released to least restrictive settings including being released on bond, paroled into the country with no conditions, or released to community-based or individual sponsors. *Id.* at ¶¶ 18-27, 31, 32-36, 39. Thus, Wu's statements directly contradict Plaintiffs allegation that ICE is routinely and systematically failing to consider former UACs for least restrictive settings. *Id.* Instead, her main complaint seems to be that these former UACs were not granted this discretionary release to a less restrictive setting fast enough. *Id.*; *see also* ¶ 39 (former UAC released to sponsor one month after transfer to ICE custody), ¶¶ 40-41 (former UACs released to community-based sponsor several weeks after transfer to ICE custody); ¶24 (former UAC released to family sponsor a few weeks after transfer to ICE custody), ¶23 (former UAC released two months after transfer to ICE custody).

Plaintiffs' argument relies on the logical fallacy that because some former UACs are being denied release or that they are not released fast enough, ICE is somehow wholesale failing to consider less restrictive settings. But, this argument fails on its face because by their own admission ICE is releasing former UACs to least restrictive

settings— albeit not as fast enough as Plaintiffs would like, however, ICE is doing so. Therefore, Plaintiffs own evidence demonstrates that ICE is in complete compliance with the plain terms of the statute.  Although former UACs have a statutory right to be considered for placement in a least restrictive setting, they are not guaranteed that relief by the statute.  Nor, are they guaranteed consideration or release prior to being transferred to ICE custody or prior to an assessment on flight risk or danger— or, really on any specific timeline under the statute.

Rather, the statute specifically contemplates this consideration be taken into account after transfer to ICE custody.

> "If a minor described in subparagraph (A) reaches 18 years of age and *is transferred to the custody of the Secretary of Homeland Security*, the Secretary *shall consider* placement in the least restrictive setting available *after* taking into account the alien's danger to self, danger to the community, and risk of flight. Such aliens shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home."

*See* 8 U.S.C. § 1232(c)(2)(B) (emphasis added).

Nowhere in the plain language of the statute does it say that these considerations must be made prior to transfer into ICE custody.  In fact, the opposite is true.  The plain language of the statute makes clear that the consideration as to least restrictive setting happens after a former UAC is transferred to ICE custody by ORR, when they are no longer minors.  The statute makes no time requirement as to when these discretionary considerations take place.  Plaintiffs attempt to read into the statute an affirmative duty that ICE find and establish a least restrictive setting prior to the UAC entering custody. The Court should decline to read such a requirement into the statute.  Finally, the statute makes clear that the discretionary considerations of least restrictive settings and

eligibility for detention alternatives take place only "*after*" "*such aliens*" are deemed not to be a danger or flight risk.  *See* 8 U.S.C. § 1232(c)(2)(B) (emphasis added).

As it is, ICE only receives a few days' notice from ORR when a UAC is transferring from ORR to ICE custody.  *See* Hyde Decl. ¶ 3.  It would be a tremendous burden, one not contemplated by the statute if, as Plaintiffs suggest, ICE were required to affirmatively find and establish an appropriate least restrictive setting for UACs before any former UAC even enters ICE custody.

**B.  Plaintiffs fail to establish either that ICE does not have any policies and procedures or sufficient policies and procedures implementing § 1232(c)(2)(B).[16]**

Melissa B. Harper ("Harper") is Chief of ICE's Juvenile and Family Residential Management Unit (JFMRU) which, develops specific policies sensitive to the vulnerabilities of UACs and families.  *See* Harper Decl., ECF No. 21 Ex. C. ¶ 1.  In her declaration, Harper states that JFRMU trains, monitors, and advises Field Office Juvenile Coordinators (FOJCs).  Her declaration makes clear that shortly after 8 U.S.C. § 1232(c)(2)(B) was enacted, ICE did in fact, develop implementing guidance which, was broadcast to all ICE Field Office Directors and ICE Deputy Field Office Directors via email on May 9, 2013 and subsequently made permanently available on the JFRMU

