IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILMER GARCIA RAMIREZ, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) Case No. 1:18-cv-00508-RC |
| | ) |
| v. | ) Class Action |
| | ) |
| U.S. IMMIGRATION AND | ) |
| CUSTOMS ENFORCEMENT, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**PLAINTIFFS' REPLY BRIEF IN FURTHER
SUPPORT OF THEIR MOTION FOR EXPEDITED
<u>DISCOVERY AND A BRIEFING SCHEDULE AND HEARING</u>**

Defendants' Opposition does not dispute the applicable reasonableness test for determining when expedited discovery should be ordered, and it largely fails to address, let alone rebut, Plaintiffs' showing as to why that test, and its various factors, are satisfied here. Instead, it asserts a number of broad objections that are unsupported and wrong, and if accepted, would have the effect of foreclosing emergency relief in this and almost every other case.

<u>**ARGUMENT**</u>

Defendants do not dispute that Rule 26 "vests the trial judge with broad discretion . . . to dictate the sequence of discovery," including the authority to order expedited discovery. *See*, *e.g.*, *Malibu Media, LLC v. Doe*, 45 F. Supp. 3d 106, 108 (D.D.C. 2014); *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006). *See* Init. Mem. at 6. Nor do they dispute that the preferred approach in this District for determining whether expedited discovery is appropriate is the reasonableness test, and that under that test, courts in this District consider the reasonableness of the request for expedited discovery in light of the surrounding circumstances, including: (1) whether a preliminary injunction motion is pending;

(2) the reasonableness of the discovery requests; (3) the purpose for requesting expedited discovery; (4) the burden on defendants to comply; and (5) how far in advance of the typical discovery process the request was made. *See* Init. Mem. at 6; Opp. at 8. As Plaintiffs demonstrated in their initial memorandum, each of these factors supports granting Plaintiffs' motion for expedited discovery here.

**A.     Plaintiffs Have Moved for a Preliminary Injunction.**

Defendants concede, as they must, that this factor is satisfied here. *See* Opp. 9. Moreover, not only have Plaintiffs moved for a preliminary injunction, but that motion has been pending for almost six months. Given this lengthy delay, in many, if not most cases, the discovery Plaintiffs seek would already be available as a matter of right under the Federal Rules of Civil Procedure, and Defendants would already have been required to respond to those requests, without the need for an order of the Court.

**B.     Plaintiffs Seek Limited Discovery That Is Reasonably Related to Their Request for a Preliminary Injunction.**

The second "reasonableness" factor—the reasonableness of the discovery requests—also clearly weighs in Plaintiffs' favor here. Defendants do not even address, let alone dispute, that the discovery Plaintiffs seek, which is limited to a single set of twelve document requests and two depositions, is reasonably related to their request for a preliminary injunction. *See* Init. Mem. at 8-9. Nor could they. Each of Plaintiffs' requests is not only directly relevant to their request for a preliminary injunction, but each concerns matters that were actually in dispute and/or addressed in the Court's opinion with respect to Plaintiffs' prior request for a preliminary injunction with respect to the individual named Plaintiffs:

- <u>Documents Relating to Whether ICE Is Complying with Section 1232(c)(2)(B)</u>. As this Court found in its prior preliminary injunction order, the central issue as to Plaintiffs'

2

probability of success on the merits is whether Defendant U.S. Immigration and Customs Enforcement (ICE) is complying with Section 1232(c)(2)(B).  PI Order (ECF No. 28) at 15, 17, 27, 37.  In opposing Plaintiffs' motion as to the individual named Plaintiffs, Defendants presented evidence concerning the policy guidance and training they have provided to their employees concerning Section 1232(c)(2)(B) and argued that ICE had complied with Section 1232(c)(2)(B)'s requirement that it make available "alternative to detention programs" or other alternatives to adult detention.  *See* Defs.' Opp. to Prelim. Inj. (ECF No. 20) at 17-18; Harper Decl. (ECF No. 20-3) at ¶¶ 2-8 and attached Exs. 1-6.

