# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

WILMER GARCIA RAMIREZ,                    )
SULMA HERNANDEZ ALFARO,                    )
ANA P., on behalf of themselves and        )
others similarly situated,                 )
                                           )     Case No. 1:18-cv-00508
*Plaintiffs,*                              )
                                           )
            v.                             )     Class Action
U.S. IMMIGRATION AND CUSTOMS               )
ENFORCEMENT ("ICE"), et al.;               )
                                           )
                                           )
*Defendants.*                              )
_____)

## DEFENDANTS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(c)

Defendants respectfully seek a protective order pursuant to Federal Rule of Civil Procedure 26(c) to limit the scope of discovery to responsive, non-privileged information from 18 baseline custodians initially agreed upon by the parties and ordered by the Court. Production from the eighteen custodians represents a fair cross-section of ICE personnel nationwide who are involved in age-out determinations under 8 U.S.C. § 1232(c)(2)(B). Accordingly, any prospective production obligation for the additional 17 custodians which is currently being sought by Plaintiffs is unnecessarily cumulative, unduly burdensome, and not proportional to the needs of the case, particularly as the evidentiary landscape in this case changed dramatically in October 2018 with ICE's implementation of the age-out worksheet to document the

consideration required by 8 U.S.C. § 1232(c)(2)(B).[1]  In support of their Motion, Defendants

offer the following Memorandum of Points and Authority, the attached exhibits, the papers and

records on file herein, and any oral argument this Court may wish to hear.[2]

      The parties conferred regarding expansion of the ESI custodians and Defendants' Motion

on February 1, 2019, February 6, 2019, and February 13, 2019.  Plaintiffs' counsel indicated they

would oppose this motion on February 14, 2019.

---

[1]  On February 14, 2019, following two weeks of discussions via telephone and email, Plaintiffs
offered to reduce the number they are seeking to add as ESI custodians from 23 to 17.  *See*
Defendants' ESI Collection Chart ("Exhibit A"); Email of Kate Goettel of February 14, 2019
("Exhibit B").

[2]  Defendants also anticipate filing a Motion for Decertification of the Nationwide Class, and the
arguments therein inform upon, and support, this Motion.

DATED:  February 15, 2019

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

COLIN A. KISOR
Deputy Director

CHRISTINA PARASCANDOLA
Senior Litigation Counsel

CARA E. ALSTERBERG
Trial Attorney

KEVIN HIRST
Trial Attorney


By:  /s/ Yamileth G. Davila
YAMILETH G. DAVILA
Assistant Director
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-0137
Fax: (202) 307-8801
Email: yamileth.g.davila@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILMER GARCIA RAMIREZ, | ) | |
| SULMA HERNANDEZ ALFARO, | ) | |
| ANA P., on behalf of themselves and | ) | |
| others similarly situated, | ) | |
| | ) | Case No. 1:18-cv-00508 |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Class Action |
| U.S. IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT ("ICE"), et al.; | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |
| _____ | ) | |

---

### DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF MOTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(c)

---

DATED:  February 15, 2019

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

COLIN A. KISOR
Deputy Director

CHRISTINA PARASCANDOLA
Senior Litigation Counsel

CARA E. ALSTERBERG
Trial Attorney

KEVIN HIRST
Trial Attorney

By: /s/ Yamileth G. Davila
YAMILETH G. DAVILA
Assistant Director
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-0137
Fax: (202) 307-8801
Email: yamileth.g.davila@usdoj.gov
*Attorneys for Defendants*

## INTRODUCTION

This is an immigration case where Plaintiffs allege that Defendants are systemically failing to comply with U.S.C. § 1232(c)(2)(B) regarding age-out detention determinations.  To establish their claim, Plaintiffs' discovery requests have required Defendants to collect 2.8 million documents from 18 custodians.  Following a cumbersome collection and export process, and the application of the parties' agreed upon search terms and an Active Learning responsiveness review process, Defendants are presently engaged in privilege review and rolling productions of over 35,000 documents.[3]  Production of electronically stored information ("ESI") largely flows from 18 key headquarters and field custodians identified *by Plaintiffs* as most responsive.  Plaintiffs now seek additional productions from 17 supplemental custodians whose involvement in detention determinations is neither qualitatively nor temporally unique from the existing 18 baseline custodians.  Accordingly, because additional production of thousands of cumulative documents is entirely unnecessary to establish the total lack of compliance Plaintiffs' allege, the Court should grant Defendants' request for protection.

## BACKGROUND

## I.      OVERVIEW OF ICE'S COORDINATION AND RESPONSIBILITIES REGARDING JUVENILE ALIENS

### A.  Reorganization Following the Homeland Security Act of 2003

Most immigration enforcement functions are carried out by the Department of Homeland Security ("DHS"), in which Immigration and Customs Enforcement ("ICE") is housed.  *See* 6 U.S.C. §§ 111, 251, 291.  Congress established a different legal framework, however, for the care and custody of "unaccompanied alien children" ("UAC")—defined as children under age

---

[3]  Additionally, Defendants identified 71,000 excluded file types from the 18 baseline custodians outside of the Active Learning process.  ECF No. 104.

eighteen, who have no lawful immigration status in the United States and no parent or legal guardian in the United States available to provide care and physical custody.  *See* Memorandum Opinion of April 18, 2018 at 2 (citing 6 U.S.C. § 279(g)(2)).  Except in exceptional circumstances, unaccompanied minors apprehended by immigration officials are transferred to the custody of the Department of Health and Human Services ("HHS").  *Id.* (citing 8 U.S.C. § 1232(b)(3)).  The Office of Refugee Resettlement ("ORR"), a division of HHS, is thereafter responsible for, among other things, "coordinating and implementing the care and placement" of such children.  *Id.* (citing 6 U.S.C. § 279(a)–(b)(1)(A)).  Congress has established that these children "shall be promptly placed in the least restrictive setting that is in the best interest of the child" and that "[i]n making such placements, the Secretary [of HHS] may consider danger to self, danger to the community, and risk of flight."  *Id.* (citing 8 U.S.C. § 1232(c)(2)(A)).  HHS only has authority over the care and custody of immigrant children, thus, Congress extended certain protections to newly adult immigrants who were formerly in the care and custody of HHS pursuant to 8 U.S.C. § 1232(c)(2)(B).  *Id.*  Under this provision, DHS must "tak[e] into account" specified statutory factors and must "consider" placement in the least restrictive setting for those who aged out of HHS's jurisdiction.  *Id.* at 3.  But, unlike unaccompanied minors, these individuals are not promised placement in the least restrictive setting.  *Id.* (comparing 8 U.S.C. § 1232(c)(2)(A), with 8 U.S.C. § 1232(c)(2)(B)).

