## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILMER GARCIA RAMIREZ, | ) | |
| SULMA HERNANDEZ ALFARO, | ) | |
| ANA P., on behalf of themselves and | ) | |
| others similarly situated, | ) | |
| | ) | Case No. 1:18-cv-00508 |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Class action |
| U.S. IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT ("ICE"), et al.; | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |
| _____ | ) | |

## DEFENDANTS' MOTION TO DE-CERTIFY THE CERTIFIED CLASS FOR LACK OF NUMEROSITY AND COMMONALITY AND SUPPORTING STATEMENT OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

INTRODUCTION................................................................................................................1

BACKGROUND ................................................................................................................3

I.      Procedural history ................................................................................................3

II.     Documentation Guidance issued on October 17, 2018 ................................4

III.    Former UACs who aged out prior to the documentation guidance ...........6

LEGAL STANDARDS ......................................................................................................7

ARGUMENT ......................................................................................................................8

I.      After implementation of the Age-Out Review Worksheet on October 17, 2018, the certified class cannot satisfy Rule 23(a)(1)'s numerosity or commonality requirements at present or going forward........................................................8

II.     As for the individuals who aged out before October 17, 2018, ICE considered the least restrictive setting available, including alternatives to detention, and continues to detain only 19 of them. ............................................................11

CONCLUSION ................................................................................................................13

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASE LAW

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................................................ 8

*DL v. D.C.,*
  302 F.R.D. 1 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017). ........................... 8

*Gen. Tel. Co. of Sw. v. Falcon,*
  457 U.S. 147 (1982) ................................................................................................ 7

*Hartman v. Duffey,*
  19 F.3d 1459 (D.C. Cir. 1994) ................................................................................ 7

*Kiafi v. Hilton Hotels Retirement Plan,*
  198 F.R.D. 174 (D.D.C. 1999) ................................................................................ 8

*Kremens v. Bartley,*
  431 U.S. 119 (1977) ................................................................................................ 7

*Lightfoot v. District of Columbia,*
  246 F.R.D. 332 (D.D.C. 2007) ................................................................................ 8

*Lightfoot v. District of Columbia,*
  273 F.R.D. 314 (D.D.C. 2011) ............................................................................ 2, 3

*McCarthy v. Kleindienst,*
  741 F.2d 1406 (D.C. Cir. 1984) .............................................................................. 7

*Pigford v. Glickman,*
  182 F.R.D. 341 (D.D.C. 1998) .............................................................................. 11

*Taylor v. DC Water & Sewer Auth,*
  241 F.R.D. 33 (D.D.C. 2007) ................................................................................ 11

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ................................................................................ 1, 2, 7, 8

## STATUTES

8 U.S.C. § 1231(a)(3)................................................................................................ 5

8 U.S.C. § 1226(a)(2)(B) ........................................................................................... 5

8 U.S.C. § 1232(c)(2)(B) ................................................................................... passim

## FEDERAL REGULATIONS

8 C.F.R. § 236.1(c)(8)............................................................................................... 5

8 C.F.R. § 241.5 ....................................................................................................... 5

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 23 ................................................................................................... 11

Fed. R. Civ. P. 23(a) ................................................................................................. 7

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 1

Fed. R. Civ. P. 23(c)(1)(C) ....................................................................................... 7

## INTRODUCTION

The Court should decertify this nationwide class, because it is not now, and will not be, sufficiently numerous to satisfy Federal Rule of Civil Procedure 23(a)(1). October 17, 2018, ICE implemented a process that assures proper, contemporaneous documentation of its compliance with 8 U.S.C. § 1232(c)(2)(B).[1]  Under this procedure, ICE comprehensively documents its process of determining whether to detain or release former unaccompanied alien children ("UACs") transferred to it from Department of Health and Human Services ("HHS"), Office of Refugee Resettlement ("ORR") custody when they turn 18 years of age (also known as "age-outs"). The implementation of this nationwide process forecloses the introduction of new members into the class, absent some sort of discrete error or mistake by an individual ICE officer (for which individual remedies would exist).

