# Exhibit C

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Wilmer Garcia Ramirez, *et. al.*, | ) Case No.: 1:18-cv-00508 |
| *Plaintiffs*, | ) |
| v. | ) |
| U.S. Immigration and Customs Enforcement, *et al.*, | ) |
| *Defendants*. | ) |

## DECLARATION OF MELLISSA B. HARPER

I, Mellissa B. Harper, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Chief of the Juvenile and Family Residential Management Unit (JFRMU), Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS). JFRMU addresses issues regarding unaccompanied alien children (UAC) and alien family groups who come into ERO custody. JFRMU develops policies sensitive to the various vulnerabilities and needs of these populations. JFRMU also trains, monitors, and advises ERO Field Office Juvenile Coordinators (FOJCs). These officers serve as their field offices' subject matter experts on juvenile and family matters. As JFRMU advises FOJCs, they in turn advise colleagues who encounter minors, families, and UAC during enforcement activities.

2. The statements contained in this declaration are based on my personal knowledge and experience, upon information provided to me in my official capacity, and upon conclusions and determinations made in accordance therewith.

1

3. On October 17, 2018, ERO implemented a new procedure for documenting and tracking its custody determinations for former UAC who have turned 18 while in Department of Health and Human Services (HHS) Office of Refugee Resettlement (ORR) custody, commonly referred to as "age-outs." *See* Memorandum from Tae D. Johnson, Assistant Director for Custody Management, ERO, to Field Office Directors and Deputy Field Office Directors (Oct. 17, 2018), provided as Ex. A.  The new process helps document contemporaneously the work that the Field Offices already do in considering the least restrictive settings for age-outs, taking into account danger to self, danger to community, and flight risk.  It requires, among other items, that FOJCs complete an ERO Age-Out Review Worksheet for every former UAC who ages out on or after October 17, 2018.

4. To help memorialize the custody determinations made prior to the new policy, I asked the FOJCs to send JFRMU documentation that supported the decisions to detain former UACs who aged out prior to October 17, 2018.  As of March 28, 2019, there are 19 age-outs in ICE custody who were in custody on August 30, 2018, or who were detained upon aging out of ORR care between August 30 and October 16, 2018, inclusive.  The documents pertinent to the custody determinations provided by the FOJCs are submitted with this declaration as Exhibits 1 through 19.  Current case status information was also collected from DHS databases. Below are summaries of the relevant information contained in the documentation and databases for each of the 19 age-outs who remain in ICE custody as of March 28, 2019.

5. On December 18, 2016, former UAC E.H., alien number ***-**7-797, aged out of ORR custody and was transferred to ICE custody.  *See* Ex. 1.  E.H. initially entered ORR custody in late June 2015.  In October 2015, E.H. admitted to membership in the MS-13 gang and claimed that he had participated in five murders in El Salvador, including personally

shooting four people and stabbing another. During his time in ORR custody, E.H. accrued several Significant Incident Reports for behavioral issues, self-harm, and assaults on staff members and other juveniles. ORR denied his maternal aunt's sponsorship application based on her inability to supervise him and provide a safe and stable environment. Upon E.H.'s transfer to ICE custody when he turned 18, ICE considered the least restrictive settings available, and determined that E.H. posed a danger to the community and to himself. ICE therefore detained E.H. at the Batavia Service Processing Center in New York. On December 21, 2017, an Immigration Judge ordered E.H. removed from the United States. On June 22, 2018, the Board of Immigration Appeals (BIA) dismissed E.H.'s appeal of the Immigration Judge's decision. E.H.'s petition for review of his final order of removal is pending before the United States Court of Appeals for the Second Circuit.

6. On January 3, 2017, former UAC O.M., alien number \*\*\*-\*\*4-636, was convicted as a juvenile of robbery in the second degree and sentenced to 365 days imprisonment. *See* Ex. 2. The jail identified him as a member of the MS-13 gang. O.M. entered ORR custody on March 7, 2017. On April 27, 2017, O.M. turned 18 years of age and was transferred to ICE custody. Upon his transfer, ICE considered the least restrictive settings available, determined that O.M. posed a danger to the community, and detained him at the Northwest Detention Center in Washington. On September 5, 2017, an Immigration Judge also found O.M. to be a danger to the community and denied his request for bond.

