# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| WILMER GARCIA RAMIREZ, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 18-508 (RC) |
| | : | | |
| v. | : | Re Document No.: | 109 |
| | : | | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER

## I. INTRODUCTION

Plaintiffs in this case are young adults who arrived in the United States as unaccompanied alien children and were taken into the custody of the Office of Refugee Resettlement ("ORR"), a component of the Department of Health and Human Services ("HHS"). Upon turning eighteen, however, they were transferred into the custody of Immigration and Customs Enforcement ("ICE") within the Department of Homeland Security ("DHS"). Whenever such a custody transfer occurs, ICE is statutorily required to consider the "least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(B). But Plaintiffs allege that the agency sent them to adult detention facilities without considering less restrictive placements—the result, Plaintiffs say, of a systematic failure to comply with the applicable statutory mandate. They accordingly filed this class action lawsuit against ICE, DHS, and the Secretary of Homeland Security, seeking declaratory and injunctive relief. After the Court granted Plaintiffs' motion for class certification and granted a motion for preliminary injunction with respect to the named Plaintiffs, the case

proceeded to discovery, which remains ongoing. Presently before the Court is a motion for protective order brought by Defendants to limit electronically stored information ("ESI") discovery to eighteen custodians from whom productions have already been completed. The motion is, unsurprisingly, opposed by Plaintiffs, who seek ESI from sixteen additional custodians. As explained below, the Court denies the motion, because Defendants have failed to articulate specific facts to support limiting discovery in the manner that they have requested.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure allow for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(2); *see also In re England*, 375 F.3d 1169, 1177 (D.C. Cir. 2004) ("The Federal Rules of Civil Procedure encourage the exchange of information through broad discovery."). Under Rule 26(c), however, a "judge may, 'for good cause,' issue a protective order limiting, among other things, the scope of discovery or the parties' ability to disseminate information discovered during litigation 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Gillard v. McWilliams*, 315 F. Supp. 3d 402, 409 (D.D.C. 2018) (quoting Fed. R. Civ. P. 26(c)(1)). The party moving for a protective order bears the burden of showing that "disclosure would cause a clearly defined and serious injury." *Campbell v. U.S. Dep't of Justice*, 231 F. Supp. 2d 1, 7 (D.D.C. 2002). "A mere showing that discovery may involve inconvenience and expense" is insufficient. *Id.* To meet its burden, the moving party "must articulate specific facts to support its request and cannot rely on speculative or conclusory statements." *Friends of the Earth v. U.S. Dep't of the Interior*, 236 F.R.D. 39, 41 (D.D.C. 2006) (quoting *Low v. Whitman*, 207 F.R.D. 9, 10–11 (D.D.C. 2002)). Ultimately, whether to issue a protective order falls within the trial court's "broad discretion,"

2

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 249 F. Supp. 3d 516, 520 (D.D.C. 2017) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)), and requires the court to balance "the burdensomeness to the moving party against the requestor's need for, and relevance of the information sought." *Doe v. Provident Life & Accident Ins. Co.*, 247 F.R.D. 218, 221 (D.D.C. 2008).

### III. ANALYSIS

As noted above, Defendants here ask the Court to grant a protective order to limit discovery to the eighteen custodians agreed upon by the parties and to prevent further ESI discovery that plaintiffs seek from sixteen additional custodians. According to Defendants, a protective order is warranted for three reasons: (1) that the documents produced from the sixteen additional custodians would be unnecessarily cumulative; (2) that the process of producing these additional documents would be an undue burden on Defendants; and (3) that information obtained in the additional documents produced would not be proportional to the needs of the case.[1]

---

[1] In addition to these three arguments, Defendants also contend that Plaintiffs' request for the additional sixteen custodians was premature because it was made when production from the initial eighteen custodians was still ongoing. According to Defendants, Plaintiffs thus cannot "shoulder their burden of establishing any hole in the productions that must be filled by additional custodians." Am. Mot. Protective Order at 25, ECF No. 109. This argument is now essentially moot, because productions from the first eighteen custodians have been completed. But in any event, the Court finds Defendants' prematurity argument unconvincing because the delays experienced during the first wave of productions resulted entirely from the use of dilatory tactics by Defendants—tactics that the Court has already described as "highly unnecessary." Feb. 15, 2019 Order at 4, ECF No. 111 ("[T]he delays in production at this point appear to stem entirely from Defendants' choice to subject these documents to two separate stages of manual privilege review.").

