# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILMER GARCIA RAMIREZ, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.: 18-508 (RC) |
| | : | |
| v. | : | Re Document Nos.: 212, 214, 231 |
| | : | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

DENYING PLAINTIFFS' MOTION TO EXCLUDE CERTAIN OF THE OPINIONS OF DEFENDANTS' EXPERTS QING PAN AND JOSEPH GASTWIRTH; GRANTING PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANTS' EXPERT GARY MEAD; AND DENYING DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT IN PEDIATRICS

## I. INTRODUCTION & BACKGROUND

Plaintiffs in this case are young adults who arrived in the United States as unaccompanied alien children and were taken into the custody of the Office of Refugee Resettlement ("ORR"), a component of the Department of Health and Human Services ("HHS"). Upon turning eighteen, they were transferred into the custody of Immigration and Customs Enforcement ("ICE") within the Department of Homeland Security ("DHS"). Whenever such a custody transfer occurs, ICE is statutorily required to "consider placement [of the 18-year-old] in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(B). But Plaintiffs allege that the agency sent them to adult detention facilities without considering less restrictive placements—the result, Plaintiffs say, of a systematic failure to comply with the applicable statutory mandate. They accordingly filed this class action lawsuit against ICE, DHS, and the Secretary of Homeland Security, alleging

violations of § 706(1) and § 706(2) of the Administrative Procedure Act ("APA") and seeking declaratory and injunctive relief. A bench trial is scheduled to begin on December 2, 2019.

This opinion addresses three motions *in limine* that are ripe for decision—two filed by Plaintiffs and one by Defendants. Each seeks to exclude testimony or a report by an expert that the other side has put forward. First, Plaintiffs have filed a Motion to Exclude Certain of the Opinions of Defendants' Experts Qing Pan and Joseph Gastwirth, arguing that they have offered opinions outside of their permissible expertise and role in the litigation. ECF No. 212. Plaintiffs have also filed a Motion to Exclude the Testimony of Defendants' Expert Gary Mead, arguing that Mead has offered inadmissible legal opinions and that, despite being designated a rebuttal expert, his opinions are not proper rebuttal. ECF No. 214. Defendants have filed a Motion to Exclude the Report and Testimony of Plaintiffs' Expert in Pediatrics, Dr. Julie Linton, on the grounds that her testimony is not admissible to assist the court in deciding the Plaintiffs' statutory claims. ECF No. 231. Each motion has been fully briefed and the Court will address each in turn after reviewing the legal standards that governs all three motions.

## II. ANALYSIS

### A. Legal Standard

"While neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence expressly provide for motions *in limine,* the Court may allow such motions 'pursuant to the district court's inherent authority to manage the course of trials.'" *Barnes v. District of Columbia*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (quoting *Luce v. United States,* 469 U.S. 38, 41 n.4 (1984)). "Motions *in limine* are designed to narrow the evidentiary issues at trial." *Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2010). Importantly, a trial judge's discretion "extends not only to the substantive evidentiary ruling, but also to the threshold question of

whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial." *Barnes*, 924 F. Supp. 2d at 79 (quoting *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 11 (D.D.C. 2011)).

Federal Rule of Evidence 702 provides that qualified expert testimony is admissible if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. A witness may qualify as an expert through knowledge, skill, experience, training or education. *Id.* "In general, Rule 702 has been interpreted to favor admissibility." *Khairkhwa v. Obama*, 793 F. Supp. 2d 1, 10 (D.D.C. 2011) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993); Fed. R. Evid. 702 advisory committee's note (2000)) ("A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."). "The degree of 'knowledge, skill, experience, training or education' required to qualify an expert witness 'is only that necessary to insure that the witness's testimony 'assist' the trier of fact.'" *Khairkhwa*, 793 F. Supp. 2d at 11 (quoting *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981) (noting that the weight of the evidence is a matter to be assessed by the trier of fact)). "[I]t is not necessary that the witness be recognized as a leading authority in the field in question or even a member of a recognized professional community." 29 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 6265 (2015). "The 'assist' requirement is satisfied where the expert testimony advances the trier of fact's understanding to any degree." *Id.*

