*Garcia-Ramirez v. ICE*
Notice of Decision and Interim Guidance
Date:

On July 2, 2020, the U.S. District Court for the District of Columbia issued its Findings of Fact and Conclusions of Law Concerning Liability in this class-action lawsuit challenging ICE's compliance with 8 U.S.C. § 1232(c)(2)(B), which requires ICE officers to "consider placement [of an age-out] in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight."  The district court concluded that ICE's decision-making process pursuant to 8 U.S.C. § 1232(c)(2)(B) violates the Administrative Procedure Act (APA) 5 U.S.C. § 706 (1) and (2) in that: (i) "ICE has acted in a manner that is 'arbitrary, capricious, and abuse of discretion [and]… otherwise not in accordance with the law' by failing to follow procedures made necessary by Section 1232(c)(2)(B) and to take into account the factors the statute requires"; and (ii) by this failure, "ICE has also 'unlawfully withheld or unreasonably delayed' required consideration of placement in the least restrictive setting available to many members of the certified class." Decision at 180.  The district court did not order any remedies and plans to issue an order concerning remedies in the near future.

In its 180-page decision (attached), the district court found that ICE was not compliant with the statute because ICE was not considering all options less restrictive that ICE detention and was not conducting a sufficiently broad inquiry into whether those options were available in every case.  Notably, the court found that the statute required that ICE must consider individual and organizational sponsors, including conducting a search for any possibilities, and that such an inquiry was not subject to time or geographic limitations.  The court further found that ICE's process and training materials were not compliant with these statutory obligations.

Specifically, the district court made the following findings:

- 8 U.S.C. § 1232(c)(2)(B) requires ICE to (1) take into account for each individual age-out danger to self, danger to community, and flight risk; (2) as it considers placement in the least restrictive setting available; and (3) make each age-out eligible for alternatives to detention. Decision at 152. Section 1232(c)(2)(b) does not specify how the FOJC must weigh each individual factor of danger to self, danger to community, and flight risk. *Id*. at 154.  Notwithstanding, ICE "must treat the risk factors as relevant variables [] and then must determine placement, the outcome of the decision-making process for each age out." *Id*. at 156.

- In order to consider the "least restrictive setting available," FOJCs are required to know what settings are actually "available", which includes the full range of alternatives. *Id*. at 157.  These alternatives include not just monitoring programs administered by ICE's Alternatives to Detention (ATD) unit, but also ICE bonds. *Id*. at 159. These options must be evaluated for each age-out because they are always less restrictive than detention, although they need not be considered as alternatives to OSUP/OREC. *Id*. at 160. ICE Officers' failures to consider "ATD programs or ICE bonds runs afoul of the Secretary's obligations to make age-outs 'eligible to participate in alternative to detention programs.'" *Id*. at 176 (citing Section 1232(c)(2)(B)).

- Similarly, FOJCs are required to consider placement of an age-out with an individual or organization sponsor. *Id*. at 160.  Such consideration may include evaluation of a sponsor identified by ORR or the age-out's attorney but might also require the FOJC to conduct an independent and reasonable search to try and identify an appropriate sponsor. *Id.* This includes considering organizational sponsors outside a Field Office's area of responsibility, because

1

- Section 1232(c)(2)(B) does not limit the geographic area of what is available to an age-out. *Id*. at 161.

- "[T]he location of the ICE field office where the age-out is processed is not a proper consideration in the agency's decision-making." *Id*. at 178. Accordingly, "ICE violates the APA by making the outcomes of its detention decisions depend not on the factors Congress has identified as relevant but instead on the field office [and its available resources, or lack thereof]." *Id*. The evidence establishes that decisions to detain age-outs "have little to do with the statutory risk factor or sponsor availability and everything to do with the amount of effort made by the ICE field officers exercising their considerable discretion under ICE policies." *Id*. at 178. "In short, when ICE officers attempt to identify settings for age-outs that are less restrictive than adult detention, they are able to do so almost without fail." *Id*. at 179.

