# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILMER GARCIA RAMIREZ, et al., | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) Civil Action No. 1:18-cv-00508-RC <br> ) |
| UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | ) <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' PROPOSED PERMANENT INJUNCTION, AND SUPPORTING MEMORANDUM**

**TABLE OF CONTENTS**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................ ii

**INTRODUCTION** .................................................................................................................. 1

**BACKGROUND** .................................................................................................................... 1

    I.    Findings of Fact and Conclusions of Law ................................................................. 1

    II.    Post-trial Developments ............................................................................................ 2

**LEGAL BACKGROUND** ..................................................................................................... 5

    I.    Remedies under the APA .......................................................................................... 5

    II.    Enforcement of Judgments ....................................................................................... 6

**ARGUMENT** .......................................................................................................................... 7

    I.    The Court Should Remand the Proceedings to U.S. Immigration and Customs Enforcement. ............................................................................................................. 7

    II.    Plaintiffs' Proposed Permanent Injunction is Unnecessary. ..................................... 7

    III.    The Court Should Permit Defendants to Use Their Proposed AORW on Remand. .................................................................................................................. 10

    IV.    The Court Should Permit ICE to Consider Organizational Sponsors Proposed by Plaintiffs and Work Independently to Update its National Age-Out Shelter List Every Six Months. .......................................................................................... 11

    V.    Plaintiffs Should Consult ICE or File Motions to Enforce to Resolve Disputes of Alleged Violations. ............................................................................................. 14

**CONCLUSION** .................................................................................................................... 15

## TABLE OF AUTHORITIES

### Cases

*Am. Hosp. Ass'n v. Azar*,
  385 F. Supp. 3d 1 (D.D.C. 2019) .......................................................................... 5, 6, 7

*Baptist Med. Ctr. v. Burwell*,
  2019 WL 978957 (D.D.C. Feb. 28, 2019) ...................................................................... 5

*Bennett v. Donovan*,
  703 F.3d 582 (D.C. Cir. 2013) .............................................................................. 5, 6, 9

*Berge v. United States*,
  949 F. Supp. 2d 36 (D.D.C. 2013) ....................................................................... 5, 6, 7

*County of Los Angeles v. Shalala*,
  192 F.3d 1005 (D.C. Cir. 1999) .................................................................................... 8

*Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n v. Mar. Admin.*,
  215 F.3d 37 (D.C. Cir. 2000) ...................................................................................... 11

*Flaherty v. Pritzker*,
  17 F. Supp. 3d 52 (D.D.C. 2014) .............................................................................. 6, 8

*Freedom Watch, Inc. v. McAleenan*,
  442 F. Supp. 3d 180 (D.D.C. 2020) ........................................................................... 11

\*\*\**Garland v. Ming Dai*,
  141 S. Ct. 1669 (2021) ...................................................................................... 5, 10, 14

*Heartland Hosp. v. Thompson*,
  328 F. Supp. 2d 8 (D.D.C. 2004) .................................................................................. 6

*Heartland Regional Medical Center v. Leavitt*,
  415 F.3d 24 (D.C. Cir. 2005) ........................................................................................ 6

*Int'l Ladies' Garment Workers' Union v. Donavan*,
   733 F.2d 920 (D.C. Cir. 1984) ....................................................................................... 6

*Palisades Gen. Hosp. Inc. v. Leavitt*,
   426 F.3d 400 (D.C. Cir. 2005) ....................................................................................... 8

*Pub. Citizen, Inc. v. Dep't. of Educ.*,
   292 F. Supp. 2d 1 (D.D.C. 2003) ................................................................................... 6

*Shands Jacksonville Med. Ctr., Inc. v. Azar*,
   959 F.3d 1113 (D.C. Cir. 2020) ..................................................................................... 9

*Sierra Club v. McCarthy*,
   61 F. Supp. 3d 35 (D.D.C. 2014) ................................................................................... 6

*Tennessee Gas Pipeline Co. v. F.E.R.C.*,
   926 F.2d 1206 (D.C. Cir. 1991) ..................................................................................... 8

\*\*\**Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*,
   435 U. S. 519 (1978) ................................................................................... 5, 7, 10, 14

*Watkins v. Washington*,
   511 F.2d 404, 167 U.S. App. D.C. 166 (D.C. Cir. 1975) ............................................... 6

