## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILMER GARCIA RAMIREZ, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:18-cv-00508-RC |
| UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | ) ) ) | |
| Defendants. | ) ) | |

### [PROPOSED] FINAL JUDGMENT AND REMAND

WHEREAS, Plaintiffs, Wilmer Garcia Ramirez and Sulma Hernandez Alfaro, on behalf of

themselves and others similarly situated, filed an Amended Complaint on March 30, 2018 (ECF

No. 21), asserting violations of a 2013 amendment to the Trafficking Victims Protection

Reauthorization Act ("TVPRA"), 8 U.S.C. § 1232(c)(2)(B) (the "Statute"), and Sections 706(1)

and (2) of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(1)-(2);

WHEREAS, on August 30, 2018, the Court certified a nationwide class ("Plaintiff Class")

of "all former unaccompanied alien children who are detained or will be detained by ICE after

being transferred by ORR because they have turned 18 years of age and as to whom ICE did not

consider placement in the least restrictive setting available, including alternatives to detention

programs, as required by 8 U.S.C. § 1232(c)(2)(B)." (ECF No. 50.);

WHEREAS, on July 2, 2020, after a four-week bench trial and in December 2019 and

January 2020, and voluminous post-trial submissions by the parties, the Court issued a 180-page

decision finding in favor of Plaintiffs and the Plaintiff Class ("July 2, 2020 Decision"), on both

Counts I and II of the Amended Complaint, and specifically held that Defendants U.S. Immigration and Customs Enforcement ("ICE"), the Acting Secretary of ICE, the Department of Homeland Security ("DHS"), and the Acting Secretary of DHS, (collectively, "Defendants") have violated and failed to comply with the Statute and the APA prior to January 2020 (ECF No. 333);

WHEREAS Defendants have continued to produce monthly data and Age-Out Review Worksheets ("AORWs") to Plaintiffs, and provided a summary to this Court (Ex. B, ECF No. 362-2) that establishes that Defendants have made significant changes in their processes for Age-Out custody determinations such that they appear to be in compliance with 8 U.S.C. § 1232(c)(2)(B);

WHEREAS Plaintiffs and Defendants have agreed on a course of training for ICE Officers who make custody Determinations under 8 U.S.C. § 1232(c)(2)(B);

WHEREAS, Plaintiffs have now filed a Motion and Supporting Memorandum for Entry of Final Judgment and Permanent Injunction, and Defendants have not opposed this Court entering Final Judgment and oppose the entry of a permanent injunction,

\* \* \*

NOW, THEREFORE, for good cause shown, and in consideration of Plaintiffs' Motion and Supporting Memorandum for Entry of Final Judgment and Permanent Injunction (ECF No. 359), as well as Defendants' Opposition to Plaintiffs' Proposed Permanent Injunction, and Supporting Memorandum (ECF No. 362), and for the reasons set forth in the Court's July 2, 2020 Decision (ECF No. 333):

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Final Judgment be entered for Plaintiffs and the Plaintiff Class on Counts I and II of the Amended Complaint;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the final agency action (detaining age-outs without proper consideration of the least restrictive setting available) in this

matter is set aside and the matter is REMANDED to the Agency Defendants in this case for development of remedies to obtain compliance with 8 U.S.C. § 1232(c)(2)(B) and this Court's July 2, 2020 decision, with the following instruction:

Defendants shall make all Age-Out placement determinations in accordance with the findings and conclusions set forth in the Court's July 2, 2020 Decision (ECF No. 333).

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that upon remand, the Agency Defendants agree to implement the following provisions:

## I.    Documentation

**1.**    ICE shall complete a revised Age-Out Review Worksheet ("AORW") with respect to each Age-Out and Age-Out placement determination. ICE may use the revised AORW proposed by ICE (ECF No. 345-03). The AORW should be completed by the FOJC making the placement determination as that determination is being made and, absent an emergency or other extenuating circumstances, AORWs should normally be completed and uploaded to ICE's SharePoint site not later than 24 hours after the custody determination is made.

**2.**    With respect to each Age-Out who is placed in ICE's Alternative to Detention ("ATD") program, issued an ICE bond, or detained by ICE, ICE shall upload and include in the SharePoint site for such Age-Out the following documents, to the extent they exist: (a) all Post-18 Plans received from ORR; (b) copies of all emails or other communications with ORR, the Age-Out's attorney or other representative, any potential individual or organizational sponsor, or any other third-party, or within ICE, concerning the placement of such Age-Out; (c) the Age-Out's Form I-213; (d) any comments relating to the Age-Out in ICE's Enforcement and Removal Module ("EARM") database; and (e) any other documents considered or relied on by ICE in making or relating to ICE's placement determination.

