IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILMER GARCIA RAMIREZ, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.:   18-508 (RC) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**FINAL JUDGMENT AND PERMANENT INJUNCTION**

WHEREAS, Plaintiffs, Wilmer Garcia Ramirez and Sulma Hernandez Alfaro, on behalf of themselves and others similarly situated, filed an Amended Complaint on March 30, 2018 (ECF No. 21), asserting violations of a 2013 amendment to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 8 U.S.C. § 1232(c)(2)(B), and Sections 706(1) and (2) of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(1)-(2);

WHEREAS, on August 30, 2018, the Court certified a nationwide class ("Plaintiff Class") of "all former unaccompanied alien children who are detained or will be detained by [U.S. Immigration and Customs Enforcement ("ICE")] after being transferred by [Department of Health and Human Services, Office of Refugee Resettlement ("ORR")] because they have turned 18 years of age and as to whom ICE did not consider placement in the least restrictive setting available, including alternatives to detention programs, as required by 8 U.S.C. § 1232(c)(2)(B)." (ECF No. 50);

WHEREAS, on July 2, 2020, after a four-week bench trial and voluminous post-trial submissions by the parties, the Court issued a 180-page decision finding in favor of Plaintiffs and the Plaintiff Class ("July 2, 2020 Decision"), on both Counts I and II of the Amended Complaint, and specifically held that Defendants ICE, the Acting Secretary of ICE, the Department of Homeland Security ("DHS"), and the Acting Secretary of DHS (collectively, "Defendant") have

violated and failed to comply with Section 1232(c)(2)(B) and the APA prior to January 2020 (ECF No. 333);

WHEREAS, Defendants have continued to produce monthly data and Age-Out Review Worksheets ("AORWs") to Plaintiffs, and provided a summary to this Court (FY 21 Age-Outs Summary, ECF No. 362-2 & Ex. A & B to Defs.' Supp. Response, ECF No. 366) that establishes that Defendants have made significant changes in their processes for Age-Out custody determinations, which generally indicates improved compliance with 8 U.S.C. § 1232(c)(2)(B);

WHEREAS, Plaintiffs and Defendants have agreed on a course of training for ICE Officers who make custody determinations under 8 U.S.C. § 1232(c)(2)(B);

WHEREAS, Plaintiffs have now filed a Motion for Entry of Final Judgment and Permanent Injunction (ECF No. 359), and Defendants, while opposing entry of an injunction, do not oppose the Court entering Final Judgment (ECF No. 362).

* * *

NOW, THEREFORE, for good cause shown, and for the reasons set forth in the Court's July 2, 2020 Decision (ECF No. 333) and Memorandum Opinion separately and contemporaneously issued:

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Final Judgment be entered for Plaintiffs and the Plaintiff Class on Counts I and II of the Amended Complaint;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants are permanently enjoined from violating 8 U.S.C. § 1232(c)(2)(B) by repeating the violations and failures to comply described in the Court's July 2, 2020 Decision.

This shall include complying with the actions set forth below, which, having been

largely selected in the first instance by Defendants, are intended to prevent Defendants' further violations of, and help ensure their compliance with, Section 1232(c)(2)(B) going forward:

## I.     Age-Out Placement Determinations

ICE shall make all Age-Out placement determinations in accordance with the findings and conclusions set forth in the Court's July 2, 2020 Decision and the training materials previously agreed upon by the parties (ECF Nos. 345-02 and 346-01).

## II.    Organizational Sponsors

Where ICE is not able to identify and/or approve placement of an Age-Out with an individual sponsor, it shall consider placement of the Age-Out with shelters, group homes or other organizational sponsors, in accordance with the agreed training materials. ICE has compiled, with Plaintiffs' assistance, a nationwide list of shelters, group homes, and other organizational sponsors that currently accept Age-Outs. ICE shall make this list available to all Field Office Juvenile Coordinators ("FOJCs") and update this list at least once every six (6) months. In addition, Plaintiffs may propose organizational sponsors that they believe should be added to the list.

## III.   Documentation

A.     ICE shall complete a revised AORW with respect to each Age-Out and Age-Out placement determination. ICE may use the revised AORW proposed by ICE (ECF No. 345-03), subject to the two modifications detailed in this Court's Memorandum Opinion issued on today's date, namely, (1) the removal of the question on page 1 under the Background section concerning the amount of time the Age-Out was in ORR custody, and (2) the addition to Question 3(c) concerning the flight risk inquiry of the mitigating factors

previously identified by the Court (i.e., available sponsor, release pursuant to the Alternative to Detention ("ATD") program, or an ICE bond). The AORW must be updated with these two modifications prior to the commencement of ICE's virtual training sessions with FOJCs, detailed in Section IV below.

        B.      The AORW should be completed by the FOJCs making the placement determination as that determination is being made and, absent an emergency or other extenuating circumstances, AORWs should be completed and uploaded to ICE's SharePoint site not later than 24 hours after the custody determination is made.

        C.      With respect to each Age-Out who is placed in ICE's ATD program, issued an ICE bond, or detained by ICE, ICE shall upload and include in the SharePoint site for such Age-Out the following documents, to the extent they exist: (a) all Post-18 Plans received from ORR; (b) copies of all emails or other communications with ORR, the Age-Out's attorney or other representative, any potential individual or organizational sponsor, or any other third-party, or within ICE, concerning the placement of such Age-Out; (c) the Age-Out's Form I-213; (d) any comments relating to the Age-Out in ICE's Enforcement and Removal Module ("EARM") database; and (e) any other documents considered or relied on by ICE in making or relating to ICE's placement determination.

