IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILMER GARCIA RAMIREZ, et al., | ) |
| | ) Case No. 1:18-cv-00508-RC |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| U.S. IMMIGRATION AND | ) |
| CUSTOMS ENFORCEMENT (ICE), et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REDACTED**

**Supplemental Declaration of Emma Winger**

I, Emma Winger, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am over 18 years old and competent to make this declaration.

2. This declaration is based on my personal knowledge, my review of government records produced in the above-captioned case, and communication with representatives and sponsors of class members.

3. I am the Deputy Legal Director at the American Immigration Council (Council). The Council, along with the National Immigrant Justice Center (NIJC), represents the Plaintiff class. In that capacity, I receive Defendants' monthly reporting, including Age-Out Review Worksheets (AORW) and supporting materials. *See* ECF 368 at 6. Defendants provide spreadsheets each month for all the age-outs that includes a range of information, including whether the teenager had a post-18 release plan, the custody determination ("released" or

1

"detained") and the release type. *See* Exh. A.[1] I also receive from Defendants a summary of the number and percent of unaccompanied children detained and released by month, with the most recent such report produced in mid-October 2025. The data received shows that for the last four years, Defendants have consistently released over 98% of all unaccompanied children rather than detaining them in adult detention. *See* Exh. B. From January through September 2025, Defendants have detained only nine young people aging-out of ORR for posing either a flight risk or a danger that could not be addressed by alternatives to detention. Exh. B. In that same period, ICE released two teenagers on orders of supervision and all the remaining age-outs on orders of recognizance. *Id.*

Re-Detained Class Members

4. On or about August 26, an NIJC client and class member was detained at his first ICE check-in following release from ORR custody. Plaintiffs' class counsel intended to raise the class member with Defendants, but NIJC was able to negotiate for his release with ICE.

5. On August 27, 2025, an attorney from the Immigrant Defenders Law Center reported that her client and class member A.T.L had been detained when he reported to his first required ICE check-in on August 21, 2025. I reviewed A.T.L's AORW and confirmed that he had been initially released on his own recognizance to a sponsor "in accordance with section 236 of the Immigration and Nationality Act" on August 7, after ICE determined that he was neither a flight risk nor a danger to the community. *See* Exh. C. Using the ICE detainee locator, https://locator.ice.gov/odls/#/search, I confirmed that A.T.L was in ICE custody.

6. In light of these two detentions of class members without any evident change in

---

[1] References to Exhibits A through O refer to Plaintiffs' exhibits in support of the Motion to Enforce. Exhibits 1 and 2 are exhibits to this Declaration and are attached hereto.

circumstances, on September 19, 2025, I contacted government counsel by email and requested that they investigate A.T.L.'s detention.

7. Using the ICE detainee locator, I also initiated a review of all recent age-outs reported by Defendants to determine whether any subsequently had been detained. Through this process I learned that class member F.L.P., who had been released on his own recognizance to a sponsor "in accordance with section 236 of the Immigration and Nationality Act" on July 3, was now in ICE detention. *See* Exh. D. I, along with a Spanish-speaking paralegal in my office, called the sponsor listed in F.L.P.'s AORW, who confirmed that F.L.P. had been detained at his first ICE check-in. The sponsor also provided the name and number for F.L.P.'s attorney. I spoke to F.L.P.'s attorney, who also confirmed that the teenager was detained at his first ICE check-in and there was no change in circumstances presented by ICE justifying his detention. The attorney further confirmed that an immigration judge found that it had no jurisdiction to hear F.L.P.'s request for bond because of the Board of Immigration Appeal's (BIA) decision in *Matter of Yajure Hurtado,* 29 I. & N. Dec. 216 (BIA 2025).

8. On September 25, 2025, I contacted government counsel by email and requested that they investigate F.L.P.'s detention.

