# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WILMER GARCIA RAMIREZ, *et al.*, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 1:18-CV-00508-RC |
| v. | ) |
| | ) Class Action |
| UNITED STATES IMMIGRATION AND | ) |
| CUSTOMS ENFORCEMENT, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO
ENFORCE THE COURT'S FINAL JUDGMENT AND PERMANENT INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................................... 1

BACKGROUND..................................................................................................................... 2

    I.     Procedural History........................................................................................... 2

    II.    8 U.S.C. § 1225(b)(2)(A) and Parole ........................................................... 4

    III.   The Age-Out Review Worksheet ("AORW") ............................................. 5

    IV.   July 8, 2025, Interim Guidance .................................................................... 6

    V.    The Court's Temporary Restraining Order.................................................. 8

    VI.   Plaintiffs' Motion to Enforce ...................................................................... 9

LEGAL STANDARD ........................................................................................................... 10

ARGUMENT ....................................................................................................................... 10

    I.     The October Guidance complies with this Court's Permanent Injunction and 8 U.S.C. § 1232(c)(2)(B) ..................................................................................................... 11

         A. Under the October Guidance, ICE directs FOJCs to continue to consider the least restrictive setting available and alternatives to detention.................................... 11

         B.  While the October Guidance imposes additional requirements on FOJCs, it does not displace 8 U.S.C. § 1232(c)(2)(B)............................................................. 15

         C. The October Guidance is consistent with the Permanent Injunction.................. 18

    II.    Aliens who are 18 are adults and not members of the *Garcia Ramirez* Class. Instead, they are subject to the Government's authority to detain, just like any other adult alien in the United States................................................................................................. 20

         A. Former UACs who have been released from immigration custody and have turned 18 are adults and no longer members of the *Garcia Ramirez* class .................... 20

         B. Neither the TVPRA nor the injunction limit DHS's lawful exercise of its authority under 8 U.S.C. § 1225(b)(2)(A) or other detention authorities to detain adult aliens who formerly were but are no longer age-outs entitled to consideration of least restrictive setting under § 1232(c)(2)(B).................................................. 23

C.  The Court lacks authority to issue an order restricting or enjoining on a class-wide basis DHS's implementation of § 1225(b)(2)(A)............................................. 29

CONCLUSION .................................................................................................................... 30

## TABLE OF AUTHORITIES

### CASES

*Arevalo Lopez v. Sessions,*

    2018 WL 2932726 (S.D.N.Y. June 12, 2018) ......................................................... 24, 25, 26

*Arostegui-Maldonado v. Baltazar,*

    2025 WL 2280357 (D. Colo. Aug. 8, 2025) .......................................................... 19

*Bautista v. Santacruz,*

    2025 WL 2670875 (C.D. Cal. July 28, 2025) ....................................................... 15

*Biden v. Texas,*

    597 U.S. 785 (2022) ............................................................................................. 30

*Borum v. Brentwood Vill., LLC,*

    324 F.R.D. 1 (D.D.C. 2018) ................................................................................ 21

*Chavez v. Noem.,*

    2025 WL 2730228 (S.D. Cal. Sep. 24, 2025) ....................................................... 5

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*

    467 U.S. 837 (1984) ............................................................................................. 16

*City of Houston v. HUD,*

    24 F.3d 1421 (D.C. Cir. 1994) ............................................................................ 21

*Garcia Ramirez v. ICE,*

    338 F. Supp. 3d 1 (D.D.C. 2018) .............................................................. 9, 10, 12, 20

*Garcia Ramirez v. ICE,*

    2019 WL 11623990 (D.D.C. June 4, 2019) ....................................................... 21

*Garcia Ramirez v. ICE,*

    471 F. Supp. 3d 88 (D.D.C. 2020) ..................................................................... 18

*Garcia Ramirez v. ICE,*

    568 F. Supp. 3d 10 (D.D.C. 2021) .......................................................... *passim*

*Garland v. Aleman Gonzalez,*

    596 U.S. 543 (2022) ..................................................................................... 30

*Heartland Hosp. v. Thompson,*

    328 F. Supp. 2d 8 (D.D.C. 2004) ................................................................. 10

*Jennings v. Rodriguez,*

    583 U.S. 281 (2018) ....................................................................... 4, 17, 18

*JOP v. DHS,*

    338 F.R.D. 33 (D. Md. 2020) ...................................................................... 28

*Jose L.P. v. Whitaker,*

    431 F. Supp. 3d 540 (D.N.J. 2019) ................................................... 24, 25, 26

*Loper Bright Enters. v. Raimondo,*

    603 U.S. 369 (2024) ..................................................................................... 16

*Matter of Q. Li,*

    29 I. & N. Dec. 66 (BIA 2025) ................................................................... 27

*Matter of Yajure Hurtado,*

    29 I. & N. Dec. 216 (BIA 2025) ................................................. 16, 17, 18, 27

*Mendez Ramirez v. Decker,*

    612 F. Supp. 3d 200 (S.D.N.Y. 2020) ......................................................... 24

*Rodriguez v. Bostock*,

    2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) .................................................. 15

*Skidmore v. Swift & Co.*,

    323 U.S. 134 (1944) ........................................................................................ 16

*Torres v. Barr*,

    976 F.3d 918 (9th Cir. 2020) ................................................................................ 5

*Torres v. Wamsley*,

    2025 WL 2855379 (W.D. Wash. Oct. 8, 2025) ................................................ 26, 27, 28

*United States v. Gambino-Ruiz*,

    91 F.4th 981 (9th Cir. 2024) ............................................................................ 5, 6

*Watkins v. Washington*,

    511 F.2d 404 (D.C. Cir. 1975) ....................................................................... 10, 26

*WildEarth Guardians v. Bernhardt*,

    2019 WL 3253685 (D.D.C. July 19, 2019) ........................................................... 10

## STATUTES

8 U.S.C. § 1101(a)(13)(A) ...................................................................................... 4

8 U.S.C. § 1182(d)(5) ................................................................................... *passim*

8 U.S.C. § 1182(d)(5)(A) ............................................................................... *passim*

8 U.S.C. § 1225 .......................................................................................... *passim*

8 U.S.C. § 1225(a)(1) ........................................................................................ 4

8 U.S.C. § 1225(b) ....................................................................................... 7, 25

8 U.S.C. § 1225(b)(2)(A) ............................................................................... *passim*

8 U.S.C. § 1229a ......................................................................................... 4, 6

8 U.S.C. § 1232 ................................................................................................... *passim*

8 U.S.C. § 1232(c)(2)(A) ................................................................................. 27, 28

8 U.S.C. § 1232(c)(2)(B) ................................................................................. *passim*

8 U.S.C. § 1252(f)(1) ........................................................................................ *passim*

# INTRODUCTION

There are two distinct questions before this Court. The first is whether Defendants' October 1, 2025 guidance ("October Guidance"), which requires U.S. Immigration and Customs Enforcement ("ICE") Field Office Juvenile Coordinators ("FOJCs") to conduct a parole review as the operative release mechanism in accordance with ICE's Interim Guidance Regarding Detention Authority for Applicant for Admission, issued on July 8, 2025, complies with this Court's Permanent Injunction and 8 U.S.C. § 1232(c)(2)(B). The second is whether *former* unaccompanied alien children ("UACs") who received the process to which they are entitled under § 1232(c)(2)(B) and the Permanent Injunction are still *Garcia Ramirez* class members.

First, the October Guidance does not violate this Court's Permanent Injunction or § 1232(c)(2)(B). Parole has always been a release mechanism available to FOJCs when making age-out determinations, even if it was not utilized by FOJCs prior to the October Guidance. Nothing in the text of 8 U.S.C. § 1232(c)(2)(B) requires Defendants to utilize any *particular* release mechanism. This is highlighted by the fact that 8 U.S.C. § 1232(c)(2)(B) does not promise a particular placement, as this Court has emphasized. *See Garcia Ramirez v. ICE*, 568 F. Supp. 3d 10, 29 (D.D.C. 2021) ("The Court understands, as it has stated multiple times, that no age-out is entitled to any particular placement under the statute"). The October Guidance represents Defendants' awareness that § 1232(c)(2)(B) and 8 U.S.C. § 1225(b)(2)(A) must work in concert, not that one overrides the other.

