**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WILMER GARCIA RAMIREZ, et al., | ) | |
| | ) | Case No. 1:18-cv-00508-RC |
| Plaintiffs, | ) | |
| | ) | Class Action |
| v. | ) | |
| | ) | |
| U.S. IMMIGRATION AND | ) | |
| CUSTOMS ENFORCEMENT (ICE), et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<span style="color:red">**REDACTED**</span>

**MOTION TO CLARIFY AND ENFORCE THE COURT'S ORDER GRANTING
PLAINTIFFS' MOTION TO ENFORCE THE FINAL JUDGMENT AND PERMANENT
INJUNCTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
THEREOF**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

   I.   Procedural History ................................................................................................. 2

   II.  The Parties' Efforts Subsequent to the Court's December 2025 Order ............................ 3

LEGAL STANDARD.......................................................................................................... 10

ARGUMENT ......................................................................................................................11

   I.   The Court Should Clarify that Changed Circumstances Justifying Re-Detention Under the December 2025 Order Must be Material and Tied to the Statutory Risk Factors..............11

   II.  The Court Should Clarify that Defendants Must Provide Class Counsel Sufficient Information Regarding Changed Circumstances to Enable Class Counsel to Monitor Compliance with the Court's Orders.................................................................................. 14

   III. The Court Should Clarify that Defendants Must Promptly Release Class Members Who Are Improperly Detained, and No Later than 48 Hours After Their Re-arrest. ................. 19

   IV. The Court Should Order the Immediate Release of Re-detained Class Members for Whom ICE Has Not Established Materially Changed Circumstances in Response to Class Counsel's Requests. ............................................................................................. 20

CONCLUSION ................................................................................................................... 21

## TABLE OF AUTHORITIES

**CASES**

*All. of Artists & Recording Cos., Inc. v. Gen. Motors Co.*,

  306 F. Supp. 3d 413 (D.D.C. 2016) ........................................................................ 10

*Am. Postal Workers Union, AFL-CIO v. Postal Regul. Comm'n*,

  842 F.3d 711 (D.C. Cir. 2016) .........................................................................11, 13

*Clarke v. U.S. Dep't of Homeland Sec.*, 2025 WL 3674471 (E.D.N.Y. Dec. 18, 2025) ................ 15

*Elliott v. City of Wheat Ridge*, 49 F.3d 1458 (10th Cir. 1995) ....................................... 12

*Escobar Molina v. U.S. Dep't of Homeland Sec.*, 2025 WL 3465518 (D.D.C. Dec. 2, 2025) ...... 12

*Flaherty v. Pritzker*, 17 F. Supp. 3d 52 (D.D.C. 2014) ............................................... 10

*Kaur v. U.S. Dep't of Homeland Sec.*, 2025 WL 3706724 (E.D. Cal. Dec. 22, 2025) .................. 15

*Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189 (W.D. Wash. 2025) .................................. 12

*Lepe v. Andrews*, 801 F. Supp. 3d 1104 (E.D. Cal. 2025) ............................................. 20

*Quintero Campos v. Deleon*, 2025 WL 3514120 (S.D.N.Y. Dec. 8, 2025) ................................. 20

*\*Ramirez v. U.S. ICE*, 2025 WL 3563183 (D.D.C. Dec. 12, 2025) ...................................... *passim*

*\*Ramirez v. U.S. ICE*, 310 F. Supp. 3d 7 (D.D.C. 2018) .............................................. 20

*\*Ramirez v. U.S. ICE*, 471 F. Supp. 3d 88 (D.D.C. 2020) .......................................... 2, 14

*\*Ramirez v. U.S. ICE*, 568 F. Supp. 3d 10 (D.D.C. 2021) ............................................ 14

*Rosa v. Bondi*, 144 F.4th 37 (1st Cir. 2025) ...................................................... 15

*Sanchez Puentes v. Garite*, 780 F. Supp. 3d 682 (W.D. Tex. 2025) .................................. 15

*U.S. v. Rollins*, 378 F.3d 535 (6th Cir. 2004) .................................................... 12

*United States v. [Redacted]*, 806 F. Supp. 3d 17 (D.D.C. 2025) .................................... 12

*United States v. Philip Morris USA, Inc.*, 793 F. Supp. 2d 164 (D.D.C.2011) ........................ 10

*Univ. of Colorado Health at Mem'l Hosp. v. Burwell,* 164 F. Supp. 3d 56 (D.D.C. 2016) .......... 10

*Wasserman v. Rodacker*, 557 F.3d 635 (D.C. Cir. 2009) ............................................. 20

*Zumba v. Bondi*, 2025 WL 2753496 (D.N.J. Sept. 26, 2025) ......................................... 20

**STATUTES**

8 U.S.C. § 1232(c)(2)(B) .......................................................................... *passim*

**OTHER AUTHORITIES**

ACLU, *No Fighting Chance: ICE's Denial of Access to Counsel in U.S. Immigration Detention Centers* (June 9, 2022), https://tinyurl.com/3m4c79yb ........................................................... 18

Aruna Sury, *What To Do When ICE Submits an I-213 in Immigration Court*, Immigrant Legal Resource Center, 2-3 (Dec. 2023), https://tinyurl.com/3dyazawd............................................ 15

Black's Law Dictionary (10th ed. 2014).......................................................................................11

Daniella Silva, Priya Sridhar, and Dan Gallo, *Georgia college student detained by ICE after being wrongly pulled over is granted bond*, NBC News (May 21, 2025, 5:10 PM), https://tinyurl.com/dus8dj4p ......................................................................................................... 17

