**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WILMER GARCIA RAMIREZ, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.:    18-508 (RC) |
| | : | |
| v. | : | Re Document Nos.:  442, 443, 448 |
| | : | 450, 451, 453, 454 |
| | : | |
| U.S. IMMIGRATION AND | : | |
| CUSTOMS ENFORCEMENT, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTIONS TO CLARIFY AND ENFORCE**

## I.  INTRODUCTION

In 2021, this Court issued a permanent injunction requiring Defendants—namely, U.S.

Immigration and Customs Enforcement ("ICE"), the Acting Director of ICE, the Department of

Homeland Security ("DHS"), and the Secretary of Homeland Security—to comply with their

statutory obligations under 8 U.S.C. § 1232(c)(2)(B). Section 1232(c)(2)(B) requires ICE to

"consider plac[ing]" unaccompanied alien children transferred to ICE custody "in the least

restrictive setting available after taking into account the alien's danger to self, danger to the

community, and risk of flight" and to make them "eligible to participate in alternative to

detention programs." A four-week bench trial had revealed that ICE had violated the

Administrative Procedure Act ("APA") by failing to follow procedures made necessary by

Section 1232(c)(2)(B), and for refusing to take actions it was required to take under that statute.

Four years later, in December 2025, this Court found that Defendants had instituted a

policy and practice that violated Section 1232(c)(2)(B) and, in turn, the permanent injunction.

Among other things, the Court ordered Defendants to cease rearresting and detaining former

unaccompanied alien children absent materially changed circumstances demonstrating that they posed a flight risk or danger, to release individuals detained under that practice, and to provide Plaintiffs with ongoing information regarding such individuals ("December 2025 Order" or "Order").

In March 2026, Plaintiffs sought clarification and enforcement of that Order, contending that Defendants had misconstrued the Order's requirements, misapplied the Order in certain factual scenarios, and had improperly delayed the release of age-outs who did not pose a risk of flight or danger. For the reasons explained below, the Court grants in part and denies in part Plaintiffs' Motion to Clarify and Enforce.

## II.  BACKGROUND

The Court presumes the parties' familiarity with this Court's prior opinions, the relevant legal framework, the underlying facts, and the procedural history of this case. With that in mind, only a brief summary of the dispute at issue is warranted.

### A.  Legal Framework

When noncitizen minors arrive in the United States without a parent or guardian, they are classified as "unaccompanied alien child[ren]" and placed in the custody of the Department of Health and Human Services ("HHS"), Office of Refugee Resettlement ("ORR"). 6 U.S.C. § 279(a)–(b)(1)(A), (g)(2); 8 U.S.C. § 1232(b)(3). If unaccompanied alien children remain in custody on their eighteenth birthday, they "age out" of ORR custody and are transferred to the custody of the Department of Homeland Security ("DHS"), specifically, Immigration and Customs Enforcement ("ICE"). The parties refer to these individuals as "age-outs." Section 1232(c)(2)(B) affords age-outs certain protections upon their transfer to ICE custody. Section 1232(c)(2)(B) requires ICE to "consider plac[ing]" an age-out "in the least restrictive setting

available after taking into account the [age-out]'s danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(B). The statute also requires that ICE make age-outs "eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision." *Id.* These protections continue to apply until the age-out's immigration proceedings conclude. Mem. Op. Granting Mot. Enforce ("Mot. Enforce Mem. Op.") at 33, ECF No. 436. Therefore, once an age-out is released, ICE cannot rearrest and detain age-outs without conducting an individualized assessment of their changed circumstances; such circumstances must indicate that an age-out's rearrest and detention is necessary due to a risk of flight or danger to themselves or the community *Id.* at 32–34.

### B.  Final Judgment & Permanent Injunction Order

In 2021, the Court entered final judgment against Defendants and issued a permanent injunction, enjoining Defendants from making age-out custody determinations which contravened Section 1232(c)(2)(B). *Id.* at 7–8. A four-week bench trial had revealed "disturbing and pervasive lapses" in ICE's statutory compliance and found that tailored injunctive relief was both within the Court's authority and necessary to ensure effective and lasting compliance, particularly in light of ICE's demonstrated "pattern of agency recalcitrance and resistance" to fulfilling its legal duties. *Id.* In addition to enjoining Defendants from violating Section 1232(c)(2)(B), the Court ordered Defendants to undertake specific measures designed to prevent further violations and ensure compliance. *See* Final J. and Perm. Inj. Order at 2–8, ECF No. 368. One such measure was the requirement that Defendants provide Plaintiffs' counsel with the documentation underlying Defendants' custody determinations. *Id.* at 7. The Court authorized Plaintiffs' counsel to receive and review such information and other information reasonably related to Defendants' compliance. *Id.* The Court retained jurisdiction for five years to enforce

the injunction and resolve disputes regarding compliance. *Id.* at 7–8. Defendants appealed the judgment and injunction to the D.C. Circuit on January 7, 2022, but voluntarily dismissed the appeal on September 13, 2022. Mot. Enforce Mem. Op. at 8.

### C.  December 2025 Order

In October 2025, Plaintiffs moved to enforce the final judgment and permanent injunction. *Id.* at 11–12. Among other things, Plaintiffs challenged Defendants' practice of rearresting and detaining age-outs shortly after Defendants released them, absent any material change in the age-outs individual circumstances indicating that they posed a flight risk or danger to themselves or the community. *Id.* Plaintiffs argued that this rearrest conduct violated Section 1232(c)(2)(B). *Id.* The Court agreed, finding that such conduct served only to circumvent the Court's scrutiny and thwart the protections Congress intended age-outs to receive under the statute. *Id.* at 32. The Court explained that Section 1232(c)(2)(B) does not limit ICE's obligations to consider placing an age-out in a least restrictive setting the moment the individual turns eighteen. *Id.* at 30. Thus, Defendants could not comply with Section 1232(c)(2)(B) one day—consider an age-out for placement in the least restrictive setting—only to claw back that consideration the next day, despite no material change in the age-out's circumstances. *Id.* at 32.