---

[16] Notably, after the filing of Defendants response to Plaintiffs' preliminary injunction motion, in which Defendants included evidence of ICE's implementation of policies, procedures and guidance regarding 8 U.S.C. § 1232(c)(2)(B), Plaintiffs amended their complaint, at paragraph 82, to challenge the sufficiency of ICE's policies rather than rely on their previous assertion that ICE lacked such policies and procedures.  *Compare* ECF No. 1 ¶ 82 *with* ECF No. 21 ¶ 82.  As argued above such broad challenges to the sufficiency of agency policies and procedures is insufficient to invoke APA jurisdiction under Rule 12(b)(1).  *See Bark v. United States Forest Serv*., 37 F. Supp. 3d 41 (D.D.C. 2014).  Plaintiffs also fail to state a claim on this allegation under Rule 12(b)(6) for the reasons argued in this section.

intranet page for all ICE Detention and Supervisory Detention and Deportation Officers to access.  *See* ECF No. 21, Ex. C-1.  Specifically, the guidance sent to the ICE field offices attached a copy of the relevant statutory provisions of 8 U.S.C. §  1232 and instructed all ICE officers in the field to consider former UACs who reached the age of 18 while in ORR custody for the least restrictive setting on a case-by-case basis.  *Id.*  On November 3, 2013, JFMRU sent updated guidance on ICE's policies and procedures concerning custody determinations for former UACs transferred by ORR to ICE custody. *See* ECF No. 21, Ex. C-2.  This updated guidance instructed all ERO Field Office Directors, Deputy Field Office Directors, and Field Office Juvenile Coordinators to consider placement in the least restrictive setting after assessing an individual's danger to self, the community, and risk of flight.[17]   In direct contradiction to Plaintiffs claims, the updated guidance specifically dictated to ICE field officers that "a default to detention is *never* acceptable in these cases." *Id.* (referring to former UAC's transferred from ORR custody) (emphasis added).

Further, in August 2016 and  March 2018, JFRMU hosted a 3-day training workshop in Baltimore, Maryland, for all FOJCs and provided, among other things, specific guidance on the requirements of 8 U.S.C. $ 1232(c)(2)(B).  *See* Harper Decl. The training workshop specifically reiterated that a default to detention is not acceptable, and that the least restrictive setting should be considered in custody assessments of former UACs transferred by ORR.  *Id.*, attached Ex. 5.  What is more, in 2017, JFRMU

---

[17] Supervisory Detention Officer Hoopes confirms she received training and guidance on implementing section 1232(c)(2)(B).  *See* Hoopes Decl. § 4.

developed a manual on UAC issues to be distributed to all field offices and to be posted on JFRMU's intranet site. *Id.*, attached Ex. 6.

Plaintiffs simply cannot factually establish that ICE has failed to provide sufficient implementing guidance, policies or procedures in accordance with 8 U.S.C. § 1232(c)(2)(B). Accordingly, they fail to state a claim under Rule 12(b)(16).

## **CONCLUSION**

The Court should dismiss Plaintiffs' Amended Complaint for lack of jurisdiction.

Dated: May 7, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

COLIN A. KISOR
Deputy Director
Office of Immigration Litigation
District Court Section

CHRISTINA PARASCONDOLA
Senior Litigation Counsel

*/s/ Theo Nickerson*
THEO NICKERSON
CARA E. ALSTERBERG
Trial Attorneys
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-8906
Fax: (202) 305-7000
Theo.Nickerson@usdoj.gov
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 7, 2018, a true copy of this Defendants'

Motion to Dismiss was filed with the Clerk of the Court using the CM/ECF system which

sent notification of such filing via e-mail to the following:

Tia T. Trout Perez
Kirkland & Ellis LLP
655 15th Street, NW Suite 1200
Washington, DC 20015
Email: ttrout-perez@kirkland.com

Anne K. Reser
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Email: anne.reser@kirkland.com

Katherine E.M. Goettel
National Immigrant Justice Center
208 LaSalle St.
Ben Franklin Station St. 1300
Chicago, IL 60604
Email: kgoettel@heartlandalliance.org

Stephen R. Patton
Kirkland & Ellis LLP 300 North LaSalle
Chicago, IL 60654
Email: stephen.patton@kirkland.com


*/s/ Theo Nickerson*
THEO NICKERSON
Trial Attorney
United States Department of Justice