Plaintiffs seek documents concerning each of these contentions and subjects.  *See* Ex. A, Document Request Nos. 1 (policy guidance); 2 (training materials); 3 (communications with ICE field offices concerning Section 1232(c)(2)(B)); 7 (the identity and descriptions of alternative to detention programs or other alternatives to adult detention); 8 (ICE's creation and use of "a continuum of alternative to detention programs" as described in Section 1232(c)(2)(B)); and 11 (documents ICE contends support its claim that it is complying with Section 1232(c)(2)(B)).

- <u>Documents Relating to ICE's "Risk Classification Assessment" Database Tool</u>.  In the prior preliminary injunction hearing, ICE introduced evidence concerning its "Risk Assessment Classification" tool, and argued that its use of this tool evidenced its compliance with Section 1232(c)(2)(B).  *See* PI Order (ECF No. 28) at 31; *see also* Defs.' Opp. to Prelim. Inj., (ECF No. 20) at 14; Cortez Decl. (ECF No. 20-2) at ¶ 22; Leal Decl. (ECF No. 20-5) at ¶ 7; Apr. 3, 2018 Hr'g Tr. 48-52.

Plaintiffs seek documents concerning this tool and its use with respect to members of the proposed class.  *See* Ex. A, Document Request Nos. 4 (documents describing the tool and its

purpose and use); 5 (application or use of the tool to comply with Section 1232(c)(2)(B)); and 6 (use of the tool with respect to Plaintiffs and members of the proposed class).

- Data Concerning ICE's Compliance with Section 1232(c)(2)(B). A key dispute in the prior hearing was the extent to which ICE was or was not complying with Section 1232(c)(2)(B), including whether its non-compliance had increased over time. *See* Apr. 3, 2018 Hr'g Tr. 57. Relatedly, Defendants attacked the declarations of legal service providers from across the country proffered by Plaintiffs documenting and describing ICE's non-compliance. *See* Opp. at 8. Plaintiffs' Request 9 seeks targeted data relating to these issues and ICE's compliance with Section 1232(c)(2)(B).

- Specific Documents Cited by Defendants in the Prior Hearing. Finally, in connection with the prior hearing, Defendants cited two types of reports relating to their compliance with Section 1232(c)(2)(B). *See* Harper Decl. (ECF No. 20-3) at ¶ 5 (discussing tracking procedures); *id*. Ex. 2 (describing Government Accountability Office reports). Plaintiffs' Document Request Nos. 10 and 12 request these documents. *See* Ex. A.

Defendants do not even address Plaintiffs' specific requests, let alone, dispute their relevance to Plaintiffs' request for preliminary injunction. Instead, Defendants create a new "guideline" that is not part of the reasonableness test and for which they do not cite any support—"[e]xpedited discovery is not warranted when it is broad and concerns issues going to the merits of [the] entire case, rather than narrowly tailored to reveal information regarding entitlement only to a preliminary injunction." Opp. at 10. As a threshold matter, the reasonableness test considers "the reasonableness of the discovery request"; it does not refer to, let alone require, a showing that a request is "narrowly tailored" or that it seeks information that does not "go[] to the merits of their case," but "only" to plaintiffs' entitlement to a preliminary injunction. *See*, *e.g.*, *Guttenberg v.*

4

*Emery*, 26 F. Supp. 3d. 88, 97 n.3, 98 (D.D.C. 2014); *In re Fannie Mae Derivative Litig.,* 227 F.R.D. 142, 142-43 (D.D.C. 2005).  Moreover, such a requirement would foreclose any discovery concerning an element that Defendants concede is "crucial" to Plaintiffs' entitlement to a preliminary injunction—a showing that they are likely to succeed on the merits.  Opp. at 10.  Information "going to the merits" is always necessary in order for a movant to establish that it is entitled to a preliminary injunction.  Such relief *requires* a showing that the movant is likely to succeed "on the merits of the entire case," and the movant cannot meet its burden without it.  Accordingly, such information is not only directly relevant at the preliminary injunction stage, but as Defendants elsewhere concede, "particularly crucial."  *Id*.