**B.  Juvenile Coordinator Positions Within ICE's Enforcement and Removal Operations ("ERO")**

In order to oversee juvenile responsibilities, ICE ERO has a Juvenile and Family Management Residential Unit ("JFRMU") that develops nationwide juvenile policy and serves as a liaison with other DHS components, HSS ORR, and volunteer agencies.  *See A Review of*

*DHS' Responsibilities for Juvenile Aliens*, DHS, Office of Inspector General, OIG-05-45 at 6.

JFRMU is an ICE Headquarters level Unit within ERO.  *Id.*

ERO has twenty-four (24) Field Offices nationwide, each with at least one Field Office

Juvenile Coordinator ("FOJC") who serves as a "local expert on the handling of juvenile issues

by DHS and assists with the initial placement of apprehended juvenile aliens."  *A Review of*

*DHS' Responsibilities for Juvenile Aliens*, DHS, Office of Inspector General, OIG-05-45 at 6.

FOJCs play an integral role in ensuring processing of all minor aliens, including UACs, is

conducted according to law and agency policies.  FOJCs also manage cases involving minors

and family units and provide policy guidance within their respective areas of responsibility.  *See*

ICE ERO, *Juvenile and Family Residential Management Unit Field Office Juvenile Coordinator*

*Handbook*, September 2017 at 10.  FOJCs are on call around the clock, as they may be needed to

assist with the processing and placement of UACs or other minor aliens at any time.  *Id.* at 13.

FOJCs are also responsible for facilitating arrangements between the arresting agencies, *i.e.*,

CBP or ICE, and the placement agency, ICE ERO or HHS ORR.  *Id.*  The FOJC provides

necessary information to HHS ORR about UAC prior to transfer and makes transportation

arrangements.  *Id.*  The FOJC is also responsible for managing the dockets of both UACs and

other minor aliens in their Area of Responsibility ("AOR"), including:

1. Following proper book-in and book-out procedures;

2. Coordinating with ORR facilities during custody transfers; and

3. Coordinating with consular officials for travel documents, including making
   travel arrangements for safe repatriation.

*Id.*  FOJCs also assist with case review and custody redeterminations.  *Id.*  Finally, FOJCs

coordinate with ORR shelters for UACs who have aged out of minor status upon their eighteenth

birthday.  *Id.*

### C.  Age-Out Procedures

The Violence Against Women Reauthorization Act ("VAWA") of 2013 directs that UACs aging out of ORR custody on their 18th birthday ("age-outs") be placed in the least restrictive setting available, taking into account the alien's danger to self, danger to the community, and risk of flight.[4]  *See* 8 U.S.C. § 1232(c)(2)(B).  ORR is required to notify the area FOJC when there is an age-out so the alien can return to ICE's Enforcement and Removal Operations ("ERO") for a custody determination.  *See Juvenile and Family Residential Management Unit Field Office Juvenile Coordinator Handbook Enforcement and Removal Operations*, ICE, September 2017 at 44.  As a best practice, a post-18 plan, also known as a recommendation of release, is submitted by the case worker or Federal Field Specialist ("FFS") to the FOJC.  *Id.* at 44-45.

Thereafter, ICE has several options with regard to custodial placement, including whether:

1.  The alien (now adult) may be transferred to adult ICE detention.

2.  The alien (now adult) may be released under an order of recognizance, release under Alternatives to Detention ("ATD"), or release upon the payment of a custody bond.

3.  The alien (now adult) may be released to an organizational sponsor, a supervised group home, or foster care.

*See Juvenile and Family Residential Management Unit Field Office Juvenile Coordinator Handbook Enforcement and Removal Operations*, ICE, September 2017 at 44-45.  To ensure compliance with VAWA, ICE's JFRMU tracks the custodial disposition of unaccompanied

---

[4]  The Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4 § 1261, Subtitle D Unaccompanied Alien Children, § 1261, March 7, 2013.

juvenile aliens in ORR care who reach their 18th birthday in ORR care and are referred back to ICE for custody determinations as adults. *See Juvenile and Family Residential Management Unit Field Office Juvenile Coordinator Handbook Enforcement and Removal Operations*, ICE, September 2017 at 43.

To improve documentation and tracking of custody determinations for age-outs, on October 17, 2018, ICE Headquarters, through JFRMU, issued updated guidance to FOJCs.  ICE Updated Documentation Guidance, at Bates No. ICE - 000585-86, ICE - 0005093-99 ("Exhibit D").  The updated guidance requires FOJCs to complete an Age-Out Worksheet documenting the FOJC's consideration of the least restrictive setting and alternatives to detention before making a custody determination for each age-out.  *Id.*  The three-page worksheet requires ICE FOJCs to consider information regarding the age-out's criminal and behavioral history.  *Id.* at Bates No. ICE – 0005097-99.  The form also directs the FOJCs to identify any available individual or organizational sponsors or supervised group homes.  *Id.*  In the event the FOJC declines to recommend placement in a group home or with a sponsor, the officer must explain their recommendation.  *Id.*  Likewise, if the officer determines that the age-out is a flight risk, a danger to themselves, or a danger to the community, the officer must again explain why in the space provided.  *Id.*  The worksheet also identifies several discretionary release options that are available to ICE officers, including orders of supervision, orders of recognizance, ICE bonds, or ICE's Alternatives to Detention program.  The FOJC must identify which options were considered and explain why others were not.  Finally, the worksheet asks the FOJC to make a detention decision considering the least restrictive setting available and provide a custody classification level for those age-outs who will be detained.  *Id.*

FOJCs must upload the Age-Out Worksheet to ICE's intranet site where it is available for tracking by JFRMUERO personnel.  Exhibit D at Bates No. ICE – 0005085-86.  In addition, for each age-out detained in ICE custody, FOJCs must also upload any supporting documentation to the intranet site.  *Id.*  Supporting documentation may include case comments from the ENFORCE Alien Removal Module ("EARM"), documents from the age-out's A-file related to the custody determination, ORR post-18 plans, and any other documents or emails related to the age-out's case.