Moreover, even assuming, *arguendo*, that the class remains sufficiently numerous today—which, in light of the documentation process, it does not—there does not exist one common question the resolution of which would decide all class members' claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Court defined the class as all age-outs for whom ICE did not *consider* the least restrictive setting available, including alternatives to detention programs, as required by 8 U.S.C. § 1232(c)(2)(B). (ECF No. 50 at 69.) No future age-outs, however, will be joining the class (absent an error of the part of an individual officer). The Age-Out Review Worksheet provides contemporaneous, first-hand documentation of ICE's consideration of least restrictive setting available, obviating the Court's concern of the lack of such documentation when it granted a preliminary injunction as to two named Plaintiffs. (ECF No. 28 at 29-35.)

---

[1]     Defendants' counsel conferred with Plaintiffs' counsel in December 2018 at the offices of Kirkland & Ellis, L.L.P. in Washington, D.C. Plaintiffs stated that they will oppose this Motion.

Although Defendants do not have the burden of proof on this motion, which remains on Plaintiffs, abundant evidence establishes that, since October 17, 2018, ICE Field Office Juvenile Coordinators ("FOJCs") routinely document their custody determinations under 8 U.S.C. § 1232(c)(2)(B). Since that date, FOJCs have been required to upload, for each and every age-out, an ICE Form 70-070 "Age-Out Review Worksheet" to a SharePoint website maintained, supervised, and audited by National Juvenile Coordinators at the ICE Enforcement and Removal Operations' ("ERO") Juvenile and Family Residential Management Unit ("JFRMU"). In addition, for each age-out who remains in ICE custody, a FOJC must also upload documentation to the SharePoint site supporting the decision to detain.

Because these procedures are now nationwide requirements for FOJCs who make detention decisions for age-outs, only an individual mistake or error would make a new age-out a class member. Such mistakes are, as they should be, infrequent outliers. Moreover, failure to document decision-making using the Age-Out Review Worksheet would not in and of itself prove that ICE failed to consider the least restrictive setting taking into account danger to self and community and flight risk for a given age-out. Rather, assessing whether an age-out received the consideration due under 8 U.S.C. § 1232(c)(2)(B) would require an individualized, fact-specific inquiry that is now incompatible with classwide adjudication. Because of the infrequency with which ICE fails to document its decision-making and the unsuitability of outlier cases for single-stroke resolution of a common question, Plaintiffs cannot meet the requirements of either numerosity or commonality required to sustain continued class certification. *Wal-Mart*, 564 U.S. at 350.

Defendants, therefore, now contest numerosity and commonality, based on the evidence gathered since the Court's ruling, *see Lightfoot v. District of Columbia*, 273 F.R.D. 314, 322-23 (D.D.C. 2011) (granting a second motion to decertify a class after denying the first), and move to decertify what is, and will remain, a largely empty class.

**BACKGROUND**

## I. Procedural history

Plaintiffs brought this action on March 5, 2018. (Compl., ECF No. 1.) In their Complaint,

two Plaintiffs sought relief under the Administrative Procedure Act ("APA"), alleging that, when

they aged out of ORR placements, ICE failed to consider least restrictive setting available taking

into account danger to self and community and flight risk, and, instead, automatically placed them

and other similarly situated individuals in adult immigration detention facilities without considering

the least restrictive setting and alternatives to detention as required by 8 U.S.C. § 1232(c)(2)(B).

(ECF No. 1 ¶¶ 6, 8, 82).

On March 6, 2018, Plaintiffs filed for class certification. (ECF No. 6.) Defendants moved to

dismiss. (ECF No. 20.) On March 30, 2018, Plaintiffs amended their complaint, adding a third

named Plaintiff. (ECF No. 21 ¶¶ 15, 53-57.) Plaintiffs have added no new named Plaintiffs in the

twelve months since then. Defendants opposed class certification (ECF No. 31), but did not contest

numerosity, reserving the right to do so at a later date. (*Id*. at 14 n.3.)[2] On August 30, 2018, this

Court denied Defendants' Motion to Dismiss and granted Plaintiffs' Motion for Class Certification.

(ECF No. 50.) The Court defined the class as:

> All former unaccompanied alien children who are detained or will be detained by
> ICE after being transferred by ORR because they have turned 18 years of age and as
> to whom ICE did not consider placement in the least restrictive setting available,
> including alternatives to detention programs, as required by
> 8 U.S.C. § 1232(c)(2)(B).