7. On January 26, 2017, an Immigration Judge ordered former UAC L.C., alien number \*\*\*-\*\*6-331, removed *in absentia*. *See* Ex. 3. On April 7, 2017, police encountered L.C. during a traffic stop. L.C. lied to the police officers about his relationship to one of the other passengers in the vehicle. L.C. had run away from his ORR-approved sponsor, and was

subsequently returned to ORR custody via ICE. On September 23, 2017, L.C. aged out of ORR custody and was transferred to ICE custody. Upon his transfer, ORR reported that L.C. had drug and alcohol addictions and fraternized with alleged gang members. ICE considered the least restrictive settings available and determined that L.C. posed a flight risk in light of his prior flight from his ORR sponsor. ICE detained him at the York County Prison in Pennsylvania. On March 27, 2018, an Immigration Judge again ordered L.C. removed from the United States. On August 27, 2018, the BIA dismissed L.C.'s appeal of the Immigration Judge's removal order. On September 11, 2018, L.C. filed a petition for review of his final removal order with the United States Court of Appeals for the Third Circuit. On December 28, 2018, the court of appeals stayed his removal pending its adjudication of the appeal.

8.  In late May 2017, former UAC K.D., alien number \*\*\*-\*\*3-534, entered ORR custody. *See* Ex. 4. During his time in ORR custody, ORR transferred K.D. to progressively more restrictive settings: first from a shelter to a staff-secure facility, and then from the staff-secure facility to a secure facility in Virginia. While in ORR custody, K.D. was verbally aggressive toward facility staff and claimed affiliation with the MS-13 gang and involvement in a plot to kill his cousin. Upon his transfer to ICE custody when he turned 18, ICE considered the least restrictive settings available and determined that he posed a danger to the community. ICE therefore detained him at Immigration Centers of America-Farmville in Virginia. On April 24, 2018, while in custody at Farmville, K.D. received a disciplinary order as a result of gang activity. On February 15, 2019, an Immigration Judge granted K.D.'s application for asylum. DHS filed an appeal of the Immigration Judge's decision to the BIA.

9.  On November 18, 2017, former UAC J.M., alien number \*\*\*-\*\*7-299, aged out of ORR custody and was transferred to ICE custody. *See* Ex. 5. He originally entered ORR

custody on May 1, 2016, and was subsequently released to the care of his uncle. On March 17, 2017, J.M. was arrested by a local police department on charges of rape in the first degree and two counts of sex offense in the first degree, all against a 14-year-old victim. Those charges were not prosecuted. On May 8, 2017, ICE apprehended J.M. upon learning of four new charges: two charges of distribution of child pornography and two charges of possession of child pornography. ICE transferred him to ORR custody in accordance with the requirements of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. 110-457 (Dec. 23, 2008) (TVPRA). J.M. later pled guilty to possession of child pornography. On November 15, 2017, an Immigration Judge denied J.M.'s motion for custody redetermination under *Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017). Upon J.M.'s transfer to ICE custody when he turned 18, ICE considered the least restrictive settings available, determined that J.M. posed a danger to the community, and detained him at the Worcester County Detention Center in Maryland. On November 6, 2018, an Immigration Judge denied J.M.'s requests for relief from removal and ordered J.M. removed from the United States. His appeal to the BIA is pending.

10.   On February 25, 2018, former UAC N.B., alien number \*\*\*-\*\*8-529, aged out of ORR custody and was transferred to ICE custody. *See* Ex. 6. In the approximately 18 days that N.B. spent in ORR custody, ORR did not identify a potential sponsor for N.B. or provide a Post-18 Plan. ORR reported that N.B. had a history of self-harm and suicide attempts and lacked family or community ties in the United States. Upon N.B.'s transfer to ICE custody when he turned 18, ICE considered the least restrictive settings available and determined that N.B. posed a flight risk and a danger to himself and therefore detained him at the Northwest Detention Center in Washington. On March 21, 2018, an Immigration Judge held a bond hearing, found N.B. to be a flight risk, and denied N.B.'s bond request.