### A. Cumulativeness

The Court begins with Defendants' first argument—that limiting discovery is necessary because adding the sixteen additional custodians would be "unnecessarily cumulative." Am. Mot. Protective Order at 1, ECF No. 109. Rule 26(b)(2) expressly permits the Court to "limit the frequency or extent of discovery . . . if . . . the discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i). Thus, the party requesting discovery must "be able to articulate a basis for the court to find that ESI in the possession of the additional custodians would be different from, and not simply duplicative of, information that the responding party has already produced." *Enslin v. Coca-Cola Co.*, No. 2:14-cv-06476, 2016 WL 7042206, at *2 (E.D. Pa. June 8, 2016). Yet a change as simple as a temporal difference has been deemed sufficient to counter a contention that further discovery would be unnecessarily cumulative. *In re Boiler Chicken Antitrust Litig.*, No. 16 C 8687, 2018 WL 3586183, at *6 (N.D. Ill. July 26, 2018) ("The Court does not agree that searching for and producing documents for a time frame outside the [initial] parameters . . . necessarily is cumulative or duplicative.").

Here, Defendants argue that the additional custodians "overlap[] with regard[] to timeframes, positions, as well as areas of responsibility," and that the additional custodians are unnecessary because the original custodians come from a "cross-section of 10 field offices and specified positions." Am. Mot. Protective Order at 21. Defendants claim that this cross-section is a "representative population." Defs.' Reply at 3, ECF No. 120.

Plaintiffs respond by arguing that Defendants rely on mere speculation and "do not offer any analysis of the ESI in question or other support for these assertions." Pls.' Resp. Am. Motion Protective Order ("Pls.' Resp.") at 6–7, ECF No. 117. Plaintiffs then provide an extensive explanation of the additional custodians that identifies the importance of each

custodian to the case and differentiates the additional custodians by time period, responsibility, position, and location of field office.  *See id.* at 2–3, 7–15.  Plaintiffs further contend that duplication would not be an issue because of the "de-dupe" technology available to Defendants, which is designed to automatically remove duplicate documents from review.  *Id.* at 8.

The Court concludes that Plaintiffs have the better of the arguments on this point and that Defendants have not "articulate[d] specific facts to support [their] request" for a protective order.  *Friends of the Earth*, 236 F.R.D. at 41 (quoting *Low*, 207 F.R.D. at 10–11).  Defendants claim that the additional custodians would be cumulative and duplicative and that the cross-section represented by the original eighteen custodians was sufficient, but this assertion is speculative.  Indeed, although Defendants contend that the original custodians were a "representative population," Defs.' Reply at 3, this claim is unsupported by either statistical evidence or logical analysis.  Defendants also cite to *Enslin*, but the movants in that case had shown that each document captured by an additional custodian was already captured by a prior custodian searched.  *See Enslin*, 2016 WL 7042206, at *3.  Here, Defendants have not shown such a degree of overlap.  Rather, by distinguishing the new sixteen custodians by responsibility, time period, and location, Plaintiffs have shown that the new custodians would likely "provide *unique* relevant information not already obtained."  *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013).  And finally, Defendants have offered no response to Plaintiffs' assertion that the "de-dupe" technology would resolve any duplication issue.  Without more specifics, Defendants have not shown that cumulativeness warrants the issuance of a protective order.

## B. Undue Burden

Defendants' second argument is that discovery from the additional sixteen custodians would constitute an undue burden. *See* Fed. R. Civ. P. 26(b)(2)(B) (A "party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."). Defendants contend that producing ESI is a "time-consuming, multi-step process" and that adding additional custodians would "bog this litigation down in months of burdensome . . . discovery." Am. Mot. Protective Order at 26–27. They claim that adding the additional custodians could require review of up to roughly 144,000 documents, Defs.' Reply at 5, which would "represent a tremendous added drain on Defendants' already strained resources," Am. Mot. Protective Order at 27.

Plaintiffs counter that they have already trimmed down the number of proposed custodians from seventy-one to a total of thirty-four—the eighteen original plus the sixteen at issue in the present motion—while limiting the breadth of the document search by using search terms. Pls.' Resp. at 2–4. Plaintiffs also contend that Defendants have "already collected and processed the ESI of the 16 custodians in question, and that their Active Learning process is now fully developed and functioning." *Id.* at 19. And Plaintiffs again reference the "de-dupe" technology that should reduce the number of documents that need to be reviewed. *Id.* at 20.