"The Rule requires trial courts to assume a 'gatekeeping role,' ensuring that the methodology underlying an expert's testimony is valid and the expert's conclusions are based on 'good grounds.'" *Chesapeake Climate Action Network v. Export-Import Bank of the U.S.*, 78 F. Supp. 3d 208, 219 (D.D.C. 2015) (quoting *Daubert*, 509 U.S. at 590-97). "The trial court's gatekeeping obligation applies not only to scientific testimony but to all expert testimony." *Groobert v. President & Dirs. of Georgetown Coll.*, 219 F. Supp. 2d 1, 6 (D.D.C. 2002) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999)). The gatekeeping analysis is "flexible" and "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.*, 526 U.S. at 141-42. Trial courts may apply a variety of different factors in assessing reliability, including whether the expert's technique can be tested or has been subject to peer review, the existence of maintenance of standards and controls, and whether the technique has been generally accepted in the scientific community. *See Groobert*, 219 F. Supp. 2d at 6 (citing *Daubert*, 509 U.S. at 593-94). In some cases, particularly in situations involving non-scientific testimony, the factors enunciated in *Daubert* may not be applicable, and a court's reliability analysis focuses on the expert's personal knowledge, which "can be a reliable and valid basis for expert testimony." *Id.* at 7 (citing *Kumho Tire Co.*, 526 U.S. at 149); *see also* Fed. R. Evid. 702. Expert testimony, however, "that rests solely on 'subjective belief or unsupported speculation,' is not reliable." *Groobert*, 219 F. Supp. 2d at 6 (citing *Daubert*, 509 U.S. at 590).

The Court is also mindful that "where a bench trial is in prospect, resolving *Daubert* questions at a pretrial stage is generally less efficient than simply hearing the evidence." *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts*, LLC, No. 07 Civ. 5804 (GEL), 2009 WL 959775, at *6, n.3 (S.D.N.Y. Apr. 8, 2009). This is because, in a bench trial,

4

the "factfinder and the gatekeeper are the same." *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006). A *Daubert* motion, therefore, effectively asks the Court to "gate-keep expert testimony from [itself]." *Joseph S. v. Hogan*, No. 06 Civ. 1042 (BMC) (SMG), 2011 WL 2848330, at *2 (E.D.N.Y. July 15, 2011); *see also* 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:2.75 (4th ed. 2015) ("In a non-jury trial . . . the law gives the judge a wide scope of discretion to read expert affidavits or hear expert testimony which will assist in reaching an informed decision.").

### B. Plaintiffs' Motion to Exclude Certain of the Opinions of Defendants' Experts Qing Pan and Joseph Gastwirth

Plaintiffs' first motion *in limine* challenges some—but not all—of the opinions of Defendants' rebuttal experts Qing Pan and Joseph Gastwirth. Their report is a rebuttal to the report of Plaintiffs' expert statistician, Dr. Justin Lenzo. Pls.' Mem. in Supp. of Mot. to Exclude Certain of the Opinions of Defs.' Experts Qing Pan and Joseph Gastwirth ("Pan & Gastwirth Mot.") at 1, ECF No. 212-1.

In creating his report for Plaintiffs, Dr. Lenzo "reviewed the Age-Out Review Worksheets ("AORWs") and other materials ("SharePoint materials") produced by ICE with respect to [unaccompanied alien children ("UACs")] who aged out [of HHS custody]" during a discrete time period. Pan & Gastwirth Mot., Ex. A ("Lenzo Report") ¶ 8, ECF No. 212-2. He also used statistical analysis methods "to analyze the frequencies with which there is any evidence of" four Risk Factors that are appropriately considered by ICE agents "in the AORWs and SharePoint materials" as well as "whether the Risk Factors or other factors appear to drive" decisions about whether or not to detain Age-Outs. *Id.* ¶ 9. He concluded that "for 82.0 percent of Age-Outs that ICE detained during the Review Period, the AORFs and SharePoint materials did not contain any evidence that might indicate a potential danger to the community or to self, identified one or more

5

potential sponsors, and did not contain any evidence that might indicate a flight risk that would not be addressed by release to a sponsor." *Id.* ¶ 72. He further concluded that "the percentage of Age-Outs that are detained varies across field offices," and that this was the case "even when controlling for whether there is evidence of the Risk Factors." *Id.* ¶¶ 78, 87–92.