- "If, after a reasonable search involving review of—at the very least—proposed sponsors, material in the age-out's file and on the Form I-213, and known shelters, no placement is "available" for a particular age-out, then sponsorship may not be an option and the officer may be left to evaluate only whatever available placements do not require a sponsor." *Id*. at 161. "When ICE officers decline to identify sponsors, [it] fails to fulfill [its] statutory obligations. *Id*. at 174. Thus, ICE's reliance on ORR to identify sponsors is improper because the two agencies have different mandates, requirements, and evaluation protocols as they are dealing with two distinct groups of individuals: ORR is dealing with children while ICE deals with adults. *See id*. at 174-75.

- Section 1232(c)(2)(B) also does not place a time limit on ICE's obligation to comply with its requirements. ICE is required to satisfy its obligations under the statute, which can occur beyond the age-out's eighteenth birthday. *Id*. at 162-63.

- Completed Age-Out Review Worksheets (AORWs) do not establish ICE's compliance with Section 1232(c)(2)(B) because they are not a reliable record since evidence indicated that AORWs are often produced and/or edited after the fact by officers who did not make the actual decisions. *Id*. at 169. Additionally, AORWs do not ask the FOJC to identify what the least restrictive setting available is, but simply require the officer to check boxes. *Id*. at 170.

- JFRMU and ICE HQ do not make an effort to monitor Field Office compliance with Section 1232(c)(2)(B) because review of the substance of the age-out custody determination is never conducted. *Id*. at 171.

- JFRMU's training materials which instruct FOJC's to follow "sequential decision-making", which does not permit every age-out to be considered for alternatives to detention, violates Section 1232(c)(2)(B). *Id*. at 152-54. JFRMU training materials "do not emphasize compliance with [Section 1232(c)(2)(B), but] in fact encourage procedures that are contrary to it." *Id*. at 170-71. This is evidenced by: (i) JFRMU's instruction to officers to consider the "totality of circumstances" in custody determinations, which JFRMU does not define and which is not part of the statute; (ii) JFRMU's implicit acceptance for FOJC's to "disregard potential sponsors recommended by advocates, potential sponsors identified in an age-out's form I-213, and organizational sponsors used in prior instances by their colleagues"; (iii) ICE's use of the Risk-Classification Assessment (RCA) tool which provides a default recommendation to "detain" an age-out, a fact which many officers were not aware of; and (iv) ICE's failure to develop any standards for what makes a "sponsor" viable. *Id*. at 170-173.

2

**Effective immediately**, FOJCs and supervisors involved in reviewing or approving age-out custody determinations under 8 U.S.C. § 1232(c)(2)(B) should ensure that such custody determinations are evaluated consistent with the District Court's decision as outlined above. This includes the following modifications to the age-out process:

1. Officers **shall not** run the Risk Classification Assessment (RCA) tool as part of an age-out custody determination. The RCA may only be utilized and considered for the limited purpose of determining the level of detention (e.g., low, medium, high) in those cases where a custody determination has already been made and approved and that determination is to detain the age-out. A broadcast message to this effect was disseminated on August 19, 2020, in compliance with the Court's order. Please ensure that you sign and return the form acknowledging receipt of the broadcast message.

2. In any case that the field office intends on placing any condition of release upon the age-out such as a bond or ATD, or who the field office intends to detain upon age-out, will require JFRMU concurrence **prior** to implementation of the decision. Please contact JFRMU by email or phone as soon as possible to discuss the case and have the records and information you are relying on ready and available to share with JFRMU.

3. JFRMU may contact field offices about specific age-out determinations made prior to the Court's order clarifying the Department of Homeland Security's obligations under the statute and this guidance.

Please note that this is interim guidance only and will remain in effect until further notice. The court has ordered ICE to submit proposed revisions to its training materials and Age-Out Review Worksheet for approval. Once approved, such training, forms and instruction will control.