## Statutes

5 U.S.C. § 701(a)(2) ............................................................................................................. 11

5 U.S.C. § 706 .............................................................................................................. 5, 9, 14

\*\*\*8 U.S.C. § 1232(c)(2)(B) .......................................................................................... passim

# INTRODUCTION

It has been one year since this Court issued its July 2, 2020 Decision, ECF No. 333, and over 16 months since Defendants proposed remedies should this Court find non-compliance with 8 U.S.C. § 1232(c)(2)(B), ECF No. 267. In that time, Defendants have complied with § 1232(c)(2)(B) by completing Age-Out Review Worksheets ("AORWs") 8/19, providing enhanced U.S. Immigration and Customs Enforcement ("ICE") Headquarters oversight, and providing Age-Out data to Plaintiffs to ensure transparency. Compliance is evidenced by the Fiscal Year ("FY") data filed herewith and the fact that Plaintiffs have not raised any compliance issues with this Court in the 18 months since Defendants began to share Age-Out data post-trial (January 2020). Despite this evidence, Plaintiffs now seek a permanent injunction that places unnecessary burdens on Defendants and improperly vitiates Defendants' discretion. Instead, Defendants ask this Court to remand for implementation of the proper remedy, consistent with this Court's July 2, 2020 Decision, which Defendants present in their Proposed Final Judgment and Remand. *See* Ex. A. Any order beyond this exceeds the scope of the Administrative Procedure Act ("APA").

# BACKGROUND

## I.   Findings of Fact and Conclusions of Law

Between December 2019 and January 2020, the Court held a five-week trial to determine whether Defendant ICE acted arbitrarily and capriciously, abused its discretion, or violated the law when deciding whether to detain adults who had aged-out of Health and Human Services ("HHS") Office of Refugee Resettlement ("ORR") custody, and whether ICE unlawfully withheld or unreasonably delayed compliance with § 1232(c)(2)(B) when

deciding whether to detain such adults. The Court ordered the parties to submit proposed findings of fact, conclusions of law, and proposed remedies. Min. Order (Jan. 16, 2020). On February 18, 2020, Defendants submitted proposed remedies in the event this Court determined liability under § 1232(c)(2)(B). ECF No. 267. On July 2, 2020, the Court issued findings of fact and conclusions of law. ECF No. 333.

## II.     Post-trial Developments

**Number of Age-Outs Detained** – Conditions have changed since the parties submitted their proposed remedies over 16 months ago. ECF No. 267. Since May 2020, ICE has made 947 Age-Out custody determinations and detained ten Age-Outs, reflecting a 99% release rate. *See* FY data, ICE POST TRIAL 9564-65, attached as Ex. B. Specifically, in the current fiscal year, ICE made 847 Age-Out custody determinations and detained only four Age-Outs, *id.*, reflecting over a 99.5% release rate, thus far.

**Age-Out Review Worksheet** – ICE continues to use the AORW 8/19. ECF No. 203-2. The parties also agreed upon training slides, outlining the use of the proposed, revised AORW. ECF No. 345-1. Plaintiffs agree that Defendants' proposed, revised AORW, ECF No. 345-3, should be used, but asked to limit its use for a trial period of six months, after which the parties will meet and confer "concerning any revisions." ECF No. 359 at 3; *see* ECF No. 345-3. The parties have filed motions regarding the competing AORWs. *See* ECF Nos. 345, 347, and 351.

**Training** – On November 19, 2020, the parties agreed on two new PowerPoint training presentations. ECF No. 345-1. The first provides an overview of the requirements of § 1232(c)(2)(B), this Court's July 2, 2020 decision, and describes how Age-Out placement determinations should be made in compliance with the statute and this Court's

July 2, 2020 decision. ECF No. 345-1. The second provides an overview of ICE's Alternative to Detention program and ICE bonds. ECF No. 345-2. The parties have finalized these presentations. Defendants have not yet provided training to the field using these materials, however. As part of a remand to the agency, Defendants intend to use these materials to train Field Office Juvenile Coordinators ("FOJCs") and their supervisors on their statutory duties under § 1232(c)(2)(B). Training will include providing the materials online, providing virtual trainings, and—pandemic conditions permitting—providing an in-person training conference in the near future. Indeed, as part of its remedy on remand, Defendants intend to include the agreed-upon training materials and guidance in the ICE FOJC Handbook. *See* Ex. 1 to Ex. A, FOJC Handbook.[1] ICE also intends to post the FOJC Handbook on ICE's internal website, which is accessible to all FOJCs. Accordingly, the Court should permit Defendants to implement these changes on remand.