## II.    Training

1.      Within sixty (60) days of the Court's approval of this Order, ICE shall conduct one or more virtual training sessions at which all current Field Office Juvenile Coordinators ("FOJCs") are trained on making placement determinations in compliance with the Court's July 2, 2020 Decision and 8 U.S.C. § 1232(c)(2)(B), and completing the revised Age-Out Review Worksheet using the PowerPoint presentations agreed upon by the parties (ECF 345-02 and 346-01).

2.      ICE shall also train current FOJCs on making Age-Out placement determinations and completing the revised AORW, using the agreed PowerPoint presentations (subject to any revisions that may be subsequently agreed to by the parties and/or approved by the Court), at one or more sessions at its annual in-person training meeting for FOJCs. Such in-person training shall occur at least once each year; provided, however, that if an unforeseen and unusual event shall prevent ICE from conducting such training in person in that year, ICE shall promptly advise the Court and Plaintiffs in writing and explain why in-person training is not possible, and ICE shall conduct the in-person training virtually.

3.      As part of their on-boarding, each new FOJC who will be making or approving Age-Out placement determinations shall be provided and required to review the PowerPoint presentations agreed upon by the parties (subject to any revisions that may be subsequently agreed to by the parties and/or approved by the Court), and their supervisor shall review those presentations with the FOJC and answer any questions the FOJC may have. Such individualized training shall be in addition to any on-the-job or other training the FOJC receives, and shall occur as soon as practical after they become FOJCs, and before they begin making Age-Out placement determinations. In addition, at least once each calendar quarter, ICE shall conduct one or more virtual training sessions for all new FOJCs, who shall be trained on making placement decisions,

and completing the revised Age-Out Review Worksheet, using the PowerPoint presentations agreed upon by the parties.

4.      ICE shall also include the agreed training materials on its internal website, and make them available to FOJCs online. ICE shall make all existing and new FOJCs aware of the availability of this online training and reference tool and encourage them to consult it in the event they have questions concerning Age-Out placement determinations.

### III.    FOJC Handbook

ICE shall include in its FOJC Handbook the revised sections concerning 8 U.S.C. §1232(c)(2)(B), and Age-Out placement determinations attached as Exhibit 1. ICE shall publish the FOJC Handbook on its internal website.

### IV.    Periodic Reporting

ICE shall provide the following information to Plaintiffs on a monthly basis, all of which shall be subject to the Protective Order previously entered in this matter (ECF No. 63). Except as provided below, such information shall be provided on or before the 15th day of the following month:

1.      Copies of the AORWs and all SharePoint materials for each Age-Out during the preceding month. Absent unforeseen or unusual circumstances beyond ICE's control, such worksheets and materials shall be provided on or before the 15th of the following month, with the exception of Age-Outs that are subsequently identified as a result of ICE's monthly reconciliation of its list of Age-Outs with ORR's to the extent ORR agrees to voluntarily share such data, for which worksheets and SharePoint materials shall be provided as soon as reasonably possible after they are identified.

**2.** A spreadsheet summary that shows by ICE field office (or sub-office in the case of Harlingen, Texas): the name and "A" number of each Age-Out during that month; and whether such Age-Out was detained or released.

**3.** A monthly spreadsheet summary that reports, by field office (or sub-office in the case of Harlingen, Texas) and for ICE overall, the total numbers and percentages of Age-Outs that were released and detained: (a) in every prior month during the current fiscal year; (b) in the current month; and (c) year-to-date during the current fiscal year.

## V.   Role and Authority of Plaintiffs' Class Counsel

Plaintiffs' counsel shall have the authority:

**1.**  to receive and review the information provided by ICE pursuant to Section IV. above and such other information reasonably related to ICE's compliance with this Order as Plaintiffs' counsel may from time-to-time request;

**2.** to make suggestions and/or recommendations to ICE as to further steps it should take to ensure its compliance with this Order and 8 U.S.C. § 1232(c)(2)(B); and

**3.**   to raise with the Court any issues or concerns with respect to ICE's compliance with implementation of this Order after remand that Plaintiffs' counsel is not able to resolve with ICE.

## VI.   The Court's Continuing Jurisdiction

The Court shall retain jurisdiction to enforce and resolve any disputes concerning the terms of, and Defendants' compliance with, this Order after remand. In the event the parties have a dispute concerning the requirements of this Order or the meaning of any terms therein, they shall promptly meet and confer in a good faith attempt to resolve the dispute. If those efforts do not succeed, the parties shall promptly present the dispute to the Court for resolution in accordance with the local rules governing motions practice.

## VII.    Court Approval

This Order shall be entered and become effective upon approval by the Court, after a fairness hearing, pursuant to Federal Rule of Civil Procedure 23(e).

This is a Final and Appealable ORDER.