## IV.    Training

        A.      Within sixty (60) days of this Order, ICE shall conduct one or more virtual training sessions at which all FOJCs are trained on making placement determinations in compliance with the Court's July 2, 2020 Decision and Section 1232(c)(2)(B), and completing the revised AORW using the PowerPoint presentations agreed upon by the parties (ECF Nos. 345-02 and 346-01).

B.   ICE shall also train FOJCs on making Age-Out placement determinations and completing the revised AORW, using the agreed PowerPoint presentations (subject to any revisions that may be subsequently agreed to by the parties and/or approved by the Court), at one or more sessions at its annual in-person training meeting for FOJCs.  Such in-person training shall occur at least once each year; provided, however, that if an unforeseen and unusual event shall prevent ICE from conducting such training in person in that year, ICE shall promptly advise the Court and Plaintiffs in writing and explain why in-person training is not possible, and ICE shall conduct the in-person training virtually.

C.   As part of their on-boarding, each new FOJC who will be making or approving Age-Out placement determinations shall be provided and required to review the PowerPoint presentations agreed upon by the parties (subject to any revisions that may be subsequently agreed to by the parties and/or approved by the Court), and their supervisor shall review those presentations with the FOJC and answer any questions the FOJC may have.  Such individualized training shall be in addition to any on-the-job or other training the FOJC receives, and shall occur as soon as practical after they become FOJCs and before they begin making Age-Out placement determinations.  In addition, at least once each calendar quarter, ICE shall conduct one or more virtual training sessions for all new FOJCs, who shall be trained on making placement determinations and completing the revised AORW, using the PowerPoint presentations agreed upon by the parties.

D.   ICE shall also include the agreed training materials on its internal website and make them available to FOJCs online.  ICE shall make all existing and new FOJCs aware of the availability of this online training and reference tool and encourage them to consult it in the event they have questions concerning Age-Out placement determinations.

V.     **FOJC Handbook**

ICE shall adopt the language summarizing the *Garcia-Ramirez* Decision used in the PowerPoint training presentation agreed upon by the parties (ECF No. 346-01 at 10) and incorporate this language into Section 2.8 of the FOJC Handbook concerning 8 U.S.C. § 1232(c)(2)(B) and Age-Out placement determinations.  This must be completed prior to the commencement of the virtual trainings for FOJCs discussed above at Section IV.  Once the revised section is finalized, ICE shall add this updated section to its FOJC Handbook.  ICE also shall publish the FOJC Handbook on its internal website.

VI.    **Periodic Reporting**

ICE shall provide the following information to Plaintiffs on a monthly basis, all of which shall be subject to the Protective Order previously entered in this matter (ECF No. 63). Except as provided below, such information shall be provided on or before the 15th day of the following month:

A.     Copies of the AORWs and all SharePoint materials for each Age-Out during the preceding month.  Absent unforeseen or unusual circumstances beyond ICE's control, such worksheets and materials shall be provided on or before the 15th of the following month, with the exception of Age-Outs that are subsequently identified as a result of ICE's monthly reconciliation of its list of Age-Outs with ORR's, to the extent ORR agrees to voluntarily share such data, for which worksheets and SharePoint materials shall be provided as soon as reasonably possible after they are identified.

B.     A spreadsheet summary that shows by ICE field office (or sub-office in the case of Harlingen, Texas): the name and "A" number of each Age-Out during that month; and whether such Age-Out was detained or released.

  C. A monthly spreadsheet summary that reports, by field office (or sub-office in the case of Harlingen, Texas) and for ICE overall, the total numbers and percentages of Age-Outs that were released and detained: (a) in every prior month during the current fiscal year; (b) in the current month; and (c) year-to-date during the current fiscal year.

## VII. Role and Authority of Plaintiffs' Counsel

  Plaintiffs' counsel shall have the authority:

  A. to receive and review the information provided by ICE pursuant to Section VI above and such other information reasonably related to ICE's compliance with this Order as Plaintiffs' counsel may from time-to-time request;

  B. to make suggestions and/or recommendations to ICE as to further steps it should take to ensure its compliance with this Order and 8 U.S.C. § 1232(c)(2)(B);

  C. to raise with the Court any issues or concerns with respect to ICE's compliance with this Order or with 8 U.S.C. § 1232(c)(2)(B) that Plaintiffs' counsel is not able to resolve with ICE.

## VIII. Attorneys' Fees

Plaintiffs' counsel shall be entitled to recover reasonable attorneys' fees as provided under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A) *et seq*, for their time spent and reimbursement of expenses reasonably incurred in monitoring Defendants' compliance with this Order or with 8 U.S.C. § 1232(c)(2)(B), including without limitation litigating any disputes relating to this Order and Defendants' compliance with this Order or with 8 U.S.C. § 1232(c)(2)(B).

## IX. The Court's Continuing Jurisdiction

  The Court shall retain jurisdiction for a period of five (5) years after the date of the

entry of this Order to enforce and resolve any disputes concerning the terms of, and Defendants' compliance with, this Order or with 8 U.S.C. § 1232(c)(2)(B).  In the event the parties have a dispute concerning the requirements of this Order or the meaning of any terms therein, they shall promptly meet and confer in a good faith attempt to resolve the dispute.  If those efforts do not succeed, the parties shall promptly present the dispute to the Court for resolution in accordance with the local rules governing motions practice.

\* \* \*

There being no just reason for delay, pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment and Permanent Injunction forthwith without further notice.  This is a final and appealable order.

Dated:  September 21, 2021                                       RUDOLPH CONTRERAS
                                                                 United States District Judge