9. On September 29, 2025, I learned from the former counsel for class member A.D. that he had been detained on July 16 at his first ICE check-in after being released on his own recognizance to an institutional sponsor. I confirmed through the ICE detainee locator that A.D. was in ICE custody. A review of his AORW confirmed that he was released to the institutional sponsor on June 19. *See* Exh. E. A.D.'s former counsel confirmed that there were no change in circumstances for A.D.

10. On the evening of September 29, 2025, I contacted government counsel by email

3

and requested that they investigate A.D.'s detention.

11. On September 30, 2025, I spoke with government counsel regarding A.T.L, F.L.P., and A.D. Government counsel did not have any information about F.L.P. and A.D. However, government counsel shared this explanation from ICE for A.T.L.'s arrest and detention:

> On August 21, 2025, [A.T.L.] a citizen and national of [XX], presented himself at the Alternatives to Detention (ATD) office in Orlando, FL. Of note, [A.T.L.] is not required to report to ICE pursuant to an ATD plan or any other non-detained reporting requirements. Further, no scheduled appointments were found in the system for this individual. When asked for the reason of his visit, [A.T.L.] advised the ICE officer on duty that he was homeless, and that all he wanted to do was to go home because he did not have any relatives to help him subsist. It is further important to note that before his release, ORR placed [A.T.L.] with a vetted sponsor. After appearing at the ATD office in Orlando, FL, [A.T.L.] was subsequently detained and transferred to Baker County Jail. [A.T.L.] is currently being prepared for voluntary departure to [XX] as he requested. Given these facts, the age-out's detention (after release) arose from changed circumstances as he has now been deemed as a flight risk.

Exh. 1, September 30 and October 6 Emails.

12. ICE's explanation for A.T.L.'s arrest is contradicted by A.T.L.'s AORW which includes an order of release on recognizance that included an obligation to report to ICE in Orlando, Florida on August 21. *See* Exh. C. A.T.L.'s counsel subsequently confirmed that A.T.L. disputed ICE's recounting of the circumstances of his arrest and maintained that he did not request to be deported to his native country and has never agreed to voluntary departure. In fact, A.T.L. received an interview on his pending asylum application on October 23. Notably, A.T.L.'s primary language is Kiche, and he was not provided interpretation services at his check-in at the ATD office in Orlando.

13. As of October 27, we have learned of a total of eight young people who were arrested either at their first ICE check-in or shortly thereafter without any change in circumstances.

14. I learned through the ICE detainee locator that J.D.F.V. was detained. J.D.F.V. was

released to his mother and stepfather on June 7 according to his AORW. *See* Exh. F. My paralegal spoke to the sponsors who reported that J.D.F.V. was arrested at his first ICE check-in on July 8. They were not aware of any change in circumstances.

15. I also learned through the ICE detainee locator that C.M.S.D. was detained. C.M.S.D. was released to her brother on May 30. *See* Exh. G. On October 3 I spoke to C.M.S.D. with a Spanish interpreter and learned that she had attended her first ICE check-in on June 30 and was scheduled for a follow-up check-in in November or December. She was arrested by ICE while she was a passenger in a car with her brothers. On October 6 I notified Defendants of C.M.S.D.'s detention and asked ICE to release her.

16. On October 23, representatives from the Young Center for Immigrant and Children's Rights notified me that another class member, J.N.B.S., was detained at his first ICE check-in on October 20. J.N.B.S. was released to a sponsor on September 21. *See* Exh. H. On October 23 I notified Defendants of this new detained class member.

17. Also on October 23, I initiated a review of all class members released in September to determine whether any more were now in ICE adult detention using the ICE detainee locator. Through this process I learned that J.A.M.S., who was released on September 8, is now also in ICE detention. *See* Exh. I. I was not able to confirm the circumstances of his arrest. On October 24 I notified Defendants of J.A.M.S.'s detention and asked that ICE investigate.