Second, Congress is very clear that after an alien has turned 18, that alien is not a child. No part of the statutory scheme establishing the government's authority to detain suggests that, for adults who are subject to mandatory detention, the government must treat former UACs or former *Garcia Ramirez* class members differently than other adult aliens. Put another way, Plaintiffs'

1

reading of the class definition to include adults is incorrect. Accordingly, this Court should deny Plaintiffs' Motion to Enforce.

## BACKGROUND

### I.    Procedural History

On July 2, 2020, the Court concluded that ICE was liable under the Administrative Procedure Act ("APA") for failing to follow procedures made necessary by the Violence Against Women Act Reauthorization of 2013's ("VAWA") amendment to the Trafficking Victims' Protection Reauthorization Act ("TVPRA"), 8 U.S.C. § 1232(c)(2)(B), and for refusing to take actions it was required to take under that statute. *Garcia-Ramirez v. ICE*, 471 F. Supp. 3d 88, 182–91 (D.D.C. 2020).

8 U.S.C. § 1232(c)(2)(B) states:

> If a minor described in subparagraph (A) reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary *shall consider* placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight. Such aliens *shall be eligible* to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home.

The Court held that "[t]he statute requires that ICE field officers take into account the statutory risk factors of danger to self, danger to community, and risk of flight, and that they consider placing age-outs in the least restrictive setting available." *Garcia-Ramirez*, 471 F. Supp. 3d at 92–93. To consider placing an age-out in the least restrictive setting available, "ICE officers must be able to identify what available setting would be least restrictive. This requires making an inquiry into available placements for age-outs[.]" *Id*. The Court acknowledged that its review "[o]nly extends to the decisionmaking process established by Section 1232(c)(2)(B), and not to the substance of the individual age-out custody determinations." *See id*. at 172.

The Court proceeded to discuss the statutory requirements in detail. *See generally id*. at 175–82. Under Section 1232(c)(2)(B), "[i]f a minor described in subparagraph (A)"—that is, "an unaccompanied alien child in the custody of [HHS]," § 1232(c)(2)(A)— "reaches 18 years of age and is transferred to the custody of the Secretary of [DHS], the Secretary *shall* consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(B) (emphasis added). The first sentence imposes two obligations. First, the Secretary must take into account the three statutory factors—dangers to self, danger to the community, and risk of flight. *Garcia-Ramirez*, 471 F. Supp. 3d at 175. Second, the Secretary must "consider placement in the least restrictive setting available." *Id*. This "consider[ation]" is due no matter the outcome of the danger and flight evaluation because the statute does not place any limits or conditions on it other than the sentence's first clause. *Id*. From there, "such aliens"—meaning all age-outs because all age-outs are encompassed by the preceding sentence—"shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home." *Id.* Thus, per the plain language of the provision, for each and every age-out, DHS must (1) take into account the statutory factors, (2) do so as it considers placing the age-out in the least restrictive setting available, and (3) make the age-out eligible for the identified alternative to detention options. *Id*.

In sum, the Court found that "the statute explicitly requires three things and implicitly requires a fourth from the Secretary and thus from the ICE officers executing his instructions." *Id*. at 182.

> First, they must take into account the age-out's statutory risk factors—danger to self, danger to community, and risk of flight. With these in mind, they must second

3

consider placing each and every age-out in the least restrictive setting available for that individual. This implicitly requires that officers be aware of what settings are available, and that they take affirmative steps to identify available settings when they are not self-evident, in order to determine which will be the least restrictive for that age-out. Third, and more broadly, DHS and ICE must make a variety of detention alternatives available for age-outs.

*Id.*

## II.    8 U.S.C. § 1225(b)(2)(A) and Parole

An alien is an "applicant for admission" if he arrives in or is present in the country but has not yet been lawfully admitted. 8 U.S.C. § 1225(a)(1); *see* 8 U.S.C. § 1101(a)(13)(A) (defining the terms "admission" and "admitted" to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."). In § 1225(b)(2)(A), Congress mandated detention of "an alien who is *an applicant for admission*, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

Under § 1225(b) detention is mandatory, regardless of whether the alien has been placed in section 240 removal proceedings or expedited removal proceedings. *See Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) ("[Section] 1225(b)(2) . . . mandates[s] detention of aliens throughout the completion of applicable proceedings . . . [.]"); *see also* 8 U.S.C. § 1225(b)(1)(B)(ii), (b)(1)(B)(iii)(IV) (mandating that aliens "shall be detained" in the expedited removal process), (b)(2)(A) (mandating that aliens "shall be detained," including during the pendency of removal proceedings under 8 U.S.C. § 1229a). Applicants for admission detained pursuant to § 1225(b)(1) or (b)(2) may be temporarily released on parole under 8 U.S.C. § 1182(d)(5). *Jennings*, 583 U.S. at 288.

Congress conferred upon DHS the discretion to grant "humanitarian parole" (or "parole") under 8 U.S.C. § 1182(d)(5), "on a case-by-case basis for urgent humanitarian reasons or

significant public benefit." *Id.* at 288. Such a reading of the statute comports with Congress' addition of § 1225(a)(1) by IIRIRA in 1996. Prior to IIRIRA, an "anomaly" existed "whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020). The addition of § 1225(a)(1) "ensure[d] that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA—in the position of an 'applicant for admission.'" *Id.*; *see Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228, at *4 (S.D. Cal. Sep. 24, 2025) ("As the Ninth Circuit did recently in *United States v. Gambino-Ruiz*, 91 F.4th 981, 990 (9th Cir. 2024), we thus also 'refuse to interpret the INA in a way that would in effect repeal that statutory fix' intended by Congress in enacting IIRIRA.").

Thus, "parole" is a statutory mechanism for release from detention for aliens subject to mandatory detention under § 1225(b).

## III.    The Age-Out Review Worksheet ("AORW")

Pursuant to this Court's Permanent Injunction Order, ECF No. 368 at 3–4, Defendants have continued to utilize the AORW to document age-out placement determinations and provide the AORW documentation to Plaintiffs on a monthly-basis. The government has not modified the AORW since 2021 and parole has always been on the form. *See id*. Thus, the language in § 1232(c)(2)(B) provides a framework for FOJCs to make their custody determinations, and parole is one of the statutory authorities that exists for aliens detained under § 1225(b) to be considered for release from custody. Parole is first mentioned on the AORW between Item 3 and Item 4. It states, "IF THE AGE-OUT WILL BE RELEASED ON OREC, OSUP, OR PAROLE WITHOUT A SPONSOR, ATD, OR BOND, PLEASE GO DIRECTLY TO ITEM 7 (CONSIDERING THE

LEAST RESTRICTIVE SETTING AVAILABLE)). YOU DO NOT NEED TO COMPLETE ITEMS 4-6." *See generally* Sealed ECF No. 419, Exh. C at ICE POST TRIAL – 0082364 (demonstrating language within AORW). Parole is then listed as one of the available options under Item 8 "Custody Recommendation" as an alternative to detaining the alien. *Id.* at ICE POST TRIAL – 0082366. The FOJC is asked to make their recommendation and to "check all that apply." *Id.* The available options are: "Release" to include "OREC," "OSUP," "Parole," and "Sponsor." Beneath these options are "ATD: type" and "Bond: amount." *Id.* Thus, parole acts as the release mechanism to be considered, but other alternatives to detention may still accompany a grant of parole. For example, parole may also be utilized when an alien is released to a sponsor, including organizational sponsors and shelters.