Levi Ismail, *'Guilty until proven innocent?' Video from Nashville THP/ICE stops revives questions of racial profiling,* NewsChannel5 Nashville (Feb. 19, 2026, 9:49 PM), https://tinyurl.com/367zhz7h ........................................................................................................ 17

**INTRODUCTION**[1]

Last summer, Immigration and Customs Enforcement (ICE) began arbitrarily re-arresting and detaining members of the *Garcia Ramirez* class without any material change in their circumstances, vitiating the protections required under this Court's permanent injunction and 8 U.S.C. § 1232(c)(2)(B). On December 12, 2025, the Court granted Plaintiffs' motion to enforce, declared the re-arrest policy unlawful, ordered the release of any class members re-arrested and detained under this policy, and ordered Defendants to provide class counsel with information regarding re-detained age-outs on an ongoing basis. Since the Court's order, ICE has continued to re-detain class members and then attempt to justify such re-detentions on grounds that do not constitute a material change regarding flight risk or danger. Instead, ICE often re-arrests young people and later can point only to traffic stops that do not result in criminal charges, minor traffic violations or other similar infractions, untargeted encounters with immigration officers, failure to update an address with ICE, and similar circumstances. In addition, ICE has refused to provide class counsel with information to justify their detention determinations beyond vague, conclusory blurbs unsupported by any documentation. And ICE has taken weeks to release young people whose detention even it concedes is unlawful.

In light of ICE's ongoing violation of the Court's orders, Plaintiffs ask that the Court clarify its December 12, 2025 Order and instruct Defendants that (a) ICE's reliance on de minimis infractions and random encounters with immigration officers do not constitute materially changed circumstances regarding the statutory risk factors under § 1232(c)(2)(B); (b)

---

[1] As detailed in the Declaration of Emma Winger, which is attached to the instant motion, consistent with Local Rule 7(m), Plaintiffs' counsel have exhaustively conferred with counsel for Defendants to narrow areas of disagreement between the parties. Defendants' counsel indicated that Defendants do not consent to the relief Plaintiffs seek in their motion for clarification and for enforcement. *See* Winger Decl. ¶¶ 13-37.

the information Defendants must provide to class counsel must include all supporting documents ICE relies on to justify the re-detention; and (c) ICE must promptly release all class members it detains absent materially changed circumstances, in no case longer than 48 hours after arrest. In addition, Plaintiffs ask the Court to enforce its December 12 Order by ordering the release of identified class members for whom ICE has failed to establish the required change in circumstances.

In support of this motion, Plaintiffs rely on the incorporated memorandum of law and accompanying declarations and exhibits, as well as the exhibits attached to the concurrently filed motion to seal. A proposed order is attached.

## BACKGROUND

### I.    Procedural History

Plaintiffs filed this class action lawsuit in March 2018, challenging Immigration and Customs Enforcement's (ICE) failure to follow the Trafficking Victims Protection Reauthorization Act (TVPRA), which requires ICE to consider placement in the "least restrictive setting available," identify alternative placements, and make eligible for alternatives to detention 18-year-olds aging out of the custody of the Office of Refugee Resettlement (ORR). *See* 8 U.S.C. § 1232(c)(2)(B). Following a bench trial, the Court entered judgment in favor of the Plaintiff Class. *Ramirez v. U.S. ICE*, 471 F. Supp. 3d 88, 191 (D.D.C. 2020); *judgment entered*, 568 F. Supp. 3d 10 (D.D.C. 2021). As a remedy, the Court granted a permanent injunction on September 21, 2021, along with specific enforcement mechanisms that remain in effect for five years. ECF 368. As part of those enforcement mechanisms, Defendants are required to provide Plaintiffs' counsel on a monthly basis a spreadsheet summary of all age-outs from the prior month, along with the Age-Out Release Worksheet (AORW) and all supporting materials ICE relied upon to make the placement determinations for each age-out. *Id.* at 6. The Court made

Plaintiffs' counsel responsible for monitoring Defendants' compliance with the permanent injunction. *Id.* at 7.

On October 27, 2025, Plaintiffs filed a motion to enforce the Court's permanent injunction. ECF 417. In that motion, Plaintiffs raised two material violations: Defendants' secret adoption of a new policy to subject all class members to mandatory detention and Defendants' policy of re-detaining class members absent any material change in circumstances related to flight risk or danger. *Id.* On December 12, 2025, the Court granted Plaintiffs' motion to enforce, holding that both new policies violated the Court's permanent injunction. *Ramirez v. U.S. ICE*, 2025 WL 3563183 (D.D.C. Dec. 12, 2025). With respect to Defendants' policy of re-detaining class members without materially changed circumstances regarding the statutory risk factors, the Court declared such policy unlawful, ordered the release of any class members re-arrested and detained under this policy, and ordered Defendants to "produce information on an ongoing basis concerning any age-outs who have been re-arrested and detained since July 2025" as a result of this policy. ECF 435 at 2.