As relevant here, the Court ordered Defendants to release any class member rearrested and detained "absent materially changed circumstances regarding the [age-out's] statutory risk factors under § 1232(c)(2)(B)" and cease such conduct. Order Granting Mot. Enforce ("Order") at 2, ECF No. 435. It also ordered Defendants to provide Plaintiffs with "information on an ongoing basis concerning any age-outs who ha[d] been re-arrested and detained since July 2025." *Id.*

4

**D.  Plaintiffs' Motion to Clarify & Enforce**

Since the Court issued the December 2025 Order, Defendants have provided Plaintiffs with monthly spreadsheets identifying age-outs whom Defendants have rearrested and detained since July 2025. *See generally* Pls.' Exs. A–D, I–J, ECF Nos. 443-3 to -6, 451-1, 454-1. The spreadsheets include information such as the age-out's name, rearrest date, release date (if applicable, and a brief description of the purported "changed circumstances" Defendants contend justified the age-out's rearrest and detention.

In March 2026, Plaintiffs moved to clarify and enforce the December 2025 Order.[1] Pls.' Mot. Clarify and Enforce ("Pls.' Mot."), ECF No. 442. Plaintiffs seek clarification on the ground that Defendants have misconstrued, and therefore failed to comply with, the Order in several respects. Defendants oppose the motion, arguing that clarification is unwarranted because the Order is clear and Plaintiffs' proposed remedies are burdensome and operationally infeasible. Defs' Opp'n to Pls.' Mot. Clarify and Enforce ("Defs.' Opp'n") at 5–7, ECF No. 446. In April and May 2026, Plaintiffs amended their motion to include additional age-outs identified in Defendants' most recent monthly spreadsheets listing rearrested and detained age-outs. *See* Pls.' Am. Mot. Clarify and Enforce at 2, ECF No. 450; Pls.' 2d Am. Mot. Clarify and Enforce at 2, ECF No. 453. Defendants did not oppose Plaintiffs' amendments.

1.  Rearrest and Detention Based on Immaterial Changed Circumstances

Plaintiffs first argue that Defendants have misconstrued the Order's requirements by rearresting and detaining age-outs based on purported changed circumstances that do not meaningfully bear on the risk factors under Section 1232(c)(2)(B). Specifically, Plaintiffs

---

[1] Pursuant to the protective order governing this case, ECF No. 63, Plaintiffs seek leave to file under seal exhibits in support of their Motion to Clarify and Enforce, *see* Pls.' Mots. for Leave to File Docs. Under Seal, ECF Nos. 443, 448, 451, 454. The Court grants such leave.

identify three categories of circumstances Defendants have relied upon to justify rearrest and redetention that Plaintiffs contend are facially immaterial to whether an age-out poses a risk of flight or danger to themselves or the community: (1) incidental encounters with law enforcement or immigration officials; (2) minor traffic violations and similar infractions; and (3) failures to update an address with ICE. Plaintiffs provide the following examples:

- Incidental encounters with law enforcement or immigration officials.

    o **N.C.P.** ("arrested by local LEA for a traffic stop on 10/11/2025"), Pls.' Ex. A;

    o **J.O.O.** ("[a]rrested by USBP at a BP checkpoint"), Pls.' Ex. B;

    o **H.M.C.** ("[a]rrested by USBP in Yuma, AZ"), *id.*;

- Minor traffic violations and similar infractions:

    o **X.C.P.** ("arrested by local PD for a traffic violation"), Pls.' Ex. A;

    o **M.G.R.A.** ("cited for Driving w/o Insurance"), *id.*;

    o **J.J.D.** ("arrested by local LEA . . . for traffic violation"), Pls.' Ex. B;

    o **M.M.J.** ("arrested by local LEA . . . for traffic violation"), *id.*;

    o **G.A.R.** ("arrested by local LEA . . . for traffic violation"), *id.*;

    o **D.A.H.M.** ("arrested by Madison County Sheriff's Office for Driving While Unlicensed on 1/17/2026"), Pls.' Ex. C;

    o **E.J.C.M.** (arrested for "Speeding and Driving with no valid license"), Pls.' Ex. D;

    o **A.O.A.M.** (arrested for "Operate a motor vehicle w/o a valid license"), *id.*;

    o **J.D.C.H.** ("arrested by local LEA (Polk County, GA) on 02/19/2026 for Driving with no valid driving license issued"), Pls.' Ex. I;

    o **Y.G.G.L.** ("arrested by local LEA (White County, GA) . . . for driving with no valid license issued"), Pls.' Ex. J.

- Failures to update an address with ICE.

    o **O.J.R.C.** (arrested "during traffic stop . . . . never updated his address with ICE"), Pls.' Ex. C;

6

o **L.I.T.** ("encountered by local LEA . . . during traffic stop . . . . turned over to ICE . . . never updated his address with ICE"), *id.*.