Not surprisingly, Defendants do not cite any support for this "guideline" because there is none.  The case they cite, *Guttenberg v. Emery*, *supra*, refutes, rather than supports, their argument.  There, in connection with a motion for preliminary injunction, plaintiffs sought broad discovery that, among other things, concerned the "damages . . . to which plaintiffs would be entitled if they prevailed on the merits." 26 F. Supp. 3d at 98.  It was in that context that the *Guttenberg* court observed that plaintiffs' requests were "not narrowly tailored to reveal information related to the preliminary injunction as opposed to the case as a whole."  *Id.*  This factual observation does not apply here:  all of Plaintiffs' requests relate to the elements that Plaintiffs must show to obtain a preliminary injunction; none relate to matters, such as damages, that are unrelated to Plaintiffs' request for emergency relief.  Moreover, in making this case-specific observation, the *Guttenberg* court did not purport to establish a *legal* requirement for expedited discovery that would apply generally or in other cases.  But even if it had, Plaintiffs' requests here would satisfy that requirement.  As Defendants do not dispute, all of those requests are "narrowly tailored" in the

sense that they seek "information related to the preliminary injunction as opposed to the case as a whole."

Defendants take this unexceptional and case-specific factual observation from *Guttenberg* and distort it into a purported legal prerequisite for expedited discovery that would be impossible for any movant to satisfy by adding the word "only" before "preliminary injunction." Opp. at 10. As a result, "narrowly tailored to reveal information related to the preliminary injunction, *as opposed to the case as a whole*," *Guttenberg*, 26 F. Supp. 3d at 98 (emphasis added), is transformed into "narrowly tailored to reveal information regarding entitlement *only* to a preliminary injunction." Opp. at 10 (emphasis added). But that is not what the *Guttenberg* court stated, let alone held, and such a "requirement" defies logic and settled law.

Relatedly, Defendants concede that Plaintiffs' requests all "bear directly on ICE's compliance with section 1232(c)(2)(B)," but assert "that is not the issue before the Court in deciding a preliminary injunction." Opp. at 12. But, as discussed above and as Defendants elsewhere admit (Opp. at 9), that *is* the issue before the Court on Plaintiffs' motion for preliminary injunction. Plaintiffs must show that they are likely to succeed on the merits of their claim that ICE is not complying with Section 1232(c)(2)(B). *See* PI Order (ECF No. 28) at 27, 37.

Next, Defendants complain that Plaintiffs' requests are "unlimited in temporal scope," and would "requir[e] a nationwide search" that they "could not possibly accomplish . . . on an expedited timeframe." Opp. at 12. None of these claims has merit. Plaintiffs' requests are not unlimited in temporal scope. Four document requests specifically reference a date limitation (Document Request Nos. 6, 9, 10, and 12), and the rest are all limited to documents concerning Section 1232(c)(2)(B), which did not become effective until June 7, 2013. Similarly, most of the requests call for documents, such as policy guidance, training and compliance materials, and the

identity and descriptions of alternative to detention programs, that are not only located at ICE's headquarters, but likely found in only one office or department within that headquarters, *viz*, the Juvenile and Family Residential Management Unit.  In any event, and as Plaintiffs' counsel previously advised Defendants' counsel when they raised this same objection during one of the parties' "meet and confer" calls, Plaintiffs will agree that Defendants can limit their search at the preliminary injunction stage to ICE's Washington, D.C. headquarters.  The proposed schedule should provide more than sufficient time to conduct such a single-location search and produce responsive documents, particularly where Defendants were served with these requests almost four months ago.