## II.  PLAINTIFFS' ALLEGATION OF NATIONWIDE "SYSTEMIC" FAILURE TO COMPLY WITH VAWA

Plaintiffs filed this class-action on March 5, 2018.[5]  Compl., ECF No. 1.  In their Complaint, Plaintiffs sought relief under the Administrative Procedure Act ("APA"), alleging they represent a class of unaccompanied immigrant minors who have been transferred to the custody of ICE upon turning 18 and as to whom ICE has not considered placement in the least restrictive setting available and/or made alternative to detention programs available, as required under 8 U.S.C. § 1232(c)(2)(B).  ECF No. 1 ¶¶ 6, 8; *see* First Am. Compl. ¶ 4, 6, ECF No. 21.  Specifically, Plaintiffs allege "ICE is routinely and systematically failing to comply with the requirements of Section 1232(c)(2)(B) . . . . "  First Am. Compl. ¶ 5, ECF No. 21.  Moreover, Plaintiffs contend ICE has failed to establish "any policies, programs, or procedures implementing Section 1232(c)(2)(B)'s statutory requirements . . . . "  *Id.*  Plaintiffs additionally argue that, to the extent policies exist concerning compliance with 8 U.S.C. § 1232(c)(2)(B), "those policies and procedures are not being consistently enforced and followed."  *Id.* ¶ 82.

---

[5]  Plaintiffs subsequently amended their Complaint on March 30, 2018.  First Am. Compl., ECF No. 21.

Plaintiffs seek assorted declaratory and injunctive relief requiring ICE to comply with 8 U.S.C. § 1232(c)(2)(B).  *Id.* at 23.

On August 30, 2018, this Court granted Plaintiffs' request for a preliminary injunction and certified a class pursuant to Fed. R. Civ. P. 23(b)(2), defined as:

> All former unaccompanied alien children who are detained or will be detained by ICE after being transferred by ORR because they have turned 18 years of age and as to whom ICE did not consider placement in the least restrictive setting available, including alternatives to detention programs, as required by 8 U.S.C. § 1232(c)(2)(B).

ECF Nos. 49, 50.

## III.    THE DISCOVERY DISPUTE

On October 3, 2018, the Court, among other things, ordered the parties to "submit proposals identifying which ICE facilities should be searched for emails and documents, which custodians' emails and documents should be collected and searched from those facilities (the juvenile coordinator, juvenile enforcement officers, their supervisors), and which search terms should be applied to the searches for those emails and documents."  Minute Order of October 3, 2018.  The Court also directed the parties to submit proposals identifying the custodians at ICE's headquarters from whom emails and documents should be collected and searched, and identifying the search terms to be applied to those documents.  *Id.*

Thereafter, the parties conferred and filed separate proposals governing ESI discovery. ECF Nos. 58, 59.  In their filing, Plaintiffs sought production from the following custodians: (1) JFRMU Chief Mellissa Harper and her predecessor and all National Juvenile Coordinators from January 1, 2016 to present; (2) ICE's Executive Associate Director from January 1, 2016 to present; (3) ICE's Assistant Director for Custody Management and Assistant Director for Field Operations from January 1, 2016 to present; (4) all FOJCs; (5) all Supervisory Detention and

Deportation Officers ("SDDO") within the Field Office Juvenile Coordinator Unit; and (6) any
Deportation Officers ("DO") within the Field Office Juvenile Coordinator Unit.  ECF 59 at. 2-3.
Specifically, Plaintiffs requested ESI from the aforementioned custodians from the following ten
(10) field offices:  San Antonio, Houston, Phoenix, El Paso, Washington, Chicago, New York
City, San Francisco, Seattle, and Miami.  *Id.* at 4-5.  By their own account, Plaintiffs selected
these field offices based on Plaintiffs' view that the first nine field offices represented "the
largest number of children [that] were transferred from ORR to ICE custody upon turning 18."
*Id.*  Additionally, Plaintiffs specified they selected these offices because they were representative
of offices "throughout the country, including field offices on both coasts, in the Midwest, and
four field offices on the southwest border where many ORR shelters and ICE detention facilities
exist."  *Id.* at 4.  Finally, Plaintiffs stated they nominated the Miami field office based on their
belief that available numbers of ORR transfers at that location were under representative.[6]  *Id.*

On October 12, 2018, the Court ordered that Defendants begin searching for responsive
documents in the possession of any individuals at the San Antonio, San Francisco, and Phoenix
field offices holding the custodial positions identified in Plaintiffs' October 5, 2018, Status
Report (ECF No. 59).  Minute Order of October 12, 2018.  The Court also ordered Defendants to
begin searching for responsive documents in the possession of any individuals at ICE
Headquarters holding the custodial positions identified in Plaintiffs' October 5, 2018, Status
Report.  *Id.*  Consistent with the Court's Order, Defendants began the multi-step process of

---

[6] Defendants' proposal identified the JFRMU Chief Melissa Harper and her predecessor as
custodians.  ECF No. 58-1 at 6.  With regard to field offices, Defendants proposed that the
FOJCs collect emails and documents of class members who were processed at designated field
offices.  *Id.*  Defendants designated the following offices as a robust cross-section of the busiest
offices for ORR transfers:  Houston, Washington, Seattle, San Francisco, and the Harlingen
Suboffice of the San Antonio Field Office.  *Id.* at 7.

collecting the ESI of 57 potential custodians.  ECF No. 65-1, Mader Decl., Oct. 18, 2018; ECF

No. 69-3, Truong Decl., Nov. 2, 2018 (detailing time and labor expended to comply with the

Court's Order).  *See* Defendants' ESI Collection Chart ("Exhibit A").[7]  Subsequently, on

October 29, 2018, the Court ordered Defendants to collect all emails in the possession of all

individuals holding the position of Field Office Juvenile Coordinator at the ten field offices

identified in Plaintiff's October 5, 2018, Status Report (ECF No. 59) and export them to PST

files.  Minute Order October 29, 2018.