*Id*. at 69. Plaintiffs allege that ICE has no uniform practice and automatically places age-outs

transferred from ORR placements in adult immigration detention facilities without considering the

---

[2]      Even if Defendants did not explicitly reserve the right to contest numerosity, they did not
waive the issue. The Court may revisit its prior certification ruling. *See, e.g., Lightfoot*, 273 F.R.D.
at 322-23.

least restrictive setting available or alternatives to detention as required by

8 U.S.C. § 1232(c)(2)(B). (1st Am. Compl. ¶ 4, 102 ECF No. 21.)  Notwithstanding the thousands

of pages of discovery and hundreds of individual age out worksheets, Plaintiffs nonetheless cling to

a fiction and oppose this motion.

## II.     Documentation Guidance issued on October 17, 2018

On October 17, 2018, ICE ERO Headquarters issued updated guidance to its officers in the

field to improve documentation and tracking of custody determinations for age-outs. (Ex. A,

*Memorandum on behalf of Tae D. Johnson, Assistant Director for Custody Management, to Field*

*Office Directors and Deputy Directors, regarding Updated Guidance and Tracking of UAC Who*

*Reach the Age of 19 While in ORR Custody*) (filed under seal). The updated guidance requires

FOJCs to complete, for each age-out, an Age-Out Review Worksheet documenting the FOJC's

consideration of the least restrictive setting available and alternatives to detention before making a

custody determination. *Id*. The FOJC must upload the worksheet to an internal SharePoint website

where it can be tracked and monitored by headquarters personnel. (*Id.*); (Ex. B, Transcript of the

Deposition of JFRMU Chief Mellissa Harper (Dec. 6, 2018) (excerpts) at 8-18, 144-45, 149-52,

188-92, 210-20, 229-31, 235-42); (Ex. C, Harper Declaration (March 28, 2019) ¶ 26); (Ex. D, Index

of Exhibits to Harper Declaration (filed under seal).)  In addition, for each age-out detained in ICE

custody, FOJCs must also upload supporting documentation to the SharePoint website. (Ex. A at

1-2.) The process helps document contemporaneously the Field Offices' consideration of least

restrictive setting available taking into account danger to self, danger to community, and flight risk.

(Ex. C ¶ 3.) ICE's JFRMU SharePoint site reflects that, between October 17, 2018 and January 30,

2019, 581 Age-Out Review Worksheets and supporting documentation were uploaded. (Ex.

C ¶¶ 25, 27.) Thus, during that period, approximately 581 individuals "aged out" of ORR

placements. Defendants submit all of these worksheets to the Court as evidence in support of this

motion. (*See* Ex. E, Index of Age-Outs Between October 17, 2018 and January 30, 2019 (filed

under seal)); (Ex. F, Age-Outs Review Worksheets for Age-Outs Between October 17, 2018 and

January 30, 2019 (filed under seal).)[3]

In the current version of the three-page Age-Out Review Worksheet, ICE requires FOJCs to

document their consideration of information on a prospective age-out's criminal and behavioral

history, status of immigration proceedings, legal representation, potential sponsors, and information

about the age-out's ORR placement, including disciplinary history, and any recommendations

provided by ORR contractors, including the Post-18 Plan. (Ex. A at 6-8, questions 3, 4, 5, 6, 7, 9, 10

& 11.) The worksheet provides a space for the FOJC to identify any available individual or

organizational sponsors or supervised group homes. (*Id.* at 8, question 12.) If the FOJC declines to

recommend placement in a group home or with a sponsor, the officer has space to explain his or her

recommendation. (*Id.*) Likewise, if the FOJC determines that the age-out is a danger to themselves,

a danger to the community, or flight risk, the FOJC would explain why, in the space provided. (*Id.*

at 7, question 8.)

The worksheet also identifies several discretionary release options that are available to ICE

officers, including orders of supervision ("OSUP"),[4] orders of recognizance ("OREC"),[5] ICE bonds,

---

[3]    Defendants produced these worksheets and supporting documentation to Plaintiffs on January 25 and February 21, 2019.

[4]    Release on an order of supervision is available to individuals who are subject to a final order of removal. *See* 8 U.S.C. § 1231(a)(3). The officer issues a Form I-220B, Order of Supervision, which lays out conditions of release and reporting requirements. 8 C.F.R. § 241.5.