11. On March 15, 2018, former UAC J.E., alien number \*\*\*-\*\*0-011, aged out of ORR custody and was transferred to ICE custody. *See* Ex. 7. ORR had previously released J.E. to a sponsor in June 2016. On February 7, 2017, J.E. was arrested in New York on two charges of felony robbery and one of misdemeanor assault. He subsequently was convicted of robbery in the second degree as a youthful offender and sentenced to one to three years' incarceration. On February 5, 2018, he returned to ORR custody. Upon his transfer to ICE custody, ICE considered the least restrictive settings available and determined that J.E. posed a danger to the community; ICE therefore detained him in the Contra Costa West County Detention Facility in California. On May 29, 2018, an Immigration Judge denied J.E.'s request for bond.

12. On April 27, 2018, former UAC M.C., alien number \*\*\*-\*\*5-815, aged out of ORR custody and was transferred to ICE custody. *See* Ex. 8. Previously, ORR had released M.C. to a sponsor in October 2013. On June 22, 2017, the Las Vegas Police Department arrested M.C. on charges of kidnapping, sexual assault against a victim under 16 years of age, and conspiracy to commit each of those crimes. He was tried as an adult and convicted of conspiracy to commit a crime on February 28, 2018; he was sentenced to 364 days' incarceration. Upon M.C.'s transfer to ICE custody when he turned 18, ICE considered the least restrictive settings available, determined that M.C. posed a danger to the community, and detained him in Yuba County Jail in California. On June 12, 2018, an Immigration Judge denied M.C.'s request for bond.

13. On August 17, 2018, former UAC J.E., alien number \*\*\*-\*\*0-645, aged out of ORR custody and was transferred to ICE custody. *See* Ex. 9. In the approximately five months between J.E.'s entry into ORR custody on March 8, 2018, and his transfer to ICE, ORR was unable to release him to any sponsors. Upon J.E.'s transfer to ICE custody, ICE considered the

least restrictive settings available, and determined that he would be detained at the Houston Contract Detention Facility in Texas. Less than three months later, on November 6, 2018, an Immigration Judge ordered J.E. removed from the United States. J.E.'s appeal of the Immigration Judge's removal order is pending before the BIA.

14. On June 26, 2018, former UAC M.G., alien number \*\*\*-\*\*1-112, aged out of ORR custody and was transferred to ICE custody. *See* Ex. 10. M.G. originally entered the U.S. without inspection in July 2016. At that time, he was apprehended by the U.S. Border Patrol and transferred to ORR, which released him from its custody on August 3, 2016. On April 27, 2018, M.G. was arrested in Pitt County, North Carolina, on charges of simple assault against his mother. On May 24, 2018, he was released from the Pitt County Detention Center to ICE, which transferred him to ORR as a UAC pursuant to the requirements of the TVPRA. Upon M.G.'s transfer to ICE custody when he turned 18, ICE considered the least restrictive settings available, determined that M.G. posed a flight risk, a danger to himself, and a danger to his mother, and detained him in Hudson County Jail in New York. On July 19, 2018, ICE attempted to enroll M.G. in its Alternatives to Detention (ATD) program, but was unable to do so because M.G. was physically combative during enrollment and refused to sign the participation agreement. On October 18, 2018, ICE transferred M.G. to an inpatient mental health care facility in South Carolina, where he remains in ICE custody.

15. On July 15, 2018, former UAC S.L., alien number \*\*\*-\*\*3-920, aged out of ORR custody and was transferred to ICE custody. *See* Ex. 11. During the approximately three months that he was in its custody, ORR was unable to approve a sponsor or other place of residence for S.L. in the United States. Upon S.L.'s transfer to ICE custody, ICE considered the least

restrictive settings available, determined that he posed a flight risk, and detained him at the Houston Contract Detention Facility in Texas.