On this point, too, the Court finds that Defendants have not articulated anything more than general statements that allowing discovery from the additional custodians would cause an undue burden. Defendants do not provide any evidence or specific factual allegations to support their assertion that discovery from the additional custodians would unduly add to the cost or time needed to process the necessary documents. *See Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, No. 14 Civ. 9372, 2018 WL 2215510, at *9 (S.D.N.Y. May 15,

2018) ("[Defendant's] burden . . . is minimal. It has already taken substantial steps by collecting ESI from their files that contained plaintiffs' search terms and has apparently reviewed and produced a portion of these documents. Moreover, [Defendant] does not provide any information regarding the incremental cost or burden of expanding discovery."). Because the ESI from the sixteen new custodians has already been gathered and searched, that part of the challenged discovery cannot be considered burdensome. Thus, Defendants must be relying on the burden of their privilege review to support their claim of burdensomeness. But Defendants do not respond to Plaintiffs' assertion that the "de-dupe" technology will greatly reduce the number of documents to be reviewed. And perhaps most importantly, the Court has already stated that it finds Defendants' two-staged privilege review to be "highly unnecessary," Feb. 15, 2019 Order at 4, ECF No. 111, and "a waste of resources for an agency purportedly strapped for resources," *id.* at 2 (internal quotation marks omitted). The Court refuses to allow Defendants to unnecessarily create their own burden and then attempt to use it as a reason to limit discovery that is relevant and appropriate.

### C. Proportionality

Defendants' final argument is that adding the sixteen custodians would not be proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) (allowing only for discovery that is "proportional to the needs of the case"). There are six factors to consider when determining proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden of the proposed discovery outweighs its likely benefit." *In re Broiler*, 2018 WL 3586183, at *8.

Even though Defendants cite to these factors, the crux of their argument lies in the notion that Plaintiffs "'are not entitled under the rules of proportionality . . . to every single document related' to a discoverable issue." Am. Mot. Protective Order at 24 (quoting *In re Morgan Stanley Mortgage Pass-Through Certificates Litig.*, No. 09-CV-02137, 2013 WL 4838796, at *2 (S.D.N.Y. Sept. 11, 2013)).

Plaintiffs respond to this argument by going through each of the six factors individually. As to the first, the Plaintiffs argue that the issues at stake "could not be of greater importance, given that they relate to the liberty and physical and psychological well-being of hundreds of teenagers in the custody of the United States government." Pls.' Resp. at 15. Even though Plaintiffs do not seek monetary damages, they argue that these issues have "importance far beyond the monetary amount involved." *Id.* (quoting Fed. R. Civ. P. 26 Advisory Committee's Note (1983 Amendment)). With respect to access to information, Plaintiffs assert that Defendants "have a vast information advantage" and "control all data related to age-out custody determinations" and related information. *Id.* at 16. When it comes to the parties' resources, Plaintiffs argue that Defendants are agents and bodies of the United States government and that their resources cannot be that strained considering the number of lawyers working on the different aspects of this case. *Id.* at 16–17. With respect to the importance of discovery in resolving the issues, Plaintiffs claim that they "have no way other than discovery to obtain the information necessary to prove their claims" and that the Defendants rely only "on *speculation* that the additional discovery" will not matter. *Id.* And finally, in weighing the burden of the additional discovery against the benefit, the Plaintiffs argue that any added burden would be minimal because of the use of technology and limits on the number of custodians and search terms. *Id.* at 18–19.

The Court finds the Defendants have not articulated sufficient specific facts to support their proportionality argument. Plaintiffs do not seek every possible document, and they have limited their requests, as this Court has previously mentioned, to thirty-four of the seventy-one potential custodians. And as Plaintiffs also note, "[n]ationwide class actions typically require—and warrant—extensive discovery." Pls.' Resp. at 2. The Court is thus inclined to agree with Plaintiffs' view of the proportionality factors: this litigation is vitally important to the welfare of numerous teenagers, there is a large information disadvantage between the parties, Defendants' resources are not unnecessarily strained, and discovery is important in resolving the underlying issues. The Court therefore rejects Defendants' argument that discovery from the additional sixteen custodians would be disproportionate to the needs of the case.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Protective Order (ECF No. 109) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: April 22, 2019                                                                       RUDOLPH CONTRERAS
                                                                                            United States District Judge