Professors Pan and Gastwirth produced a rebuttal report for the Government in which they "attempted to replicate Dr. Lenzo's work by reviewing and performing their own analysis on the data Defendants produced to Plaintiffs." Defs.' Opp'n to Pan & Gastwirth Mot. ("Pan & Gastwirth Opp'n") at 3, ECF No. 234.[1] Importantly, "Defendants' counsel directed Profs. Gastwirth and Pan to assume that a [Field Office Junior Coordinator's ("FJOC")] completion of an AORW constitutes contemporaneous documentation of an ICE officer's documentation of consideration of least restrictive setting available, taking into account danger to self, danger to the community, and risk of flight." *Id.* Plaintiffs read the Pan and Gastwirth report as "confirm[ing] that one variable dominates the question of which age-outs are detained . . . : the field office making the age-out decision." Pan & Gastwirth Mot. at 1. The Government disputes this characterization and argues that the rebuttal report concludes that sponsor availability, which they say Dr. Lenzo failed to consider, was the most important factor. Pan & Gastwirth Opp'n at 8. This is the sort of disagreement about statistical methodology that the Court expects to see in an expert statistician rebuttal report, and the Plaintiffs' motion does not seek to exclude this testimony.

The Plaintiffs do ask the Court to exclude those portions of the Professors' opinions that they say go beyond statistical issues to reach "impermissible legal conclusions" that are outside

---

[1] The Court has reviewed the Report of Professors Pan and Gastwirth to confirm the accuracy of the parties' characterizations of its contents. Pan & Gastwirth Motion, Ex. B ("Pan & Gastwirth Report") at 1, ECF No. 211-2. However, because that report has been filed only under seal, the Court has chosen to avoid citing it directly in this Order.

the scope of their expertise. Pan & Gastwirth Mot. at 2. They say that, after reviewing Dr. Lenzo's report, the Professors "changed the topic from statistics to the ultimate issue in the case: whether ICE complied with 8 U.S.C. § 1232(c)(2)(B)" and that they answered this question in the affirmative "based not on any statistical analysis, bur rather [on] their interpretation of individual worksheets, their assumption that conclusory assertions in those worksheets accurately stated the reasons for detention, and their unsupported assumption that the reasons they attribute to individual field officers were legally sufficient." *Id.* at 11. The conclusions they reach, according to Plaintiffs, "are well outside Professors Pan and Gastwirth's areas of expertise, . . . are improper legal conclusions, and . . . are based on baseless and inaccurate assumptions." *Id.* at 12.

The Court agrees with much if not all of what Plaintiffs have to say about the proper scope of expert testimony, but denies this motion because of the difficulty of drawing an appropriate line on the front end and because, in a bench trial, the Court can easily discount the weight of any testimony the Professors might give that goes beyond the proper scope of their expertise. Professors Pan and Gastwirth should only testify to the extent that their testimony "is based on sufficient facts or data," rather than unfounded assumptions, and only to the extent that it "is the product of reliable principles and methods . . . reliably applied . . . to the facts of the case." Fed. R. Evid. 702. "Expert testimony that consists of legal conclusions cannot properly assist the trier of fact" in either "understand[ing] the evidence or . . . determin[ing] a fact in issue." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997); *see also U.S. ex rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 98 (D.D.C. 2002) ("[E]xpert testimony consisting of legal conclusions will not be permitted because such testimony merely states what result should be reached . . . ."). Opinion testimony on whether or not ICE is

complying with its statutory obligations under 8 U.S.C. § 1232(c)(2)(B) would therefore be improper, as the Government acknowledges. *See* Pan & Gastwirth Opp'n at 7.

The Government also suggests that "it would be entirely appropriate for Defendants to ask their experts 'Did your analysis and subsequent review of the underlying documents reflect consideration by ICE of less restrictive alternatives to detention when placing age-outs?'" *Id.* The Court is less certain. It seems unlikely that the Professors would be able to answer this question without straying from "reliable principles and methods" of statistics and stepping outside their expertise to offer legal conclusions. However, the Court does not find it necessary to rule out the possibility at this stage. In a bench trial, it is easy enough for the Court to simply hear the evidence presented and treat testimony not based in reliable statistical principles and methods as deserving of limited if any weight. *See DL v. District of Columbia*, 109 F. Supp. 3d 12, 29 (D.D.C. 2015) ("[T]hese concerns go to the weight, not the admissibility, of [the expert's] report, especially in a bench trial where there is no concern about jury confusion or prejudice as noted above."). Moreover, the Plaintiffs are not seeking to exclude the entirety of the Professors' report and testimony, which means that they will be testifying anyway, so the efficiency gained or time saved by granting the motion *in limine* would be limited.