**Compliance Checks -** As agreed by the parties, the Juvenile and Family Residential Management Unit ("JFRMU") provides additional compliance checks. Since trial, Plaintiffs have alleged no instances of noncompliance with § 1232(c)(2)(B).

**Proposed Improvements** - Defendants propose the following improvements to existing processes: (A) provide the field with an updated version of their AORW, which mirrors the parties' agreed training slides and guidance, Ex. C, Defs' Prop. Revised AORW, ECF No. 345-3; (B) use, and train FOJCs with, the materials agreed upon by the parties; (C) continue to provide Age-Out data to Plaintiffs; and, (D) consider any

---

[1] ICE will still need to officially finalize the FOJC Handbook on remand by inputting additional hyperlinks, pictures, and other media. However, the attached FOJC Handbook represents the substance of the materials ICE intends to implement on remand.

3

organizational sponsors proposed by Plaintiffs, and independently work to update its National Age-Out Shelter List every six months. *See* Ex. A

**Reporting -** On November 19, 2020, the parties agreed, ECF No. 345, that ICE would provide the following information to Plaintiffs on a monthly basis, on or before the 15th day of the following month, except as noted below:

- Copies of AORWs and all SharePoint materials for each Age-Out during the month. Absent unforeseen or unusual circumstances beyond ICE's control, such worksheets and materials shall be provided on or before the 15th of the following month, with the exception of Age-Outs that are subsequently identified as a result of ICE's monthly reconciliation of its list of Age-Outs with ORRs, for which worksheets and SharePoint materials shall be provided as soon as reasonably possible after they are identified.

- A spreadsheet summary that shows, by field office (or sub-office in the case of Harlingen): the name and "A" number of each Age-Out during that month; and whether the Age-Out was detained or released.

- A monthly spreadsheet summary that reports, by field office (or sub-office in the case of Harlingen), and for JFRMU overall, the total numbers and percentages of Age-Outs that were released and detained: in every prior month during the current fiscal year; in the current month; and year-to-date during the current fiscal year.

In April 2021, ICE made 265 Age-Out custody determinations to release on an order of recognizance ("OREC").[2] Ex. B at 2. In May 2021, ICE made 206 Age-Out custody determinations to release on an OREC. *Id.* Defendants' proposed order for remand continues to include the above data-sharing with Plaintiffs.

**Nationwide Age-Out Shelter List –** As Plaintiffs note, the parties developed a Nationwide Age-Out Shelter List that FOJCs may utilize when making custody determinations and determining which organizational sponsors are available to Age-Outs.

---

[2]   Each month ICE also reconciles its data with information voluntarily provided by ORR.

**Plaintiffs' Motion for Entry of a Final Judgment and Permanent Injunction** – On June 11, 2021, Plaintiffs asked the Court to enter a permanent injunction and provided the judgment that they seek the Court to enter. ECF Nos. 359 & 359-1.

## LEGAL BACKGROUND

**I.     Remedies under the APA**

The remedies available under the APA are limited. The district court may compel unlawfully withheld agency action or set aside a final agency action that is arbitrary, capricious, or contrary to law. *See* ECF No. 50 at 44-45 (citing 5 U.S.C. § 706). A "[r]eviewing court is 'generally not free to impose' additional judge-made procedural requirements on agencies that Congress has not prescribed and the Constitution does not compel." *Garland v. Ming Dai*, 141 S. Ct. 1669 (2021) (quoting *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U. S. 519, 524 (1978)). As this Court has recognized, the APA permits remand to the agency to decide the proper remedy, and not an injunction compelling the agency to take a specific action. *See Am. Hosp. Ass'n v. Azar*, 385 F. Supp. 3d 1, 11 (D.D.C. 2019), *judgment entered*, No. CV 18-2084 (RC), 2019 WL 3037306 (D.D.C. July 10, 2019), *rev'd on other grounds*, 967 F.3d 818 (D.C. Cir. 2020) ("when a plaintiff brings an APA claim 'to set aside unlawful agency action . . . it is the prerogative of the agency to decide in the first instance how best to provide relief.'") (Contreras, J.) (quoting *Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013)); *see also Berge v. United States*, 949 F. Supp. 2d 36, 42 (D.D.C. 2013) ("[U]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case **must** be remanded to the agency for further action consistent with the corrected legal standards.")