Dated: _____    _____
                                                           Rudolph Contreras
                                                           United States District Judge

# EXHIBIT 1

### 2.5 Violence Against Women Act Reauthorization of 2013

The Violence Against Women Act Reauthorization of 2013 (VAWA) affords services and protections to specific populations of minor non-citizens, including unaccompanied children who turn 18 years old while in the custody of the Office of Refugee Resettlement. VAWA § 1261 requires that unaccompanied minors who are transferred from HHS to DHS when they turn 18 shall be considered for placement in the least restrictive setting available after taking into account the individual's danger to self and the community, and risk of flight. The statute further requires that these individuals shall be eligible to participate in programs that use a continuum of alternatives to detention based on the need for supervision.[13]

13 The Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4 § 1261, March 7, 2013.

### 2.8 *Garcia Ramirez*

In August 2018, the U.S. District Court for the District of Columbia certified a class defined as all "former [UAC] who are detained or will be detained by ICE after being transferred by ORR because they have turned 18 years of age and as to whom ICE did not consider placement in the least restrictive setting available, including alternatives to detention programs, as required by [VAWA 2013]." On July 2, 2020, the court issued its Findings of Fact and Conclusions of Law Concerning Liability and set forth the steps ICE must take when making an age-out custody determination under VAWA 2013. The Court found, among other things, that VAWA 2013 requires ICE to (1) take into account for each individual age-out, the statutory factors of danger to self, danger to community, and flight risk; (2) do so as it considers placement in the least restrictive setting available; and (3) make each age-out eligible for alternatives to detention. In light of the court's decision, revisions have been made to age-out training materials and the Age-Out Review Worksheet, but it remains imperative that age-outs and custody determinations for age-outs are identified, tracked, and thoroughly documented.

### 3.3 Age-Outs

### 3.3.1 Overview of VAWA 2013

When unaccompanied alien children (UAC) are still in the custody of ORR when they turn 18, federal law provides that custody is transferred to ICE, which must make a custody determination as to where they will be placed. Such UAC are referred to as "Age Outs," and ICE's decision as to where they will be placed is referred to as a "custody" or "placement" determination. A 2013 provision in the Violence Against Women Act (sometimes referred to as "VAWA 2013" or 8 U.S.C. § 1232(c)(2)(B), the section of the U.S. Code in which this statute is codified) governs how this decision must be made.

It imposes two requirements and obligations on ICE:

- First, ICE "shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight."

- Second, such alien "shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or organizational sponsor, or in a supervised group home."

In order to satisfy the first requirement, ICE must take affirmative steps to identify the placements available to the Age-Out.

- A Field Office Juvenile Coordinator (FOJC) cannot determine which placement is the "least restrictive setting available" unless he or she first identifies those alternatives that are available.
- Such alternatives shall include "a continuum of alternatives," including release on the Age-Out's own recognizance (OREC) or an order of supervision (OSUP), release to a family member, friend or other individual sponsor, release to a shelter, group home or other organizational sponsor, and/or release pursuant to ICE's Alternative to Detention (ATD) program or on an ICE bond.
  - Many, if not most, of these alternatives will usually be available to the Age-Out.
  - If an alternative is available, it must be considered.

The FOJC must then determine which of the alternatives available is the least restrictive after taking into account the Age-Out's danger to self, danger to the community, and risk of flight, and consider placement in that least restrictive setting.

- For example, if the Age-Out is not a danger to themselves or the community or a flight risk, OREC or OSUP will likely be the least restrictive placement available.
- In most cases, concern that an Age-Out is a flight risk can be addressed by release to an individual or organizational sponsor.  In those cases where release to a sponsor alone will not address the risk of flight, release pursuant to ICE's ATD program or an ICE bond may be the least restrictive setting available.
- If there is evidence that the Age-Out is a danger to themselves or the community, the least restrictive setting available will depend on the nature and/or degree of that danger.

If the Age-Out is a danger to the community (for example, has a criminal history involving crimes against persons or exhibited serious behavioral issues in ORR custody), or is a flight risk that cannot be addressed by release on ATD or bond (for example, has made repeated escape attempts or has multiple removals and re-entries), detention **may** be the least restrictive alternative available.

### 3.3.1.1    *Top 10 Dos and Don'ts*

Pursuant to the Court's decision, ICE has identified a number of things FOJCs should and should not do in making Age-Out placement determinations:

1. FOJCs should **not** make custody decisions for Age-Outs in the same way that custody decisions are made for adults. This means that FOJCs should not apply the "totality of the circumstances" standard when making custody decisions for Age-Outs. Instead,  FOJCs

should make Age-Out placement determinations based on 8 U.S.C. § 1232(c)(2)(B), which requires that the FOJC identify available sponsors and other alternatives to detention, and determine—and consider placement in—the alternative that is least restrictive after taking into account the Age-Out's danger to the community, danger to self, and flight risk.