18. I have notified Defendants of all seven of these detained class members. As discussed below, on October 27 I learned of one additional detained class member. Defendants provided explanations for the detentions of A.T.L., F.L.P., A.D., J.D.F.V., and C.M.S.D. that confirmed A.T.L., F.L.P., A.D., and J.D.F.V. were arrested at their first ICE check-ins and that C.M.S.D. was arrested as a passenger in a car. Defendants did not identify any relevant change in

5

circumstances for any of the detained class members. *See* Exh. 2, October 10 and 15 Emails. On October 15, I demanded that ICE release all five class members from detention.

19.     Defendants have not yet provided an explanation for J.N.B.S.'s or J.A.M.S.'s re-detention. On the evening of October 27, I learned from counsel for C.G.P.C. that he was detained at his first ICE check-in without any change in circumstances. ICE released C.G.P.C. on September 23 to his brother, *see* Exh. P, and detained him on October 22. On the evening of October 27 I raised C.G.P.C. with Defendants.

20.     As of October 27, A.T.L., F.L.P., A.D., J.D.F.V., C.M.S.D., J.N.B.S., J.A.M.S., and C.G.P.C. all remain in ICE adult detention. To my knowledge, none have received bond hearings before an immigration judge.

October 1 Policy

21.     On the afternoon of October 2, 2025, my colleagues and I began to receive reports that ICE was implementing several policies targeting unaccompanied children, including a policy to detain all age-outs. By the evening of October 2, we heard from several legal services providers concerned that their clients who were close to aging out in the coming days might be detained despite having vetted sponsors and post-18 plans indicating they were neither a flight risk nor a danger, including at least one young person who had been granted release on an order of recognizance and then had that order revoked. However, at that time, some legal services providers were reporting that they had not received notice of such a policy. Even as of the following day, October 3, several legal services providers in touch with my office indicated they did not understand ICE to be implementing such a policy in their area.

22.     On Thursday, October 2 at 9:25 p.m., I emailed government counsel to seek to meet and confer over the apparent violations of the Final Judgment and Permanent Injunction as

6

reported by legal services providers for children in ORR custody. At 7:28 am on October 3 I called government counsel to ensure they received notice, in light of the government shutdown.

23. Government counsel responded at 9:19 a.m. on Friday, October 3 requesting identifying information for the children. I provided details for E.G.G.L. and E.O.B.M. to Defendants' counsel at 1:35 p.m., reiterated our request to meet and confer, and indicated our intention to seek a temporary restraining order to enforce the judgment. That day, our office received additional reports from legal services providers including more concrete information about what the policy might consist of and who would be affected. By the close of business Friday, it began to appear that Defendants were instituting a nationwide policy to violate the final judgment and permanent injunction in this case. Counsel sent information for I.L.F.R. and W.O.B.P. at 5:10 p.m. and reiterated the request to confer. At 6:34 pm government counsel responded that they had no factual updates on any of the individuals but offered to meet.

24. At 7:00 p.m., Plaintiffs' and government counsel conferred. Plaintiffs reiterated that they intended to seek court intervention as early as that night in the absence of written assurances by 10:00 p.m. on October 3, that ICE would not detain any of the individuals or class members through such time as the parties could confer on Monday, October 6—a request that Plaintiffs' counsel confirmed by email following the call. At 10:03 p.m., government counsel indicated that they were able to reach DHS but "d[id] not have an answer at this time" to Plaintiffs' request.

25. Following this Court's Temporary Restraining Order, Defendants released five young people who had been impacted by the October 1 policy: R.R.A.C. and S.H.G., who turned 18 on October 1, *see* Exhs. J and K; A.G.A., who turned 18 on October 2 and whose brother was a viable sponsor, *see* Exhs. L and M; and C.H.V. and M.E.R.V., who turned 18 on October 4, *see*

7

Supp. Hilty Decl., Supp. Barry Decl., Exhs. N and O. I learned of the cases of R.R.A.C. and S.H.G. from Defendants' counsel, who notified me via email on October 6 that they had been impacted by the October 1 guidance and had since been released from ICE's custody.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on October 27, 2025 at Boston, Massachusetts.