## IV.    July 8, 2025 Interim Guidance

On July 8, 2025, ICE issued to its employees "Interim Guidance Regarding Detention Authority for Applicants for Admission." ECF No. 421-1 at 3–5 ("Interim Guidance"). In the notice, ICE announced that DHS had revisited its legal position on detention and release authorities and determined that Section 235 of the Immigration and Nationality Act ("INA") would serve as the applicable immigration detention authority rather than Section 236 for all "applicants for admission." *Id.* Under the change in legal position, ICE employees must consider anyone arrested in the United States who has not been admitted and is placed in removal proceedings under 8 U.S.C. § 1229a as subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *See id.* Such applicants for admission are not entitled to release pursuant to § 1226(a), but rather, may only be released on parole under 8 U.S.C. § 1182(d)(5). *See id.* Parole may only be granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit. 8 U.S.C. § 1182(d)(5)(A). *See id.*

**IV.    October 1, 2025 Guidance**

On October 1, 2025, a unit chief of ICE's Juvenile and Family Management Division disseminated within ICE updated guidance for handling custody determinations for UAC "age-outs." *See* ECF No. 421-1, Updated Procedure for Custody Determinations of Age-Out Cases ("October Guidance"). Under the guidance, ICE would handle those custody determinations according to a three-step process. *See id.*

First, ICE's FOJC's "will continue to review and complete the Age-Out Review Worksheet (AORW), ICE Form 70-070, as required." *Id.* ¶ 1. The guidance specifies that the "review must be conducted based on the statutory factors outlined in 8 U.S.C. § 1232, [VAWA], and the requirements established in the *Garcia-Ramirez* Permanent Injunction." *Id.* The guidance emphasizes that the "current AORW remains unchanged." *Id.*

Second, if after the AORW review, an FOJC "recommends a custody option other than detention" for the "age-out," the FOJC "must conduct a parole review in accordance with the [Interim Guidance]." *See id.* ¶ 2. According to the Interim Guidance, aliens who are "applicants for admission" are subject to mandatory detention under 8 U.S.C. § 1225(b). *See* ECF No. 421-1 at 1–2. The Interim Guidance does not require ICE to "immediately identify and arrest all aliens who may be subject to INA § 235 detention." *Id.* at 2. Rather, ICE considers INA § 235 "prohibitions on release once an alien enters ICE custody upon initial arrest or re-detention." *Id.* ICE may release an alien via parole under 8 U.S.C. § 1182(d)(5). *See id.* at 2.

As required by statute, ICE may grant parole on a "case-by-case basis" for "urgent humanitarian reasons" or "significant public benefit." 8 U.S.C. § 1182(d)(5)(A); ECF No. 421-1 ¶ 2. If the age-out warrants parole under 8 U.S.C. § 1182(d)(5), then the age-out may be released

on parole to a sponsor or shelter, including "parole and bond" or "parole and ATD." *See id.* If the age-out does not warrant parole, the FOJC proceeds to the third step. *See id.* ¶ 3.

Third, if the age-out does not warrant parole, the FOJC "must then consider placement in the next available least restrictive setting" which would be detention pursuant to § 1225(b). *Id.*

## V.    The Court's Temporary Restraining Order

On October 4, 2025, Plaintiffs moved for a temporary restraining order, citing the cases of six class members, E.G.G.L., E.O.B.M., I.L.F.R., W.O.B.P., M.E.R.V., and G.T.X., whom ICE decided to detain under § 1225(b), pursuant to the October Guidance. *See* ECF No. 421-2 at 13; *see* Pls' Emerg. Mot. for TRO & to Enf. Final J. & Permanent Injunction, ECF No. 413 at 5–6. Each of these class members had aged out after October 1 or would age out in days. *Id.* at 5–7. Plaintiffs claimed that ICE's decision to detain each age-out violated the Permanent Injunction. *Id.* at 8–10. Plaintiffs argued that the requirement in the October Guidance, that when an AORW recommends a custody option other than detention, the FOJC must determine, in accordance with the Interim Guidance, whether the age-out is eligible for humanitarian parole under 8 U.S.C. § 1182(d)(5), violates the requirement in § 1232(c)(2)(B) to consider the least restrictive setting available. *Id.*

On the same day, the Court granted Plaintiffs' request for a TRO and enjoined Defendants from implementing any new directive regarding age-outs and from detaining any class member in an adult ICE facility in any manner that contravenes the Permanent Injunction. ECF No. 414. The Court ordered Defendants to rescind any determinations based on the directive and to produce the AORWs of any class members who may have been impacted by the October Guidance. *Id.* Since the Court issued the TRO, Defendants have produced eleven AORWs to class counsel, including those AORWs of the six age-outs Plaintiffs identified in their TRO motion.

## VI.    Plaintiffs' Motion to Enforce

On October 27, 2025, Plaintiffs moved to enforce the Permanent Injunction, ECF No. 417, and later filed an unredacted version, ECF No. 421-2. Plaintiffs raise two claims. First, Plaintiffs claim that, under their interpretation of the Defendants' authority to detain under section 1225(b), the October Guidance violates the Permanent Injunction and § 1232(c)(2)(B). *Id*. at 19–28. Plaintiffs raise three arguments in support of this claim. Plaintiffs reiterate the argument in their TRO motion, that the Court earlier ruled that § 1232(c)(2)(B) applies to all age-outs, even those subject to mandatory detention as arriving aliens. *Id*. at 19–20 (quoting *Garcia Ramirez v. ICE*, 338 F. Supp. 3d 1, 28 (D.D.C. 2018)). Plaintiffs then argue that the additional step, in the October Guidance, to conduct a parole review in accordance with § 1182(d)(5), functionally (and thus unlawfully) nullifies the requirement in § 1232(c)(2)(B) to consider the least restrictive setting available. *Id*. at 21–25. Plaintiffs then argue that the October Guidance is inconsistent with the requirements in the Permanent Injunction and § 1232(c)(2)(B) to make individualized determinations for each age-out. *Id*. at 25-28. Plaintiffs cite the cases of eleven class members (E.G.G.L., E.O.B.M., I.L.F.R., W.O.B.P., M.E.R.V., R.I.Y.C., G.T.X, C.H.V., A.G.A., R.R.A.C., and S.H.G.) whom they assert were detained on their 18th birthdays. *Id*. at 26.

Plaintiffs' second claim is that ICE's re-detention of former class members who are adults, without any change in circumstances since aging out, violates the Permanent Injunction. ECF No. 421-2 at 28–31. Plaintiffs cite the cases of seven former class members, A.T.L., F.L.P., A.D., J.D.F.V., C.M.S.D., J.N.B.S., and C.G.P.C., who had received the consideration to which they were

entitled as *Garcia Ramirez* class members and, after becoming adults, were arrested and re-detained by ICE. *Id*. at 17–18, 29–30. [1]

## LEGAL STANDARD

"Courts grant motions to enforce judgments when a prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it, even if the noncompliance was due to misinterpretation of the judgment." *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004) (collecting authorities); *see also WildEarth Guardians v. Bernhardt*, No. CV 16-1724 (RC), 2019 WL 3253685, at *3 (D.D.C. July 19, 2019) (Contreras, J.) (citing *Heartland Hosp.*, 328 F. Supp. 2d at 11). "If the plaintiff has received all relief required by that prior judgment, the motion to enforce is denied." *Id.* (citing *Watkins v. Washington*, 511 F.2d 404, 406 (D.C. Cir. 1975)). In the Permanent Injunction Addendum, the Court ordered ongoing relief until September 21, 2026. *See* ECF No. 378. Therefore, the question before the Court is whether Plaintiffs received all relief required so far.

## ARGUMENT

This Court should deny Plaintiffs' Motion to Enforce. The October Guidance complies with this Court's Permanent Injunction and 8 U.S.C. § 1232(c)(2)(B). Under the October Guidance, ICE directs FOJCs to continue to consider the least restrictive setting available and alternatives to detention. While the October Guidance imposes additional requirements, it does not displace the statutory text of 8 U.S.C. § 1232(c)(2)(B). Under the October Guidance, the release mechanism available for aliens subject to § 1225(b) is parole.