## II.    The Parties' Efforts Subsequent to the Court's December 2025 Order

On December 16, 2025, Defendants notified Plaintiffs' counsel that they had released six class members specifically named in this Court's Order from ICE custody. Winger Decl. ¶ 6 (noting release of F.L.P., A.D., C.M.S.D., D.S.M., K.D.B., and D.M.G.). However, two class members had already been removed: A.T.L., who left under voluntary departure on December 7, 2025, and J.E.O., who was removed on December 8, 2025. *Id.*

Re-detained Age-Outs

After the parties met and conferred later in December, Defendants began providing Plaintiffs' counsel with monthly spreadsheets listing age-outs re-detained by the Department of

Homeland Security (DHS) in the prior month (or months, in the case of the initial spreadsheet). *Id.* ¶¶ 5, 7-8. Those spreadsheets list identifying information, place of detention, date of release from ORR custody, date of re-arrest, ICE's decision to release or continue detention, and a short description of any alleged changed circumstances justifying the re-detention of each age-out. *See* Exhs. A-D. The spreadsheets also note the age-outs for whom ICE did not identify changed circumstances and thus have released pursuant to the Court's Order. *Id.* Defendants do not attach any supporting documentation to these spreadsheets. *See id.*

Defendants produced these spreadsheets on January 5, January 30, February 20, and March 20, 2026. The January 5 spreadsheet listed 45 young people who aged out of ORR custody between 2021 and 2025 and who were re-arrested by immigration authorities between July and December 2025. ICE released 18 of them starting on December 20, a full week after the Court's Order, with one released as late as December 31. One person was listed as having taken voluntary departure. The other 27 remained in ICE custody. *See* Ex. A. The January 30 spreadsheet listed 22 new people, who aged out of ORR custody between 2021 and 2025 and were re-arrested by immigration authorities between December 31, 2025, and January 20, 2026. ICE released two of them, after one and three weeks; the other 20 remained in ICE custody. *See* Ex. B.[2] The February 20 spreadsheet listed 15 new people, who aged out of ORR custody between 2021 and 2025 and were re-arrested by immigration authorities between January 21 and January 31, 2026. ICE released four of them, after 17 to 27 days post-arrest; the other 11 remained in ICE custody. *See* Ex. C. The March 20 spreadsheet listed 27 new people who aged out of ORR custody between 2021 and 2025 and were re-arrested by immigration authorities

---

[2] Defendants' counsel explained via email that the individuals highlighted in yellow on the spreadsheets, *see* Exs. B, C, were also previously listed on prior spreadsheets. Winger Decl. ¶ 10.

between February 2 and February 28, 2026. ICE released three of them after re-detention lasting between four and 19 days; the other 24 remained in ICE custody. *See* Ex. D. On March 25, 2026, Defendants' counsel advised that another class member detained on February 26 has been released. *See* Winger Decl. ¶ 36.

In total, under its own accounting, ICE took at least 30 class members into custody between July 2025 and February 2026. *See* Exs. A-D (listing age-outs re-arrested and eventually released due to a lack of changed circumstances). Based on when ICE releases age-outs it deems *not* to present changed circumstances, as reflected in the monthly spreadsheets, it is apparent that ICE continues to re-arrest some class members without having identified any changed circumstances *prior* to their re-arrest, and only releases them days or weeks later, after presumably reviewing their cases in light of the Court's December 12, 2025 Order. *See* Exs. A-D; *but see* ECF 435 at 2 (declaring that re-arresting and detaining "age-outs absent materially changed circumstances regarding the statutory risk factors . . . violates" the permanent injunction).

Parties' Communications Regarding Defendants' Compliance

A number of significant disagreements about the scope of the Court's December 2025 Order have arisen since January 2026, which the parties have been unable to resolve despite extensive discussions. *See* Winger Decl. ¶¶ 13-37.

**First,** Plaintiffs believe that Defendants are imposing improper and unlawfully broad criteria for "materially changed circumstances regarding the statutory risk factors under § 1232(c)(2)(B)." ECF 435 at 2. Plaintiffs' position is: traffic stops that do not result in criminal charges; minor traffic violations or other similar infractions; untargeted encounters with immigration officers, including at immigration checkpoints; failure to update address with ICE;

5

and similar circumstances, do not constitute material changed circumstances as they do not relate to danger or flight risk. A number of age-outs listed on each report thus far produced by Defendants appear to have been re-detained on the basis of such non-material alleged circumstances. For example:

- January 5 spreadsheet (Ex. A):
  - X.C.P. █████████████████████████████████████
  - N.C.P. █████████████████████████████████

- January 30 spreadsheet (Ex. B):
  - J.O.O. █████████████████████████████
  - J.A.C.H. ███████████████

- February 20 spreadsheet (Ex. C):
  - O.J.R.C. ████████████████████████████████████████████
    █████████████████████████████████
  - L.I.T. ██████████████████████████████████████████
    █████████████████████████████

- March 20 spreadsheet (Ex. D):
  - E.J.C.M. ███████████████████████████████████
    ████████████████████████
  - A.O.A.M. ██████████████████████████████████████
    ████████████████████

The spreadsheets contain many more similar "changed circumstances," and Plaintiffs have repeatedly requested that Defendants release all age-outs re-detained on the basis of such alleged circumstances. Winger Decl. ¶¶ 20, 24, 36. Defendants finally responded to Plaintiffs' position on March 13, stating that "ICE makes an individualized assessment of each case, including what occurs during an encounter, to determine if materially changed circumstances exist." *Id.* ¶ 33.