2. <u>Refusal to Provide Further Supporting Documentation</u>

Plaintiffs also identify several age-outs for whom they requested additional documentary evidence supporting Defendants' rearrest and detention determinations. According to Plaintiffs, Defendants have refused to provide the requested documentation and have produced only monthly spreadsheets containing limited information, including brief descriptions of the purported changed circumstances. Plaintiffs therefore seek release of these age-outs based on Defendants' failure to produce documentation substantiating the asserted basis for detention. The identified age-outs and the corresponding circumstances are as follows:

- **H.M.A.** (arrested for "fail[ing] to report as scheduled on 10/14/2024"), Pls.' Ex. A;
- **D.A.C.G.** (arrested for reporting violations), *id.*;
- **Y.Z.P.** ("arrested for Collision involving damage to vehicle (TX)"), *id.*;
- **D.S.** (arrested for "attempt[ing] to sexually assault a female on 12/06/25"), Pls.' Ex. B;
- **F.C.A.** (arrested for "never report[ing] after released on OREC in 2020"), *id.*;
- **M.I.R.C.** ("encountered by local LEA (Florida Highway Patrol) during traffic stop on 1/21/2026. . . never reported to ICE (he was initially directed to report on 01/16/2025 upon release"), Pls.' Ex. C;
- **M.T.R.** ("arrested by local LEA (Lake County, FL) on 02/11/2026. Subject failed to comply with the reporting requirements as identified upon release on OREC"), Pls.' Ex. D;
- **J.A.B.A** ("arrested by CBP/ICE Targeting Unit on 2/25/2026 in Cheektowaga, NY. Subject has a derogatory information, disclosure not authorized"), *id.*;
- **J.M.T.L.** (arrested for "Tamper w/ Government Record"), *id.*;
- **A.A.T**. (arrested for "Resist/Interfere with Wildlife Officer and Conservation Violation"), *id.*;

- **W.V.M.** (arrested after vehicle refused to stop and brief pursuit), *id.*;

- **E.C.C.** ("arrested by local LEA (Orange County, FL) on 11/11/2025 for Resisting Peace Officer"), *id.*;

- **M.J.P.** (arrested for failure to comply with reporting requirements), *id.*;

- **A.M.C.** (arrested for reporting violations), *id.*;

- **D.J.P.** (arrested for failure to comply with reporting requirements), *id.*;

- **D.V.L.** ("arrested by local LEA (Houston PD, TX) on 03/20/2026 for Evading Arrest"), Pls.' Ex. I;

- **G.D.V.L** ("Since 11/16/22, Subject failed to comply with ICE reporting requirements as identified to the subject upon release on OREC"), *id.*;

- **J.G.P.** ("arrested by local LEA (Caldwell County, NC) on 03/10/2026 for Consume Alcohol Underage"), *id.*;

- **E.P.R.** ("arrested by local LEA (Brentwood PD, TN) on 03/08/2026 for Driving with no valid license issued and Falsifying Auto Title"), *id.*;

- **C.C.C** ("arrested by local LEA (Largo PD, FL) on 12/26/2025 for Driving with no valid license issued and Fleeing & Eluding a LEO"), *id.*;

- **S.M.C.** (arrested because "[s]ubject violated ICE reporting requirements when he stopped reporting in 2023"), *id.*;

- **M.M.B.** ("arrested by local LEA (Irving PD, TX) on 02/17/2026 for Resisting Arrest and Fleeing from a LEO"), *id.*;

- **D.A.M.Y.** (arrested for "attempting to pick up an illegal alien (alien smuggling)" and "Subject admitted that he was going to be paid"), *id.*;

- **G.D.J.D.V.** ("arrested by local LEA (Jefferson County, LA) on 03/02/2026 for Possession of a Fraudulent Insurance Identification Information"), *id.*;

- **L.F.D.R.** (arrested because "[s]ubject reported once after release on OREC but stopped since 2024" and "violated ICE reporting requirements"), *id.;*

- **C.R.R.G.** (arrested because "subject was identified as a MS-13 gang member" and violated reporting requirements), Pls.' Ex. J.

### 3.  Delays in Releasing Age-Outs

Finally, Plaintiffs assert that Defendants have delayed the release of age-outs who

Defendants themselves determined were releasable. Plaintiffs provide the following examples:

- **S.S.** (released after 38 days in detention), Pls.' Ex. J;
- **B.J.M.L.** (released after 23 days in detention), Pls.' Ex. C;
- **L.M.T.T.** (released after 27 days in detention), *id.*;
- **R.M.T.D**. (released after 21 days in detention), *id.*;
- **K.A.P.O**. (released after 20 days in detention), *id.*;
- **D.I.A.R**. (released after 19 days in detention), Pls.' Ex. D;
- **D.R.S.C.** (released after 17 days in detention), Pls.' Ex. C;
- **A.D.B** (released after 7 days in detention), *id.*

\* \* \*

The Motion is now fully briefed and ready for this Court's consideration.

## III.  LEGAL STANDARD

### A.  Motion to Clarify

Generally, "the purpose of a motion for clarification is to explain or clarify something

ambiguous or vague, not to alter or amend." *United States v. Philip Morris USA, Inc.*, 793 F.

Supp. 2d 164, 168 (D.D.C. 2011) (citation modified). Although a motion for clarification may

not open the door to "re-litigat[ing] a matter that the court has considered and decided," *Sai v.

Transp. Sec. Admin.*, No. 14-cv-0403, 2015 WL 13889866, at \*3 (D.D.C. Aug. 19, 2015), courts

in this circuit have encouraged parties to request clarification when they are uncertain about the

scope of a ruling or its application "in a concrete context or particular factual situation." *Philip

Morris USA Inc.*, 793 F. Supp. 2d at 168–69; *see also, e.g.*, *United States v. Volvo Powertrain

Corp.*, 758 F.3d 330, 344 (D.C. Cir. 2014); *Barnes v. District of Columbia*, 289 F.R.D. 1, 12-13

(D.D.C. 2012).

## B. Motion to Enforce

"District courts have the authority to enforce the terms of their mandates." *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014). That authority is grounded in "the interest of the judicial branch in seeing that an unambiguous mandate is not blatantly disregarded by parties to a court proceeding." *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984). A court "should grant a motion to enforce if a 'prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it.'" *Sierra Club v. McCarthy*, 61 F. Supp. 3d 35, 39 (D.D.C. 2014) (quoting *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C 2004)). In determining compliance with an order, the Court is guided not only by the text of that order but also by its related opinions. *See City of Cleveland v. Fed. Power Comm'n*, 561 F.2d 344, 346–47 (D.C. Cir. 1977). That said, "[s]uccess on a motion to enforce a judgment gets a plaintiff only 'the relief to which [the plaintiff] is entitled under [its] original action and the judgment entered therein.'" *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 29 (D.C. Cir. 2005) (second and third alterations in original) (quoting *Watkins v. Washington*, 511 F.2d 404, 406 (D.C. Cir. 1975)).