Finally, Defendants cite *Apple, Inc. v. Samsung Elec. Co., Ltd.*, No. 11–CV–01846–LHK, 2011 WL 1938154 (N.D. Cal. May 18, 2011), for the propositions that (1) they "should not be required to undertake—and indeed could not possibly accomplish"—such "'a wide-ranging investigation to determine whether [responsive] documents exist' on an expedited timeframe," and (2)  to require Defendants to prepare for a Rule 30(b)(6) deposition "at this early stage in the case would be unduly burdensome." Opp. at 12 (quoting *Apple*, 2011 WL 1938154, at *3).  But in that case, Apple sought voluminous documents and a Rule 30(b)(6) deposition regarding the design and marketing of five separate Samsung cell phones and computer tablets, and it made those requests shortly after the complaint was filed, before filing a motion for preliminary injunction, and "approximately two-and-a-half months before discovery would ordinarily become available." 2011 WL 1938154, at *1, 2.  Similarly, Apple's request for a 30(b)(6) deposition would have required Samsung "to interview numerous employees involved in the design and marketing of five different products and to identify and review the communications of those employees." *Id.* at *3.

Even then, however, the court granted Apple's motion and ordered expedited discovery; it just narrowed Apple's requests.

Plaintiffs' requests here do not remotely approach the breadth or burden of those in *Apple*. Moreover, this litigation has been pending for almost six months (instead of only a month) and defendants have been on notice of Plaintiffs' requests for almost four months (instead of less than a month). And, the person most knowledgeable about the topics on which Plaintiffs seek a Rule 30(b)(6) deposition (all of which relate to ICE's compliance with Section 1232(c)(2)(B)) is likely to be the same witness Plaintiffs seek to depose in her individual capacity, Mellissa Harper, who previously submitted a declaration in opposition to Plaintiffs' request for a preliminary injunction as to the individual named Plaintiffs that addressed many of these same topics.

C.  **Plaintiffs Seek Limited, Expedited Discovery to Support Their Request for a Class-Wide Injunction That Will Prevent Further Irreparable Harm to Class Members.**

The reasonableness test's third factor—"the purpose for requesting expedited discovery"—likewise supports expedited discovery here. Plaintiffs seek expedited discovery to support their request for a class-wide preliminary injunction and prevent further, irreparable harm to members of the proposed class, who will otherwise be denied "an avenue through which to secure a means of release that Congress explicitly provided" and thereby subjected to "[c]ontinued detention, where Plaintiffs might otherwise be eligible for less restrictive placements." PI Order (ECF No. 28) at 40; *see also* Init. Mem. at 9-10.

Once again, Defendants do not even attempt to rebut this showing—or the Court's prior findings. Instead, they repeat the same *non-sequitur* they previously raised in opposition to class certification and in support of dismissal—that ICE has "broad authority to detain non-citizens" under the general provisions of 8 U.S.C. §§ 1225(b) and 1226(a) and (c). Opp. at 13. Of course,

8

that is wholly beside the point here, as this Court has previously found.  *See* PI Order (ECF No. 28) at 40.

Defendants next assert the "Catch 22" argument that "Plaintiffs have proffered little in the way of persuasive evidence" to support their claim that ICE is not complying with Section 1232(c)(2)(B), and criticize Plaintiffs' reliance on third party declarations "by advocates conveying cursory, second hand accounts," while at the same time arguing that discovery of the documents and testimony of the party with first-hand knowledge of ICE's compliance—ICE—is not "necessary" for Plaintiffs to prove their entitlement to a preliminary injunction.  Opp. at 13-14.  Defendants cannot have it both ways.  At bottom, their argument simply demonstrates why the expedited discovery Plaintiffs seek is, in fact, necessary and appropriate.  It relates directly to Plaintiffs' ability to satisfy their burden of showing that they are likely to succeed on their claim that ICE is not complying with Section 1232(c)(2)(B).