Relatedly, on November 2, 2018, the Court ordered Defendants to make best efforts to

"transfer the 14 custodians' (FOJC) documents that are currently in PST format into a search-

ready format in Relativity."  Minute Order of November 2, 2018.  The Court also ordered

Defendants to collect the emails in the possession of Mellissa Harper and export them to PST

files, among other directives.  *Id.*  On November 13, 2018, the Court expanded the prior Order to

include that Defendants "collect the emails from the following custodians:  Juanita Hester, Matt

Albence, and Natalie Asher and export them to PST files."  Minute Order November 13, 2018.

Defendants were also ordered to collect and export to PST files the emails in the possession of

all individuals holding the position of Deportation Officer at the San Antonio, Phoenix, and

Houston field offices "who have worked on juvenile detention matters/cases, as well as those

individuals' immediate supervisors."  *Id.*  In its Order, the Court also directed Defendants to

---

[7]  The chart at Exhibit A reflects all ESI collections.  *See* ECF Nos. 65-1, 69-3, 76-2; Exhibit B.
Entries 1-18 are the 18 baseline custodians from which Defendants' ESI productions are
presently flowing per Order of the Court and Defendants' Active Learning Protocol.  Minute
Order of December 20, 2018; ECF No. 86.  Entries 19-29 are an additional 10 custodians from
whom Plaintiffs are seeking productions.  Beyond these 10 individuals, Plaintiffs also seek
productions from 6 more individuals who were never before identified as custodians.  *See*
Exhibit B.  Entries 29-65 are individuals whose ESI was collected but from whom Plaintiffs do
not seek productions.

provide a submission "explaining the progress that has been made and the constraints that prevented them from making further progress" on the collection and transfer of ESI. *Id.*

On November 15, 2018, Defendants filed a Response to the Order of November 13, 2018, supported by declaration. ECF No. 76. In the submission, Defendants updated the Court on ICE's progress transferring ESI of 26 custodians' emails into the document review platform. *Id.* at 2 (citing ECF No. 76-2, Truong Decl., Nov. 15, 2018). The supporting Declaration of John Truong, Supervisory Information Technology Specialist in the Office of the Chief Information Officer for ICE, reiterated the multistep process used to collect custodian emails from the two places where they are stored. ECF No. 76-2 ¶ 6. Once collected, the data is exported to .pst files. *Id.* The declaration went on to explain that in order to search and export the emails of 22 custodians—representing 677 GB of data—17 hours and 10 minutes was required. *Id.* ¶ 7. Additionally, in order to export the same data, it took 284 hours and 12 minutes. *Id.* Also, transfer to the ERO location for export required an additional 194 hours and 34 minutes to complete. *Id.* The declaration also made clear that the size of the files is the "largest limiting factor given the capabilities of [ICE's] IT systems." *Id.* ¶ 8. Specifically, custodians with larger files take considerably longer to export and transfer by several hours. *Id.* The declaration also explained that ICE was balancing other ESI demands in this litigation, affecting available resources and speed. *Id.* ¶ 9. The total number of documents collected for the 18 baseline custodians was 2,884,991. ECF No. 86 at Exhibit B.

On November 16, 2018, the parties participated in a conference with the Court and discussed various issues concerning discovery. *See* Minute Entry for Proceedings of November 16, 2018. During the conference, Plaintiffs' counsel specified that they requested ESI from NJC for January 1, 2016, to the present, but agreed to limit ESI for January 1, 2017, to the

present for other personnel and the Court so directed.  *See* Transcript of Telephonic Conference

Before the Honorable Rudolph Contreras United States District Judge on November 16, 2018 at

19-21.

At the direction of the Court, on December 3, 2018, the parties finalized their agreed

upon search terms for collection from the eighteen baseline custodians.  *See* ECF No. 86

Defendants' Protocol for Use of Active Learning to Assist with Responsiveness Review

("Exhibit A"); *see also* Search Terms Report ("STR") of December 6, 2018 ("Exhibit B").[8]

After applying the parties' search terms to the 2,884,991 documents collected, 256,508

documents and their families were identified for Active Learning Responsiveness Review.  *Id.*

During the course of ICE's Active Learning responsiveness review of the 256,508 documents

(including families) collected utilizing the parties' agreed upon search terms, 36,409 documents

from the eighteen baseline custodians were identified for privilege review.[9]  *Id.* at Exhibit A,

Appendix A.

On December 20, 2018, Defendants were ordered to make best efforts to begin making

weekly rolling productions of responsive ESI "from the first eighteen custodians as soon as

possible, and all responsive ESI from those first eighteen custodians, including documents that

could not be submitted to Active Learning for responsiveness review, must be produced to

---

[8]  The STR of December 17, 2018, reflects an additional term eliminated by the parties and
correction of a typographical error, as such, it is the report of the parties' finalized search terms.
ECF No. 86 at Exhibit B.

[9]  As noted in Defendants' protocol, not all documents collected from the eighteen baseline
custodians utilizing the parties' agreed upon search terms can be submitted to Active Learning
for responsiveness review.  *See* Exhibit A at 3 section II.1.  Certain file types such as media
(.jpg, .jpeg, .bmp, .gif, .wmv, .wav, .mov, .avi), spreadsheets (.xls, .xlsx, .csv), system files,
container files, and documents without text or documents with too much text and extensive
markup language (such as .xml) are inappropriate for machine learning review using Active
Learning.  Proposals custodians and active learning review rate.  The number of excluded
documents from the 18 baseline custodians is approximately 71,000.  ECF No. 104.