[5]    Release on an order of recognizance is available for individuals who are in removal proceedings. 8 U.S.C. § 1226(a)(2)(B). The individual may pay a bond, and the immigration officer may impose conditions of release, such as periodic reporting, via the Form I-220A, Order of Recognizance. *See* 8 C.F.R. § 236.1(c)(8).

and ICE's Alternatives to Detention ("ATD") program.[6] (Ex. A at 8, question 14.) The FOJC is

able to identify which options were considered and explain why others were not. (*Id.*) Finally, the

worksheet asks the FOJC to document a recommendation, considering the least restrictive setting

available, and provide a custody classification level for those age-outs who will be detained. (*Id.* at

8, question 15.) A supervisory ICE officer must approve or disapprove the recommendation and

provide a justification. (*Id.*, question 16.)

III.    **Former UACs who aged out prior to the documentation guidance**

As of March 5, 2019, 19 age-outs who either were in ICE custody on August 30, 2018, or

aged out between August 30, 2018, and October 17, 2018, inclusive, remained in ICE custody. (Ex.

C ¶ 4.) To help memorialize the custody determinations made prior to the issuance of the new age

out worksheet, Chief Harper asked FOJCs to send her office documentation that supported the

decisions to detain former UACs who aged out prior to October 17, 2018, and who remained in

custody. (*Id.*) Defendants submit the documentation herewith. (Ex. D (filed under seal).) Chief

Harper summarizes the relevant information contained in these documents in her declaration. (Ex. C

---

[6]    ICE's ATD Program is used in a variety of contexts beyond custody determinations for
age-outs. It is generally more restrictive than release on an OSUP or OREC. The ICE ATD Program
supervises participants with contractor support and a combination of home visits, office visits, alert
responses, court tracking, and technology. Under ICE's current contract with BI, Inc., ICE ATD
officers determine the frequency of home and office visits, the type(s) of technology to which a
participant is assigned, and whether to include court and alert management. The contract provides
three types of technology:  telephonic reporting, using a biometric voiceprint; GPS monitoring
using an ankle bracelet; and "SmartLink," which allows participants to check in with ICE via their
smartphones or tablets. ICE ATD officers may review and/or adjust case management levels and
technology assignments at any time if circumstances change. The ATD Program is appropriate for
aliens released on OREC, OSUP, a grant of parole, or a bond; it allows ICE to more closely monitor
a portion of cases released from detention.

Under 8 U.S.C. § 1232(c)(2)(B), age-outs are eligible to participate in "alternative to
detention programs, utilizing a continuum of alternatives based on the alien's need for supervision,"
including "placement of the alien with an individual or an organizational sponsor, or in a supervised
group home." These examples of "alternatives" provided in the statute largely fall outside the scope
of ICE's ATD program. (Ex. A.) FOJCs, however, consider these alternatives to detention when
making age-out custody decisions.

¶¶ 5-23.) In all cases, the age-out presents a danger to the community or flight risk. The relevant information includes documentation of involvement in murder, rape, sexual assault, kidnapping, robbery, distribution of child pornography, simple assault, larceny, resisting arrest, gang affiliation, and flight risk. (*Id*.)

## LEGAL STANDARDS

Certification is discretionary, and the Court remains free to modify or decertify the class in light of subsequent developments in the litigation. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (describing certification orders as "inherently tentative"). A court may reconsider its class certification order if compelling reasons cast substantial doubt on whether the class continues to meet the Rule 23 prerequisites. *Kremens v. Bartley*, 431 U.S. 119, 130 (1977); *Hartman v. Duffey*, 19 F.3d 1459, 1470, 1474–75 (D.C. Cir. 1994). Also, because "Rule 23 does not set forth a mere pleading standard," *Wal-Mart*, 564 U.S. at 350, courts at times must "probe behind the pleadings before coming to rest on the certification question," *Falcon*, 457 U.S. at 160. Although the Court cannot preliminarily inquire into the merits of the case, class certification necessarily involves considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.*

A class may be certified only if the prerequisites of Federal Rule of Civil Procedure 23(a) are satisfied: (1) it is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative are typical of those of the class ("typicality"); and (4) the class representative will fairly and adequately protect the interests of the class ("adequacy of representation"). The proponents of a class action have the burden of proof as to each Rule 23 requirement. *See McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n. 9 (D.C. Cir. 1984). This is a continuing burden. Where, as

here, class certification is challenged, the proponent of continued certification bears the "burden of establishing that each of the requirements for class certification . . . are met." *Lightfoot v. D.C.*, 246 F.R.D. 326, 332 (D.D.C. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).