16.     On July 24, 2018, former UAC M.M., alien number \*\*\*-\*\*3-839, aged out of ORR custody and was transferred to ICE custody.  *See* Ex. 12.  Previously, on December 23, 2016, ORR had released M.M. to the care of his sister.  On March 16, 2018, M.M. was arrested by the Martin County Police Department in Florida on charges of felony larceny and misdemeanor resisting arrest.  On March 18, 2018, the Martin County Police Department again arrested M.M., this time on charges of felony battery by strangulation against his sister and misdemeanor resisting arrest.  On April 9, 2018, M.M. was transferred via ICE to ORR pursuant to the requirements of the TVPRA.  While in ORR custody, M.M. accrued several Significant Incident Reports for fighting and running away, including an escape from a secure facility on July 12, 2018.  Upon his transfer to ICE custody when he turned 18, ICE considered the least restrictive settings available, determined that he posed a flight risk and a danger to the community, and detained him in Immigration Centers of America-Farmville in Virginia.

17.     On August 7, 2018, former UAC P.L., alien number \*\*\*-\*\*1-836, aged out of ORR custody and was transferred to ICE custody.  *See* Ex. 13.  P.L. had been in ORR custody since July 22, 2017, two days after his apprehension by the U.S. Border Patrol.  During P.L.'s 382 days in an ORR placement, ORR was unable to identify a viable sponsor.  Upon P.L.'s transfer to ICE custody, ICE considered the least restrictive settings available and determined he was a significant flight risk.  ICE therefore detained him at the Eloy Detention Center in Arizona.

18.     On August 26, 2018, former UAC E.L., alien number \*\*\*-\*\*4-001, aged out of ORR custody and was transferred to ICE custody.  *See* Ex. 14.  Previously, in November 2016, ORR had released E.L. to the care of his brother.  On July 27, 2017, E.L. failed to appear for a

8

hearing in Immigration Court. The Immigration Judge ordered him removed *in absentia*, as required under 8 U.S.C. § 1229a(a)(5)(A). On August 5, 2018, the Panola County Sheriff's Office in Mississippi arrested E.L. on charges of driving without a license. He subsequently was transferred to ORR via ICE, pursuant to the requirements of the TVPRA. Upon E.L.'s transfer to ICE custody when he turned 18, ICE considered the least restrictive settings available, and determined that E.L., a former fugitive with a court-issued final order of removal, was subject to mandatory detention and detained him in the Hudson County Correctional Facility in New York.

19. On September 20, 2018, former UAC R.M., alien number \*\*\*-\*\*4-669, aged out of ORR custody and was transferred to ICE custody. *See* Ex. 15. R.M. had been in ORR custody for one day, and ORR was unable to identify any potential sponsors. Upon R.M.'s transfer to ICE custody, ICE considered the least restrictive settings available, noted that she had minimal equities and no family or community ties in the U.S., and determined that she posed a flight risk. ICE therefore detained her in the El Paso Service Processing Center in Texas. On January 22, 2019, an Immigration Judge determined that R.M. posed a flight risk and denied her request for release on bond.

20. On September 21, 2018, former UAC L.O., alien number \*\*\*-\*\*2-037, aged out of ORR custody and was transferred to ICE custody. *See* Ex. 16. L.O. had been in the United States and in ORR custody since August 19, 2018. Upon L.O.'s transfer to ICE custody, ICE considered the least restrictive settings available, determined that L.O. posed a flight risk and a danger to himself, and therefore detained him in the Northwest Detention Center in Washington. On December 11, 2018, an Immigration Judge also determined that L.O. posed a flight risk, citing his attenuated relationship with his proposed sponsor, and denied L.O.'s request for release on bond.