The Court therefore denies this motion but nonetheless cautions the Government that testimony from the Professors that is not based on reliable statistical methods will not be given much weight. Although the motion is denied, the Court is willing to entertain objections from the Plaintiffs at trial on these grounds, though it hopes few will be necessary. Furthermore, to the extent that the Professors' testimony relies on the assumption that filling out an AORW worksheet necessarily constitutes consideration by an ICE officer of placement the least restrictive setting, *see* Pan & Gastwirth Opp'n at 3, the Court notes that this is a significant

assumption that touches on the key issues of fact in dispute at trial. Unless and until the Government proves that it is actually the case that filling out an AORW necessarily means the proper consideration was given, the Court is not inclined to give much weight to expert opinions that rely on this, or any other, disputed premise.

### C. Plaintiffs' Motion to Exclude the Testimony of Defendants' Expert Gary Mead

Plaintiffs' second motion *in limine* seeks to exclude the entirety of the rebuttal expert report of Gary Mead. Mr. Mead's report is a rebuttal to the report of Plaintiffs' expert John Sandweg. Both Mr. Mead and Mr. Sandweg are former ICE administrators. Mr. Mead worked at ICE as acting director for the ICE Office of Detention and Removal Operations ("DRO") from 2006 to 2009 and as deputy assistant director and later executive associate director of Detention Management at ICE Enforcement Removal and Operations ("ERO") Unit, from 2009 to 2013. Pls.' Mem. in Supp. of their Mot. to Exclude the Testimony of Defs.' Expert Gary Mead ("Mead Mot.") at 3, ECF No. 214-1). Plaintiffs argue that Mr. Mead has no experience "implementing, complying with, or evaluating compliance with, Section 1232(c)(2)(B)," which he admits was not enacted until just before his retirement from ICE, and which he admits he had no familiarity with prior to this lawsuit. *Id.* As a result, they argue, his testimony that, for example, "ICE is in compliance with 8 U.S.C. § 1232(c)(2)(B) as a result of highly trained, motivated and dedicated officers . . . ." is improper as expert testimony. *Id.* at 4 (quoting Mead Mot. Ex 1, Expert Report of Gary F. Mead Rebutting John R. Sandweg ("Mead Report") at 4, ECF No. 214-2 (filed under seal)). Other examples of testimony from Mr. Mead's report that Plaintiffs highlight include "[i]t is my expert opinion that FOJCs are thoroughly familiar with and consistently apply the requirement to consider the full range of less restrictive alternatives to detention in each case"

and "ICE officers are sworn to enforce the law, including 8 U.S.C. § 1232(c)(2)(B), and the evidence shows that they do." *Id.* (quoting Mead Report at 5, 7).

The Court agrees with the Plaintiffs that Mr. Mead's report does not present proper expert testimony because it consists nearly entirely of legal conclusions that are not based on reliable principles and methods and which are only tangentially based on Mr. Mead's own experience. Mr. Mead's expert report purports to offer his opinion on whether ICE is following the requirements of the statute, but this is the very question before the Court and is therefore wholly inappropriate as a subject of expert testimony. *Burkhart*, 112 F.3d at 1212 ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact . . . ."). "[A]n expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Id.* at 1212–13. Here, Mr. Mead's conclusions in his expert report are phrased squarely in terms of whether or not ICE is complying with the statute. The entirety of the proceedings before the Court will be aimed at answering the precise questions that Mr. Mead has answered in conclusory fashion. This motion is therefore granted because Mr. Mead's expert testimony will not assist the factfinder—the Court—in this case. The Court need not address the Plaintiffs' additional concerns that Mr. Mead's opinion is not based on reliable principles and methods and that he lacks familiarity with the statute.[2]

---

[2] The Court also need not address the numerous critiques of Mr. Sandweg's report that the Government raises in its opposition brief. *See* Defs.' Opp'n to Mead Mot., ECF No. 232. The Government has not filed a motion *in limine* challenging Mr. Sandweg's testimony.