5

(emphasis added); *Baptist Med. Ctr. v. Burwell*, 2019 WL 978957, at *9 (D.D.C. Feb. 28, 2019) (adopting Magistrate Harvey's R&R to remand to the agency for remedy where agency's prior action was made "under an inconsistent interpretation of a statutory provision" to avoid judicial intervention into agency prerogatives). "Injunctive relief [in APA cases] is typically appropriate when 'there is only one rational course for the agency to follow on remand.'" *Azar*, 385 F. Supp. at 11 (quoting *Berge*, 949 F. Supp. at 43).

## II.     Enforcement of Judgments

"District courts have the authority to enforce the terms of their mandates[,]" *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014), and "[t]he exercise of this authority is 'particularly appropriate' when a case returns to a court on a motion to enforce the terms of its mandate to an administrative agency[,]" *id.* (quoting *Int'l Ladies' Garment Workers' Union v. Donavan*, 733 F.2d 920, 922 (D.C. Cir. 1984)); *see also Bennett*, 703 F.3d at 589. "The Court should grant a motion to enforce if a 'prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it.'" *Sierra Club v. McCarthy*, 61 F. Supp. 3d 35, 39 (D.D.C. 2014) (quoting *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)); *see also Pub. Citizen, Inc. v. Dep't. of Educ.*, 292 F. Supp. 2d 1 (D.D.C. 2003) (granting a motion to enforce judgment ordering the Department of Energy's compliance with Plaintiff's Freedom of Information Act request when the Department could not demonstrate that its search for information was adequate to satisfy the judgment). Crucially, "[s]uccess on a motion to enforce a judgment gets a plaintiff only 'the relief to which [Plaintiff] is entitled under [its] original action and the judgment entered therein.'" *Heartland Regional Medical Center v. Leavitt*, 415 F.3d 24, 29, 367 U.S. App. D.C. 256 (D.C. Cir. 2005) (citing *Watkins v. Washington*, 511 F.2d

404, 406, 167 U.S. App. D.C. 166 (D.C. Cir. 1975)). Thus, if a plaintiff "has received all relief required by that prior judgment, the motion to enforce [should be] denied." *Heartland Hosp.*, 328 F. Supp. 2d at 11.

## ARGUMENT

### I. The Court Should Remand the Proceedings to U.S. Immigration and Customs Enforcement.

The Court may, and should, order remand pursuant to the APA. Consistent with the discretion delegated to ICE by Congress, remand would permit ICE to train its employees, develop and use its own AORW, and share Age-Out data with Plaintiffs on a monthly basis, consistent with its efforts to maintain transparency,. The Court should remand for Defendants to craft procedures consistent with the discretion Congress intended for substantive judgments. *Vermont Yankee*, 435 U.S. at 524-25. Defendants' Proposed Final Judgment and Remand, attached hereto as Exhibit A, reflects the remedies that Defendants will implement on remand to comply with § 1232(c)(2)(B) and this Court's July 2, 2020 Decision.[3]

### II. Plaintiffs' Proposed Permanent Injunction is Unnecessary.

Injunctive relief is typically appropriate when "'there is only one rational course for the agency to follow on remand.'" *Azar*, 385 F. Supp. at 11 (quoting *Berge*, 949 F. Supp. at 43). Plaintiffs' proposed permanent injunction, however, goes beyond the scope of the status quo of the past 18 months and what is permissible under the APA.

While Defendants must comply with § 1232(c)(2)(B), as explained in this Court's July 2, 2020 Decision, there are multiple ways Defendants may develop and implement

---

[3] Defendants do not assent to the Court's findings of fact and conclusions of law and have not waived appeal of any component therein.

7

policies, procedures, and tools for doing so. Both parties have proposed feasible mechanisms to comply with § 1232(c)(2)(B), which demonstrates that no injunction is necessary or required. *See Azar*, 385 F. Supp. at 11 (refusing to issue a permanent injunction because the parties' briefs showed Defendant agency "ha[d] multiple courses on remand" to comply with the court's findings and the agency should decide the response on remand); *see also Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) (holding that district court did not have jurisdiction to order Defendant agency to implement specific remedies after finding it acted contrary to law); *Tennessee Gas Pipeline Co. v. F.E.R.C.*, 926 F.2d 1206, 1214 (D.C. Cir. 1991) (concurrence) (refusing to instruct agency on remand to implement a specific course of action, as such action is judicially improper and reserved for "a once-in a decade sort of remedy."); *see also County of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999) ("Once, therefore, the district court held that the Secretary had misinterpreted [the statute], it should have remanded to the Secretary for further proceedings consistent with its conception of the statute. Not only was it unnecessary for the [district] court to retain jurisdiction to devise specific remedy for the Secretary to follow, but it was error to do so."); *Flaherty*, 17 F. Supp. 3d at 57 ("To order the agency to take specific actions [for an APA remedy] is reversible error."). The Court, therefore, should decline to issue a permanent injunction requiring Defendants to take specific remedial actions on remand without providing Defendants the ability to create their own remedy.

Two significant developments over the past 18 months advise strongly against a permanent injunction. First, the number of Age-Outs detained in FY 2021, at less than one-half of one percent of the total Age-Out population, is *de minimis*. Ex. B; *supra*, at 2.

8

Importantly, Plaintiffs have not raised any concerns regarding the four detained Age-Outs of FY 2021 after receiving ICE SharePoint materials, which included, among other things, the completed AORW 8/19 and additional background information.

Second, ICE has demonstrated its path toward compliance with § 1232(c)(2)(B). *See*, *supra*, at 2-4 (discussing: continued use of the AORW 8/19; compliance checks by ICE Headquarters; monthly reporting of data on Age-Out custody determinations and the submission of extensive underlying documentation to Plaintiffs' counsel; and development of a Nationwide Age-Out Shelter list). Further, the remedies that ICE would adopt to maintain compliance moving forward are improvements to these existing processes, *namely,* providing the field with an updated AORW, Ex. C, ECF No. 345-3, enhanced training materials agreed upon by the parties, submission of monthly Age-Out data to Plaintiffs; a commitment to consider organizational sponsors Plaintiffs propose, and updates to its National Age-Out Shelter List every six months. *See* Ex. A.[4]

Accordingly, the Court should remand to Defendants to permit them to craft the proper remedy in the first instance—which Defendants have outlined in the attached proposed order, *see* Ex. A—and not order specific actions on remand other than those to which Defendants consent in Exhibit A. Plaintiffs can challenge under the APA any

---

[4] Defendant's motion to publish interim guidance remains fully briefed and pending with this Court for resolution. *See* ECF No. 337. As nearly a year has passed since this Court's July 2, 2020 Decision, ECF No. 333, Defendants believe it would be beneficial to notify the field of the specific findings of fact and conclusions of law from that Decision, to inform the field that significant training will be forthcoming, and to reiterate the prior-issued broadcast regarding the use of the RCA. Specifically, the guidance (which would be effective immediately upon dissemination after the Court's approval) reiterates not to use the RCA for age-out detention decisions, to contact JFRMU prior to detaining any age-out, and that JFRMU may review certain cases of detained age outs. It also is the transmittal of the Court's complete findings and conclusions. ECF No. 333.

remedy they believe is improper or otherwise insufficient. *See Bennett*, 703 F.3d at 589 (recognizing that if plaintiffs prevailed on the merits in the district court "but were dissatisfied with [the agency's] remedy, they would always have the option to seek review on the ground that [the agency's] actions were 'arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law.'") (quoting 5 U.S.C. § 706 (2)(A)); *see also Shands Jacksonville Med. Ctr., Inc. v. Azar*, 959 F.3d 1113, 1118 (D.C. Cir. 2020) (reinforcing that plaintiffs could challenge Defendant agency's remedy under the APA if it believed it was contrary to law).

### III. The Court Should Permit Defendants to Use Their Proposed AORW on Remand.

The Court should deny Plaintiffs' request to limit Defendants' proposed AORW's use for a trial period of six months. ECF No. 359 at 3; *see* ECF No. 345-3. In enacting § 1232(c)(2)(B), Congress did not require ICE to create an AORW for each Age-Out custody determination; instead, the AORW is a tool that ICE created, in its discretion, to assist the FOJCs to document their Age-Out custody decision-making process and reflect compliance with § 1232(c)(2)(B). In fact, this is the type of procedural requirement that the Supreme Court has stated a district court may not graft onto the APA. *See Ming Dai*, 141 S. Ct. at 1669; *see also Vermont Yankee*, 435 U.S. at 524. This Court should preclude Plaintiffs from imposing a temporal limit on Defendants' use of their proposed AORW.[5]

Further, "revisions" would only be necessary if Plaintiffs can demonstrate Defendants' revised AORW (once fully implemented) fails to comply with the statute and

---

[5] The parties' motions regarding the competing AORWs are before this Court as ECF Nos. 345, 347, and 351.

this Court's July 2, 2020 Decision. Indeed, Defendants believe that the revised, proposed AORW is an improvement on the AORW 8/19 currently used by FOJCs.[6] Allowing ICE to use their own AORW is more compelling, considering that it has designed comprehensive training and implemented better quality control, consisting of JFRMU's reviews of custody determinations to place Age-Outs on ATD, issue an ICE Bond, or detain, and because ICE has been providing, and will continue to provide, to Plaintiffs extensive information regarding each Age-Out. Finally, the Court should permit Defendants to implement ICE's proposed AORW on remand, without temporal limitation, because it is an improvement on AORW 8/19 and is more consistent with the training materials that the parties have agreed upon (discussed below).

### IV. The Court Should Permit ICE to Consider Organizational Sponsors Proposed by Plaintiffs and Work Independently to Update its National Age-Out Shelter List Every Six Months.

As Plaintiffs note, the parties previously developed a Nationwide Age-Out Shelter List that FOJCs may utilize when making custody determinations and determining which organizational sponsors are available to Age-Outs. Plaintiffs now ask this Court to require Defendants "to provide an explanation for the reason(s) for their objection" to every organizational sponsor that Plaintiffs' propose for inclusion in the Nationwide Age-Out Shelter List. Plaintiffs also demand the ability to challenge any organizational sponsor that Defendants elect to exclude from the list. The APA, however, does not permit Plaintiffs to dictate or challenge Defendants' exercise of agency discretion. *See* 5 U.S.C. § 701(a)(2);

---

[6] Even though concerns regarding AORW 8/19 were raised at trial, in the almost two years since its roll-out, FOJCs have continued to use AORW 8/19 as a guide to document their compliance with § 1232(c)(2)(B), without issue, as discussed at the December 2020 hearing. *See* Transcript of Status Conference (Dec. 16, 2020) at 11-13.

11

*see also Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n v. Mar. Admin.*, 215 F.3d 37, 43 (D.C. Cir. 2000) ("In the absence of any statutory or self-imposed limitation, we have no jurisdiction to review under the APA an agency's procedural decision regarding how best to make a substantive decision committed by law to the agency's discretion."); *Freedom Watch, Inc. v. McAleenan*, 442 F. Supp. 3d 180, 199 (D.D.C. 2020) (Contreras, J.) ("Unless there is 'law' to apply in judging how and when an agency should exercise its discretion, APA § 701(a)(2) 'bars judicial review' of an agency's (in)action").

There is no statutory requirement that Defendants create and maintain a National Age-Out Shelter List. *See* 8 U.S.C. § 1232(c)(2)(B). This Court determined that, pursuant to § 1232(c)(2)(B), FOJCs must know what settings are generally available, or "obvious," to consider them, but not "every alternative . . . conceivable." *See* ECF No. 333 at 158. In response, Defendants created the National Age-Out Shelter List, with Plaintiffs' collaboration, as a reference tool and guide to assist FOJCs in identifying what organizational sponsors are generally, or obviously, available to Age-Outs across the country. During the initial collaboration, Plaintiffs proposed several organizational sponsors to ICE they believed should be added to the list. ICE, in exercising its discretion, added most, but not all, of these proposed organizational sponsors to the list. ICE further provided Plaintiffs with the reasons why those specific proposed organizational sponsors were not added—despite no legal requirement to provide such an explanation. The explanation required significant resources and coordination within ICE. Requiring ICE to continue to undertake these additional efforts is unnecessary, particularly where Plaintiffs are not restricted in the frequency or number of organizational sponsors they can propose

12

to Defendants. Notwithstanding, ICE anticipates that it may provide Plaintiffs with the reasons why certain proposed organizational sponsors are not included on the National Age-Out Shelter List moving forward, but expending these resources should be within ICE's discretion and not mandated by this Court.

Further, Plaintiffs' argument that this requirement is necessary to prevent ICE from returning to a past behavior of "reject[ing] potential organizational sponsors without any legitimate bases . . . and/or based on an inaccurate or pretextual reason" is misplaced and not representative of ICE's current Age-Out custody determination process. ECF No. 359 at 5. ICE's current process is, in effect, outlined within the agreed-upon training slides and PowerPoint presentation, which ICE intends to maintain moving forward. ICE's decision to place an organizational sponsor on the National Age-Out Shelter List as part of a reference tool for FOJCs is patently distinguishable from an FOJC considering the availability of a specific organizational sponsor during an Age-Out's custody determination process, particularly where the training slides instruct FOJCs to contact at least five organizational sponsors from the list before determining that no organizational sponsor is available.

Plaintiffs' argument is also undermined by their intention to create their own national shelter list for immigration attorneys representing Age-Outs. Defendants support this effort because ICE's National Age-Out Shelter List is not exhaustive, and an Age-Out's attorney or advocate can always request that ICE consider placement of an Age-Out with a specific organizational sponsor, regardless of whether that organizational sponsor appears on ICE's National Age-Out Shelter List. And nothing precludes FOJCs from reviewing Plaintiffs' list in conjunction with ICE's National Age-Out Shelter List, unless

13

Plaintiffs elect not to share their list. But just as Plaintiffs' counsel may decide which organizational sponsors to include on their list, ICE retains its discretion to do the same. Similarly, ICE intends to post the National Age-Out Shelter List on its internal website, accessible by all FOJCs, so Plaintiffs' request that each ICE AOR maintain their own organizational shelter list is repetitive and unnecessary.

At bottom, just as it did previously, ICE will consider any organizational sponsors that Plaintiffs propose for their National Age-Out Shelter List. ICE will also update its National Age-Out Shelter List every six months and ensure it is accessible to all FOJCs. *See* Ex. A. But this Court should not require Defendants to explain every exercise of discretion to include organizational sponsors, nor should this Court permit Plaintiffs to challenge Defendants' discretion in contravention of the APA.

## V.     Plaintiffs Should Consult ICE or File Motions to Enforce to Resolve Disputes of Alleged Violations.

Under the APA, Plaintiffs are not entitled to receive advance notice of, review, or object to, "any proposed revisions to the revised policy guidance and training materials agreed upon by the parties." ECF No. 359 at 2. Ordering otherwise would go beyond the relief permitted under the APA. 5 U.S.C. § 706; *see Ming Dai*, 141 S. Ct. at 1669; *see Vermont Yankee*, 435 U.S. at 524. Defendants appreciate that potential disputes could arise, but Plaintiffs may raise their concerns with ICE at any time.[7] They also may file a motion to enforce should they seek additional action from the Court. Therefore, the Court should

---

[7] The parties have not yet engaged in any litigation related to Plaintiffs' forthcoming Equal Access to Justice Act ("EAJA") motion for fees. Defendants suggest that the parties table any issues related to fees for past work or future "monitoring" by Plaintiffs until Plaintiffs file their EAJA motion, as this is unrelated to any injunction or remand that this Court may order.

14

deny Plaintiffs' request for advance notice of proposed revisions to policy guidance and training materials.

## CONCLUSION

For the forgoing reasons, the Court should remand the proceedings to the agency and deny Plaintiffs' request for a permanent injunction. Instead, the Court should issue Defendants' Proposed Final Judgment and Remand. Ex A.

DATE: July 1, 2021

Respectfully submitted,

COLIN A. KISOR
Deputy Director

CHRISTINA PARASCANDOLA
Senior Litigation Counsel

KEVIN C. HIRST
WILLIAM H. WEILAND
Trial Attorneys

*/s/ Cara E. Alsterberg*
CARA E. ALSTERBERG
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
(202) 532-4667
Cara.E.Alsterberg@usdoj.gov

*Attorneys for Defendants*