2. FOJCs should **not** first determine whether an Age-Out should be detained and only then identify and consider the alternatives to detention that may be available. Rather, FOJCs must identify and consider the alternatives to detention that are available to the Age-Out **before** deciding where to place the Age-Out, including whether to release or to detain the Age-Out.

3. FOJCs shall **not** run the Risk Classification Assessment ("RCA") tool as part of age-out custody determinations. The RCA tool was modified in August 2017 so it never recommends release. Therefore, the RCA can only be utilized and considered for the limited purpose of determining the level of detention (e.g. low, medium, high) when a custody decision has already been made and approved, and that determination is to detain the Age-Out.

4. FOJCs should **not** assume that an Age-Out is a flight risk solely because the Age-Out does not have a permanent address in the United States or does not have ties to the community. These are factors that are present for nearly all Age-Outs as recent arrivals to the United States, and they are not sufficient reasons (either alone or in combination with one another) for detaining an Age-Out.

5. FOJCs may **not** justify a decision to detain an Age-Out based solely on a finding that the Age-Out has no "viable" sponsor. Under the statute, the issue is whether an individual or organizational sponsor is available, and where a sponsor is not available, officers must still consider releasing the Age-Out on his or her own recognizance, pursuant to ICE's Alternatives to Detention program, and/or on an ICE bond.

6. FOJCs may **not** conclude that an Age-Out has no available sponsor simply because ORR has not provided the name and/or contact information of an individual or organizational sponsor that is willing to accept the Age-Out. Instead, FOJCs must take affirmative steps to identify and consider available individual and organizational sponsors and shelters for the Age-Out.

7. FOJCs may **not** disqualify a sponsor simply because ORR did not approve them. ORR's release requirements are different than ICE's, and ORR may not always have time to complete the approval process before a UAC turns eighteen. Rather, FOJCs must independently assess the availability and suitability of all potential individual and organizational sponsors.

8. VAWA 2013 does not prohibit the release of an Age-Out to an undocumented sponsor. FOJCs must consider any potential sponsor identified, including those without lawful status.

9. FOJCs should **not** conclude that an Age-Out is a danger to themselves because they may not be able to support themselves or become homeless. Rather, danger to self refers to the risk the Age-Out will harm themselves and is evidenced by, for example, mental health issues, suicide attempts or ideation, or a history of self-harm. Further, such evidence does not require detention, and alternatives to detention must still be considered.

10. An FOJC's responsibilities with regard to Age-Outs are **not** limited to the day of the Age-Out's eighteenth birthday. FOJCs should begin working on an Age-Out's case at least two

weeks in advance where possible, and if for some reason the VAWA 2013 placement identifications, considerations, and custody determination have not been completed, FOJCs must continue working on the case after the Age-Out turns eighteen.

### 3.3.2    How to Make a Custody Determination under VAWA 2013

Under VAWA 2013 and the Court's decision, officers must take the following steps in making Age-Out determinations:

1. Identify, collect, and evaluate any available evidence of the statutory risk factors (danger to self, danger to the community, or risk of flight);
2. Identify available alternatives to detention, including release to individual or organizational sponsors or pursuant to ICE's ATD program or on an ICE bond; and
3. Consider the least restrictive alternative available after taking into account the three statutory risk factors.

#### 3.3.2.1 *Step 1:  Analyze Statutory Risk Factors*

Is the Age-Out a:

- Danger to self?
- Danger to the community?
- Flight risk?

Information relating to an Age-Out's danger to self, danger to community, and flight risk is commonly found in the following places:

- ORR's Post-18 Plan and Significant Incident Reports (SIR)
- A-file (especially I-213 narrative)
- Electronic Databases (e.g., EARM, PCQS, NCIC)
- Correspondence from attorney, advocate or representative
- Information provided by Age-Out

Danger to Self

Will the Age-Out harm himself/herself if released?  Factors to consider are as follows. This list is not meant to be exhaustive.

- Concern that an Age-Out may not be able to support themselves or might become homeless does not constitute danger to self.
- Rather, danger to self refers to the risk that the Age-Out will harm themselves, and is evidenced by, for example:
  - Mental health issues;
  - Suicide attempts or ideation;
  - A history of self-harm.

- Has the Age-Out been receiving treatment or is there a plan to address such issues if the Age-Out is released?

NOTE: Danger to self may be addressed by release to a sponsor or group home that has the capability to provide an adequate and appropriate treatment plan that could include counseling and/or medication; however, FOJCs are not trained to determine proper medical treatment and must rely on licensed professionals to determine the best course of treatment.

Danger to Community

Will the individual harm the community (persons or property) if released?  Factors to consider are as follows. This list is not meant to be exhaustive.

- Past criminal/delinquent history?
  - Is the charge still pending or was there a conviction?
  - Recency?
  - Did the crime involve the use/possession of a weapon?
  - Involve harm to person vs. property?
  - Isolated incident vs. pattern or practice of criminal activity?
  - Evidence of rehabilitation?
  - Aggressive behavior toward others while in custody (ORR, state/local, or DHS custody)?
  - Gang membership or documented ties to terrorist groups/organizations?
- Evidence of danger to the community may come from, for example, electronic databases (TECS, NCIC), SIRs, and detention in an ORR secure facility.
  - Note that SIRs are issued for many reasons, some of which have nothing to do with danger to the community.  Officers should determine the reason for the SIR to assess whether it evidences danger to the community.

Flight Risk

Is there evidence the individual will not appear for future immigration hearings or, if necessary, for removal? Factors to consider are as follows.  This list is not meant to be exhaustive.

- Escape history?
- Multiple immigration encounters?
- In absentia order or failure to appear (immigration or criminal)?  If so, is there a motion to reopen the in absentia order?
- Order of removal?

An Age-Out's lack of community ties or a fixed address, or length of time in ORR custody, either alone or in combination with one another, are **not** justifications to find the Age-Out poses a flight risk and cannot be released on OREC.

Note: While a pending motion to reopen does not invalidate a removal order unless and until the motion to reopen is granted, it may provide additional information (such as lack of notice) that is relevant to whether the failure to appear is evidence of flight risk. Please note that some motions

to reopen are accompanied by automatic stays of removal while the motion is pending. If there are questions about motions to reopen in general or the specific reasons why an Age-Out is moving to reopen his or her case, please consult your local OPLA office.

Does the Age-Out have incentive(s) to appear?

- Community ties/support system in the U.S.?
- Attending school in the U.S. or concrete plans to?
- Pending petitions or applications for relief? Will the Age-Out be residing with others who have or are complying with their own immigration process?

Remember, in most cases, flight risk can be mitigated by release to an individual or organizational sponsor. In some cases where release to a sponsor alone will not mitigate flight risk, flight risk may e mitigated by release pursuant to ICE's ATD program or issuance of an ICE bond.

### 3.3.2.2 Step 2: What Placement Alternatives Are Available?

- ICE cannot determine the least restrictive setting available without first identifying the full range of alternative placements available.  This includes taking affirmative steps to identify available settings.
- Potential placements that must be identified and considered include:
  - Individual and organizational sponsors, including shelters or group homes.
  - Other alternatives to detention, such as release pursuant to ICE's ATD program or on an ICE bond.
- Identifying potential sponsors requires inquiry and research.
  - If a potential sponsor has already been identified, promptly evaluate the sponsor's availability.
  - ORR's decision to disqualify a sponsor does not transfer to ICE so officers should <u>not</u> rely on ORR's sponsorship evaluations and decisions.
    - ORR has separate and distinct statutory obligations and sponsorship criteria and standards.
    - Therefore, ORR's inability to vet a sponsor or place an Age-Out with a sponsor does <u>not</u> mean that the sponsor is unavailable or unsuitable.

If ORR does not provide a release recommendation or the name of a potential sponsor—or a sponsor identified by ORR is determined to not be available—the FOJC **must** make additional efforts to identify other available sponsors through the following efforts:

- Review material in the Age-Out's file and on the Form I-213;
- Inquire with the Age-Out's attorney, advocate, or other representative;
- Ask the Age-Out if she/he knows of any potential sponsor (if possible before the Age-Out's 18th birthday or during an in-person interview on the 18th birthday) and encourage the Age-Out to call potential sponsors themselves; and
- Contact shelters, group homes, and organizational sponsors, including those listed on the National Age-Out Shelter List.

These efforts do not need to occur in any particular order; however, before an FOJC determines that no sponsor is available, the FOJC must exhaust all of these options and explain the efforts made in the AORW.

- VAWA 2013 does not require that an Age-Out be released to a sponsor.  The Age-Out may be released on his/her own recognizance.
- Release of an Age-Out without a sponsor is permissible when the Age-Out is determined not to be a danger to self or danger to the community, and the flight risk concerns are limited to minimal ties to the community, which the Court noted is present in almost every case and not justification for denying release on the Age-Out's own recognizance.
- Release of the Age-Out without a sponsor still requires a valid address where the Age-Out may receive correspondence from EOIR and ICE.
    - Utilize the U.S. Postal Service databases or other database to confirm that the address is valid.
- What about cases that present some indicia of danger to self, danger to community, and/or additional flight risk concerns?
    - Consider whether release to a sponsor – individual or organizational – would mitigate those concerns.
- Sponsors must:
    1. Be an adult; and
    2. Have a fixed address where the Age-Out can reside and receive correspondence from ICE and EOIR.


- Minimum Steps FOJCs should take when evaluating an individual sponsor:
    1. Confirm the sponsor's date of birth to ensure he/she is over 18.
    2. Verify the address provided using the U.S. Postal Service database: https://tools.usps.com/zip-code-lookup.htm?byaddress
    3. Run sponsor's name and date of birth through NCIC and CIS.

NOTE:  The immigration status and criminal history of a proposed sponsor does not, *per se*, prevent release of an Age-Out to the sponsor.  But they could warrant more restrictive conditions of release, such as ATD or bond, since such a sponsor, standing alone, may not sufficiently mitigate the Age-Out's danger to self, danger to community, or flight risk.

Organizational Sponsors

Where an individual sponsor is not available, FOJCs should consider placement with an organizational sponsor, including shelters and group homes. Field Offices should develop relationships with shelters, group homes, and organizational sponsors in its AOR that will accept Age-Outs. FOJCs should also consider organizational sponsors on the National Age-Out Shelter list, which lists those shelters/group homes ICE has released Age-Outs to in the past. The list is available here **[Enter SharePoint Hyperlink]**

- Promptly contact a minimum of five (5) shelters* from the National Age-Out Shelter List or that the FOJC otherwise identifies to determine if they will accept the Age-Out. FOJCs are not constrained to contacting or releasing to the organizations on this list. FOJCs are

encouraged to work collaboratively with other FOJCs within and across AORs and with JFRMU to share information about available organizational sponsors. FOJC must document all efforts made to identify available sponsors.

- Organizational sponsors outside a field office's AOR are perfectly acceptable and should be considered available if closer release options are not. However, the shelter and the Age-Out are responsible for coordinating transportation from the ORR facility to the sponsor.

*If an available sponsor is identified before contacting 5 shelters, the FOJC does not need to continue contacting additional shelters.

<u>General Requirements for Identifying and Releasing to Sponsors</u>

Per VAWA 2013, ICE must exercise reasonable due diligence to identify potential sponsors and such efforts should be detailed in the AORW. FOJCs should make every effort to complete these efforts, to the extent possible, before the UAC's 18th birthday. If the Age-Out is being released, release must occur as expeditiously as possible. The Age-Out should not be detained any longer than is necessary to complete the release paperwork.

<u>Other Alternatives to Detention</u>

Other alternatives to detention include:

A. <u>Release with ATD</u> – Release + GPS monitoring or phone monitoring pursuant to ICE's Alternatives to Detention program (ISAP).

- ICE's Alternatives to Detention (ATD) Program is a flight-mitigation tool that uses technology and case management to ensure compliance.

- To be eligible, an immigrant must be 18 years of age or older, removable, and at some stage of immigration proceedings.

- The ATD Program utilizes three (3) different forms of technology that help monitor participants while enrolled in the program--Telephonic reporting, GPS monitoring, and SmartLink.

- ATD is currently available in over 94 locations nationwide for eligible participants residing within all 24 AORs.

**AGE-OUTS ARE ELIGIBLE FOR RELEASE ON ICE'S ATD PROGRAM [PUT IN TEXT BOX]**

B. <u>ICE Bond</u> – requires an obligor to post a set dollar amount as collateral for the Age-Out's release (other conditions of release may be imposed).

Immigration bonds are primarily issued where an alien who has been placed in removal proceedings is released from ICE custody.

- The bond requires the alien to appear in response to a properly issued notice to surrender on a particular date at a particular place and time (a "demand notice").

- The person or company that posted the bond (the obligor) forfeits the face value of the bond if the obligor or the alien fails to comply with the terms and conditions of the bond.

By regulation, immigration bonds may be secured by cash or cash equivalent or by a surety company authorized by the Department of the Treasury to post bonds on behalf of the Federal government.

The following persons can post a bond on behalf of an Age-Out (or any alien): U.S. Citizens; Lawful Permanent Residents; law firms; non-profit organizations.

- INA § 236(a)(2)(A): minimum bond is $1,500
- If a bond higher than $1,500 is placed on an Age-out, the FOJC must justify, with detail, the basis for the increased amount.

The issuance of a bond is intended to mitigate flight risk only. See Matter of Urena, 25 I&N Dec. 140, 141 (BIA 2009)("Immigration Judge should only set a bond if he first determines that the alien does not present a danger to the community.")

Factors to consider when deciding whether to set a bond and the bond amount include, but are not limited to:  "(1) whether the immigrant has a fixed address in the United States; (2) the immigrant's length of residence in the United States; (3) the immigrant's family ties in the United States, (4) the immigrant's employment history, (5) the immigrant's record of appearance in court, (6) the immigrant's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses, (7) the immigrant's history of immigration violations; (8) any attempts by the immigrant to flee prosecution or otherwise escape from authorities; and (9) the immigrant's manner of entry to the United States." See Matter of Guerra, 24 I&N Dec. 37, 40 (BIA 2006).

Consult with your local OPLA office to find out if jurisdiction-specific case law or settlement agreements require or prohibit you from considering additional factors.

**ALL AGE-OUTS CAN BE CONSIDERED FOR ISSUANCE OF BOND [PUT IN TEXT BOX]**

These alternatives to detention MUST BE CONSIDERED in every Age-Out custody determination where release to a sponsor alone does not mitigate an Age-Out's flight risk and/or danger to self or the community.

### 3.3.2.3 Step 3:  Determine and Consider the Least Restrictive Setting Available.

- Once you have gathered available evidence relating to whether the Age-Out is a danger to self, danger to community, or flight risk, and identified alternative placements available, you must determine--and consider--the alternative that is the least restrictive setting.
- You must identify and consider the alternatives to detention that are available *as part of* your placement determination, including whether to release or detain the Age-Out.
  - An officer cannot determine which placement is "the least restrictive available" without first identifying those alternatives that are available.

- o   If an alternative is identified and available, it must be considered.
- If an Age-Out is not a danger to self, danger to the community, or a flight risk, OREC, OSUP or parole will likely be the least restrictive setting available.
- In most cases, concern that an Age-Out is a flight risk can be mitigated by release to an individual or organizational sponsor.
- In those cases where release to a sponsor alone will not mitigate flight risk (*e.g.*, prior escape attempts), release pursuant to the ATD program or an ICE bond may be the least restrictive setting available.

### 3.3.3   Risk Classification Assessment (RCA) Tool

ICE officers shall not run the RCA tool as part of an Age-Out custody determination. This is because the RCA tool was modified in August 2017 so that it never recommends release. Therefore, the RCA may only be utilized and considered for the limited purpose of determining the level of detention (*e.g.,* low, medium, high) in those cases where a custody determination has already been made and approved and that determination is to detain the Age-Out.

Again, the RCA tool shall not be used in connection with decisions concerning whether to detain or release an Age-Out under 8 U.S.C. § 1232(c)(2)(B). [**PUT IN TEXT BOX**]

### 3.3.4   Timing: When to Start and When to Stop

Where possible, an officer should begin identifying any evidence of the risk factors and identifying potential sponsors at least two weeks before the UAC's 18th birthday. This includes calling the UAC's case manager to request a Post-18 Plan and discuss the status of ORR's efforts to reunify the UAC, any special health or other needs or problems, and identify potential sponsors.

- FOJCs should comply with the statute, including identifying and considering the least restrictive placement available, on or before the day the Age-Out turns 18.
- However, if for some reason compliance does not occur by that date, ICE officers are not relieved of their obligation to follow VAWA 2013 at the end of the day on the Age-Out's eighteenth birthday. Rather, officers must continue working as long as it takes to fulfill their obligations under the statute.
- However, the statute does not require "periodic re-assessment" of a decision once it has been made.

### 3.3.5   JFRMU Concurrence

If the FOJC/SDDO determine that <u>ATD, ICE bond, or detention</u> is appropriate, the FOJC/SDDO **must seek JFRMU concurrence prior to finalizing the custody determination**. Promptly contact JFRMU (by email or phone). Be prepared to electronically share all the materials and information that you collected and considered to arrive at the particular custody determination, and to discuss how you weighed the statutory factors, what steps you took to identify/evaluate alternatives to detention, and why you reached the determination.

### 3.3.6   Documenting Your Decision – When, Where, and How

Timely, accurate and detailed records are critical to completing the Age-Out custody determination process.

- Record all of your considerations and efforts required under VAWA 2013 contemporaneously with your recommendation/custody decision.
- Such considerations and efforts should be recorded on the newly amended Age-Out Review Worksheet (AORW), ICE Form 70-070.
- Detail is key!
  - If it is not included in the AORW, it will be difficult to demonstrate that you considered it.
- Add the case and accompanying documents to SharePoint.
  - If the determination is release of the Age-Out on ATD or an ICE bond or to detain, you must upload all documents that you considered in making your placement determination.
- Enter detailed comments in EARM, to include the date of age-out, VAWA custody determination, and date that AORW and SharePoint materials were uploaded.
- Complete an addendum to I-213 summarizing the VAWA 2013 evaluations and determination.

Amended Age-Out Review Worksheet: What's New?

The AORW has been revised to comply with the Court's decision and the process set forth in this handbook. As revised, the AORW is intended to guide the FOJC through the Age-Out custody determination process and to provide evidence of the FOJC's compliance with his or her obligations pursuant to 8 U.S.C. § 1232(c)(2)(B).

- The AORW now includes a section for JFRMU concurrence if recommendation is detention, issuance on bond or release on ICE's ATD program.
- The revised AORW requires that you detail the information you collected and relied upon during the custody determination process. This includes the sponsors and other placement alternatives you identified and considered.
- Just providing conclusory answers (*e.g.*, "Age-Out is a flight risk," "no sponsor available" or "no viable sponsor") are not acceptable.  Instead, you are to explain your efforts, thought process, and analysis in the provided narrative boxes!
- AORWs should only be completed by the FOJC and supervisor involved in the Age-Out's custody determination. **Do not complete an AORW on behalf of another officer.**

SharePoint

**For Age-Outs who are placed on ATD, issued an ICE Bond, or detained,** FOJCs must upload and attach to the SharePoint record all documents they considered in reaching the placement determination.  This includes:

1. The Age-Out Review Worksheet (ICE Form 70-070);
2. Any Post-18 Plan or other communication with ORR;

3. Any communication with the Age-Out's attorney or other representative;
4. Form I-213;
5. Any communications with or concerning potential sponsors;
6. Print-outs of the EARM Case Comments;
7. Electronic/scanned copy of documents in the A-file related to the custody determination; and
8. Any other document (not in the A-File) and any other email traffic related to that particular Age-Out.

**For Age-Outs who are released from ICE custody with no additional conditions (ATD/Bond),** FOJCs must upload and attach the following documents to the SharePoint record:

1. The Age-Out Review Worksheet (ICE Form 70-070); and
2. Post-18 Plan, if submitted by ORR.

Add the case to the SharePoint site and upload the accompanying documents within 24 hours of making the final custody determination.

### 3.3.7   Putting it All Together: Process Overview

- Keep track of and monitor UACs who are close to aging out.
- Reach out to ORR two (2) weeks in advance of the UAC's 18th birthday (where possible) to request a Post-18 Plan.
- If ORR does not provide a Post-18 Plan, check to see if the UAC is represented by counsel/representative and contact that individual to find out if there is anyone willing and able to accept the Age-Out.
- Look for point of contact information in the Form I-213 and A-File.
- Request to interview (in-person or by phone) the UAC to identify potential sponsors (if needed).
- Still no sponsor available or to whom the Age-Out can be released? Contact a minimum of five (5) shelters, including those on JFRMU intranet site to see if they have housing available to accept the Age-Out.
- If no individual or organizational sponsor is available, or there are flight risk concerns that are not addressed by release to a sponsor, consider release pursuant to the ATD program or on an ICE bond.
- Consider all available alternatives in determining the least restrictive setting available after taking into account the Age-Out's danger to self or community or flight risk.

Promptly consider alternatives to detention identified through efforts described previous.

- Is **release without a sponsor** appropriate after taking into account the alien's danger to self, danger to the community, and risk of flight?
- Is **release to a sponsor** appropriate after taking into account the alien's danger to self, danger to the community, and risk of flight?
- Is **release with ATD** appropriate after taking into account the alien's danger to self, danger to the community, and risk of flight?

- Is **issuance of a bond** appropriate after taking into account the alien's danger to self, danger to the community, and risk of flight?
- Is **detention** appropriate after taking into account the alien's danger to self, danger to the community, and risk of flight?

To the maximum extent possible and in coordination with ORR, arrange for Age-Out releases to occur directly from the ORR facility.

- FOJC completes AORW and submits to supervisor for review.
    - For more complicated cases or those in which the recommendation is to detain the Age-Out, begin discussing the case with your supervisor as soon as possible.
- Recommendations to detain or issue a bond or place on ICE ATD must be approved by JFRMU in advance of finalizing the custody determination.

Once supervisor makes a custody determination, promptly:

- Create case in SharePoint.
- Upload AORW + supporting documentation.
- Update EARM using the correct book-out code and add case comments.
- Summarize VAWA 2013 determination in I-213 addendum.

### 3.3.8   Best Practices

- Get to know your ORR counterparts and ORR facilities in your AOR.
- Keep track of upcoming possible Age-Outs. The UAC Portal should be used for docket reconciliation and EARM should be used for docket management. FOJCs should keep a list from the EARM juvenile docket with the potential Age Outs and review it on a weekly basis and set call-ups.
- To the extent possible, FOJCs should contact the UAC's case manager at least two (2) weeks before the UAC's eighteenth birthday, (a) to request a Post-18 plan, and (b) to discuss the status of ORR's efforts to reunify the UAC with family members or friends in the U.S., any special health or other needs or problems the UAC may have, and the identity, address, and contact information for any potential individual or organizational sponsors.
- Record your efforts to evaluate placement options in detail and do so in a timely manner.