_____
Emma Winger

# Exhibit 1

| | |
|---|---|
| **From:** | Emma Winger |
| **To:** | "Alsterberg, Cara E. (CIV)"; Schutrum-Boward, Daniel R. (CIV); mfleming@immigrantjustice.org; Erika Acosta |
| **Cc:** | Harris, Terri S. (CIV); Suchita Mathur; Rebecca Cassler; Michelle Lapointe |
| **Subject:** | ICE detentions of released UCs - Garcia Ramirez |
| **Date:** | Monday, October 6, 2025 2:28:00 PM |
| **Attachments:** | |

Cara,

We want to separately follow-up on the detention of class members at their first ICE check-ins and/or absent any change in circumstances.

As reflected in our TRO, following our Tuesday call we reached out to A███████ T██ L███' attorney who was able to reach him in detention. She confirmed our previous understanding—that ███████ appeared at his ICE check-in because he had been ordered to do so when he was released from ORR. He did not state that he wanted to return to Guatemala or that he was homeless. He has never requested voluntary departure. He explained to his attorney that he was asked to sign some paperwork on August 21, but he did not understand it and so he did not sign it. Further, his primary language is K'iche and has not been provided any interpreters in the detention center.

In addition, we have identified two other class members recently detained by ICE (their AORWs are attached):

- J████ D████ F████-V████ (████████████). Released to his mother and stepfather on OREC on June 7. Arrested when he appeared for his first ICE check-in. He is being held at Adelanto.
- C████ M█████ S███ D████ (████████████). Released to her brother on May 30. Appeared as required for her first ICE check-in on June 30 and scheduled for a follow-up check-in November or December. Arrested when a passenger in a car with her brothers. She reported to the arresting ICE officers that she had been an unaccompanied minor and had already checked in with ICE and she was nevertheless arrested. There are no apparent changes in circumstances. She is being held at Ft. Bliss.

We are very concerned about the continued detention of these class members despite ICE's custody determination that they are neither flight risks nor dangers. We ask that ICE release these young people consistent with their initial ORECs. We are considering seeking relief for these young people in our forthcoming motion to enforce.

Emma

**Emma Winger**
Pronouns: She/Her
202-507-7512 | ewinger@immcouncil.org

**American Immigration Council**
www.AmericanImmigrationCouncil.org
www.ImmigrationImpact.com

---

**From:** Alsterberg, Cara E. (CIV) <Cara.E.Alsterberg@usdoj.gov>
**Sent:** Tuesday, September 30, 2025 3:27 PM
**To:** Emma Winger <EWinger@immcouncil.org>; Schutrum-Boward, Daniel R. (CIV) <Daniel.R.Schutrum-Boward@usdoj.gov>; mfleming@immigrantjustice.org; Erika Acosta <EAcosta@immcouncil.org>
**Cc:** Harris, Terri S. (CIV) <TERRI.S.HARRIS@usdoj.gov>
**Subject:** RE: Garcia Ramirez: August 2025 AORWs

> **External sender** <cara.e.alsterberg@usdoj.gov>
> Make sure you trust this sender before taking any actions.

Good afternoon, counsel –

Thank you for the call.

Please find below the information we received from ICE regarding Mr. A█████ T█-L█ (█████). I will inquire with them about the 8/21/25 OREC check-in in his AORW:

On August 21, 2025, T█-█ A█████ (█████) a citizen and national of Guatemala, presented himself at the Alternatives to Detention (ATD) office in Orlando, FL. Of note, █████ is not required to report to ICE pursuant to an ATD plan or any other non-detained reporting requirements. Further, no scheduled appointments were found in the system for this individual. When asked for the reason of his visit, █████ advised the ICE officer on duty that he was homeless, and that all he wanted to do was to go home because he did not have any relatives to help him subsist. It is further important to note that before his release, ORR placed █████ with a vetted sponsor. After appearing at the ATD office in Orlando, FL, █████ was subsequently detained and transferred to Baker County Jail. █████ is currently being prepared for voluntary departure to Guatemala as he requested. Given these facts, the age-out's detention (after release) arose from changed circumstances as he has now been deemed as a flight risk.

Thank you,
Cara

---

**From:** Emma Winger <EWinger@immcouncil.org>
**Sent:** Monday, September 29, 2025 9:14 PM
**To:** Alsterberg, Cara E. (CIV) <Cara.E.Alsterberg@usdoj.gov>; Schutrum-Boward, Daniel R. (CIV) <Daniel.R.Schutrum-Boward@usdoj.gov>; mfleming@immigrantjustice.org; Erika Acosta

# Exhibit 2

| | |
|---|---|
| **From:** | Emma Winger |
| **To:** | "Parascandola, Christina (CIV)"; Rebecca Cassler; Michelle Lapointe; Mark Fleming; Erika Acosta |
| **Cc:** | Harris, Terri S. (CIV); Suchita Mathur; Alsterberg, Cara E. (CIV); Delasalas, Dean (CIV); Schutrum-Boward, Daniel R. (CIV); Silvis, William (CIV) |
| **Subject:** | RE: Garcia Ramirez - Follow up |
| **Date:** | Wednesday, October 15, 2025 3:19:00 PM |

Counsel,

We are following up on the email below regarding the re-detention of class members without any change in circumstances.

With respect to the individual UCs, Defendants have not identified any relevant change in circumstances regarding flight risk or danger to the community to justify their re-detentions. Therefore, we reiterate our demand that ICE release them. Specifically:

- A███████ T██-L███ (█████████). As previously discussed, Alexander disputes ICE's recounting of the circumstances of his check-in. It is notable that ICE now acknowledges that he was in fact required to report to ICE—if he reported to the wrong ICE unit that is plainly irrelevant. It is also notable that ICE does not repeat the assertion that Alexander is being processed for voluntary departure. In fact, ███████ has an interview scheduled for his affirmative asylum application next week. Regardless, even accepting ICE's account, it does not suggest that ███████ is either a flight risk or a danger to the community justifying his re-detention. Rather, ICE's assertions show that he reports when so ordered and is willing to cooperate with his removal if necessary.
- F█████ L██ P█ (█████████). ICE has confirmed that ███████ reported as required and does not assert any change in circumstances justifying his re-detention.
  - **Please provide the referenced "current detention guidance from the field office."**
- A████████ D███ (█████████). ICE has similarly confirmed that ███████ reported as required and does not assert any change in circumstances justifying his re-detention.
  - **Please provide the referenced "local guidance on custody re-determination."**
- J████ D██ F████-V████ (█████████). ICE has confirmed that ████ reported as required. ICE points to a prior juvenile conviction. As reflected in the attached AORW, ICE considered that arrest and conviction when making its initial custody determination and found that █████ presented neither a flight risk nor a danger such that even additional conditions were not necessary. Thus, ICE has not identified any change in circumstances justifying his re-detention.
- C███ M█████ S██ D████ (█████████). ICE does not dispute that ████

reported to ICE as required. That ▮ was the passenger in the car of another person targeted by the FOT is not relevant to ▮'s own custody status.

All five young people should be released. Can you confirm whether ICE is planning to release them?

Please respond regarding the release of these class members, the highlighted field office policies, your ongoing investigation regarding a re-detention policy, and the unsealing and redactions of the October 1 policy.

Emma

**Emma Winger**
Pronouns: She/Her
202-507-7512 | ewinger@immcouncil.org

**American Immigration Council**
www.AmericanImmigrationCouncil.org
www.ImmigrationImpact.com

---

**From:** Parascandola, Christina (CIV) <Christina.Parascandola@usdoj.gov>
**Sent:** Friday, October 10, 2025 9:00 AM
**To:** Emma Winger <EWinger@immcouncil.org>; Rebecca Cassler <RCassler@immcouncil.org>; Michelle Lapointe <MLapointe@immcouncil.org>; Mark Fleming <mfleming@immigrantjustice.org>; Erika Acosta <EAcosta@immcouncil.org>
**Cc:** Harris, Terri S. (CIV) <TERRI.S.HARRIS@usdoj.gov>; Suchita Mathur <SMathur@immcouncil.org>; Alsterberg, Cara E. (CIV) <Cara.E.Alsterberg@usdoj.gov>; Delasalas, Dean (CIV) <Dean.Delasalas@usdoj.gov>; Schutrum-Boward, Daniel R. (CIV) <Daniel.R.Schutrum-Boward@usdoj.gov>; Silvis, William (CIV) <William.Silvis@usdoj.gov>
**Subject:** RE: Garcia Ramirez - Follow up

> **External sender** <christina.parascandola@usdoj.gov>
> Make sure you trust this sender before taking any actions.

Good morning,

Defendants are not aware of a blanket policy to arrest former UACs and are investigating to better understand.

We provide an update below regarding the five former UACs you asked about. On September 30, 2025, you received information, summarized below, about the first former UAC on the list.

- A▇▇▇ T▇ -L▇ (▇▇▇). Released to sponsor on August 7. Arrested when he appeared for his first required ICE check-in on August 21. Detained at Baker County.
    - ▇▇ **aged out on 08/07/2025 on OREC. He was served with I-220A. He was instructed to report to ERO Orlando office on August 21, 2025 per I-220A. It is unclear why he reported to ATD office as he was not referred to ATD. ICE duty officer in Orlando said that ▇▇ stated that he was homeless and all he wanted to do was to go home because he did not have any relatives to help him. ERO Orlando took him into custody.**
- F▇ L▇ P▇ (▇▇). Released to his aunt on July 3. Arrested when he appeared for his first ICE check-in on July 22. Detained at Bluebonnet.
    - ▇ **aged out on 07/03/2025 and was released on OREC per AORW. ▇ reported to ERO Dallas – Oklahoma City sub-office on 07/22/2025 and was taken into custody. According to ERO DAL/OKC supervisors, ▇ was taken into custody based on current detention guidance from the field office.**
- A▇ D▇ (▇▇). Released to Casa Marianella on June 19. Detained on July 16 at his first ICE check-in. Detained a Karnes.
    - ▇ **aged out on 06/19/2025 and was released on OREC per AORW. ▇ reported to ERO San Antonio on 07/16/2025 and was taken into custody. According to ERO SNA supervisors, ▇ was taken into custody accordance with SNA's local guidance on custody re-determination.**
- J▇ D▇ F▇ -V▇ (▇▇). Released to his mother and stepfather on OREC on June 7. Arrested when he appeared for his first ICE check-in on July 8. He is being held at Adelanto.
    - **On December 29, 2024, subject was booked into Harris County Jail for the offense of Deadly Conduct. On May 8, 2025, the Harris County Court, convicted and sentenced subject to 120 days confinement. Booked into ORR custody upon release from local custody, and released on recognizance on June 7, 2025 upon aging out. Arrested at ICE check-in on July 8, 2025.**
- C▇ M▇ S▇ D▇ (▇▇). Released to her brother on May 30. Appeared as required for her first ICE check-in on June 30 and scheduled for a follow-up check-in November or December. Arrested when a passenger in a car with her brothers. She reported to the arresting ICE officers that she had been an unaccompanied minor and had already checked in with ICE and she was nevertheless arrested. There are no apparent changes in circumstances. She is being held at Ft. Bliss.
    - ▇▇ **aged out on 05/30/2025 and released on OREC. She was**

> **encountered by ICE Fugitive Operations Team (FOT), on August 28, 2025, as a passenger in a vehicle operated by the male subject FOT was targeting. ERO office made a custody re-determination and detained ▮▮▮▮▮.**

We are working on your inquiry about redacting information from the October 1 policy and filing the policy under seal.

Sincerely,

Christina

Christina Parascandola
Senior Litigation Counsel
Office of Immigration Litigation – General Litigation and Appeals Section
U.S. Department of Justice
202-514-3097 | christina.parascandola@usdoj.gov

---

**From:** Emma Winger <EWinger@immcouncil.org>
**Sent:** Thursday, October 9, 2025 3:20 PM
**To:** Delasalas, Dean (CIV) <Dean.Delasalas@usdoj.gov>; Parascandola, Christina (CIV) <Christina.Parascandola@usdoj.gov>; Rebecca Cassler <RCassler@immcouncil.org>; Michelle Lapointe <MLapointe@immcouncil.org>; Mark Fleming <mfleming@immigrantjustice.org>; Erika Acosta <EAcosta@immcouncil.org>
**Cc:** Harris, Terri S. (CIV) <TERRI.S.HARRIS@usdoj.gov>; Suchita Mathur <SMathur@immcouncil.org>; Alsterberg, Cara E. (CIV) <Cara.E.Alsterberg@usdoj.gov>; Schutrum-Boward, Daniel R. (CIV) <Daniel.R.Schutrum-Boward@usdoj.gov>; Silvis, William (CIV) <William.Silvis@usdoj.gov>
**Subject:** [EXTERNAL] Garcia Ramirez - Follow up

Counsel,

Thank you for the AORWs. We wanted to follow up on two outstanding issues that need resolution before our October 27 filing deadline.

**Re-detained class members:** Can you provide an update on the five young people we have raised who were re-detained after being released by ICE? Can you also provide any update on ICE's practice of detaining class members when they appear at their initial check-ins? As discussed, we are considering raising this issue in our motion to the Court.

**Confidential designation and redactions of the October 1 policy:** As discussed, we

challenge the confidentiality designation and redactions on the guidance.

- There is no basis for the redactions given that the version on the docket is confidential. The redactions also appear to cover information beyond Protected Material (i.e., they appear to cover information that is not a name, number, or email address of a federal government employee, see Doc. 63 ¶ 2(c)). At a minimum, Defendants should file an unredacted copy of the guidance on the docket and provide the same to Plaintiffs under Doc. 63 ¶ 5 ("When filing protected material with this Court, a party shall request that the Protected Material be filed under seal and shall provide the opposing party and the Court with an unredacted (revealing the Protected Material) version of the filing at the time of filing.").
- Moreover, there is no good cause to seal the guidance document because it evinces a policy change that is of great public concern, the text of the July 8 Lyons memo is already public, the basics of the policy change with regard to children aging out of ORR custody is also already public (as set forth in Plaintiffs' TRO motion and supporting evidence), and even where a federal government employee is named, the public has a right to know which high-level policy makers are involved in this policy change, and thus their names should be public.
- If we cannot reach a resolution we will plan to file a motion with the Court.

We appreciate your prompt response on both issues.

Emma

**Emma Winger**
Pronouns: She/Her
202-507-7512 | ewinger@immcouncil.org

**American Immigration Council**
www.AmericanImmigrationCouncil.org
www.ImmigrationImpact.com

---

**From:** Delasalas, Dean (CIV) <Dean.Delasalas@usdoj.gov>
**Sent:** Thursday, October 9, 2025 11:29 AM
**To:** Parascandola, Christina (CIV) <Christina.Parascandola@usdoj.gov>; Emma Winger <EWinger@immcouncil.org>; Rebecca Cassler <RCassler@immcouncil.org>; Michelle Lapointe <MLapointe@immcouncil.org>; Mark Fleming <mfleming@immigrantjustice.org>; Erika Acosta <EAcosta@immcouncil.org>
**Cc:** Harris, Terri S. (CIV) <TERRI.S.HARRIS@usdoj.gov>; Suchita Mathur <SMathur@immcouncil.org>; Alsterberg, Cara E. (CIV) <Cara.E.Alsterberg@usdoj.gov>; Schutrum-Boward, Daniel R. (CIV) <Daniel.R.Schutrum-Boward@usdoj.gov>; Silvis, William (CIV) <William.Silvis@usdoj.gov>
**Subject:** RE: AORWs - Garcia Ramirez