---

[1]    Since filing their Motion to Enforce, Plaintiffs have identified four additional former age-outs who have been re-detained. *See* ECF No. 426 at 2. Defendants' position regarding the re-detention of any former age-out is laid out in Argument Section II, *infra*.

Additionally, aliens who are 18 are adults and not members of the *Garcia Ramirez* class. Instead, they are subject to the government's authority to detain, just like any other adult alien in the United States. Neither the TVPRA nor the Permanent Injunction limit DHS's lawful exercise of its authority under 8 U.S.C. § 1225(b)(2)(A) to detain adult aliens who formerly were but are no longer age-outs entitled to consideration of least restrictive setting under § 1232(c)(2)(B). And under § 1252(f)(1), this Court lacks authority to issue an order that restricts or enjoins DHS's implementation of § 1225(b)(2)(A) on a class-wide basis.

I.   **The October Guidance complies with this Court's Permanent Injunction and 8 U.S.C. § 1232(c)(2)(B).**

A.   **Under the October Guidance, ICE directs FOJCs to continue to consider the least restrictive setting available and alternatives to detention.**

Plaintiffs claim that ICE's October Guidance no longer provides "meaningful consideration of the least restrictive placement," that the guidance is "inconsistent with the injunction because it displaces the statutory standard," and that in practice the guidance's "implementation demonstrates its inconsistency with the injunction." ECF No. 421-2 at 15–24. That guidance was in effect for three days before this Court issued a temporary restraining order enjoining Defendants from applying the guidance. *See* ECF No. 414. Plaintiffs have not alleged that Defendants have not complied with the TRO. Defendants' position is that nothing in the October Guidance affects their ability to meet their obligation to take into account the age-outs statutory risk factors to include danger to self, danger to community, and risk of flight, *see Garcia-Ramirez*, 471 F. Supp. 3d at 92–93, as they have been doing so for the past four years. ICE's FOJC's "will continue to review and complete the Age-Out Review Worksheet (AORW), ICE Form 70-070, as required." ECF No. 421-1 ¶ 1.

As Plaintiffs' themselves state, "[f]or the past four years, Defendants have substantially complied with the Court's order." ECF No. 421-2 at 7. The October Guidance specifies that the

"review must be conducted based on the statutory factors outlined in 8 U.S.C. § 1232, [VAWA], and the requirements established in the *Garcia-Ramirez* Permanent Injunction." ECF No. 421-1 at 1–2. And the guidance emphasizes that the "current AORW remains unchanged." *See id.* Defendants are not starting from square one; instead, Defendants are now utilizing the release mechanism of parole. Thus, pursuant to the October Guidance, Defendants will utilize parole on a case-by-case basis. Thus, it is unclear how a "universal no-release policy" exists as the October Guidance was only in effect for three days. *See* ECF No. 421-2 at 21.[2]

Likewise, with the statutory risk factors in mind, nothing in the October Guidance will affect Defendants' consideration, on a case-by-case basis, for each and every age-out, of the least restrictive setting available. *See Garcia-Ramirez*, 471 F. Supp. 3d at 92–93. In this instance, the mechanism for release of age-outs subject to § 1225(b) detention is a parole consideration, which inherently consists of consideration of the factors for parole. 8 U.S.C. § 1182(d)(5). This is why the October Guidance states that if after the AORW review, an FOJC "recommends a custody option other than detention" for the "age-out," the FOJC "must conduct a parole review in accordance with the [Interim Guidance]." ECF No. 421-1 ¶ 2. According to the Interim Guidance, aliens who are "applicants for admission" are subject to mandatory detention under [8 U.S.C. § 1225]." *Id.* at 1–2. Under the Interim Guidance, ICE may release an alien via parole under 8 U.S.C. § 1182(d)(5). *See id.* at 2.

---

[2]    While Plaintiffs have included an e-mail, ECF No. 413-1 ¶ 33 & p. 22, that went to the field in El Paso stating "[d]ue to the new Age Out interim Guidance any upcoming Age Outs will remain in custody to continue their removal proceedings," Defendants are uncertain if this is simply poor wording or a misunderstanding of the new guidance, given the beginning of the e-mail acknowledges that "Parole may be granted on a case-by-case basis for 'urgent humanitarian reasons' or 'significant public benefit.'" *Id.* And that "ELP FOJC will continue to carefully evaluate UAC cases when making custody determinations." *Id.* Nevertheless, the text of the October Guidance controls.

ICE grants parole on a "case-by-case basis" for "urgent humanitarian reasons" or "significant public benefit." *Id*. ¶ 2. If after first complying with the statutory considerations under § 1232(c)(2)(B), wherein the FOJC determines that the age-out could warrant a release determination, the FOJC must then look to the statutory requirements under § 1225(b). At that juncture, the FOJC would conduct a parole determination pursuant to the in 8 U.S.C. § 1182(d)(5). Thus, when parole is warranted, Defendants still make a variety of detention alternatives available for age-outs to include release on parole to a sponsor, including organizational sponsors, as well as release on parole to shelters. *See id*. Nothing in the guidance states that Defendants will no longer utilize shelters, sponsors, Post-18 Plans or any of the other factors that assist FOJCs in complying with the statutory text of § 1232(c)(2)(B) and this Court's injunction. If the "age-out" does not warrant parole, the FOJC proceeds to the third step which would be detention. *See id*. ¶ 3.

Plaintiffs also argue that age-outs affected by the October Guidance are not "functionally" receiving the consideration required by 8 U.S.C. § 1232(c)(2)(B). ECF No. 421-2 at 17. Plaintiffs assert that under the October Guidance, ICE is not considering the "least restrictive setting" for age-outs because it presumes that an age-out should be detained, but that assertion is not supported by the guidance. *See* ECF No. 421-2 at 18. Plaintiffs' reading of the October Guidance relies on collapsing the three-step process. The three-step process is: (1) conducting the age-review process; (2) an additional step of considering the age-out for parole as the release mechanism if the age-review process does not result in a recommendation of detention; and, (3) then considering the next "least restrictive setting" for the age-out if parole is not warranted which is detention. *See* ECF No. 421-1 ¶¶ 1–3. Though Plaintiffs label the first step as "inconsequential," *see* ECF No. 421-2 at 19, Plaintiffs do not allege that the analysis required by this first step fails to comply with 8 U.S.C. § 1232 or this Court's Permanent Injunction. Plaintiffs' argument also confuses not

obtaining a desired result (release) with the requirements of 8 U.S.C. § 1232(c)(2)(B). As noted, this Court has emphasized throughout this case that the statute does not require an age-out to be released. *See Garcia Ramirez*, 568 F. Supp. 3d 10, 29 (D.D.C. 2021) ("The Court understands, as it has stated multiple times, that no age-out is entitled to any particular placement under the statute"). Thus, under the October Guidance, the statute, and the Permanent Injunction, detention of an age-out is appropriate if the 8 U.S.C. § 1232(c)(2)(B) analysis indicates that the least restrictive setting available is detention. *Cf.* ECF No. 421-1 ¶ 2 (instructing FOJCs to proceed to the second step of the analysis required under the October Guidance if the FOJC recommends a "custody option other than detention").

Neither § 1232(c)(2)(B) nor the Permanent Injunction mandate anything beyond following "a certain process, which requires proper consideration of certain factors and of certain alternatives." *See Garcia Ramirez v. ICE*, 568 F. Supp. 3d at 29. In fact, the Court stated that § 1232(c)(2)(B) neither prohibits ICE from detaining an age-out or requires ICE to release an age-out. *See Garcia Ramirez*, 568 F. Supp. 3d at 31 (acknowledging that even "[i]f ICE followed the proper procedures, it is not necessarily the case that none of them [the age-outs] would be detained[.]"). Moreover, the Court found "legally [ir]relevant" the fact that some age-outs would be detained; the Court's concern, rather, was with the harm flowing from "*Section 1232(c)(2)(B) [not] having been followed.*" *See id.* at 30 (emphasis in the original). Thus, both the Permanent Injunction and the statute contemplate and permit a scenario in which detention is the least restrictive setting available. *Cf. Garcia Ramirez*, 568 F. Supp. 3d at 29 (stating that no age-out is entitled to any particular placement under the statute).

Plaintiffs concede that Defendants have been complying with this Court's Permanent Injunction since it went into effect over four years ago. *See* ECF No. 421-2 at 7. This compliance

includes completing an AORW for each age-out as well as the provision of annual training and other support for FOJCs making age-out custody determinations. *See* Permanent Injunction, ECF No. 368 at 3–6. Because Plaintiffs are subject to § 1225(b) as applicants for admission, *see* ECF No. 421-1 at 3–5, and Defendants are bound by the parameters of that statute as well as their obligations under § 1232(c)(2)(B), parole acts as the release mechanism that is available for Plaintiffs who the AORW indicates could warrant release. *See* 8 U.S.C. § 1182(d)(5)(A). Plaintiffs do not have an entitlement to a specific outcome of their custody determination, just an entitlement to a determination made pursuant to 8 U.S.C. § 1232(c)(2)(B) and this Court's Permanent Injunction. *See Garcia Ramirez*, 568 F. Supp. 3d at 29. Defendants must comply with both statutory texts and do not argue that § 1225(b) overrides § 1232(c)(2)(B), which is why the parole determination happens separately from the initial § 1232(c)(2)(B) age-out determination. The intent of October Guidance demonstrates that Defendants are aware of their obligations, but that they must *balance both* the requirements of § 1232(c)(2)(B) and § 1225(b)(2)(A). Thus, Plaintiffs' Motion to Enforce must fail.

**B. While the October Guidance imposes additional requirements on FOJCs, it does not displace 8 U.S.C. § 1232(c)(2)(B).**

Defendants are aware that, in other district courts, petitioners in immigration detention under § 1225(b)(2)(A) have filed habeas petitions in which they argue that the government's authority to detain them should be under § 1226(a). *See, e.g.*, *Bautista v. Santacruz*, 2025 WL 2670875 (C.D. Cal. July 28, 2025) (TRO granted, motion for class cert pending); *Rodriguez v. Bostock*, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) (granting motion for partial summary judgment filed by class of immigration detainees at the Northwest Immigration Processing Center who requested and were denied bond hearing before an immigration judge and holding that their detention under § 1225(b)(2)(A) was unlawful).

But any argument that prior agency practice applying § 1226(a) to Plaintiffs, *see* ECF No. 421-2 at 6 n.4, 19–20, is unavailing because under *Loper Bright*, the plain language of the statute and not prior practice controls. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225–26 (BIA 2025). In overturning *Chevron*, the Supreme Court recognized that courts often change precedents and "correct[] our own mistakes" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 411 (2024) (overturning *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). *Loper Bright* overturned a decades old agency interpretation of the Magnuson-Stevens Fishery Conservation and Management Act that itself predated IIRIRA by twenty years. *Loper Bright Enterprises*, 603 U.S. at 380. Thus, longstanding agency practice carries little, if any, weight under *Loper Bright*. The weight given to agency interpretations "must always 'depend upon their thoroughness, the validity of their reasoning, the consistency with earlier and later pronouncements, and all those factors which give them power to persuade.'" *Id.* at 432–33 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (cleaned up)).

The Board of Immigration Appeal's ("BIA") recent precedent decision in *Matter of Yajure Hurtado* includes thorough reasoning. 29 I. & N. Dec. at 221–22. In *Yajure*, the BIA analyzed the statutory text and legislative history. *Id.* at 223–25. It highlighted congressional intent that aliens present without inspection be considered "seeking admission." *Id.* at 224. The BIA concluded that rewarding aliens who entered unlawfully with bond hearings while subjecting those presenting themselves at the border to mandatory detention would be an "incongruous result" unsupported by the plain language "or any reasonable interpretation of the INA." *Id.* at 228.

To be sure, "when the best reading of the statute is that it delegates discretionary authority to an agency," the Court must "independently interpret the statute and effectuate the will of Congress." *Loper Bright*, 603 U.S. at 395. But "read most naturally, §§ 1225(b)(1) and (b)(2)

16

mandate detention for applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297 (cleaned up). Prior practice does not support the position that the plain language mandates detention under § 1226(a).

Thus, Plaintiffs contend that the October Guidance "displaces the required statutory standard" because of the existence of § 1225(b), but this argument relies on three misconceptions. ECF No. 421-2 at 21. First, Plaintiffs misconstrue the October Guidance as a repetition of Defendants' argument that 8 U.S.C. § 1225 displaces 8 U.S.C. § 1232(c)(2)(B). *See* ECF No. 421-2 at 16; *see also* ECF No. 36, Defs' Mot. to Dismiss 20–23. On the contrary, the October Guidance instructs FOJCs to follow both the Permanent Injunction and 8 U.S.C. § 1232(c)(2)(B). *See* ECF No. 421-1 ¶ 1. Second, in claiming that the October Guidance makes the statute "inconsequential," ECF No. 421-2 at 19, Plaintiffs ignore that the guidance's consideration of 8 U.S.C. § 1225 is nothing more than an acknowledgement that this statute may be an independent bar to release. *See* ECF No. 421-1 ¶ 2.[3] Acknowledgement of this separate consideration is appropriate because under 8 U.S.C. § 1232(c)(2)(B), ICE must consider the "least restrictive setting *available*" to the age-out (emphasis added). In other words, the October Guidance merely acknowledges that due to the interaction between Sections 1225 and 1232, the least restrictive setting available to a particular age-out who does not warrant parole is detention if that is the only legally available means of release. *See* ECF No. 421-1 ¶¶ 2 –3. This acknowledgement is also consistent with the Court's observation that under 8 U.S.C. § 1232(c)(2)(B), age-outs "are not promised placement in the least restrictive setting." *Garcia Ramirez*, 471 F. Supp. 3d at 94.

---

[3]    Plaintiffs accuse Defendants of "proposing a novel . . . construction of their statutory authority" to thwart the Permanent Injunction, but Defendants are merely reconciling the Permanent Injunction in light of binding caselaw. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) (determining that all applicants of admission, including aliens who entered the United States unlawfully, are subject to mandatory detention under 8 U.S.C. § 1225).

Third, Plaintiffs' argument relies on finding an inconsistency between ICE's obligation to consider an alien's eligibility for alternatives to detention under 8 U.S.C. § 1232(c)(2)(B), where there is none. *See* ECF No. 421-2 at 18. Parole is merely the mechanism for the release of an alien subject to mandatory detention under 8 U.S.C. § 1225. *See Jennings*, 583 U.S. at 288; *Yajure*, 29 I. & N. Dec. at 223. Aside from setting an endpoint based on time and/or the purpose for which parole was given, *see* 8 U.S.C. § 1182(d)(5), parole does not require ICE to do anything else. Thus, parole exercised consistent with the October Guidance, does not prohibit ICE from considering "a continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home," as 8 U.S.C. § 1232(c)(2)(B) requires, when detention is inappropriate and the age-out warrants parole. *See* ECF No. 421-1 ¶ 2.

## C.    The October Guidance is consistent with the Permanent Injunction.

Plaintiffs argue that the implementation of the October Guidance is a "universal no-release policy," ECF No. 421-2 at 25, and is inconsistent with 8 U.S.C. § 1232(c)(2)(B) because "release on parole has ground to a halt," *id.* at 28, but Plaintiffs have hardly shown any sort of pattern or practice, either through anecdotes or data.

Plaintiffs rely significantly on statements from ICE Field Offices, ECF No. 421-2 at 10–12, 25–28, but some lack probative value. For example, some statements preceded the October Guidance by several months, *see, e.g.*, *id.* at 25 (citing a June 2024 email from an FOJC in El Paso Field Office stating that any upcoming age-outs will remain in custody due to new Age Out interim Guidance). As noted, in the October Guidance ICE expressly identifies the availability of parole, *see* ECF No. 421-1 ¶ 2, and thus, as a matter of chronology, would displace any other alleged guidance prohibiting parole at least to age-outs. Plaintiffs appear to quote other statements out of context. For instance, Plaintiffs quote a case containing a colloquy with an ICE officer who was

asked about "a policy of the Government that no paroles be granted," *see* ECF No. 421-2 at 23 (quoting *Arostegui-Maldonado v. Baltazar*, 2025 WL 2280357 at *11 (D. Colo. Aug. 25, 2025)). At best, however, it is unclear whether that officer in that case was referring to a nationwide policy to not grant parole to any aliens, or even age-outs, as opposed to aliens like the plaintiff in that case who had been mandatorily detained due to his reinstated removal order. *See Arostegui-Maldonado*, 2025 WL 2280357 at *2, 4–5.

Plaintiffs also provide hearsay statements made after the October Guidance was issued. First, Plaintiffs describe the cases of eleven aliens who have aged out of the Office of Refugee Resettlement ("ORR") custody since the issuance of the October Guidance. *See* ECF No. 421-2 at 22 (naming E.G.G.L., E.O.B.M., I.L.F.R., W.O.B.P., M.E.R.V., R.I.Y.C., G.T.X., C.H.V., A.G.A., R.R.A.C., and S.H.G.). Second, rather than reflecting a concerted effort by the whole of ICE to deny parole to age-outs, the statements—even fully credited—concern ICE Field Offices' implementation of the then-recently issued guidance.[4] For instance, in the case of age-out E.O.B.M., an FOJC initially asserted that E.O.B.M. would be detained "per [the] new directive," only for the FOJC to issue a correction roughly an hour later saying that E.O.B.M.'s case will be "reviewed regarding released from ORR custody/detention . . . ." *See* ECF No. 413 ¶ 22. In the case of age-out E.G.G.L., E.G.G.L.'s counsel initially received an email saying that he would be detained under the "new Age Out interim Guidance," *see* ECF No. 413-1 ¶ 13, only for the same Field Office, on the same day that email was sent, to release E.G.G.L. and another age-out. *See*

---

[4]    Plaintiffs additionally cite the cases of age-outs R.I.Y.C. and G.T.X., but the only evidence of a connection between their cases and the October Guidance is a hearsay statement by counsel that an FOJC told counsel that "post-18 plans would no longer be honored and that all unaccompanied minors with approved post-18 plans would be instead placed into adult detention." *See* ECF No. 413-2, Hilty Decl. ¶¶ 14, 30.

ECF No. 421-2 at 9–10 (citing ECF No. 413-1, Winger Decl. ¶¶ 14, 28).[5] At most, Plaintiffs have

the case of age-out M.E.R.V., in which two ICE officers were uncooperative with M.E.R.V's

counsel when she tried to find and confer with him, *see* ECF No. 417-2, Supplemental Hilty Decl.

¶¶ 22–28, but one case does not make a pattern. Thus, Plaintiffs' Motion should be denied.

II.    **Aliens who are 18 are adults and not members of the *Garcia Ramirez* Class. Instead, they are subject to the Government's authority to detain, just like any other adult alien in the United States.**

A.    **Former UACs who have been released from immigration custody and have turned 18 are adults and no longer members of the *Garcia Ramirez* class.**

Plaintiffs seek additional Court intervention regarding what happens to former class

members after they become adults. However, neither the TVPRA nor the definition of the certified

class in this case even refers to DHS's detention authority to detain adults under 8 U.S.C. § 1225

or other detention authorities or sweep so broadly to require the government to provide the

consideration Plaintiffs now demand.

In August 2018, the Court certified a class comprised of:

> [a]ll former unaccompanied alien children who are detained or will be detained by ICE after being transferred by ORR because they have turned 18 years of age and as to whom ICE did not consider placement in the least restrictive setting available, including alternative to detention programs, as required by 8 U.S.C. § 1232(c)(2)(B).

*Garcia Ramirez v ICE*, 338 F. Supp. 3d 1, 50 (D.D.C. 2018). Thus, once a former UAC receives a

custody determination as an age-out and is released from immigration custody, he or she is not a

class member.

In effect, what Plaintiffs now seek is for the Court to alter the injunction by applying it to

a population it never intended to cover and modifying the class definition to include aliens that

---

[5]    Plaintiffs credit the intervention of their counsel for this development, but without more, their assertion is unsupported. *See* ECF No. 421-2 at 23 n.9.

were already provided the required consideration upon ageing-out and transfer from ORR custody.

Thus, these individuals are no longer class members given the consideration they received and

their age-out determinations (release). Indeed, this Court has previously recognized that, naturally,

release is a crucial factor in determining whether someone remains a class member in this case.

*See Garcia Ramirez v. ICE*, 2019 WL 11623990, *2 (D.D.C. June 4, 2019) (recognizing

information regarding "age-outs who were detained by ICE after August 30, 2018, but who ha[d]

subsequently been released," was necessary to determine "which age-outs remain class members

because they are still detained."); *Borum v. Brentwood Vill., LLC*, 324 F.R.D. 1 (D.D.C. 2018)

(finding pragmatically that "[i]ndividuals living in apartments that no longer have minor children

no longer fit within the class definition of people residing in large apartments with minor children

and their guardians"). Thus, Plaintiffs effectively ask the Court to rewrite their class definition to

include adult aliens who have already received consideration of placement in the least restrictive

setting and were released as a result. A motion to enforce is not the proper procedure.

The *Garcia Ramirez* Plaintiff class consists of "age-outs" who did not receive their

consideration required by 8 U.S.C. § 1232(c)(2)(B). *See* ECF No. 370. This class is inherently

transient. Once ICE "consider[s]" the class member for "placement in the least restrictive setting

available, including alternatives to detention programs, as required by 8 U.S.C. § 1232(c)(2)(B),"

that individual is no longer a class member. *Cf. City of Houston v. HUD*, 24 F.3d 1421, 1429-30

(D.C. Cir. 1994) (stating that a party's challenge of a specific agency action against him and his

challenge to the policy underlying the action are both moot when the former challenge becomes

moot, unless the party shows that he has standing to challenge future applications of the policy).

Based on Plaintiffs' own allegations, the adults they mention in the Motion to Enforce, *see*

ECF No. 421-2 at 17 (A.T.L., F.L.P., A.D., J.D.F.V., and C.M.S.D.), and 18 (J.N.B.S., C.G.P.C.,

and J.A.M.S.), are not class members. Plaintiffs do not assert that ICE failed to complete the age-out review process for any of them. In fact, Plaintiffs allude to at least three of the adults (R.R.A.C., S.H.G., and J.D.F.V.) having received their AORWs. *See* ECF No. 421-2 at 12 n.6 (describing R.R.A.C. and S.H.G.); *see id.* at 13 (describing J.D.F.V.). Plaintiffs cite several AORWs to support the argument that these adults should not have been detained. *See id.* at 13 (describing J.D.F.V.'s AORW); ECF No. 417-1, Supplemental Winger Decl. ¶¶ 5–7 (citing the AORWs of A.T.L. and F.L.P.). Thus, by Plaintiffs' own accounts these adults had received the consideration due to them and that they are not class members.

Plaintiffs observe that ICE's compliance with the statute and the Permanent Injunction is illusory if ICE can detain a former age-out without a showing of a "material change in circumstances," *see* ECF No. 421-2 at 28, but Plaintiffs are operating on three faulty premises.

First, the statute and Permanent Injunction do not mention or have any requirements for *former* age-outs. Second, Plaintiffs' argument rests on a conflation between ICE adult detention authorities and a violation of the statute and Permanent Injunction. However, Plaintiffs do not assert that the AORWs of the detained former age-outs fail to reflect compliance with the statute and the Permanent Injunction. In fact, Plaintiffs positively cite several age-outs' AORWs for *why* those age-outs should not have been re-detained. *See id.* at 13 (describing J.D.F.V.'s AORW); ECF No. 417-1, Supplemental Winger Decl. ¶¶ 5-7 (citing the AORWs of A.T.L. and F.L.P.). Plaintiffs also do not allege that ICE did not intend to release the age-outs such that the completion of the AORWs was only perfunctory. Thus, while Plaintiffs disagree with a former age-out's re-detention, it does not mean that the statutorily required consideration was not given, which is the basis of this Court's Permanent Injunction. Third, the re-detention of former age-outs with or without a change in circumstance is irrelevant to whether Defendants complied with the statute and this Court's

Permanent Injunction. *See Garcia Ramirez*, 568 F. Supp. 3d at 30 ("The harm that matters here is only the harm caused to class members—to those age-outs who, by definition, are detained by Defendants *without Section 1232(c)(2)(B) having been followed.*") (emphasis in the original).

Consequently, Plaintiffs' focus on the materiality of the age-out's change in circumstance and/or the presence of a change is a red herring for the purposes of the statute and the Permanent Injunction. The materiality or immateriality of the change does not indicate whether the statutorily required consideration was given or not given. Rather, the presence of a change and the materiality thereof only appear to be relevant as to whether Plaintiffs would be satisfied with the reason for the former age-out's re-detention and is irrelevant to this case.

**B. Neither the TVPRA nor the injunction limit DHS's lawful exercise of its authority under 8 U.S.C. § 1225(b)(2)(A) or other detention authorities to detain adult aliens who formerly were but are no longer age-outs entitled to consideration of least restrictive setting under § 1232(c)(2)(B).**

Plaintiffs allege seven instances, since July 2025, of former class members who were released on their own recognizance, turned 18, and later were re-detained by ICE. *See* ECF No. 421-2 at 17, 28–30. Plaintiffs argue that the re-detention of these former class members violates the Permanent Injunction. *Id*. at 28–30. And Plaintiffs do not claim *any temporal limit* as to how long the *Garcia Ramirez* protections would theoretically apply after an age-out receives their § 1232(c)(2)(B) consideration because of the very nature of their class definition: once a class member receives the statutory protections of § 1232(c)(2)(B) and this Court's Permanent Injunction, they are no longer a class member. Neither the TVPRA nor the Permanent Injunction limit DHS's lawful exercise of its detention authorities for adult aliens even if DHS previously decided to release an alien on their own recognizance or a form of supervised release. A *former* UAC is, as relevant here, by definition, an adult and therefore not entitled to the considerations Congress specified for age-outs in § 1232(c)(2)(B).

The weight of authority supports Defendants' position. *See Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200 (S.D.N.Y. 2020) (denying habeas); *Jose L.P. v. Whitaker*, 431 F. Supp. 3d 540 (D.N.J. 2019) (denying habeas); *but see Arevalo Lopez v. Sessions*, 2018 WL 2932726 (S.D.N.Y. June 12, 2018) (granting habeas petition and ordering release).

In *Mendez Ramirez*, the petitioner, at age 17, had been released from the care and custody of ORR to his mother. *Mendez Ramirez*, 612 F. Supp. 3d at 207. The government later served Mendez Ramirez with a notice to appear in removal proceedings. *Id*. at 208. Mendez Ramirez failed to appear, and he was ordered removed in absentia. *Id*. At the age of 18 years and 6 months, Mendez Ramirez was charged in New York state court with two misdemeanors, and, while the charges were pending, ICE arrested Mendez Ramirez and detained him under § 1225(b)(2)(A). *Id*. In a habeas petition, Mendez Ramirez argued that he was entitled to consideration of the least restrictive setting available under § 1232(c)(2)(B). *Id*. at 209. The court observed that once Mendez Ramirez was released to his mother, he ceased to be a UAC. *Id*. at 212–13. The court concluded that Mendez Ramirez therefore was not entitled to a least restrictive setting determination under § 1232(c)(2)(B). *Id*. at 219.

Likewise, in *Jose L.P.*, the petitioner entered the United States in as a UAC. 431 F. Supp. 3d at 542. ORR proceeded to release Jose L.P. to his father while he was still a minor. *Id*. Later, DHS arrested Jose L.P. as part of an operation targeting suspected gang members and he was placed in immigration detention. *Id*. In a habeas petition, Jose L.P. argued that he was entitled to consideration of the least restrictive setting available under § 1232(c)(2)(B). *Id*. at 543. Although Jose L.P was no longer a minor when he was re-detained for alleged gang involvement, he argued that "even in cases where the UAC was released to a sponsor, turned 18 and, thereafter, was detained by ICE, the Respondents must consider placement in the least restrictive setting

available." *Id*. The *Jose L.P.* court, looking to *Arevalo Lopez*, 2018 WL 2932726, distinguished itself from both the *Arevalo Lopez* "framework" and "analysis." *Id*. at 546. Looking to the plain terms of 8 U.S.C. § 1232(c)(2)(B), the court determined that the statute only applies to a person who satisfies three preconditions: "(1) he or she was 'a minor described in subparagraph (A)'; (2) who 'reaches 18 years of age'; and (3) is 'transferred to the custody of the Secretary of Homeland Security.'" *Id*. at 547 (citing 8 U.S.C. § 1232(c)(2)(B)). The court concluded the Jose L.P. did not meet either the first or third requirements, therefore, "for those two independent reasons, § 1232(c)(2)(B) does not apply." *Id*.

Thus, *Arevelo Lopez* is distinguishable. *See* 2018 WL 2932726. Arevelo Lopez entered the United States as a UAC, was subsequently placed by ORR with a parent already living in the country, and, several months after he turned 18, was detained by ICE based on allegations of gang affiliation. *See id*. at *2–3. The Immigration Judge determined that Arevalo Lopez was an "arriving alien" subject to mandatory detention under 8 U.S.C. § 1225(b) and consequently denied a bond or custody hearing. *Id*. at *9. The *Arevalo Lopez* court concluded that § 1232(c)(2)(B) required the government to consider the least restrictive setting for Arevalo Lopez when it re-detained him and further found that his re-detention without any custody hearing, after ORR had previously found that he was "neither dangerous nor a flight risk"" violated his due process rights. *Id*. at *8–12. In concluding that § 1232(c)(2)(B) applied to Arevalo Lopez, the court focused primarily on the question of whether he had "attain[ed] majority while in HHS custody." *Id*. at *24. The court answered that question in the affirmative, since he had "turned eighteen while he was on physical release, but in *legal* custody of HHS, pursuant to a Sponsorship Agreement." *Id*. at *22–25 (emphasis added).

However, the *Arevalo Lopez* analysis does not come from the words of the statute itself, but from a far less authoritative source: the section header of VAWA. *See Jose L.P.*, 431 F. Supp. 3d at 550. "Taken alone, this language would contradict and render superfluous the plain language of the statute." *Id.* The statute specifies that it applies only to UACs who are "transferred to the custody of the Secretary of Homeland Security." *Id.* If "transferred to the custody" of DHS just meant "turned eighteen," Congress could have just said so, and omitted the "transferred" language altogether. *Id.* As the *Jose L.P.* court determined, the transfer must be intentional, not simply "the theoretical passing of jurisdiction from ORR to ICE on the person's eighteenth birthday." *Id.* Thus, the *Arevalo Lopez* court's reasoning is flawed because it extended the statutory text of § 1232(c)(2)(B) to adulthood when he had already been released to a parent (meaning he was both no longer a UAC (*see Mendez Ramirez*) or within DHS custody (*see Jose L.P.*), *and* had been an adult over the age of 18 for several months before his subsequent detention.

Like *Mendez Ramirez* and *Jose L.P.*, the seven former age-outs are no longer UACs. While they were briefly transferred to DHS custody at the pendency of their initial age-out determinations, each already *received the benefits* of both this Court's Permanent Injunction and the statute when they received due consideration. Thus, there is nothing further this Court can do, *see Watkins*, 511 F.2d at 406, and Plaintiffs' Motion should be denied.

Likewise, the former age-outs who have been re-detained are also distinguishable from *Torres v. Wamsley*, 2025 WL 2855379 (D. Wash. Oct. 8, 2025). On August 2016, Torres entered the United States as an 11-year-old UAC. *See id.* at *1. One month after his entry, ORR released him to his mother under 8 U.S.C. § 1232(c)(2)(A), not on parole under 8 U.S.C. § 1182(d)(5). *See id.* at *1, 4 n.5.

Torres was then placed in removal proceedings, but those proceedings were administratively closed such that he could pursue asylum through U.S. Citizenship and Immigration Services either through his own asylum application or as a derivative beneficiary of his mother's now-granted asylum application. *See id.* at *1. In August 2025, when Torres was approximately 20 years old, he was apprehended, arrested, and turned over to ICE during an unrelated search by the U.S. Drug Enforcement Administration ("DEA"). *See id.* at *2. While detained, Torres sought custody re-determination before an immigration judge. *See id.* The immigration judge found him subject to mandatory detention as an "applicant for admission," but alternatively granted him release on a $5,000 bond. *See id.* The immigration judge did not specifically find that he was seeking admission. *See id.* Torres appealed the decision to the BIA, but that appeal was denied. *See id.* He proceeded to file a petition for a writ of *habeas corpus*, and his removal proceedings were re-calendared. *See id.*

The district court granted Torres's habeas petition. First, the district court seized on the immigration judge's lack of a finding that Torres had been seeking admission because the district court found that mandatory detention under 8 U.S.C. § 1225 would only apply to an applicant who was seeking admission into the United States. *Id.* at *3. Second, the district court distinguished the Torres from the aliens in *Matter of Q. Li,* 29 I. & N. Dec. 66 (BIA 2025), and *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) because those cases dealt with paroled aliens while Torres was simply released under 8 U.S.C. § 1232(c)(2)(A). *See Torres*, 2025 WL 2855379 at *4 n.5. Third, while the district court in *Torres* found that 8 U.S.C. § 1232(c)(2)(B) applied to Torres, the district court undercuts this point by declining to complete its analysis and determining whether such an analysis would result in Torres's release. *See id.* at *4. Ultimately, the district court opted

for an alternative resolution by reasoning that Torres may be a member of another class action lawsuit called *JOP v. DHS*, 338 F.R.D. 33, 42-43 (D. Md. 2020). *See id*.

*Torres* is distinguishable from the case of the adults who were re-detained by ICE after their release from ICE custody. First, while *Torres* also deals with a former UAC, the *Torres* plaintiff did not age-out of UAC classification while he was in ORR custody. *Torres*, 2025 WL 2855379 at *1. Rather, he was released to his mother when he was still a minor. *See id*. Consequently, unlike the Plaintiffs who are subject to 8 U.S.C. § 1232(c)(2)(B), Torres was subject to 8 U.S.C. § 1232(c)(2)(A), the provision regarding placement of a UAC who is still a UAC while in government custody. Second, while Torres was later detained as an adult, like the former class members here, ICE's Interim Guidance has classified all applicants for admission to be subject to § 1225(b), including the UACs like those in the *Garcia Ramirez* class. This is distinct from the *Torres* court's finding that Torres was not subject to § 1225(b) detention. Third, before the DEA arrested him and turned him over to ICE in August 2025, Torres was never in ICE custody such that he would have received an age-out determination pursuant to § 1232(c)(2)(B). *See id*. at *1-2.

Ultimately, these cases illustrate the limited nature of 8 U.S.C. § 1232(c)(2)(B). This provision grants a narrow benefit—consideration for the least restrictive setting available with no guarantee of the alien's preferred placement—to a similarly narrow group of aliens: UACs who are transferred from ORR custody to ICE custody upon their turning 18 years of age. Moreover, these cases illustrate that having once been a UAC does not indefinitely create an entitlement to an age-out determination pursuant to § 1232(c)(2)(B). The statute does not entitle former class members to anything more, such as freedom from future re-detention only on grounds acceptable

to Plaintiffs. Plaintiffs' disagreement with ICE's re-detention authority falls outside the scope of this case.

### III.    The Court lacks authority to issue an order restricting or enjoining on a class-wide basis DHS's implementation of § 1225(b)(2)(A).

Congress limits courts' abilities to enjoin or restrict the operations of certain immigration provisions "other than with respect to the application of such provisions to an individual alien." 8 U.S.C. § 1252(f)(1). Defendants' determination that all applicants for admission, to include both UACs and former UACs who are now adults, as subject to § 1225(b) mandatory detention parameters therefore is not subject to this Court's jurisdiction.

Here, the relief Plaintiffs seek would have the effect of enjoining or restraining DHS's implementation of 8 U.S.C. § 1225(b)(2)(A). But 8 U.S.C. § 1252(f)(1) explicitly bars such relief. Plaintiffs ask this Court to "[e]njoin Defendants from implementing the October 1, 2025 policy regarding the detention of age-outs," ECF No. 421-2 at 1, and to "[e]njoin Defendants from detaining any age-outs in any manner that contravenes the Permanent Injunction, including those initially released from ORR custody, absent a material change in their circumstances," effectively barring DHS from using § 1225(b)(2)(A)'s authority programmatically. *Id.*

Section 1252(f)(1) provides: "Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to *enjoin or restrain* the operation of the provisions of part IV of this subchapter … other than with respect to the application of such provisions to an individual alien against whom proceedings . . . have been initiated." 8 U.S.C. § 1252(f)(1) (emphasis added).

For example, the Supreme Court held—in a case challenging DHS's utilization of § 1225(b)(2)(C)—that § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or

otherwise carry out the specified statutory provisions." *Biden v. Texas*, 597 U.S. 785, 797 (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)). Section 1225(b)(2) is one of the statutory provisions § 1252(f)(1) covers. Section 1252(f)(1) thus eliminates any court's (other than the Supreme Court's) authority to issue coercive orders enjoining or restraining implementation of § 1225(b)(2). As the Supreme Court held in *Aleman Gonzalez*, to "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action. 596 U.S. 549 (quoting 5 Oxford English Dictionary 756 (2d ed. 1989).

A court order enjoining Defendants from considering age-out class members who are applicants for admission as subject to § 1225(b) mandatory detention and thus may only be released on parole or detaining former class members after they have received the benefit of this Court's injunction is such a coercive order. *See Aleman Gonzalez*, 596 U.S. at 550. And notably, nothing in the text of § 1225(b) provides an exception for former UACs or age-outs.

## CONCLUSION

This Court should deny Plaintiffs' Motion as to their first claim because they have received, and continue to receive, the relief required by this Court's Permanent Injunction. The Court should deny Plaintiffs' second claim, because former UACs who ICE re-detained as adults are no longer class members. Additionally, pursuant to § 1252(f)(1), this Court does not have jurisdiction to enjoin Defendants from utilizing parole for applicants for admission, including the class members. Accordingly, Plaintiffs' Motion to Enforce, ECF Nos. 417, 421-2, should be denied.

DATED: November 17, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANTHONY P. NICASTRO
Acting Director
Office of Immigration Litigation

WILLIAM C. SILVIS
Assistant Director

CHRISTINA PARASCANDOLA
Senior Litigation Counsel

DEAN P. DE LAS ALAS
DANIEL SCHUTRUM-BOWARD
Trial Attorneys

*/s/ Cara E. Alsterberg*
CARA E. ALSTERBERG
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice
Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
 (202) 532-4667
Cara.E.Alsterberg@usdoj.gov

*Counsel for Defendants*