**Second**, Plaintiffs believe that Defendants are not providing sufficient information to class counsel regarding alleged changed circumstances that purport to justify re-detention of age-outs. ECF 435 at 2. Class counsel has highlighted numerous examples of young people for whom

Defendants' description of changed circumstances lacks the necessary specificity and indicia of reliability that would allow counsel to understand whether the alleged facts are material, relate to the statutory risk factors, and actually occurred. *See* Winger Decl. ¶¶ 13-36. For example:

- January 5 spreadsheet (Ex. A):
  - Y.Z.P. ███████████████████████████
  - M.G.R.A. ████████████████████████

- January 30 spreadsheet (Ex. B):
  - D.S. ██████████████████████
  - F.C.A. ███████████████████████████
    ████████

- February 20 spreadsheet (Ex. C):
  - M.I.R.C. ███████████████████████
    ████████████████████████████
    ███████████████
  - D.A.H.M. ███████████████████████
    ████████████████

- March 20 spreadsheet (Ex. D):
  - M.T.R. ███████████████████████
    ████████████████████████████
  - J.A.B.A ██████████████████████
    ████████████████████████

As a result of cases like these, class counsel has requested several times, in writing and when conferring, that Defendants provide I-213s for all re-detained age-outs, or at the very least, for those individuals for whom Defendants have provided particularly insufficient allegations of changed circumstances. Winger Decl. ¶¶ 14, 16, 19, 28, 35. ICE has repeatedly refused to provide any additional documentation beyond the spreadsheets as unnecessary and unduly "burdensome" to the government. *Id.* ¶¶ 15, 23, 32. Rather, Defendants have suggested that "class counsel [could] contact their clients [] to learn more about their re-arrest" or search "public databases." *Id.* ¶¶ 23, 28. With respect to the information included in the spreadsheets, ICE has consistently asserted that information in the reports is "sufficient to show a changed

circumstance." *Id.* ¶¶ 15, 23. Nevertheless, on March 13, Defendants reported that "[i]n future reports, when an ICE re-arrest stems from an encounter with state or local law enforcement agency, the re-arrest report will include either the city or county and state where the re-arrest occurred or the charges filed, when information about such charges is readily available to ICE." *Id.* ¶ 32. The March 20, 2026, spreadsheet, however, produced after Defendants' statement, continues to lack sufficient specificity and indicia of reliability, as it, among other deficiencies, fails to state the source of information and the ultimate disposition of any alleged charges, or provide any corroborating documentation. *See* Ex. D.

**Third**, Plaintiffs believe Defendants' repeated, extended delays in addressing concerns regarding individual age-outs hinders class counsel's ability to verify and monitor compliance with the Court's orders. On January 15, Plaintiffs' counsel raised concerns about the alleged changed circumstances for six individuals on the Jan. 5 spreadsheet, and despite follow up, did not receive a response until January 26, at which time Defendants merely refused to provide any additional information. Winger Decl. ¶¶ 14-15. On February 6, Plaintiffs' counsel raised specific concerns about the alleged changed circumstances for eight individuals listed on the Jan. 30 spreadsheet; on February 27, Plaintiffs' counsel raised similar concerns about two individuals on the Feb. 20 spreadsheet. *Id.* ¶¶ 16, 22. Despite repeated attempts to follow-up, Plaintiffs' counsel did not receive a substantive response until March 13, at which time Defendants failed to provide any individualized explanations or answers. *Id.* ¶¶ 18, 27, 32.

As another example, Plaintiffs' counsel independently learned of an 18-year-old who aged out of ORR custody in November 2025, who was re-detained by ICE when he reported to a check-in on February 11, apparently without materially changed circumstances. *Id.* ¶ 21 (describing A.M.C.). Plaintiffs requested additional information about A.M.C. on February 18,

and again February 27; on February 27, Defendants' counsel stated that ICE would only provide information about A.M.C. via the forthcoming March 20 spreadsheet, at which time A.M.C.— who is only 18 years old—would have potentially been wrongfully detained for over five weeks. *Id.* ¶¶ 19-21, 25, 31. The March 20 spreadsheet indicates that A.M.C. has in fact likely been impermissibly re-detained without a material change in circumstances. *See* Ex. D (stating that A.M.C. ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ *see also* Winger Decl. ¶ 21 (describing reports that A.M.C. did his best to abide by his ATD requirements). In this case, as in the cases previously raised with Defendants' counsel, Defendants' failure to timely and substantively respond to individual inquiries has prevented class counsel from monitoring compliance with the Court's Order.

**Lastly**, Plaintiffs maintain that the Court's December 2025 Order does not permit Defendants to delay the release of re-detained class members for extended periods of time, and instead requires them to promptly release any age-out who has been re-arrested absent materially changed circumstances. In February, class counsel raised concerns that the four individuals listed on the February 20 spreadsheet who were eventually released by ICE remained in custody for two to four weeks before being released, and asked Defendants to explain this significant delay and to commit to releasing class members detained absent materially changed circumstances within 48 hours. Winger Decl. ¶ 26. Those four individuals were: K.A.P.O. (re-detained Jan. 30, released Feb. 19); D.R.S.C. (re-detained Jan. 27, released Feb. 13); B.J.M.L. (re-detained Jan. 26, released Feb. 18); and L.M.T.T. (re-detained Jan. 23, released Feb. 19). *See* Ex. C. Similarly, from the January 30 spreadsheet, the two re-detained age-outs whom ICE eventually released

9

were needlessly detained three weeks (R.M.T.D., re-detained Jan. 2, released Jan. 23) and one week (A.D.B., re-detained Jan. 16, released Jan. 23). *See* Ex. B. As class counsel flagged to Defendants, the March 20 spreadsheet also lists a re-detained age-out whom ICE held in custody for over two weeks before eventually releasing him (D.I.A.R., re-detained Feb. 4, released Feb. 23). *See* Ex. D; Winger Decl. ¶ 35.

The only explanation Defendants have provided for these unacceptable delays is the non-response "[u]pon further review of the [] cases, ICE determined that release was appropriate." Winger Decl. ¶ 31.

## LEGAL STANDARD

The "general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *United States v. Philip Morris USA, Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C.2011) (cleaned up); *accord Univ. of Colorado Health at Mem'l Hosp. v. Burwell,* 164 F. Supp. 3d 56, 61 (D.D.C. 2016). Courts in this circuit "have encouraged parties to file motions for clarification when they are uncertain about the scope of a ruling." *All. of Artists & Recording Cos., Inc. v. Gen. Motors Co.*, 306 F. Supp. 3d 413, 418 (D.D.C. 2016) (Jackson, J.).

Additionally, "[d]istrict courts have the authority to enforce the terms of their mandates." *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014). "That authority is grounded in 'the interest of the judicial branch in seeing that an unambiguous mandate is not blatantly disregarded by parties to a court proceeding.'" *Ramirez*, 2025 WL 3563183 at *7 (quoting *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984)). A court "should grant a motion to enforce if a prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it." *Id.* (internal quotation omitted).

10

**ARGUMENT**

I.   **The Court Should Clarify that Changed Circumstances Justifying Re-Detention Under the December 2025 Order Must be Material and Tied to the Statutory Risk Factors.**

Further explanation of what constitutes "materially changed circumstances regarding the class member's statutory risk factors under § 1232(c)(2)(B)" is warranted, given the parties' disagreements about when alleged facts meet this standard. ECF 435 at 2. As this Court held, age-outs whom Defendants detain absent changed circumstances are class members. *Id.* at 1. That is because the protections afforded to age-outs by § 1232(c)(2)(B) "remain in effect until the age-out's immigration proceedings conclude." *Ramirez*, 2025 WL 3563183, at *16. Defendants' overly expansive view of when circumstances are sufficiently material and sufficiently related to danger to self and the community and flight risk, *see* 8 U.S.C. § 1232(c)(2)(B), therefore violates this Court's orders.

This Court acknowledged that "Defendants' practice of re-arresting and detaining age-outs absent a material change in their circumstances . . . thwarts the protections Congress provided and contravenes the Permanent Injunction . . ." *Ramirez*, 2025 WL 3563183, at *17. To give effect to this Court's orders and the statute they enforce, a "material change in circumstances" must be a meaningful standard. Materiality requires actual events of "such a nature that knowledge of [them] would affect a person's decision-making;" facts that are "significant; essential." *Am. Postal Workers Union, AFL-CIO v. Postal Regul. Comm'n*, 842 F.3d 711, 720 (D.C. Cir. 2016) (quoting *Material*, Black's Law Dictionary (10th ed. 2014)).

Traffic stops that do not result in criminal charges; minor traffic violations or other similar infractions; untargeted encounters with immigration officers, including at immigration checkpoints; failure to update address with ICE; and similar circumstances, thus should not constitute materially changed circumstances as they do not relate to danger or flight risk.

Plaintiffs' proposed standard "prevent[s] arbitrary revocations and ensure[s] that detention decisions rest[] on individualized assessments of changed circumstances rather than categorical assumptions." *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1200 (W.D. Wash. 2025) (finding that ICE officer's determination that noncitizen was a flight risk due to entry of removal order was arbitrary and capricious); *accord Ramirez*, 2025 WL 3563183, at *15 n.11. Mere contact with law enforcement or immigration officials, regardless of the reason for or outcome of that interaction, does not categorically render an age-out a flight risk or danger, particularly in the current immigration enforcement climate. *See Escobar Molina v. U.S. Dep't of Homeland Sec.*, 2025 WL 3465518, at *15 (D.D.C. Dec. 2, 2025) (noting evidence of government practice of unlawful warrantless immigration arrests based only on Latino appearance, employment in low-wage jobs, and presence in certain neighborhoods). Neither do minor violations or infractions rise to the level of "significant" changes that would make an age-out newly dangerous. *See U.S. v. Rollins*, 378 F.3d 535, 537 (6th Cir. 2004) (noting that certain offenses with authorized prison terms of five days or less are "minor traffic infractions" that are excluded from a defendant's criminal history calculation); *Elliott v. City of Wheat Ridge*, 49 F.3d 1458, 1459 (10th Cir. 1995) (discussing distinction between civil infractions, such as "minor speeding violations," that impose fines, and criminal infractions that authorize imprisonment). And merely failing to update one's address with immigration authorities, particularly where there is no evidence that the government has sought to bring criminal charges on that basis, threatens to "ensnare [age-outs] engaged in apparently innocent conduct." *United States v. [Redacted]*, 806 F. Supp. 3d 17, 25 (D.D.C. 2025) (noting that the "forms associated with" laws like 8 U.S.C. § 1305(a), the address change requirement, "are often confusing and contradictory," and that the

conduct regulated by § 1305(a) and the criminal penalty at § 1306(b) "can only be regarded as an innocent act.") (citations omitted).

Yet Defendants rely on precisely such alleged facts to justify the re-detention of class members: random encounters with officials, *see, e.g.,* Ex. A at 2 (N.C.P. ███████████ ███████; Ex. B at 1 (J.O.O. "████████████████████ ████████████████; traffic violations, *see, e.g.,* Ex. A at 1-2 (X.C.P. "█████ ████████████ M.G.R.A. ████████████; Ex. B at 1 (J.J.D. ████████████████ M.M.J. ████████████ ██████ G.A.R. ████████████████ Ex. D at 1 (E.J.C.M. arrested for ████████████████ A.O.A.M. arrested for ███████ ████████████; and failure to update one's address with ICE, *see* Ex. C at 1 (O.J.R.C. arrested ████████████████ L.I.T. ████████████████████████ ████████). Such changed circumstances (even assuming they are accurately characterized by Defendants) are neither "significant" nor "essential" in terms of changing the analysis of whether an age-out poses a danger or a flight risk. *See Am. Postal Workers Union, AFL-CIO*, 842 F.3d at 720.

Defendants' unbounded understanding of what justifies re-detention of age-outs has already led to the wrongful detention of numerous class members and violation of this Court's orders. This Court should therefore clarify the limited scope of "materially changed circumstances regarding the class member's statutory risk factors under § 1232(c)(2)(B)" that can justify re-detention in line with Plaintiffs' position, *supra* at 11-12. ECF 435 at 2.

II.    **The Court Should Clarify that Defendants Must Provide Class Counsel Sufficient Information Regarding Changed Circumstances to Enable Class Counsel to Monitor Compliance with the Court's Orders.**

Defendants' current practice of providing class counsel with only a monthly spreadsheet of re-detained class members with short blurbs addressing purported changed circumstances, without any supporting records, is inadequate to establish ICE's compliance with the Court's orders. Without additional information, Plaintiffs' counsel cannot fulfill their role to monitor compliance. As a consequence, Plaintiffs ask that the Court clarify that the "information" Defendants must provide to class counsel "concerning any age-outs who have been re-arrested" since July 2025, ECF 435, must include the documents and records relied upon to find a material change in circumstances sufficient to justify re-detention, as well as the name and contact information for any immigration attorney of record.

This Court has already concluded that Defendants should not be permitted to "self-enforce" compliance with the Court's permanent injunction. *Ramirez v. U.S. ICE*, 568 F. Supp. 3d 10, 24 (D.D.C. 2021), *appeal dismissed*, No. 22-5002, 2022 WL 4280690 (D.C. Cir. Sept. 13, 2022). Rather, class counsel is also responsible for ensuring that Defendants abide by the Court's orders in this case. *Id.* at 46 (**"The Final Judgment and Injunction, at the parties' agreement, vests monitoring responsibilities with Plaintiffs' counsel."**); ECF 368 at 6-7; *see* ECF 435 at 2 (requiring "ongoing" reporting). To permit counsel to fulfill that role, this Court has ordered Defendants to provide Plaintiffs' counsel with "[c]opies of the AORWs and all SharePoint materials for each Age-Out." ECF 368 at 6 (§ VI.A); *Ramirez v. U.S. ICE*, 471 F. Supp. 3d 88, 105 (D.D.C. 2020) (explaining that the SharePoint database "serve[s] as the repository for the completed worksheets and other documentation supporting ICE's custody determinations for individual age-outs"). As a result, Defendants routinely provide class counsel with Form I-213

Record of Deportable/Inadmissible Alien,[3] ENFORCE Alien Removal Module (EARM) records,[4] any criminal records (including police reports and criminal complaints), ORR Significant Incident Reports, Orders of Release on Recognizance, and other records ICE relied on to make the required initial release determination. *See* Winger Decl. ¶ 4.

Defendants should be required to provide similar documentation regarding re-detained class members. Plaintiffs' counsel cannot confirm ICE's compliance based only on the abbreviated, conclusory and unsupported allegations ICE has so far provided in its monthly reporting. Corroboration is all the more vital in light of several courts recently finding statements by DHS officers to be "evasive and demonstrably false," particularly where detention of noncitizens is concerned. *Clarke v. U.S. Dep't of Homeland Sec.*, 2025 WL 3674471, at *4 (E.D.N.Y. Dec. 18, 2025) (noting "misstatements of fact" in ICE officer's declaration that "undermine[d] the information presented and the reliability of the records maintained by ICE"); *see Sanchez Puentes v. Garite*, 780 F. Supp. 3d 682, 701-02 (W.D. Tex. 2025) (describing "shoddy affidavits and contradictory testimony" relied on by ICE to justify noncitizen's confinement); *Kaur v. U.S. Dep't of Homeland Sec.*, 2025 WL 3706724, at *4 (E.D. Cal. Dec. 22, 2025) (declining to "credit unverified statements" in ICE declaration that noncitizen violated conditions of her release where they "contradict evidence in the record"); *see also* Winger Decl.

---

[3] A Form I-213 is typically prepared by DHS before initiating removal proceedings and during subsequent encounters with a noncitizen; it generally contains information collected during an interview with the noncitizen, along with other information collected by DHS to establish removability and justify detention. *See* Aruna Sury, *What To Do When ICE Submits an I-213 in Immigration Court*, Immigrant Legal Resource Center, 2-3 (Dec. 2023), https://tinyurl.com/3dyazawd.

[4] The EARM is "a software that is a part of DHS' Enforcement Integrated Database" which database "is a repository of information for use in law enforcement and homeland security applications." *Rosa v. Bondi*, 144 F.4th 37, 39 n.2 (1st Cir. 2025) (per curiam).

15

¶¶ 38-40 (detailing misrepresentations made by the government regarding *Garcia Ramirez* litigation in an age-out's habeas case).

The need for additional supporting details and documentation in this case is clear: for example, the only information Defendants provided about class member M.T.R. is that he ███████ █████████████████████████████████████████████████████████████" Ex. D at 1. First, Plaintiffs are left to assume the accuracy of this report. But even assuming it is accurate, it is still impossible to tell whether M.T.R. never reported to ICE as required or if M.T.R. has been otherwise compliant but arrived late for one appointment or committed another de minimis violation. As such, Plaintiffs' counsel cannot evaluate whether these facts actually support a determination that this young person now presents a flight risk. Similarly, for those class members reportedly arrested for crimes, Defendants provide no records, no information regarding the underlying conduct, the disposition of alleged charges, or even the underlying statute. *See id.* (stating J.M.T.L. arrested for ████████████████████████ and A.A.T. arrested for ████████████████████████████████. In one case, Defendants have refused to provide any information at all to justify a class member's detention. *See id.* (stating, with respect to J.A.B.A., █████████████████████████ ███████████████████████████████████████████ ███████).[5]

As discussed, traffic infractions are on their face insufficient to establish a material change in circumstance. *See supra* at 11-12. But even if circumstances arising from a stop related to a traffic infraction could justify the re-detention of a class member in some situations, the

---

[5] Notably, notwithstanding this highly secret "derogatory information," on March 25, 2026, Defendants' counsel informed class counsel that ICE has released J.A.B.A.—apparently approximately a month after he was arrested. *See* Winger Decl. ¶ 36.

16

information Defendants provide is ruefully inadequate. For example, for many class members, the only information Defendants provide is a reference to a ████████████ or a ██████████ *See supra* at 6; Exs. A-D. Even accepting these descriptions to be accurate, it is impossible to tell from the information provided whether this fact relates to either flight risk or danger. Were these young people stopped for rolling through a stop sign or a faulty brake light[6] or engaging in a reckless high-speed chase? The first circumstances are plainly not material changes in circumstance while the latter might justify detention. *See supra* at 11-13. Defendants appear to acknowledge as much when they point to "various scenarios" that might occur during a traffic stop—such as "attempting to flee"—that could demonstrate flight risk. Winger Decl. ¶ 33. Yet the spreadsheets only provide vague and inadequate descriptions.

Defendants' suggestion that Plaintiffs' counsel attempt to speak to detained class members or obtain criminal records does not mitigate these concerns. *See id.* ¶ 23. First, Defendants have explained that ICE does not provide detained class members with any information about why they have been re-detained. *Id.* ¶ 34. Second, it is frequently difficult, if not impossible, to arrange to speak to people held in immigration detention centers located across the country and with diverse and flawed procedures for remote attorney access. *See* ACLU, *No Fighting Chance: ICE's Denial of Access to Counsel in U.S. Immigration Detention*

---

[6] It is not speculative that local law enforcement would turn noncitizens over to ICE following de minimus traffic infractions and plainly pretextual traffic stops. *See, e.g.*, Levi Ismail, *'Guilty until proven innocent?' Video from Nashville THP/ICE stops revives questions of racial profiling,* NewsChannel5 Nashville (Feb. 19, 2026, 9:49 PM), https://tinyurl.com/367zhz7h (describing coordinated effort between Tennessee Highway Patrol and ICE, where THP stopped hundreds of Nashville residents for "driving with high beams on, a broken headlight or even a bent license plate" and turned them over to ICE); Daniella Silva, Priya Sridhar and Dan Gallo, *Georgia college student detained by ICE after being wrongly pulled over is granted bond*, NBC News (May 21, 2025, 5:10 PM), https://tinyurl.com/dus8dj4p (describing 19-year-old college student "detained after she was pulled over by [police] and accused of making an improper turn and driving without a proper license").

17

*Centers* (June 9, 2022), https://tinyurl.com/3m4c79yb (describing inadequate telephone access and lack of access to legal video calls). Third, privacy laws and varying rules for accessing criminal and traffic records online (where online access is available at all), pose an insurmountable burden to Plaintiffs' counsel's ability to confirm the contents of ICE's spreadsheets. By contrast, Defendants have access to all this information—after all, they rely on it to justify detaining these young people—and should be required to provide it to class counsel.

Therefore, Plaintiffs request that the Court clarify that the "information" Defendants must provide regarding re-detained age-outs, ECF 435 at 2, includes: the Form I-213, Record of Deportable/Inadmissible Alien, generated at the time the age-out was re-arrested; the age-out's EARM record; any criminal records (including police reports, criminal complaints, and certificates of disposition) relied upon to justify detention; any records regarding civil infractions or traffic violations relied upon to justify detention; the age-out's Order of Release on Recognizance, Order of Supervision, or any other document memorializing conditions of release and alleged failures to comply where Defendants rely on such failure to justify detention; and any other records relied upon to establish materially changed circumstances to justify the age-out's re-detention.

Such corroborating documentation, provided contemporaneously with the monthly spreadsheet, is particularly crucial given that thus far Defendants' responses to class counsel's inquiries about specific individuals have been significantly delayed and lacking in any details. *See supra* at 6-9.

Finally, Plaintiffs request that the information include the name and contact information for any immigration attorney of record for detained class members. Once again, this is information that Defendants have and can easily share. And it will permit class counsel to better

ensure compliance and advocate for class members, especially as ICE does not provide class members notice of the Court's December 12, 2025 Order. *See* Winger Decl. ¶ 34.

**III.    The Court Should Clarify that Defendants Must Promptly Release Class Members Who Are Improperly Detained, and No Later than 48 Hours After Their Re-arrest.**

As this Court held, "[c]lass members are those age-outs for whom ICE does not follow proper procedures, and they are harmed when they are detained." *Ramirez*, 568 F. Supp. 3d at 30. As such, this Court should clarify that when Defendants re-detain an age-out absent materially changed circumstances, they must promptly release such individual from DHS custody to avoid unnecessary harms.

The Court's orders make clear that for class members, "deprivations of physical liberty are the sort of actual and imminent injuries that constitute irreparable harm," and recognize that "needless prolonged detention" causes "major hardship." *Id.* at 28-29 (internal citations omitted). Uncontested expert witness testimony during trial established that this harm "is heightened and particularly acute when the individual being deprived of liberty is a young adult." *Id.* at 29 (noting expert testimony that "youth from ages 15 to 24 are still undergoing critical brain development"). For class members whom Defendants themselves recognize are unlawfully detained in violation of this Court's orders, delays of weeks or even days before they are released are simply unacceptable.

Since January 2026, Defendants have kept at least seven class members in custody for extended periods of time—ranging from one to four weeks—before releasing them. *See supra* at 4-5, 9-10. When asked for an explanation of these delays, Defendants provided no reason or justification whatsoever and refused to commit to release class members promptly. Winger Decl. ¶ 31. But as this Court previously noted, "it strains credulity to imagine that Congress intended to permit DHS to make" determinations about detention for age-outs "whenever it pleases."

19

*Ramirez v. U.S. ICE*, 310 F. Supp. 3d 7, 24 (D.D.C. 2018). A determination that comes "weeks" after Defendants re-detain an age-out "would undermine Congress's provision of special consideration for this class of young immigrants." *Id.*

Courts across the country have routinely ordered ICE to immediately release noncitizens from immigration custody as a remedy for unlawful detention. *See, e.g., Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1119 (E.D. Cal. 2025) (ordering release where there was no showing of danger or flight risk); *Quintero Campos v. Deleon*, 2025 WL 3514120, at *2 (S.D.N.Y. Dec. 8, 2025) (collecting cases ordering immediate release); *see also, e.g., Zumba v. Bondi*, 2025 WL 2753496, at *11 (D.N.J. Sept. 26, 2025) (ordering release within 24 hours). Moreover, unjustified detention of over 48 hours is constitutionally suspect in other contexts. *See Wasserman v. Rodacker*, 557 F.3d 635, 641 (D.C. Cir. 2009) (recognizing forty-eight hours as presumptively reasonably period of time for probable cause determination where someone is arrested and detained without a warrant). Here, where Defendants are obliged under this Court's December 2025 Order to only re-detain those age-outs who present materially changed circumstances, there is no possible justification for the extended delays before releasing class members who do not present such circumstances. Plaintiffs therefore request that this Court clarify that Defendants must release any re-detained class members within 48 hours of their re-arrest.

## IV. The Court Should Order the Immediate Release of Re-detained Class Members for Whom ICE Has Not Established Materially Changed Circumstances in Response to Class Counsel's Requests.

As explained above, Defendants' incomplete reporting does not establish materially changed circumstances that relate to the statutory risk factors for the age-outs who have been re-detained since July 2025, in violation of this Court's orders. *See* ECF 435. Class counsel has identified a number of individuals for whom Defendants' reporting is clearly deficient. Despite

repeated requests for additional information and specific justification from Plaintiffs, ICE has not made a sufficient—in some cases, any—showing that these age-outs are not class members and thus are currently wrongfully detained. As such, this Court should enforce its prior order and order Defendants to immediately release the class members for whom Defendants' explanation of alleged circumstances is plainly deficient. *See Ramirez*, 2025 WL 3563183 at *7, 19. These class members include: D.A.C.G., X.C.P., Y.Z.P., M.G.R.A., N.C.P. (listed on Ex. A); J.J.D., D.S., J.O.O., M.M.J., H.M.C., G.A.R., H.M.A. (listed on Ex. B[7]); O.J.R.C., L.I.T., M.I.R.C., D.A.H.M. (listed on Ex. C), ; E.J.C.M., W.V.M., J.M.T.L., A.A.T., E.C.C., M.J.P., A.O.A.M., M.T.R., A.M.C., and D.J.P. (listed on Ex. D); *see also* Winger Decl. ¶¶ 14, 16, 22, 35.

## CONCLUSION

For all the foregoing reasons, and as fully set forth in the attached proposed order, Plaintiffs ask the Court to grant the instant motion and clarify and enforce its prior orders, so as to ensure that Defendants comply with their statutory obligations and that additional class members are not harmed by their lack of compliance.

Dated: March 25, 2026

Respectfully submitted,

s/ *Suchita Mathur*

Mark Fleming*
National Immigrant Justice Center
111 W. Jackson Blvd., Suite 800
Chicago, IL 60604
T: 312-660-1370

Suchita Mathur (DC Bar No. 90013156)
Emma Winger (DC Bar No. 90010721)
Rebecca Cassler (DC Bar No. 90017398)
Michelle Lapointe (DC Bar No. 90032063)
American Immigration Council

---

[7] A number of class members whom Defendants wrongfully redetained no longer appear to be in ICE custody according to the ICE detainee locator, https://locator.ice.gov/odls/#/search, apparently because they have been removed or taken "incentivized voluntary departure." *See, e.g.,* Ex. B (listing J.A.C.H. and F.C.A. as having ▮▮▮▮▮▮▮▮).

21

mfleming@immigrantjustice.org

Katherine Melloy Goettel*
University of Iowa College of Law
Clinical Law Programs
380 Boyd Law Building
Iowa City, IA 52242-1113
Tel: (319) 335-9023
kate-goettel@uiowa.edu


PMB2026
2001 L Street, NW, Suite 500
Washington, DC 20036
Tel: (202) 507-7537
smathur@immcouncil.org
ewinger@immcouncil.org
rcassler@immcouncil.org
mlapointe@immcouncil.org


*Admitted Pro Hac Vice

22