## IV. ANALYSIS

In December 2025, the Court found that Defendants' practice of "re-arrest[ing] and detain[ing] . . . age-outs absent materially changed circumstances regarding the statutory risk factors under § 1232(c)(2)(B)" violated the permanent injunction the Court issued against Defendants in 2021. Order at 2. As a result, the Court ordered Defendants to release such age-outs. *Id.* The Court further ordered Defendants to "produce information on an ongoing basis concerning any age-outs who ha[d] been re-arrested and detained since July 2025." *Id.* Plaintiffs

10

now move to clarify and enforce that order, contending that Defendants have misinterpreted and misapplied its requirements. Plaintiffs raise four principal issues.

First, they argue that Defendants have rearrested and detained age-outs based on minor violations or infractions and random encounters with law enforcement, circumstances which, Plaintiffs assert, are immaterial to whether an age-out poses a risk of flight or danger to themselves or the community under Section 1232(c)(2)(B). Pls.' Mot. at 11–13. Plaintiffs therefore seek clarification that such circumstances cannot constitute "materially changed circumstances" as that term is understood in the December 2025 Order. *Id.* Second, Plaintiffs seek clarification that Defendants must provide Plaintiffs with the documents Defendants relied upon to justify the rearrest and detention of age-outs. *Id.* at 14–18. Third, Plaintiffs contend that Defendants have unreasonably delayed the release of rearrested age-outs and request clarification that releases must occur promptly, proposing a 48-hour deadline following rearrest. *Id.* at 19–20. Finally, Plaintiffs seek the release of rearrested and detained age-outs for whom Defendants have failed to establish materially changed circumstances in response to class counsel's informational requests. *Id.* at 20–21.

Defendants, on the other hand, do not meaningfully oppose the underlying factual allegations. *See generally* Defs.' Opp'n at 1–2, 5–11. They offer no argumentation or evidence rebutting Plaintiffs' contention that Defendants have rearrested and detained age-outs based on circumstances immaterial under Section 1232(c)(2)(B), nor do they meaningfully contest Plaintiffs' allegations regarding delays in release. Instead, Defendants principally argue that clarification is unnecessary, Plaintiffs' proposed remedies are operationally burdensome or infeasible, and that this Court lacks authority to grant certain relief.

11

The Court concludes that clarification is necessary to ensure Defendants' compliance with Section 1232(c)(2)(B), the Permanent Injunction, and this Court's prior orders. And having determined that such clarification and enforcement are warranted and within the Court's authority, the Court finds Defendants' objections largely unpersuasive. The Court nevertheless takes into account Defendants' asserted operational concerns and tailors certain timelines and disclosure requirements proposed by Plaintiffs in light of these concerns. Accordingly, Plaintiffs' Motion to Clarify and Enforce shall be granted in part and denied in part.

### A.  Clarifying the Meaning of "Materially Changed Circumstances"

The December 2025 Order directs Defendants to "release any individual class member who has been rearrested and detained, absent materially changed circumstances regarding the class member's statutory risk factors under § 1232(c)(2)(B)." Order at 2. Plaintiffs contend that clarification of that order is necessary to ensure that class members receive the statutory protections afforded by the statute. Specifically, Plaintiffs argue that Defendants have interpreted the Order's prohibition on rearresting and detaining age-outs absent "materially changed circumstances" too broadly to encompass circumstances that are not, in fact, material. Pls.' Mot. at 5, 11–13. Plaintiffs point to a pattern of rearrests and detentions based on circumstances that, on their face, do not appear meaningfully related to an age-out's risk of flight or danger to themselves or the community, including: (1) incidental encounters with law enforcement or immigration officials; (2) minor traffic violations and similar infractions; and (3) failures to update an address with ICE. *See supra* pp. 6–7; *see also* Pls.' Mot. at 13.

When this Court ordered that Defendants cease rearresting and detaining age-outs absent "materially changed circumstances," the Court did not create a novel standard from whole cloth. Indeed, the Court explained as much in its prior memorandum opinion. *See* Mot. Enforce Mem.

12

Op. at 31 & n.11. Rather, the Court applied a well-established standard in the immigration detention context: once the government has determined that a noncitizen may be released, redetention requires an individualized determination that circumstances have materially changed such that the individual now presents a flight risk or danger. *See Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 995 (N.D. Cal. 2025) ("DHS for decades limited the re-detention of noncitizens released[,] . . . revoking a noncitizen's bond or parole . . . only if it determined that the noncitizen's individual circumstances had materially changed."); *see also Perez v. Santacruz, Jr.*, No. 2:26-CV-01749-DMG-AYP, 2026 WL 980492, at *3 (C.D. Cal. Apr. 9, 2026) (same). DHS's own regulations employ a similar concept. *See* 8 C.F.R. § 1003.19(e) (a noncitizen's requests for a custody redetermination hearing "shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination."). Applying that established framework to the Section 1232(c)(2)(B) context, the relevant inquiry is whether an age-out's circumstances have materially changed such that the age-out now presents a danger to themselves, a danger to the community, or a risk of flight. *See* 8 U.S.C. § 1232(c)(2)(B). As explained in the memorandum opinion accompanying the December 2025 Order, "[t]his standard prevents arbitrary revocations and ensures that detention decisions rest on individualized assessments of changed circumstances rather than categorical assumptions." Mot. Enforce Mem. Op. at 31 n.11 (quoting *Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1200 (W.D. Wash. 2025)).

With this in mind, the Court addresses Plaintiffs' assertions that the changed circumstances Defendants have relied on to rearrest and detain certain age-outs are immaterial to whether an age-out poses a risk of flight, danger to community, or a danger to themselves, as required under Section 1232(c)(2)(B). To reiterate, these circumstances include: (1) incidental encounters with law enforcement or immigration officials; (2) minor traffic violations and

13

similar infractions; and (3) failures to update an address with ICE. Plaintiffs identify 15 age-outs who Defendants have rearrested and detained under such circumstances. *See supra* pp. 6–7.

While the Court agrees with Plaintiffs that such circumstances, on their face, do not appear to bear on an age-out's risk of flight or danger, the Court is not in a position to say that such circumstances are never material, such that any of these changed circumstance are *per se* immaterial. *See Bostock*, 808 F. Supp. 3d at 1200 (explaining that, under the materially-changed-circumstances standard, revocations are to rest on "individualized assessments," not "categorical assumptions"). Defendants have offered no argument, much less any evidence, suggesting that the specific circumstances of the 15 age-outs identified by Plaintiffs had any meaningful impact on their risk of flight or danger to themselves or the community.[2] *See generally* Defs.' Opp'n; *see also* Pls.' Reply at 11. That omission is significant. "[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded."[3] *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014).

Even without this concession, the monthly spreadsheets indicate that Defendants are, at least in some instances, treating certain conduct as categorically material, rather than undertaking the individualized assessment that the statute and the Court's Order require for each age-out. *See* Mot. Enforce Mem. Op. at 22 ("Section 1232(c)(2)(B) calls for an individualized assessment of the proper placement for each former unaccompanied minor in light of DHS's assessment of his or her danger to self, danger to the community, and risk of flight." (citation modified)). Rather than basing their decision on the age-out's risk factors under Section 1232(c)(2)(B), Defendants

---

[2] And for at least one other age-out, the purported circumstances for their detention are contested. *See, e.g.*, Pls.' Ex. H, A.M.C. Decl. ¶ 3–14, ECF No. 448-1.

[3] Such a concession "acts as waiver," such that a "party cannot raise [a] conceded argument on appeal." *Geller v. Randi*, 40 F.3d 1300, 1304 (D.C. Cir.1994).

appear to have redetained age-outs for no reason other than the fact that local law enforcement encountered them by chance, they committed a minor traffic violation or other similar infraction, or they did not update their address with ICE. *See supra* pp. 6–7 (listing age-outs who were arrested and detained for such reasons). And Defendants have not explained how these purported circumstances relate to the age-out's individualized risk of flight or danger to themselves or community. In other words, Defendants have not "articulate[d] a satisfactory explanation for its action[s] including a rational connection between the facts found and the choice[s] made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41 (1983) (explaining that such an agency action is arbitrary and capricious and may be set aside). Nor will the Court attempt to provide such an explanation. *Id.* at 43 ("The reviewing court should not attempt itself to make up for such deficiencies: [courts] may not supply a reasoned basis for the agency's action that the agency itself has not given.").

Although Defendants do not meaningfully dispute that certain age-outs were rearrested and detained absent materially changed circumstances, they do argue that clarification of the Court's December 2025 Order is unnecessary because Plaintiffs do not contend that the Order is vague or ambiguous. However, courts routinely "construe the scope of [their] order[s] by applying [them] in a concrete context or particular factual situations." *United States v. Philip Morris USA Inc.*, 793 F. Supp. 2d 164, 168–69 (D.D.C. 2011) (citation modified) (collecting cases). "By clarifying the scope of a previously issued . . . injunction, a court 'adds certainty to an implicated party's effort to comply with the order and provides fair warning as to what future conduct may be found contemptuous.'" *Nat'l Treasury Emps. Union v. Vought*, 816 F. Supp. 3d 1, 6 (D.D.C. 2025) (citation modified) (quoting *N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984)). And certainly, clarification is warranted where, as here,

Defendants appear to be applying the Court's Order in a way the Court did not intend. Therefore, on the present record, the Court finds that Defendants have rearrested and detained age-outs for circumstances which do not appear material—that is, they lack a "rational connection" to an age-out's risk of flight or danger to themselves or the community—in contravention of Section 1232(c)(2)(B). *See State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43.

### B.  Clarifying What "Information" Defendants Must Provide to Plaintiffs

The December 2025 Order also directs Defendants to "produce information on an ongoing basis concerning any age-outs who have been rearrested and detained since July 2025." Order at 2. Plaintiffs now seek clarification that the "information" Defendants must provide includes the documents and records upon which Defendants relied in determining that a material change in circumstances justified an age-out's rearrest and detention, as well as the name and contact information of any attorney of record. Pls.' Mot. at 14. Defendants, by contrast, characterize Plaintiffs' request as one requiring the production of "a tome of documents," imposing a "sizeable burden" that "may not even explain materially changed circumstance[s] as they wish." Defs.' Opp'n at 6–7.

The Court is unpersuaded by Defendants' objections. Defendants read the Court's Order narrowly and divorced from the broader context in which the reporting requirements arose. When the Court entered the Final Judgment and Permanent Injunction, "[b]oth parties agree[d] that Plaintiffs w[ould], in effect, serve in the place of an independent monitor to enforce compliance with the final order." Final Inj. Mem. Op. at 47. Defendants likewise agreed that the Final Judgment and Permanent Injunction would "vest[] monitoring responsibilities with Plaintiffs' counsel." *Id.* at 48. Indeed, Defendants previously opposed the appointment of an independent monitor on the ground that Plaintiffs' counsel could adequately perform that

16

function. *Id.* at 49. "To this end, Defendants . . . agreed to provide Plaintiffs with monthly reports from ICE documenting its compliance with the statute." *Id.* That agreement was enshrined into the Final Judgment and Permanent Injunction, which authorized Plaintiffs' counsel "to receive and review the information provided by ICE" and "other information reasonably related to ICE's compliance with this Order as Plaintiffs' counsel may from time-to-time request." Final J. & Perm. Inj. Order at 7.

The December 2025 Order must be understood against that backdrop. In that Order, the Court concluded that Defendants had violated the Final Judgment and Permanent Injunction by rearresting and detaining age-outs absent a material change in circumstances concerning the risk factors in Section 1232(c)(2)(B). Order at 2. Consistent with Plaintiffs' established monitoring role, the Court required Defendants to provide information concerning rearrests and detentions so that Plaintiffs could assess Defendants' ongoing compliance with the statute and the Court's Orders. *Id.* at 2. The Court therefore clarifies that the information Defendants need provide must be sufficiently particularized to permit meaningful review of whether a rearrest and detention was, in fact, based on a material change in circumstances affecting the age-out's risk of flight or danger to themselves or the community. Without access to the records and information underlying Defendants' determinations, Plaintiffs cannot effectively carry out the monitoring function the Court contemplated. *See U.S. Lines, Inc. v. Fed. Mar. Comm'n.*, 584 F.2d 519, 533 (D.C. Cir. 1978) (explaining that meaningful review is frustrated by an agency's lack of disclosure where one cannot determine "what factors or data were in fact considered by the agency").

For certain age-outs, however, the information Defendants currently provide is insufficient to enable Plaintiffs to fulfill that monitoring role. The information Defendants

17

provide consists primarily of spreadsheets identifying, among other things, the initial detention

determination for an age-out, the initial release date, the rearrest date, whether the age-out was

released or detained following rearrest, and the purported "changed circumstances." *See, e.g.*,

Pls.' Ex. A. Some entries in the "changed circumstances" column are arguably self-explanatory.

For example, a conviction for a violent offense may plainly bear on whether an age-out poses a

danger to the community. *See* Pls.' Ex. B (listing the January 7, 2026 rearrest and detention of an

individual convicted of assaulting a law enforcement officer). But for a sizeable number of age-

outs, the brief descriptions Defendants provide do not explain how the purported changed

circumstances are material—that is, how they bear on the age-out's individual risk of flight or

danger to themselves or the community under Section 1232(c)(2)(B)—as discussed above. *See,*

*e.g.*, **N.C.P.** ("arrested by local LEA for a traffic stop on 10/11/2025"), Pls.' Ex. A. From the

spreadsheets alone, Plaintiffs are unable to determine whether the cited circumstances in fact

supported rearrest and detention for certain age-outs.[4] Defendants themselves appear to

acknowledge this limitation. *See* Defs.' Opp'n Ex. A ¶ 6.

To address this deficiency, Plaintiffs propose that Defendants provide the records upon

which Defendants relied in determining that rearrest and detention were warranted. Pls.' Mot. at

14–15. They propose the production of particular documents that they believe would be helpful

for monitoring Defendants' compliance.[5] Plaintiffs observe that Defendants already provide this

---

[4] Rather, the spreadsheets tend to lack "rational connection[s] between the facts found and the choice[s] made," as discussed above. *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43 (1983).

[5] These documents include: (a) the Form I-213 generated at the time of rearrest; (b) the age-out's EARM record; (c) any criminal records relied upon to justify detention, including police reports, criminal complaints, and certificates of disposition; (d) any records concerning civil infractions or traffic violations relied upon to justify detention; (e) any release orders or supervision documents, together with records of alleged noncompliance where such

same documentation when age-outs are initially transferred from ORR to ICE custody. Winger Decl. ¶ 4. Plaintiffs also request the name and contact information of any attorney of record for the affected age-out, explaining that Defendants do not notify age-outs of the basis for their rearrest and detention or inform them of the Court's December 2025 Order. Pls.' Mot. at 18–19 (citing Winger Decl. ¶ 34).

Defendants object that Plaintiffs' requested materials may not always provide further information regarding the purported changed circumstances and that producing it would impose a sizeable burden. The Court is unpersuaded. As Plaintiffs clarify in their reply, they seek only "the supporting documents ICE relies on to justify the re-detention of age outs." Pls.' Reply at 5. Plaintiffs do not seek the creation of new records, nor do they request irrelevant materials. Rather, they seek the production of existing records Defendants themselves relied upon in making rearrest and detention determinations. Given Plaintiffs' recognized monitoring role, and the limited information currently reflected in the spreadsheets, the Court concludes that such production is reasonably necessary to permit meaningful review of Defendants' compliance with the Court's orders and Section 1232(c)(2)(B).

The Court thus clarifies that the "information" that Defendants must "produce . . . on an ongoing basis concerning any age-outs who have been re-arrested and detained since July 2025," Order at 2, includes, for all rearrested age-outs: all records Defendants relied upon to justify the age-out's rearrest and detention. This information may include, as relevant, the specific documents Plaintiffs identify in their motion, as well as any other records Defendants relied upon to justify an age-out's rearrest and detention.

---

noncompliance forms the basis for detention; and (f) any other records relied upon to justify redetention. Pls.' Am. Proposed Order, ECF No. 450-1.

The Court further clarifies that Defendants shall provide Plaintiffs with the name and contact information of any attorney of record for a rearrested age-out. Plaintiffs represent, and Defendants do not dispute, that Defendants do not independently notify rearrested class members of this Court's Order or explain the asserted basis for their rearrest and detention. Pls.' Mot. at 18–19. Providing attorney contact information will therefore facilitate Plaintiffs' monitoring role by enabling them to communicate with the attorneys of affected age-outs, investigate the circumstances surrounding particular rearrests and detentions, and direct more focused inquiries to Defendants where necessary. Indeed, this process may reduce, rather than increase, the administrative burden Defendants claim to face by narrowing disputes and limiting follow-up requests to genuinely contested issues.

Given Defendants' prior violations of the Permanent Injunction and the transparency concerns that have arisen throughout this litigation, the need for meaningful oversight outweighs any incidental administrative burden associated with producing records already in Defendants' possession. *See* Mot. Enforce Mem. Op. at 38–39 (describing Defendants' prior misrepresentations to the Court and their lack of transparency with both the Court and class members regarding a then-recent policy subjecting all age-outs to mandatory detention absent parole). Providing the records underlying Defendants' determinations will reduce uncertainty regarding Defendants' compliance with the Permanent Injunction and Section 1232(c)(2)(B) and potentially prevent unnecessary future litigation in light of such uncertainty. For the age-outs for whom Plaintiffs requested information but did not receive it from Defendants, *see supra* pp. 7–8, the Court orders Defendants to promptly produce the requested information so that Plaintiffs may meaningfully assess the asserted changed circumstances, corroborate the alleged

circumstances, determine whether they are material, and raise any specific concerns with

Defendants in the first instance.[6]

### C.  Clarifying That Class Members Must Be Promptly Released

In December 2025, this Court found that Defendants had violated the Final Judgment and

Permanent Injunction by rearresting and detaining age-outs absent material change in their

relevant circumstances. The Court thus ordered Defendants to "release any individual class

member that has been rearrested and detained, absent materially changed circumstances

regarding the class member's statutory risk factors under § 1232(c)(2)(B)." Order at 2. Despite

this Order, Plaintiffs contend that Defendants have delayed the release of rearrested and

improperly detained age-outs.  Pls.' Mot. at 19. According to Plaintiffs, even where Defendants

deem such individuals releasable, release has been delayed by as much as several weeks.[7]

---

[6] Plaintiffs request the release of these age-outs based on Defendants' failure to provide supporting documentation establishing the veracity and materiality of the asserted changed circumstances. Pls.' Mot. at 15, 20–21; Pls.' Am Mot. at 1; Pls.' 2d Am. Mot. at 2; *see also supra* pp. 7–8. The Court observes that, from the spreadsheet explanations for those particular age-outs, "the agency's path may reasonably be discerned," notwithstanding the explanations being "of less than ideal clarity." *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). For example, Defendants have explained that such rearrests stemmed from circumstances in which the age-out allegedly failed to comply with reporting requirements or was accused of a more serious infraction. *See, e.g.*, Pls.' Ex. A (D.S. "attempted to sexually assault a female on 12/06/25"); Pls.' Ex. B (F.C.A. "[h]as never reported after released on OREC in 2020"). At a minimum, the Court finds these explanations sufficiently "rational." *Am. Trucking Assocs., Inc. v. Fed. Motor Carrier Safety Admin.*, 724 F. 3d 243, 249 (D.C. Cir. 2013). Such circumstances could, for instance, bear on an age-out's risk of flight or danger.

Because the Court has now clarified the information Defendants must provide, the Court orders production of that information so Plaintiffs may review Defendants' compliance in the first instance. Plaintiffs may later raise any claims of noncompliance revealed by that review, including a renewed request for release if the documentation fails to show that Defendants undertook the process required under Section 1232(c)(2)(B).

[7] For at least some age outs, the rearrests appear to stem from a practice of local law enforcement transferring age-outs who they have arrested to ICE custody, at which point ICE must determine what to do with the age-out, thus triggering the requirements of Section 1232(c)(2)(B).

To remedy these delays, Plaintiffs seek clarification that Defendants must promptly release class members who are improperly detained. *Id.* Indeed, prompt compliance in the age-out detention context is especially critical. This Court has previously found that the weight of the evidence and testimony in this case has shown that needless prolonged detention poses a significant hardship and constitutes irreparable harm—harm that is heightened and particularly acute when the individual deprived of liberty is a young adult. Final J. and Perm. Inj. Mem. Op at 18–19.  In light of this harm, Plaintiffs propose that the Court order Defendants to release improperly detained rearrested age-outs within 48 hours of the individual's rearrest. Pls.' Mot at. 19–20. Conversely, Defendants asserts that Plaintiff's 48-hour release proposal would be unfeasible, noting that ICE's resources are "already strained." Defs.' Opp'n Ex. A ¶ 11. According to ICE, releasing age-outs within 48 hours would "impose a significant burden on ICE's operations." Defs.' Opp'n. at 8.

When this Court ordered Defendants to release improperly detained age-outs, "[t]he Court meant what it said and said what it meant." *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 580 (C.D. Cal. 2007); *see also Sperow v. Walls*, 182 F. Supp. 2d 695, 698 (C.D. Ill. 2002). "When the Court orders a party . . . to do something, the Court fully expects that party . . . to do it." *Sperow*, 182 F. Supp. 2d at 698. And "all orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). Therefore, this Court did not have weeks-long delays in mind when it issued the December 2025 Order and ordered Defendants to release improperly detained age-outs.

That said, the Court is cognizant that in the APA context—as here—a court may require an agency to act, but it may not direct *how* the agency is to act. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); *Cobell v. Norton*, 428 F.3d 1070, 1077 (D.C. Cir. 2005). While an

agency may not "shirk[] [from] its duties by reason of mere difficulty or inconvenience," a court must not turn a blind eye to an agency's representations that compliance with an order is infeasible. *See Am. Hosp. Ass'n v. Price*, 867 F.3d 160, 168–69 (D.C. Cir. 2017); *see also United States v. Rylander*, 760 U.S. 752, 756 (1983). With these considerations in mind, the Court adopts the five-day release timeline Defendants have proposed—a timeline they evidently believe is feasible to implement. *See* Defs.' Opp'n at 8 n.2. That is, absent exceptional circumstances—which do not include the normal press of business or the volume of detainees— Defendants must, upon an age-out's rearrest: (a) **promptly** confirm the individual's class membership and determine the individual's placement; and (b) release the individual within **five days** of determining that the individual is to be released.[8]

In so ordering, the Court emphasizes that any prolonged delay between an age-out's rearrest and release would frustrate the protections Congress intended age-outs to receive, in violation of Section 1232(c)(2)(b). *See* Mem. Op. Den. Mot. Dismiss at 54, ECF No. 50 ("[T]hough 8 U.S.C. § 1232(c)(2)(B) includes no explicit temporal requirement, it is likely that Congress intended DHS to consider such placements soon after the transfer of a former unaccompanied minor to DHS custody."). Against that backdrop, Defendants' unexplained delays of up to five-and-a-half weeks appear unreasonable and inconsistent with the statute's purpose and this Court's Order.

The Court further emphasizes that the requirement that Defendants act "promptly" is not an invitation to make hasty or perfunctory decisions regarding an age-out's changed circumstances. Defendants must still conduct an individualized assessment of each age-out's

---

[8] The term "promptly" means "[q]uickly" and "without delay." *Promptly*, Black's Law Dictionary (12th ed. 2024); *accord Citibank, N.A. v. Brigade Cap. Mgmt.*, LP, 49 F.4th 42, 69 (2d Cir. 2022) (compiling dictionary definitions of the word "promptly").

circumstances and consider the statutory risk factors under Section 1232(c)(2)(B) when making a custody determination. *See* Mot. Enforce Mem. Op. at 18–19.

### D.  The Court's Authority to Release Improperly Detained Age-Outs

Finally, Plaintiffs contend that this Court has the authority to release improperly detained class members. Pls.' Reply at 9–10. Defendants, on the other hand, argue that this Court lacks such authority because, in their view, any challenge to the validity of an age-out's detention must be brought in habeas. Defs.' Opp'n 8–9. That argument fails.

Since this litigation began in 2018, Defendants have never previously challenged Plaintiffs' APA claims on the ground they now advance—that habeas is the exclusive vehicle for class members to obtain relief. *See* Defs.' Mot. to Dismiss, ECF 32 at 29–39 (moving to dismiss Plaintiffs' APA claims on several grounds but not because habeas was the proper remedy). An argument not timely asserted is forfeited. *Allen v. D.C.*, No. 00-CV-591-RCL, 2021 WL 6065785, at *2 (D.D.C. Dec. 22, 2021), *aff'd*, No. 21-7142, 2022 WL 1278925 (D.C. Cir. Apr. 28, 2022). And an argument that arrives eight years into litigation of a specific issue—here, Defendants' confinement of age-outs without having followed the process required under Section 1232(c)(2)(b)— "is certainly forfeited." *Id.* Allowing Defendants to raise it now would effectively "rewind to the very beginning of these proceedings." *Id.* As courts have emphasized, parties must "vigorously pursue[] [all viable arguments] throughout the proceedings," rather than "pick and choose" when to assert them. [9] *Hartman v. Duffy*, 158 F.R.D. 525, 547 (D.D.C. 1994), *aff'd in part, remanded in part sub nom. Hartman v. Duffey*, 88 F.3d 1232 (D.C. Cir. 1996).

---

[9] The Court observes that the government has taken inconsistent positions on this issue, undermining the credibility of its current stance. As recently as March 2026, in *Singh v. Noem*, the government opposed an age-out's habeas petition by arguing that, because the petitioner was a *Garcia Ramirez* class member, "[a]ny challenge to Petitioner's age-out custody determination [was] therefore governed by the class-wide remedial framework already ordered and supervised

Moreover, this Court has already concluded that Plaintiffs' claims arise under the APA and may properly be brought as such. *See* Mem. Op. Den. Mot. Dismiss at 44–54, 68–69. And under the APA, courts have the power to "hold unlawful and set aside agency action" found to be "arbitrary and capricious" or "not in accordance with law." 5 U.S.C. § 706(2)(A). As this Court has stated before: "[a]t this stage in the litigation, the parties are bound by this Court's prior decisions." Mot. Enforce Mem. Op. at 17 n.6 (citing *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999) ("[A] legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.")). The Court therefore has the authority to set aside age-out custody determinations (i.e., agency action) where those determinations are arbitrary and capricious or otherwise inconsistent with Section 1232(c)(2)(B). In other words, this Court may order the release of improperly confined age-outs in such instances and does so here.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motions to Clarify and Enforce (ECF Nos. 442, 450, 453) are **GRANTED IN PART** and **DENIED IN PART**; and Plaintiffs' Motions for Leave

---

by the District Court for the District of Columbia." Pls.' Reply Ex. F at 7. The *Singh* court held, however, that the age-out petitioner's constitutional due process habeas claim was not identical to the claims raised in this case. *See Singh v. Noem*, No. 2:26-CV-00402-TLF, 2026 WL 696835, at *4 (W.D. Wash. Mar. 12, 2026).

Although the *Singh* court ultimately rejected the government's reliance on this class action as the appropriate vehicle for challenging the age-out petitioner's detention, the government's inconsistent positions raise serious judicial estoppel concerns. *See Shea v. Clinton*, 880 F. Supp. 2d 113, 116–17 (D.D.C. 2012) (explaining that judicial estoppel "protect[s] the integrity of the judicial process" by prohibiting parties from "deliberately changing positions according to the exigencies of the moment," thereby preventing litigants from playing "fast and loose with the courts"). The government cannot have it both ways—invoking the class framework when convenient and disavowing it when not.

to File Documents Under Seal (ECF Nos. 443, 448, 451, 454) are **GRANTED**.  An order

consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  June 2, 2026                                                RUDOLPH CONTRERAS
                                                                          United States District Judge

26