Likewise misplaced is Defendants' reliance on *Wilcox Industries Corp. v. Hansen*, 279 F.R.D. 64, 70 (D.N.H. 2012).  Opp. at 14-15.  For starters, it concerned a different formulation of reasonableness, which included different factors, than the test in this District, including whether discovery was necessary "to preclude demonstrated irreparable harm" and "the plaintiff's likelihood of success on the merits."  *See* 279 F.R.D at 67-68.  As to the "irreparable harm" requirement, the *Wilcox* court considered two distinct types of harm—irreparable harm to the plaintiff from the underlying wrongdoing alleged in the lawsuit, and irreparable harm to "the plaintiff's ability to prosecute its claims," such as from the destruction of an allegedly infringing product or the inability to identify a defendant.  *See*, *id.* at 70.  The court found that the plaintiff there had not alleged or attempted to show either.  This Court's test includes no such factor, and even if it did, it would be satisfied here by Plaintiffs' allegations and showing of irreparable harm

9

from ICE's unlawful detention of Plaintiffs and members of the proposed class as a result of its failure to comply with Section 1232(c)(2)(B).  *See* PI Order (ECF No. 28) at 36-37.  Moreover, the request for expedited discovery there was filed on the day plaintiff's complaint was filed and, as the Court repeatedly emphasized, before a motion for preliminary injunction had even been filed.  279 F.R.D. at 67-68, 71.  And, the court found that the requested discovery appeared to be directed at discovering whether plaintiff had a claim, and collecting competitive information concerning the identity of the customers that the defendant was selling to, rather than preparing for a motion for preliminary injunction.  *See id.* at 68-69.

Finally, throughout their Opposition, Defendants suggest that expedited discovery is unusual or rarely ordered.  However, the cases are to the contrary.  Expedited discovery is frequently ordered where, as here, a litigant is seeking a preliminary injunction or other emergency relief.  *See*, *e.g.*, *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996) ("Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings."); *EXL Labs., LLC v. Egolf*, No. CIV.A.10-6282, 2010 WL 5000835, at *8 (E.D. Pa. Dec. 7, 2010) (same); *Marketran, LLC v. Brooklyn Water Enters., Inc.*, No. 9:16-CV-81019-WPD, 2016 WL 8678547, at *1 (S.D. Fla. Aug. 5, 2016) ("[E]xpedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings.  Expedited discovery has been ordered where it would better enable the court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing." (quoting *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613 (D. Ariz. 2001))).

**D.     The Limited Discovery Plaintiffs Seek Is Not Unduly Burdensome.**

The fourth factor considered under the reasonableness test—the burden on defendants to comply with the requests—also weighs in favor of expedited discovery here.  As discussed above,

Plaintiffs' requests are not unduly burdensome. They will require a search for directly relevant documents at one location, and in most cases, only one department. The witness Plaintiffs seek to depose was the witness Defendants selected to support their compliance with Section 1232 at the prior preliminary injunction hearing and who submitted a lengthy declaration on their behalf, and it is likely she will also be the most knowledgeable person ICE designates as its Rule 30(b)(6) witness. Moreover, Defendants do not dispute that all of Plaintiffs' requests call for discovery they will be required to produce in short order in any event in the course of ordinary discovery, or that they have had almost four months to gather and review the information Plaintiffs seek. *See* Init. Mem. at 10.

Finally, Defendants do not cite any support for their assertion that FOIA requests are a substitute for, or somehow relevant to Plaintiffs' entitlement to, expedited discovery, because there is none. Opp. at 15. The law is directly to the contrary. FOIA is neither a prerequisite nor a substitute for discovery. *See*, *e.g.*, *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("FOIA was not intended to function as a private discovery tool"); *Clay v. U.S. Dep't of Justice*, 680 F. Supp. 2d 239, 248 (D.D.C. 2010) ("FOIA is not a substitute for discovery rules which govern civil and criminal litigation where 'different consideration' are at issue."). But even if FOIA requests were relevant here (which they are not), Plaintiffs' counsel made two separate FOIA requests to ICE, for most, if not all, of the information it seeks here last March, and ICE has yet to produce a single document in response to any of those requests. *See* Exs. B and C.

E.      **Both This Suit and Plaintiffs' Motion for Preliminary Injunction Have Been Pending for Almost Six Months, and the Discovery Plaintiffs Seek Soon Will Be Required To Be Produced Pursuant to the Typical Discovery Process.**

Finally, the fifth reasonableness factor—"how far in advance of the typical discovery process the request was made"—weighs in favor of expedited discovery. Here, the answer is "not much." Both this suit and Plaintiffs' request for a preliminary injunction were filed almost six

months ago.  The regular discovery process will begin as soon as Defendants' motion to dismiss, which has been fully briefed since late May 2018, is decided.  Accordingly, Defendants will soon be required to provide this same information, even if expedited discovery were not ordered.

This is not a case like the ones Defendants cite, where expedited discovery was sought "only three weeks after defendants filed their motion to dismiss," *Guttenberg*, 26 F. Supp. 3d at 99, or "shortly after [motion-to-dismiss] briefing [was] concluded," *Landwehr v. FDIC*, 282 F.R.D. 1, 4 (D.D.C. 2010).  *See* Opp. 16.  Here, the briefing on Defendants' motion to dismiss was completed almost three months ago.  Moreover, if a pending motion to dismiss alone foreclosed expedited discovery (which it does not), expedited discovery would almost never be available and plaintiffs' ability to seek emergency relief and avoid irreparable harm would be severely constrained.  That is not the law.

## **CONCLUSION**

Plaintiffs respectfully request that the Court grant their Motion and enter their proposed order and schedule.  Even under the expedited schedule Plaintiffs seek, Plaintiffs' motion for class-wide emergency relief will not be heard, at the earliest, until almost two months after the date of this Court's order.  Plaintiffs respectfully submit that is a reasonable schedule that balances the convenience and litigation needs of the named parties and their counsel with the irreparable harm that is currently occurring and will continue until a preliminary injunction is entered, to members of the proposed class who, like named Plaintiffs Wilmer and Sulma before this Court's prior order granting such relief as to them, are currently sitting in adult detention but would be released to a less restrictive setting if ICE complied with Section 1232(c)(2)(B).  Indeed, as counsel was preparing this brief, it received the attached email, unsolicited, from the managing attorney at a legal aid organization in Los Angeles that represents former unaccompanied alien children who have turned 18.  *See* Ex. D.  It states in relevant part:

"[W]e have seen a marked increase in kids being detained rather than ROR'ed [released on their own recognizance] on their 18th birthdays from ORR shelters. We are now ONLY seeing UC mothers with children being released. Non-parenting teens are all being detained, even if there is a potential sponsor.

"I am aware of the NIJC class action, and I wanted to ask if NIJC has any updates."

*Id.* The need for expedited, emergency relief here is real. Plaintiffs respectfully request that their motion be granted.

| | |
|---|---|
| Dated:  August 24, 2018 | */s/ Stephen R. Patton* |
| | Devin A. DeBacker (D.C. Bar No. 1010934) |
| | Ross Powell (D.C. Bar No. 1048493) |
| | KIRKLAND & ELLIS LLP |
| | 655 Fifteenth Street, NW |
| | Washington, DC  20005 |
| | Tel.:   (202) 879-5000 |
| | Fax:   (202) 879-5200 |
| | devin.debacker@kirkland.com |
| | |
| | Stephen R. Patton |
| | Amanda A. Jacobowski |
| | Jamie R. Netznik |
| | KIRKLAND & ELLIS LLP |
| | 300 North LaSalle |
| | Chicago, IL  60654 |
| | Tel.:   (312) 862-2000 |
| | Fax:   (312) 862-2200 |
| | stephen.patton@kirkland.com |
| | amanda.jacobowski@kirkland.com |
| | jamie.netznik@kirkland.com |
| | |
| | Katherine Melloy Goettel |
| | NATIONAL IMMIGRANT JUSTICE CENTER |
| | 208 South LaSalle Street, Suite 1300 |
| | Chicago, IL  60604 |
| | Tel:    (312) 660-1335 |
| | Fax:   (312) 660-1505 |
| | kgoettel@heartlandalliance.org |

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 24th day of August, 2018, a true and correct copy of the foregoing was served via ECF upon counsel of record.

*/s/ Stephen R. Patton*
Stephen R. Patton