Plaintiffs no later than February 1, 2019." Minute Order of December 20, 2018. Defendants are presently engaged in ongoing productions of ESI from the 18 identified baseline custodians (*see* ECF Nos. 86, 104) and are ordered to complete all productions of the Active Learning documents by February 15, 2019. Minute Order of February 1, 2018.

On February 1, 2019, February 6, 2019, and February 13, 2019, the parties conferred and discussed views on the propriety and prioritization of production of ESI from additional custodians beyond the 18 baseline custodians. *See* Minute Order of January 25, 2019 (ordering parties to confer concerning custodians). During the course of discussions, Plaintiffs requested production of ESI from 23 more individuals. Exhibit A; Email from Tia Trout-Perez of February 8, 2019 ("Exhibit C"). Subsequently, On February 14, 2019, Plaintiffs reduced the number of supplemental ESI custodians to 17, while adding an individual discussed at deposition the preceding day. Exhibit B. Of the individuals from whom Plaintiffs now seek productions, 6 were never before identified as ESI custodians in this litigation. Exhibit B; *see* ECF Nos. 65-1, 69-3, 76-2, 86. Additionally, the proposed custodians represent timeframes and positions already represented by the 18 baseline custodians. *See* Exhibit A.

Additionally, Plaintiffs' new request breaches their prior agreement to limit productions from January 1, 2017, to the present for custodians other than the NJCs. *See* Transcript of Telephonic Conference Before the Honorable Rudolph Contreras United States District Judge on November 16, 2018 at 20-21.

The parties were unable to reach agreement and Defendants' Motion followed.

## ARGUMENT

### I.     LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Accordingly, proportionality must be applied to determine the appropriate scope of discovery.  "Despite the longstanding existence of proportionality provisions in the rules, however, many courts simply did not apply them.  The amendment thus relocates the proportionality factors to Rule 26(b)(1) to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse' and to make proportionality considerations unavoidable."  *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (citations omitted).  The Court must consider the limitations of Rule 26(b)(2)(C) in evaluating whether the requester has established good cause for production notwithstanding undue burden or cost.  Fed. R. Civ. P. 26(b)(2)(B).  Specifically, the Court "must limit the frequency or extent of discovery otherwise allowed . . . if it determines that:  (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . ."  Fed. R. Civ. P. 26(b)(2)(C)(i).  In determining whether an "undue burden" exists, "a court must consider 'the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.'"  *U.S. ex rel. Carter v. Bridgepoint*

*Educ., Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. 2015) (*quoting Crosby v. La. Health Serv.*, 647 F.3d 258, 264 (5th Cir. 2011)).

Federal Rule of Civil Procedure 26(c)(1) authorizes further strictures on discovery, permitting the Court "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  The Supreme Court has interpreted Rule 26(c) as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).  The moving party "'bears the burden of making the showing of good cause contemplated by the rule,' and therefore, 'must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one.'" *Smith v. Yeager*, 322 F.R.D. 96, 99 (D.D.C. 2017) (quoting *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998)). Additionally, "district courts assessing the existence of good cause must exercise their discretion in light of the relevant facts and circumstances of a particular case," *Peskoff v. Faber*, 230 F.R.D. 25, 28 (D.D.C. 2005), (citation omitted), and must "weigh[ ] the movant's proffer of harm against the adversary's 'significant interest' in preparing for trial," *Doe v. District of Columbia*, 230 F.R.D. 47, 50 (D.D.C. 2005) (quoting *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001)).

Finally, as specifically pertains to ESI, the Advisory Committee Note (1970) for Rule 34 make clear "courts have ample power under Rule 26(c) to protect respondent against undue burden or expense, either by restricting discovery or requiring that the discovering party pay costs."  Thus, "[t]o be sure, an appraisal of 'undue' burden inevitably entails consideration of the needs of the party seeking discovery."  Fed. R. Civ. P. 34, Advisory Committee Notes (1970).

Even when the requested documents are relevant, Federal Rule of Civil Procedure 26(b)(1) and (2) provide courts with "'significant flexibility and discretion to assess the circumstances of the case and limit discovery accordingly to ensure that the scope and duration of discovery is reasonably proportional to the value of the requested information, the needs of the case and the parties' resources.'" *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 09 Civ. 2137 (LTS)(SN), 2013 WL 4838796 at *1 (S.D.N.Y. Sept. 11, 2013) (Netburn, M.J.), quoting *The Sedona Conference, The Sedona Conference Commentary on Proportionality in Electronic Discovery*, 11 Sedona Conf. J. 289, 294 (2010). Courts must "limit discovery if the request is 'unreasonably duplicative,' the requesting party has had 'ample opportunity to obtain the information by discovery,' or the 'burden or expense of the proposed discovery outweighs its likely benefit' considering the needs of the case and the importance of the documents." *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co., 297 F.R.D. 99, 102 (S.D.N.Y. 2013)* (quoting Fed.R.Civ.P. 26(b) (2) (C)); *accord Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 303 (S.D.N.Y. 2012) (Francis, M.J.) ("A party may . . . resist discovery of non-computerized documents or of ESI that is reasonably accessible on the ground that the discovery sought is disproportionate.").

## II.   PRODUCTION OF BURDENSOME, CUMULATIVE ESI FROM ADDITIONAL CUSTODIANS IS NOT PROPORTIONAL TO THE NEEDS OF THE CASE

The presumption in favor of discovery of relevant information embodied in Rule 26 is not without limits. Instead, under amended Rule 26, discovery must be relevant and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). To determine whether a discovery request is proportional, courts weigh the following six factors: "(1) the importance of the issues at stake in this action; (2) the amount in controversy; (3) the parties' relative access to relevant information;

20

(4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6)

whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.

Civ. P. 26(b)(1); *see also Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co*., 322 F.R.D. 1,

6 (D.D.C. 2017) (citations omitted).

A.   **The Proposed Supplemental Custodians Substantively Overlap with the
Current 18 Baseline Custodians, Making Such Discovery Unimportant,
Burdensome, and Cumulative When Weighed Against Its Potential Benefit**

As a threshold matter, Plaintiffs' claim a nationwide, systemic failure by ICE to

implement and execute policies and practices meeting the agency's obligations under VAWA.

Specifically, Plaintiffs allege "ICE is routinely and systematically failing to comply with the

requirements of Section 1232(c)(2)(B) . . . . "  First Am. Compl. ¶ 5, ECF No. 21.  Moreover,

Plaintiffs contend ICE has failed to establish "*any* policies, programs, or procedures

implementing Section 1232(c)(2)(B)'s statutory requirements . . . . "  *Id.* (emphasis added).  In

order to establish a complete and utter lack of appropriate policies and procedures, it is not

necessary to produce ESI from *all headquarters and field personnel dealing with age-outs*.

Indeed, Plaintiffs' acknowledged as much when they proposed productions limited to a cross-

section of 10 field offices and specified positions in their ESI proposal.  ECF No. 59 at 2-5.

Plaintiffs cannot justify the need to broaden productions particularly where productions already

include the personnel occupying the key positions of JFRMU Chief, Assistant Director of

Custody Management ERO, and National Juvenile Coordinators.  *See* Exhibit A.

Certainly, the 17 custodians Plaintiffs seek to obtain ESI from are materially duplicative

of the 18 baseline custodians, largely overlapping with regards to timeframes, positions, as well

as areas of responsibility.  In addition, much of the requested data predates January 1, 2017, the

date which Plaintiffs have already acknowledged as a reasonable cut-off date for the collection of

ESI for positions other than NJC.

| | Plaintiffs' Proposed Additional ESI Custodians | Title | Location | Dates ESI Collected | Overlap with Existing ESI Custodians |
|---|---|---|---|---|---|
| 1. | Antkowiak, Steve | JFRMU Chief | ICE HQ | 1/1/2016 to 11/30/2016 | Occupied the same position as Chief Harper before 1/1/2017. |
| 2. | Hester, Juanita | Acting JFRMU Chief | ICE HQ | 12/1/16 to 5/31/2017 | One of the Acting JFRMU Chiefs who occupied position before the arrival of Chief Harper in 11/2017. |
| 3. | Salazar, Roberto | Acting JFRMU Chief | ICE HQ | 6/1/2017 to 11/30/2017 | One of the Acting JFRMU Chiefs who occupied position before the arrival of Chief Harper in 11/2017. |
| 4. | Sanchez-Zimak, Ana | NJC | ICE HQ | 2/1/2018 to 5/31/2018 | Fully overlaps with position and timeframe of NJC Helland and Ravenell. |
| 5. | Dablewski, Christine | NJC | ICE HQ | 5/1/2018 to 9/30/2018 | Fully overlaps with position and timeframe of NJC Helland and Ravenell. |
| 6. | Kraus, Amy | NJC | ICE HQ | 9/1/2016 to 11/30/2017 | Fully overlaps with position and timeframe of NJC Helland and Ravenell. |
| 7. | Rogers, Sudi | NJC | ICE HQ | 7/1/2018 to 10/26/2018 | Fully overlaps with position and timeframe of NJC Helland and Ravenell. |
| 8. | Hoopes, Christine | FOJC | Phoenix Field Office | 10/1/2016 to 10/26/2018 | Fully overlaps with position and timeframe of FOJC Sullivan and Garcia. |
| 9. | Andree, David | SDDO | San Antonio Field Office | 1/1/2016 to 10/26/2018 | Fully overlaps with position and timeframe of FOJC Munguia. |
| 10. | Albence, Matt | ERO Executive Associate Director | ICE HQ | 2/1/17 to 8/31/2018 | Senior official. Unlikely to have any relevant emails that did not include their subordinate experts in the area (Tae Johnson or Mellissa Harper) who are ESI baseline custodians. |
| 11. | Venegas, Stephen | FOJC | Harlingen Sub-Office | Not identified as custodian | Sub-office not specified by Plaintiffs at ECF No. 59. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | (potential dates for collection 10/1/2017 to 2/7/2019) | |
| 12. | McGee, Carlos | FOJC | Chicago Field Office | Not identified as a custodian (potential dates for collection 1/1/2017 to 2/7/2019) | Overlaps with position and timeframe of FOJC Pepple with the exception of documents to be collected after 10/26/2018. |
| 13. | Holmes, Shawn | FOJC | Chicago Field Office | Not identified as a custodian (potential dates for collection 1/1/2017 to 2/7/2019) | Overlaps with position and timeframe of FOJC Pepple with the exception of documents to be collected after 10/26/2018. |
| 14. | Irizarry, Oscar | FOJC | Los Angeles Field Office | Not identified as a custodian (potential dates for collection 1/1/2017 to 2/7/2019) | Not part of original list of 10 field offices identified by Plaintiffs in ECF No. 59. |
| 15. | Cortez, Jose | SDDO | Harlingen Sub-Office | Not identified as a custodian (potential dates for collection 9/1/2017 to 2/7/2019) | Sub-office not specified by Plaintiffs at ECF No. 59 |
| 16. | Mason, Robert | SDDO | Houston Field Office | 1/1/2017 to 10/26/2018 | Fully overlaps with position and timeframe of FOJC Barnes. |
| 17. | Hernandez, Danielle | SDDO | El Paso Field Office | Not identified as a custodian | Supervisor of FOJC Galvez who was deposed by Plaintiffs on 2/13/2019. FOJC Galvez is an ESI baseline custodian. |

Even if there are slight differences between the information held by the custodians Plaintiffs seek to add and the baseline custodians, these slight differences are not a legitimate basis to justify expanding the list of custodians.  This is particularly true because "Plaintiffs do not need, and are not entitled under the rules of proportionality, to every single document related" to a discoverable issue.  *In re Morgan Stanley*, 2013 WL 4838796, at *2.  Cumulative production from these custodians will not advance discovery as to any issue in this case.  At most, it will be duplicative of information already produced or in the queue for an upcoming production, and the Federal Rules of Civil Procedure counsel against requiring such discovery.  *See* Fed. R. Civ. P. 26(b)(2) (instructing the court to limit the "extent of discovery" if it determines that the discovery sought is "unreasonably cumulative or duplicative."); *Woodward v. Emulex Corp.*, 714 F.3d 632, 636 (1st Cir. 2013) (upholding district court's refusal to "compel the production of an arguably duplicative request for documents.").  *See Shamesh*, 314 F.R.D. at 12 (granting protection where requests were somewhat duplicative and "requiring the Government to produce information on this largely irrelevant subset would outweigh its likely benefit and be disproportionate to the needs of the case.").

As Defendants have already included custodians from a cross-section of field offices and positions selected by Plaintiffs in their ESI proposal, the Plaintiffs must demonstrate that the additional requested custodians would provide "*unique* relevant information not already obtained."  *Fort Worth Employees' Ret. Fund*, 297 F.R.D. at 107 (emphasis in original).  They have failed to do so here, providing no evidence that there are unique responsive documents being missed in the current search scheme that would justify the inclusion of additional custodians.  *See Blackrock Allocation Target Shares: Series S Portfolio v. Bank of New York Mellon*, No. 14CIV9372GBDHBP, 2018 WL 2215510, at *9 (S.D.N.Y. May 15, 2018)

24

(emphasizing that the addition of custodians must be supported by a showing that the proposed

custodians possess unique data). Indeed, a court in this jurisdiction has held:

> Speculation that there is more will not suffice; if the theoretical possibility that more
> documents exist sufficed to justify additional discovery, discovery would never
> end. Instead of chasing the theoretical possibility that additional documents exist,
> courts have insisted that the documents that have been produced permit a
> reasonable deduction that other documents may exist or did exist and have been
> destroyed.

*Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008) (citations excluded). *See Harris v. Koenig*,

271 F.R.D. 356, 370 (D.D.C. 2010) ("If plaintiffs are speculating that documents responsive to

these requests do exist, there must be a reasonable deduction that that is true, and not a mere

hunch.") (citations omitted).

Additionally, Plaintiffs' inability to meet their burden with respect to the extra custodians

is due to the fact that Plaintiffs' request is premature. ICE is presently involved in ongoing,

rolling production of thousands of documents. Minute Order of February 1, 2019. Plaintiffs

have not received or reviewed the universe of ESI that ICE is producing, and, thus, cannot

presently shoulder their burden of establishing any hole in the productions that must be filled by

additional custodians. Thus, because the concept of proportionality instructs that Plaintiffs are

not entitled to "every single document, especially documents which have been or will be

produced and which, therefore, have no 'marginal utility,'" the Court should grant Defendants'

Motion. *Blackrock*, No. 14CIV9372GBDHBP, 2018 WL 2215510, at *10 (citations omitted).

Discovery disputes concerning the collection, review and production of ESI "present[ ]

special challenges" that standard discovery disputes do not, *Winfield v. City of New York*, 15 Civ.

5236 (LTS)(KHP), 2017 WL 5664852 at *7 (S.D.N.Y. Nov. 27, 2017) (Parker, M.J.), quoting

*William A. Gross Const. Assocs., Inc. v. American Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136

(S.D.N.Y. 2009) (Peck, M.J.), including the substantial likelihood that the data possessed by the

responding party is voluminous, stored in multiple formats and is duplicative across custodians.

Accordingly, some courts have instructed that "the standard [in ESI discovery] is not perfection,

. . . , but whether the search is reasonable and proportional."  *Hyles v. New York City*, 10 Civ.

3119 (ATF)(AJP), 2016 WL 4077114 at *3 (S.D.N.Y. Aug. 1, 2016) (Peck, M.J.*); accord

Winfield v. City of New York*, *supra*, 2017 WL 5664852 at *11 ("In any ESI review, 'the Federal

Rules of Civil Procedure do not require perfection.'"), quoting *Moore v. Publicis Groupe*, 287

F.R.D. 182, 192 (S.D.N.Y. 2012) (Peck, M.J.); *Pension Comm. of the Univ. of Montreal Pension

Plan v. Banc of Am. Sees., LLC*, 685 F. Supp. 2d 456, 461 (S.D.N.Y. 2010) (Scheindlin, D.J.)

("Courts cannot and do not expect that any party can meet a standard of perfection [in ESI

discovery].").  Thus, a party requesting discovery may not be entitled, "under the rules of

proportionality, to every single [relevant] document."  *In re Morgan Stanley Mortg. Pass-

Through Certificates Litig.*, supra, 2013 WL 4838796 at *3*; see Blackrock Allocation Target

Shares: Series S Portfolio v. Bank of New York Mellon*, No. 14CIV9372GBDHBP, 2018 WL

2215510, at *7 (S.D.N.Y. May 15, 2018).  Consequently, because the 18 baseline custodians

provide a plethora of information for Plaintiffs to use to establish the systemic lack of policies

and procedures they allege and, in any event, there is no showing that Plaintiffs' proposed

additional custodians would provide any unique information, the Court should grant Defendants'

Motion.

###    B.    Defendants Have Thoroughly Detailed the Undue Burden of ESI Productions

The Court must consider the burden upon Defendants to collect, process, and review,

then produce additional—cumulative—ESI.  The process to produce ESI from the 18 baseline

custodians has been ongoing for over four months.  Plaintiffs want to add an addition 17

custodians.  The process to produce the ESI from the additional custodians were follow the same

process as the baseline custodians and would bog this litigation down in months of burdensome, cumulative discovery.

Previous declarations demonstrate the time-consuming, multi-step process involved in producing ESI.  ESI must be searched for, exported to .pst files, and then transferred to a drop location.  ECF No. 65-1, Mader Decl., ¶¶ 8-11, Oct. 18, 2018; ECF No. 69-3, Truong Decl., ¶¶ 7, 23, Nov. 2, 2018; ECF No. 76-2, Truong Decl., Nov 15, 2018, ¶ 5-8.  The ESI must then be loaded in Relativity and indexed.  ECF No. 65-1, Mader Decl, ¶ 10, Oct. 18, 2018.  Once in Relativity, the ESI must be searched, reviewed for relevance using Active Learning, reviewed for privilege, and then produced.  *See* ECF No. 87-1 Davis Decl. ¶¶ 23-24, Dec. 17, 2018; ECF No. 104 at Exhibit A, Skinner Decl. ¶¶ 7-15.  The same effort required to produce the ESI for the 18 custodians will be required for the ESI for the additional 17 custodians and will require several additional weeks—if not months—of discovery.

However, the effort required to produce ESI for the additional 17 proposed custodians would likely not provide a substantial amount of unique relevant information not already obtained in ESI searches, as required to justify inclusion of additional custodians in Defendants' ESI search regime.  Indeed, *every* search term agreed upon by the parties garnered hits and productions, and there are no identifiable gaps in the subjects from which productions are presently flowing from the 18 baseline custodians.  *See* ECF No. 86 at Exhibit B.  Indeed, productions already include the personnel occupying the key positions of JFRMU Chief, Assistant Director of Custody Management ERO, and National Juvenile Coordinators.  Given the organizational scope of these positions, these custodians provide ample ESI to determine whether or not ICE has systematically failed to comply with VAWA.  Additional custodians, however, represent a tremendous added drain on Defendants' already strained resources.  *See*

ECF Nos. 87-1; 104 at 9-14.  The Federal Rules of Civil Procedure require only a reasonable

search for responsive information pursuant to a "'reasonably comprehensive search strategy.'"

*Enslin v. Coca-Cola Co.*, No. 2:14-CV-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016)

(quoting *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006).  "[T]here is no

obligation on the part of a responding party to examine every scrap of paper in its potentially

voluminous files," *id.*, and "[i]n an era where vast amounts of electronic information is available

for review, . . . [c]ourts cannot and do not expect that any party can meet a standard of

perfection.*"  Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F.

Supp. 2d 456, 461 (S.D.N.Y. 2010).  Accordingly, Plaintiffs cannot establish that the burden of

production—including the burden of ESI export and processing, privilege review, and reviewing

false search hits in excluded file types—would justify expanding the search to include 17

additional custodians.

### C.    Plaintiffs Are  Not Entitled to the Addition of Every Individual Identified in Discovery as an ESI Custodian

That a person may have some connection to the events in question does not automatically

mean that such person must be included as an ESI custodian.  Rather, to justify an order

compelling a responding party to search the records of additional custodians, the requesting party

"must demonstrate that the additional requested custodians would provide *unique* relevant

information not already obtained."  *Fort Worth Emps.' Ret. Fund*, 297 F.R.D. at 107-08

(emphasis in original) (refusing to compel a party to search the records of a number of additional

custodians despite the fact that each had some connection to the events of the case).  *See Enslin.*,

2016 WL 7042206, at *3 (same).  As discussed above, Plaintiffs cannot establish any material

difference between the 18 baseline custodians and their proposed 17 supplemental custodians.

Plaintiffs, however, contend that because some of the proposed custodians were identified during

the course of discovery or listed in Defendants' Rule 26(a) Initial Disclosures, they must be added as ESI custodians.  Plaintiffs are mistaken.

As an initial matter, litigants are generally not in a position to know what information the opposing party might rely on to meet its burden of proof for affirmative defenses.  Rule 26(a) of the Federal Rules of Civil Procedure addresses this problem by providing that even absent a discovery request, any party must produce documents that it "may use to support its claims or defenses . . . . " Fed.R.Civ.P. 26(a)(1)(A)(ii).  That obligation is ongoing, and "a party must supplement its initial disclosures when additional information supporting its claims or defenses comes to its attention."  *Pentair Water Treatment (OH) Co. v. Continental Insurance Co.*, No. 08 Civ. 304, 2009 WL 3817600, at *2 (S.D.N.Y. Nov. 16, 2009).  Accordingly, Defendants are already obligated to turn over documents supporting their defenses.  *See* Rule 26(a).  If Defendants' current search efforts will yield all the documents required to support their defenses, Defendants need not search for them specifically.  Given the structure of the Federal Rules, no authority requires Defendants to include individuals listed in their disclosures as ESI custodians.

Further, Plaintiffs now seek to add as an ESI custodian any individual even referenced at deposition.  For example, based on the reference to SDDO Hernandez during the February 13, 2019, deposition of FOJC Galvez—an ESI custodian—Plaintiffs now wish to add SDDO Hernandez as an ESI custodian too.  *See* Exhibit B.  This sort of continuous enlargement of ESI custodians is cumulative and entirely unnecessary.  To the extent Plaintiffs contend sought-after relevant documents would not be produced during the course of ESI productions, this is more appropriately dealt with through a limited, particularized discovery request or deposition rather than the overbroad inclusion of additional custodians that will add weeks to the discovery timeframe.  *Fort Worth Employees' Ret. Fund*, 297 F.R.D. at 109.

**CONCLUSION**

For the foregoing reasons the Court should grant Defendants' Motion for a Protective

Order under Rule 26(c) and order that the scope of discovery in this case is limited to the

responsive, non-privileged information from the eighteen baseline custodians.


DATED:  February 15, 2019                    Respectfully submitted,

                                             JOSEPH H. HUNT
                                             Assistant Attorney General

                                             WILLIAM C. PEACHEY
                                             Director

                                             COLIN A. KISOR
                                             Deputy Director

                                             CHRISTINA PARASCANDOLA
                                             Senior Litigation Counsel

                                             CARA E. ALSTERBERG
                                             Trial Attorney

                                             KEVIN HIRST
                                             Trial Attorney

                                             By: /s/ Yamileth G. Davila
                                             YAMILETH G. DAVILA
                                             Assistant Director
                                             United States Department of Justice
                                             Civil Division
                                             Office of Immigration Litigation
                                             District Court Section
                                             P.O. Box 878, Ben Franklin Station
                                             Washington, DC 20044
                                             Tel: (202) 305-0137
                                             Fax: (202) 307-8801
                                             Email: yamileth.g.davila@usdoj.gov

                                             *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on February 15, 2019, I electronically filed the foregoing with the Clerk of

Court by using the CM/ECF system, which will provide electronic notice and an electronic link

to this document to the attorneys of record.

DATED:  February 15, 2019

/s/ Yamileth G. Davila
YAMILETH G. DAVILA
Assistant Director