Likewise, commonality requires more than the presence of common questions of law or the mere assertion that class members have suffered a violation of the same provision of law. *Wal-Mart*, 564 U.S. at 350. Instead the resolution of the common question must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "In other words, class members must have suffered the same injury *for the same reason,* such as a uniform policy or practice that is illegal" rather than the oversight or negligence of individual officials in individual cases. *DL v. D.C.*, 302 F.R.D. 1, 11–12 (D.D.C. 2013) (emphasis in original), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017).

## ARGUMENT

I.   **After implementation of the Age-Out Review Worksheet on October 17, 2018, the certified class cannot satisfy Rule 23(a)(1)'s numerosity or commonality requirements at present or going forward.**

Plaintiffs cannot meet their continuing burden to establish that numerosity remains in the certified class. Approximately 581 former UACs aged out of ORR custody between October 17, 2018 and January 30, 2019. (Ex. C ¶ 25.) ICE officers completed Age-Out Review Worksheets for all 581 age-outs and uploaded supporting documentation in the SharePoint site for those age-outs whom ICE detained. *Id*. Chief Harper's declaration and the completed worksheets demonstrate nationwide compliance with the October 17, 2018 documentation policy. (*See* Exs. C, E & F.)

More importantly, however, the Age-Out Review Worksheets and supporting documentation requirements demonstrate ICE's nationwide compliance with its statutory obligations under 8 U.S.C. § 1232(c)(2)(B), to *consider* the least restrictive setting available for each age-out. The worksheet is more than a simple box-checking exercise. It contains sixteen questions, some of

which include subparts, that must be answered. *See* Ex. A at 6-8. Each element of

8 U.S.C. § 1232(c)(2)(B) has at least one corresponding question that elicits information relevant to

that element. *See* Ex. A at 6-8. Some questions elicit information material to more than one element.

*See, e.g., id*. at 7 (question 8) (asking about delinquency and gang affiliation, which are material to

danger to the community and flight risk). Using flight risk as an example, the worksheet allows the

officer to document the results of searches of various criminal and immigration databases, *id*. at 6

(question 3), which elicit information relevant to whether the age-out has an incentive to abscond,

either to avoid criminal prosecution or appearance in immigration court. The worksheet allows the

officer to indicate whether the age-out has pending applications for immigration benefits, *id*., which

would be relevant to the age-out's incentive to appear for removal proceedings in immigration

court. The worksheet documents the nature of removability charges against the age-out, (*id*.,

question 5), which is relevant, again, whether age-out has an incentive to appear for removal

proceedings. The worksheet documents whether the ORR contactor provided a serious incident

report from the ORR shelter, (*id*. at 7, question 6), which could indicate attempts to escape and,

therefore, flight risk. The worksheet also provides space for the officer to confirm or deny the

presence of other flight risk indicators, such as gang affiliation. (*Id*., question 8.) The worksheet

documents consideration of potential sponsors and the relationship of the sponsors to the age-out,

*id*. (question 10), which also is relevant to flight risk considering that if an age-out lacks a fixed,

stable address or family members willing to sponsor him or her the age-out may be more likely to

abscond. Furthermore, the worksheet provides space for narrative responses and reasoning. (*See,

e.g., id*. at 7, question 8) (requiring an explanation for a finding of danger to self or community or

flight risk.) It provides space for FOJCs to state the reason for declining to utilize a particular

alternative to detention. (*Id*. at 8, question 14.) It provides space for officers to explain why they

decide not to place an age-out with an available sponsor or supervised group home. (*Id*., question

9

12.) ICE officers also upload supporting documentation related to the age-out who remains in custody, which may include ORR Post-18 plans, email traffic, and relevant documents from the age-out's A-file to a SharePoint website monitored and controlled by ICE JFRMU. (*Id.* at 1, 3, 4.)

By any reasonable measure, ICE's present and continuing documentation procedure (which is, in fact, a nationwide practice) reflects compliance with Congress's mandate that ICE "shall consider" the least restrictive setting available in making decisions required by 8 U.S.C. § 1232(c)(2)(B). By requiring the FOJC to answer, in written, systematic form, questions that elicit information material to each element of 8 U.S.C. § 1232(c)(2)(B), for each and every age-out who is transferred from an ORR placement to ICE, ICE reflects nationwide compliance with section 1232(c)(2)(B). This Court has recognized that class members have no legally protected interest in any *particular* placement. (*See* ECF 50, 35 n.8.)  ICE's implementation of the Age-Out Review Worksheet and accompanying documentation process, therefore, provides the exact relief that the Court would order if it were to determine that ICE was failing comply with 8 U.S.C. § 1232(c)(2)(B), with regard to the certified nationwide class. Moreover, because class membership is contingent upon ICE *not* considering placement in the least restrictive setting available, including alternatives to detention programs, as required by 8 U.S.C. § 1232(c)(2)(B), and the preponderance of admissible evidence indicates that ICE is complying with the documentation process JRFMU implemented on October 17, 2018, it is unlikely that the class has sufficient members to maintain class certification. Thus, Plaintiffs are left with an empty (or near empty) class. In light of the new documentation requirements that ICE field personnel have followed since October 17, 2018 (Exs. C, E & F), there should not be future class members joining the certified class, absent an individual error.

The overriding consideration in assessing numerosity is the practicability of joinder. While the numerosity requirement "imposes no absolute limitations," courts in this district have generally

found numerosity satisfied where a proposed class has at least forty members, as the Court did in

this case. (*See* ECF No. 50); *see also*, *Taylor v. DC Water & Sewer Auth*, 241 F.R.D. 33, 37 (D.D.C.

2007). A plaintiff need not provide the exact number of potential class members but must provide a

reasonable basis for the estimate provided. "Mere conjecture, without more, is insufficient to

establish numerosity." *Pigford v. Glickman*, 182 F.R.D. 341, 348 (D.D.C. 1998).

In this case, Defendants produced to Plaintiffs almost 600 Age-Out Review Worksheets.

Plaintiffs' counsel took the depositions of ten FOJCs representing a cross section of ICE Field

Offices (Chicago, El Paso, Harlingen, Houston, Miami, New York, Phoenix, San Francisco, Seattle,

Washington, D.C.). Yet litigation of this motion will reveal that Plaintiffs still cannot meet their

continuing burden to provide "a reasonable basis" for any accurate estimate as to the number of

class members. Rather, Plaintiffs can *only* prevail if the Court finds that that everyone who is not

released upon aging out is a class member, which necessarily requires a finding that that the

Age-Out Review Worksheets do not properly document ICE's consideration of the least restrictive

setting available under 8 U.S.C. § 1232(c)(2)(B).[7]

Therefore, because, Plaintiffs can no longer establish either numerosity or commonality as

required under Federal Rule of Civil Procedure 23, the Court should decertify the certified class.

**II.     As for the individuals who aged out *before* October 17, 2018, ICE considered the least
restrictive setting available, including alternatives to detention, and continues to detain
only 19 of them.**

ICE has fulfilled its statutory obligation for all 19 potential class members who were

detained prior to ICE implementing its new documentation procedures. *See* Ex C. In her declaration,

Chief Harper describes the steps she took to verify that the custody decisions for the 19

---

[7]     Without question, if the Court's review of the evidence presented on this Motion, including
hundreds of age-out worksheets (to avoid any possibility of cherrypicking evidence) reveals a
mistake or failure of documentation in an individual case, or a few cases, this would not be
sufficient for numerosity or commonality.

still-detained, potential class members who aged out prior to October 17, 2018, complied with the requirements of 8 U.S.C. § 1232(c)(2)(B). (Ex. C ¶¶ 4-23.)  In February 2019, Chief Harper tasked the FOJCs to send JFRMU documentation supporting the detention of those 19 age-outs. (*Id.* ¶ 4.) After reviewing the documentation, Chief Harper attested that, based on her review, ICE considered the least restrictive setting available at the time of the transfer from ORR custody to ICE for each of these individuals after taking into account their danger to community, danger to self, and risk of flight. (*Id.* ¶ 24.)  In her declaration, Chief Harper summarized the relevant information in the documents. (*Id.* ¶¶ 5-23.)  A review of the summaries reveals a list of criminal activity and risk of flight sufficient to conclude that ICE considered danger and flight risk when making the custody decisions.[8]  (*Id.*) Should the Court nonetheless consider that any of those 19 individuals are class members because the documentation is not adequate to show that ICE considered the least restrictive setting,[9] that subset is not sufficiently numerous to constitute a class because it is less than half the number of the "at least 40" that this Court has recognized as a presumptive minimum for numerosity. (ECF No. 50 at 59.)

Nor can Plaintiffs meet their burden of establishing commonality between these 19 individuals and any putative class members who aged out following implementation of ICE's documentation guidance. To the extent that Plaintiffs will contend that the documentation of ICE's decision-making process on the age-out worksheet is somehow insufficient, claims of inadequate documentation or consideration for these 19 age-outs would lack commonality with claims from

---

[8]    Even though 8 U.S.C. § 1232(c)(2)(B) only mandates that ICE "consider" the least restrictive setting and does not require "placement" in the least restrictive setting, the documentation for these 19 age-outs confirms that the least restrictive setting for these individuals is indeed adult detention.  (Ex. C ¶¶ 5-23.)

[9]    The Court should not second-guess a placement decision because the statutory standard is only that ICE consider the least restrictive setting.  As such, if ICE considered the least restrictive setting, even if it did not choose to place the age-out in that setting, ICE has complied with the statute.

individuals who aged out after October 17, 2018 that ICE FOJCs filled out the Age-Out Review

Worksheet incompletely or incorrectly. Thus, the 19 individuals detained before October 17, 2018

could not even constitute a subclass, if any class were to remain certified at all.

## CONCLUSION

Based on the voluminous evidence attached to this motion documenting ICE's consideration

of the factors required by 8 U.S.C. § 1232(c)(2)(B) in age-out custody determinations—flight risk,

danger to self, danger to the community, the least restrictive setting available, and alternatives to

detention programs—Plaintiffs can no longer meet their ongoing burden to establish the numerosity

requirement of Rule 23(a)(1). Also, to the extent that any class members remain of the 19 age-outs

who were in ICE detention on October 16, 2018, their claims would lack commonality with

individuals who aged out and were detained as adults on or after October 17, 2018 and for whom

ICE had completed an Age-Out Review Worksheet. Therefore, the Court should decertify the class

in this case.

DATE: April 1, 2019                        Respectfully submitted,

                                           JOSEPH H. HUNT
                                           Assistant Attorney General
                                           Civil Division

                                           WILLIAM C. PEACHEY
                                           Director

                                           COLIN A. KISOR
                                           Deputy Director

                                           YAMILETH DAVILA
                                           Assistant Director

                                           CHRISTINA PARASCANDOLA
                                           Senior Litigation Counsel

                                           CARA E. ALSTERBERG
                                           Trial Attorney

                                           By: */s/ Kevin C. Hirst*
                                           KEVIN C. HIRST
                                           Trial Attorney
                                           U.S. Department of Justice, Civil Division
                                           Office of Immigration Litigation –
                                           District Court Section
                                           P.O. Box 868, Washington, DC 20044
                                           Telephone: 202-353-8536
                                           Facsimile: 202-305-7000
                                           kevin.c.hirst@usdoj.gov

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE
## Civil Action No. 1:18-00508-RC

I HEREBY CERTIFY that on April 1, 2019, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing via e-mail to the following counsel:

Tia T. Trout Perez
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 389-5000
Fax: (202) 389-5200
ttrout-perez@kirkland.com

Amanda Jacobowski
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000
Fax: (312) 862-2200
amanda.jacobowski@kirkland.com

Katherine E.M. Goettel
NATIONAL IMMIGRANT JUSTICE CENTER
208 LaSalle St.
Ben Franklin Station, St. 1300
Chicago, IL 60604
(312) 660-1335
Fax: (312) 660-1505
kgoettel@heartlandalliance.org

Stephen R. Patton
KIRLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000
Fax: (312) 862-2200
stephen.patton@kirkland.com

Gianna Borroto
NATIONAL IMMIGRANT JUSTICE CENTER
208 LaSalle St.
Ben Franklin Station, St. 1300
Chicago, IL 60604
(312) 660-1615
Fax: (312) 660-1505
gborroto@heartlandalliance.org

Ruben Loyo
NATIONAL IMMIGRANT JUSTICE CENTER
208 LaSalle St.
Ben Franklin Station, St. 1300
Chicago, IL 60604
(312) 660-1312
Fax: (312) 660-1505
rloyo@heartlandalliance.org

Jonathan G.C. Fombonne
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX 77002
(713) 836-3336
Fax: (713) 836-3601
jonathan.fombonne@kirkland.com

/s/ *Kevin C. Hirst*
KEVIN C. HIRST