21. On September 29, 2018, former UAC M.O., alien number \*\*\*-\*\*0-425, aged out of ORR custody and was transferred to ICE custody. *See* Ex. 17. M.O. had been in ORR custody since July 20, 2018. In the approximately two months that M.O. was in ORR custody, ORR identified a potential sponsor, but that person failed to provide a plan for M.O.'s care. Upon M.O.'s transfer to ICE custody when he turned 18, ICE considered the least restrictive settings available, the ORR Post-18 Plan, that M.O. had been in the United States for only two months, and that only temporary shelter housing was available. Implicit in these considerations was that M.O., lacking a fixed, stable in the United States, and having spent only two months in the United States, would be a danger to himself and a flight risk. ICE therefore detained him at the Northwest Detention Center in Washington.

22. On October 16, 2018, former UAC S.S., alien number \*\*\*-\*\*6-373, aged out of ORR custody and was transferred to ICE custody. *See* Ex. 18. S.S. had been in the United States and in ORR custody for three days, and did not provide a viable release address. Upon his transfer to ICE custody, ICE considered the least restrictive settings available and determined that S.S. posed a danger to himself and a flight risk. ICE therefore detained him in the Orange County Sheriff's Department Theo Lacy Facility in California. On December 11, 2018, an Immigration Judge denied S.S.'s request for release on bond, finding S.S. a flight risk. On January 15, 2019, an Immigration Judge ordered S.S. removed from the United States. S.S.'s appeal of the Immigration Judge's decision is pending before the BIA.

23. On October 16, 2018, former UAC A.R., alien number \*\*\*-\*\*0-062, aged out of ORR custody and was transferred to ICE custody. *See* Ex. 19. A.R. had been in ORR custody since May 11, 2018. In the approximately five months that A.R. was in ORR custody, all potential sponsors either withdrew their sponsorship applications or failed to meet ORR's

requirements. Upon A.R.'s transfer to ICE custody, ICE considered the least restrictive settings available and determined that A.R. posed a danger to himself and a flight risk. ICE therefore detained him in the Houston Contract Detention Facility in Texas.

24. In reviewing the records relating to the 19 individuals listed above, I have examined each of their cases and can attest that, at the time of their transfer from ORR custody to ICE, ICE considered the least restrictive setting available for each of these individuals after taking into account their danger to community, danger to self, and risk of flight.

25. Following JFRMU's October 17, 2018 guidance, the Age-Out Review Worksheets are now being completed on a nationwide basis. ICE's JFRMU SharePoint site reflects that 581 Age-Out Review Worksheets and attached documentation were uploaded during the period between October 17, 2018 and January 30, 2019, for individuals who aged out of ORR custody during that same period. These documents are submitted herewith. Accordingly, ICE ERO is complying with the JFRMU October 17, 2018, guidance to document ICE's consideration of the least restrictive setting for each age-out pursuant to 8 U.S.C. § 1232(c)(2)(B), Ex. A, on a nationwide basis.

26. My office engages in quality control to ensure that the field offices properly document their custody decisions for age-outs. My staff regularly reviews a sampling of the Age-Out Review Worksheets to ensure the documentation reflects nationwide compliance with 8 U.S.C. § 1232(c)(2)(B). Although there may be variations in how individual employees fill out the form, these quality control reviews help JFRMU identify where further training is required.

27. An analysis of the Age-Out Review Worksheets for individuals who aged out between October 17, 2018 and January 30, 2019, reveals that of the 581 individuals who aged

out, 154 were detained and 427 were not detained.[1] Of the 427 not detained, 419 were released on an order of recognizance. *See* 8 U.S.C. § 1226(a)(2). Six were released on ICE's ATD program (members of this group also received orders of recognizance), one was released on bond, and one was released on an order of supervision, which occurs when an individual is subject to a final order of removal. *See* 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.5.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 28th day of March, 2019, at Washington, D.C.

_____
Mellissa B. Harper
Chief, Juvenile and Family Residential Management Unit
U.S. Immigration and Customs Enforcement

---

[1] The breakdown of custody determinations and release type referenced in this paragraph was compiled from the JFRMU SharePoint site. Slight deviations from the information contained in the Age-Out Review Worksheets can be attributed to clerical error.