### D. Defendants' Motion to Exclude the Report and Testimony of Plaintiffs' Expert in Pediatrics

The third motion before the Court is from the Government, which seeks to exclude as irrelevant the report and testimony of Dr. Julie Linton, Plaintiffs' expert in pediatrics. Defs.' Mot. to Exclude the Report and Testimony of Pls.' Expert in Pediatrics ("Linton Mot."), ECF No. 231. Dr. Linton's expert report addresses "the physical and mental health-related effects of adult detention on immigrant teenagers who are detained by ICE when they turn eighteen." Pls.' Opp'n to Linton Mot. ("Linton Opp'n"), Ex A. Expert Report of Julie M. Linton, M.D. ("Linton Report") at 1, ECF No. 235-1. The Government argues that Dr. Linton's report is irrelevant to this case and is inadmissible hearsay. Linton Mot. at 2–3. The Plaintiffs respond that Dr. Linton's testimony on the extent of the injuries they will face if they are detained will be relevant as the Court evaluates whether injunctive relief is appropriate. Linton Opp'n at 2–3 (arguing that the Linton Report is relevant to whether the Plaintiffs will suffer irreparable injury, whether remedies at law are adequate, and to the balancing of hardships).

The Court agrees with the Plaintiffs that while Dr. Linton's testimony may not touch on the central merits issues in the case, it remains relevant to important questions of remedies. The Federal Rules of Evidence define relevant evidence as evidence that "has any tendency to make a fact more or less probable" so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. Evidence that is not relevant is not admissible. Fed R. Evid. 402. The APA allows plaintiffs to seek injunctions, among other forms of relief. 5 U.S.C. § 703 (providing for "actions for declaratory judgments or writs of prohibitory or mandatory injunction"). Plaintiffs arguing for injunctive relief must meet a four-factor test by demonstrating that they "will suffer an irreparable injury," that they "lack an adequate remedy at law," that "the balance of hardships tip in favor of injunctive relief" and that injunctive relief would not disserve the public interest.

*Nat. Res. Def. Council v. U.S. Envt'l Prot. Agency*, 383 F. Supp. 3d 1, 15 (D.D.C. 2019). Each of these factors is, therefore, "of consequence in determining the action," since the Plaintiffs here are seeking injunctive relief. Dr. Linton's testimony about the harms that will be suffered by class members if they are detained is relevant to three of the four factors. Her testimony will self-evidently aid the Court in evaluating the probability that the class members' injuries will be irreparable. It will also aid the court with evaluating the two balancing factors—weighing the Plaintiffs' hardships against ICE's and comparing the private and public interests at stake.

The Government reminds the Court that Plaintiffs "have no legally protected interest in any particular placement" and are not pursuing a court order that would dictate any particular outcome following ICE's consideration of placement in the least restrictive setting. *Garcia-Ramirez v. ICE*, 338 F. Supp. 3d 1, 30 n. 8 (D.D.C. 2018) (ECF No. 60 at 35 n.8); *see* Linton Mot. at 5. This is correct, but if ICE is considering the least restrictive setting available for a given age-out, that individual is at least somewhat less likely to be detained than someone who did not receive the required consideration. The injuries that would result from detention are therefore still relevant to the determination of proper injunctive relief even if no one is entitled to any particular placement because, in the aggregate, pursuant to Plaintiffs' theory of the case, these injuries are more likely to result when ICE is not complying with its statutory obligations.

Further, the Government is mistaken in suggesting that this is a straightforward case of APA review in which the Court could simply vacate the agency decision and remand for further consideration. Defs.' Reply in Supp. of Linton Mot. at 2–3, ECF No. 239. It remains to be seen what remedies might be appropriate, but the Plaintiffs are challenging the ICE's alleged failure to comply with its statutory obligation on a widespread basis. There is not a discrete agency process that yielded a single decision that needs to be re-run nor a rulemaking that must be

redone. If a widespread statutory violation is proven, Dr. Linton's testimony could be relevant to the Court's determination of what—if any—injunctive relief against the agency will be necessary to remedy that violation.

### III. CONCLUSION

For the foregoing reasons, the motions *in limine* are disposed of as follows: Plaintiffs' Motion to Exclude Certain of the Opinions of Defendants' Experts Qing Pan and Joseph Gastwirth, ECF No. 212, is DENIED; Plaintiffs' Motion to Exclude the Testimony of Defendants' Expert Gary Mead, ECF No. 214, is GRANTED; and Defendants' Motion to Exclude the Report and Testimony of Plaintiffs' Expert in Pediatrics, ECF No. 231, is DENIED. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 14, 2019 　　　　　　　　　　　　　　　　　RUDOLPH CONTRERAS
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge