**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WILMER GARCIA RAMIREZ, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.:    18-00508 (RC) |
| | : | |
| v. | : | Re Document Nos.:   462, 463 |
| | : | |
| U.S. IMMIGRATION AND | : | |
| CUTSTOMS ENFORCEMENT, *et al.*, | : | |
| | : | |
| Defendants. | : | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING PLAINTIFFS' MOTION TO ENFORCE**

**I.  INTRODUCTION**

In 2021, this Court entered a permanent injunction requiring Defendants—namely, U.S.

Immigration and Customs Enforcement ("ICE"), the Acting Director of ICE, the Department of

Homeland Security ("DHS"), and the Secretary of Homeland Security—to comply with their

obligations under 8 U.S.C. § 1232(c)(2)(B). That provision requires ICE to consider placing

former unaccompanied alien children transferred to its custody "in the least restrictive setting

available," after assessing whether they pose a danger to themselves, a danger to the community,

or a risk of flight, and to make them eligible for alternatives to detention. The injunction

followed a four-week bench trial, after which the Court concluded that Defendants had violated

the Administrative Procedure Act ("APA") by failing to follow the procedures required by

§ 1232(c)(2)(B) and by refusing to take actions the statute mandates.

Since December 2025, the Court has twice held that Defendants violated both the

permanent injunction and subsequent Court orders by detaining former unaccompanied alien

children without a material change in circumstances demonstrating that they posed a flight risk

or a danger to themselves or the community. Now, Plaintiffs move to enforce the Court's latest order, which it issued in June 2026. This is the third enforcement motion Plaintiffs have filed in the span of months, and each has been prompted by Defendants' continued noncompliance. As before, the Court concludes that Defendants have failed to comply with the Court's orders. For the reasons that follow, Plaintiffs' motion to enforce is granted.

## II.  BACKGROUND

This matter arises from the Court's ongoing supervision and enforcement of its prior orders governing the detention and release of former unaccompanied children ("age-outs") under 8 U.S.C. § 1232(c)(2)(B). This case has a complex factual and procedural history that has been recounted in several of this Court's prior opinions in this matter. *See, e.g.*, *Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, 812 F. Supp. 3d 86, 90 (D.D.C. 2025), *opinion clarified*, No. CV 18-508 (RC), 2026 WL 1557609 (D.D.C. June 2, 2026). The Court therefore presumes familiarity with those prior opinions and recounts here only the facts, allegations, and procedural history relevant to the present motion.

### A.  Factual Background

On June 2, 2026, this Court granted in part Plaintiffs' motion to clarify and enforce the Court's December 2025 Order. *See* Order Granting in Part & Den. in Part Pls.' Mots. Clarify & Enforce ("June 2026 Order"), ECF No. 455. Among other things, the Court clarified that "materially changed circumstances regarding the statutory risk factors under § 1232(c)(2)(B)" as referenced in the Court's December 2025 Order "turns on whether an age-out's circumstances have materially changed such that the age-out now presents a danger to themselves, a danger to the community, or a risk of flight." *Id.* at 1. The Court further clarified that Defendants must "produce . . . on an ongoing basis concerning any age-outs who have been rearrested and

2

detained since July 2025 . . . all records Defendants relied upon to justify the age-out's rearrest and detention . . . ." *Id.* at 2.

Pursuant to the June 2026 Order, Defendants produced the records upon which they relied to rearrest and detain certain age-outs, including H.M.A. and Y.Z.P. Defs.' Opp'n to Mot. Enforce Order ("Defs.' Opp'n") at 1–2, ECF No. 464. Plaintiffs contend that those records indicate that Defendants rearrested and detained H.M.A. and Y.Z.P. without a material change in circumstances establishing that either individual posed a danger to the community or a risk of flight. Pls.' Mot. to Enforce Order ("Pls.' Mot. Enforce") at 1, ECF No. 462. As of July 2026, both H.M.A. and Y.Z.P. have remained detained for nearly seven months.

### 1. H.M.A.

On December 4, 2025, Defendants rearrested H.M.A. at the Detroit Immigration Court after he appeared for his removal hearing. Pls.' Mot. Enforce Ex. D, Mathur Decl. ¶ 9, ECF No. 462-3. According to the records Defendants produced, ICE rearrested H.M.A. because he failed to report for an ICE check-in on October 14, 2024. Pls.' Mot. to Clarify & Enforce Order ("Pls.' Mot. Clarify & Enforce") Ex. A, ECF No. 443-3. Before missing that check-in, however, H.M.A. had attended all prior ICE check-ins. *See* Pls.' Mot. Seal Ex. E at 2, ECF No. 463-5. Agency records also indicate that ICE requested that H.M.A. surrender his passport or provide proof that he had applied to obtain one, which Defendants assert he failed to do. *Id.* Although agency records identify H.M.A.'s missed check-in as the basis for his rearrest and detention, Defendants now contend that his failure to obtain a passport also justified his detention. *See* Defs.' Opp'n Ex. A, Griffin Decl. ¶ 12, ECF No. 464-1.

3

### 2.  Y.Z.P.

On December 13, 2025, Defendants re-arrested and detained Y.Z.P. after he pleaded guilty in the Court of Montgomery County, Texas, to the misdemeanor offense of "collision involving damage to vehicle." *See* Pls.' Mot. Seal Ex. A at 5, ECF No. 463-2. In November 2025, Y.Z.P. was involved in a motor vehicle accident that resulted in damage to another vehicle. *Id.* at 9. According to the county, Y.Z.P. did not immediately stop his vehicle at the scene of the accident (or as close as possible to the scene), and the damage to all vehicles amounted to $200 or more. *Id.* The offense carried a punishment of "a fine not to exceed $2000 and/or confinement in jail not to exceed 180 days." *Id.* At a probable cause hearing, a local judge set Y.Z.P.'s bail at $5,000, citing Y.Z.P.'s criminal history, or rather, the lack thereof.[1] *Id.* at 11. After pleading guilty, Y.Z.P. received a sentence of "Confinement in Lieu of Payment" for time served of 15 days, which was credited toward any "incarceration, fines, and costs." *Id*. at 2–3.

Defendants' records identify Y.Z.P.'s misdemeanor conviction as the basis for his rearrest and detention. *See* Pls.' Mot. Clarify & Enforce Ex. A. Now, Defendants also assert that Y.Z.P. posed a risk of flight based on an alleged missed ICE check-in. *See* Pls.' Mot. Enforce Ex. D, Mathur Decl. ¶ 10.

### B.  Procedural Background

Shortly after the Court issued its June 2026 Order, Plaintiffs filed the present motion to enforce, contending that Defendants' newly-produced records demonstrate that Defendants re-arrested and detained H.M.A. and Y.Z.P. without a material change in circumstances as required by the Court's prior orders. *See* Pls.' Mot. Enforce. In support of their motion, Plaintiffs

---

[1] Defendants' records indicate that besides the misdemeanor offense of "collision involving damage to vehicle," Y.Z.P. has no other criminal history. *See* Pls. Mot. Seal Ex. C. at 6, ECF No. 463-3.

submitted a declaration from Y.Z.P. describing the circumstances underlying his misdemeanor conviction and his community ties.[2] *See* Pls.' Mot. Enforce, Ex. A, Y.Z.P. Decl., ECF No. 463-1. Defendants oppose the motion, arguing that the challenged detention determinations were supported by materially changed circumstances bearing on the statutory risk factors under 8 U.S.C. § 1232(c)(2)(B), including risk of flight and danger to the community. Defs.' Opp'n at 1.

## III. LEGAL STANDARD

### A. Motion to Enforce

"District courts have the authority to enforce the terms of their mandates." *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014). That authority is grounded in "the interest of the judicial branch in seeing that an unambiguous mandate is not blatantly disregarded by parties to a court proceeding." *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984). A court "should grant a motion to enforce if a 'prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it.'" *Sierra Club v. McCarthy*, 61 F. Supp. 3d 35, 39 (D.D.C. 2014) (quoting *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C 2004)). In determining compliance with an order, the Court is guided not only by the text of that order but also by its related opinions. *See City of Cleveland v. Fed. Power Comm'n*, 561 F.2d 344, 346–47 (D.C. Cir. 1977). That said, "[s]uccess on a motion to enforce a judgment gets a plaintiff only 'the relief to which [the plaintiff] is entitled under [its] original action and the judgment entered therein.'" *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 29 (D.C. Cir. 2005) (second and third alterations in original) (quoting *Watkins v. Washington*, 511 F.2d 404, 406 (D.C. Cir. 1975)).

---

[2] Pursuant to the protective order governing this case, ECF No. 63, Plaintiffs seek leave to file under seal exhibits in support of their Motion to Enforce, *see* Pls.' Mot. Seal, ECF No. 463. The Court grants such leave.

## B.  APA

Under the APA, the reviewing court "shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious if an agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## IV.  ANALYSIS

Plaintiffs contend that Defendants improperly re-arrested and detained H.M.A. and Y.Z.P. without a material change in circumstances demonstrating that either individual posed a risk of flight or a danger to themselves or the community. The Court addresses each detention determination in turn.

## A.  H.M.A.

Plaintiffs first challenge Defendants' determination that H.M.A. posed a risk of flight. *See* Pls.' Mot. Enforce at 6–7. Defendants initially relied on H.M.A.'s failure to report for an ICE check-in. Pls.' Mot. Clarify & Enforce Ex. A. Now, Defendants additionally contend that H.M.A.'s failure to obtain a passport justified his detention. Defs.' Opp'n at 4–5. Neither rationale supports Defendants' detention determination, however.

### a.  Missed Check-in

Defendants rely on H.M.A.'s missed ICE check-in as evidence that he posed a risk of flight. But that conclusion overlooks the most probative indicator of flight risk—whether the

6

noncitizen actually appears for immigration proceedings. Courts have routinely held that a noncitizen's attendance at immigration proceedings demonstrates a lack of flight risk. *See, e.g.*, *De La Rosa v. Warden of Fla. Soft Side S. Det. Ctr.*, No. 2:26-CV-504-SPC-NPM, 2026 WL 685621, at *4 (M.D. Fla. Mar. 11, 2026) ("[B]y attending his removal hearing," "[noncitizen] proved he is no flight risk"); *Patel v. Tindall*, 810 F. Supp. 3d 824, 834 (W.D. Ky. 2025) ("In attending his IJ hearing and other proceedings, he is demonstrating that he is not a flight risk."). Likewise, the BIA recognizes that "the alien's record of appearance in court" is a factor to consider when determining whether a noncitizen is likely to abscond. *See In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). This principle is also reflected in DHS regulations authorizing immigration authorities to release a noncitizen on their own recognizance. *See* 8 C.F.R. § 1236.1(c)(8) (requiring that a noncitizen "demonstrate to the satisfaction of the officer" that they are "likely to appear for any future proceeding").

Yet nothing in the record indicates that Defendants considered H.M.A.'s actual history of appearance in determining that he posed a flight risk. Although H.M.A. missed an ICE check-in, he later appeared for his removal hearing. Pls.' Mot. Seal Ex. E at 3. That appearance undermines any inference that H.M.A. was likely to abscond or fail to appear for future proceedings—the very purpose immigration detention is intended to serve. *See Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1158 (D. Minn. 2025) (explaining that immigration detention serves "to [ensure] future appearances") (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).

Although a missed check-in may constitute a technical violation of a noncitizen's release conditions, courts have recognized that such violations do not, standing alone, establish that detention is necessary. *See J.A.E.M. v. Wofford*, 812 F. Supp. 3d 1058, 1068 (E.D. Cal. 2025) (collecting cases). Rather, the government must consider whether the alleged violation bears on

7

the noncitizen's likelihood of appearing for future proceedings. *See Herman v. DHS*, No. 5:26-CV-01995-MBK, 2026 WL 1723960, at \*10 (C.D. Cal. June 12, 2026) ("[S]upervision conditions are not intended to be a contest to determine whether a person can comply. Rather, any violations must be evaluated by reference to the purpose of supervision, namely, ensuring that the person is likely to appear for hearings or removal.").

Here, the record does not reflect that Defendants undertook that analysis. Instead, Defendants appear to have treated H.M.A.'s missed check-in as dispositive while disregarding evidence that he complied with all prior check-ins and, most significantly, appeared for his removal hearing after the missed appointment. *See* Pls.' Mot. Clarify & Enforce Ex. A; *cf. Herman*, 2026 WL 1723960, at \*10 (holding that immigration judge abused its discretion in finding a noncitizen to be a flight risk; alleged monitoring device violations were not probative of flight risk where such violations were followed by the noncitizen's check-in appearance). Because Defendants failed to consider evidence directly bearing on the likelihood that H.M.A. would appear for future proceedings, they failed to consider an important aspect of the problem. Their decision to re-arrest and detain H.M.A. was therefore arbitrary and capricious. *See Int'l Dark-Sky Ass'n, Inc. v. Fed. Commc'ns Comm'n*, 106 F.4th 1206, 1213 (D.C. Cir. 2024) (citing *State Farm Mut. Auto. Ins.*, 463 U.S. at 43).

### b. Passport

Defendants' alternative rationale fares no better. Relying on the declaration of ICE's Acting Chief of the Juvenile and Family Management Division, Defendants now contend that H.M.A.'s failure to obtain a passport independently demonstrated that he posed a flight risk. Defs.' Opp'n Ex. A, Griffin Decl. ¶ 12.

That rationale, however, was not one Defendants invoked when they re-arrested and detained H.M.A. *See* Pls.' Mot. Clarify & Enforce Ex. A. The record identifies only H.M.A.'s missed ICE check-in as the basis for detention. *Id.* Defendants now raise the passport issue seven months later in response to Plaintiffs' motion to enforce. *See* Defs.' Opp'n at 7–8. And "[i]t is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 20 (2020) (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)). ICE's belated justification "can be viewed only as [an] impermissible *post hoc* rationalization[]" and is therefore "not properly before [the Court]." *Id.* at 22; *see also Citizens to Pres. Overton Park*, *Inc. v. Volpe*, 401 U.S. 402, 419 (1971) (rejecting "litigation affidavits" from agency officials as "merely 'post hoc' rationalizations"); *Am. Textile Mfrs. Institute, Inc. v. Donovan*, 452 U.S. 490, 539 (1981) ("[T]he post hoc rationalizations of the agency . . . cannot serve as a sufficient predicate for agency action.").

Even if the Court were to consider this belated explanation, it still does not establish that H.M.A. posed a flight risk. Defendants assert that H.M.A.'s conditions of release required him to obtain a passport and that his failure to do so justified his re-arrest.[3] Defs.' Opp'n at 7–8; *see also* Defs.' Opp'n Ex. A, Griffin Decl. ¶ 10. But, as explained above, a technical violation of release conditions is insufficient, standing alone, to establish that a noncitizen poses a flight risk. *See J.A.E.M.*, 812 F. Supp. 3d at 1068; *Herman*, 2026 WL 1723960, at *10. Defendants therefore

---

[3] Notably, Defendants have not provided Plaintiffs with a copy of any such conditions of release, *see* Pls. Mot. Enforce Ex. D, Mathur Decl. ¶ 11, despite purportedly relying on such conditions to detain H.M.V. and despite this Court requiring Defendants to produce to Plaintiffs all records upon which it relied to re-arrest and detain age-outs, pursuant to the Court's prior June 2026 Order.

must explain why H.M.A.'s failure to obtain a passport demonstrates that he was unlikely to appear for future proceedings. They do not.

Instead, ICE states only that it "requires passports for aliens to both ensure proper identification and biometrics information and for use in the event removal becomes necessary." Defs.' Opp'n Ex. A, Griffin Decl. ¶ 12. That explanation identifies the administrative and logistical reasons ICE prefers noncitizens to possess passports. It does not, however, explain why a noncitizen's failure to obtain a passport bears on the likelihood that the individual will appear for future proceedings. Nor do Defendants identify any authority recognizing the absence of a foreign passport as an indicator of flight risk. To the contrary, the factors traditionally considered in assessing flight risk focus on matters such as appearance history, community ties, and compliance with court proceedings—not possession of a foreign passport. *See, e.g.*, *In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Indeed, the BIA has found a noncitizen to present a flight risk even where the individual had provided a foreign passport, underscoring that passport possession is not itself determinative. *See Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 806 (BIA 2020).

Nor is any inference of flight risk apparent here. ICE was already in possession of H.M.A.'s birth certificate, *see* Pls.' Mot. Seal Ex. E, and Defendants identify no way in which the lack of a passport impeded their ability to identify H.M.A. Indeed, the absence of a passport or travel documents may undermine, rather than support, an inference of flight risk because it limits a noncitizen's ability to travel. *See Parlak v. Baker*, 374 F. Supp. 2d 551, 561 (E.D. Mich. 2005) (finding no flight risk where, among other things, the noncitizen was "essentially state-less," lacked a passport or travel documents, and thus had no place to go), *vacated on other grounds, appeal dismissed sub nom. Parlak v. U.S. Immigr. & Customs Enf't*, No. 05-2003, 2006

10

WL 3634385 (6th Cir. Apr. 27, 2006). Accordingly, even if the Court were to consider Defendants' *post hoc* passport rationale, it would not support the conclusion that H.M.A. posed a flight risk.

### B.  Y.Z.P.

Plaintiffs next challenge Defendants' determination that Y.Z.P.'s circumstances materially changed so as to justify his re-arrest and continued detention. Pls.' Mot. Enforce at 7–8. Defendants rely on Y.Z.P.'s misdemeanor conviction, asserting that it demonstrates he poses a danger to the community. Defs.' Opp'n at 6–7. Defendants also contend that Y.Z.P.'s alleged failure to attend an ICE check-in establishes that he poses a risk of flight. *Id.* at 7–8. These arguments, however, are unavailing.

### a.  Risk of Danger to the Community

Defendants' reliance on Y.Z.P.'s misdemeanor conviction suffers from two related defects. First, the record does not reflect that Defendants considered the facts necessary to determine whether the conviction demonstrated that Y.Z.P. posed a danger to the community. Criminal history, standing alone, does not necessarily establish that a noncitizen poses such a danger. *Calderon-Rodriguez v. Wilcox*, 374 F. Supp. 3d 1024, 1033 (W.D. Wash. 2019). Rather, when determining whether a noncitizen poses a danger to the community, a noncitizen's "criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses" must be considered. *In Re Guerra*, 24 I. & N. Dec. at 40. This principle is also reflected in DHS regulations concerning the detention of noncitizens ordered removed, which provide that "[t]he detainee's criminal conduct and criminal convictions, including consideration of the nature and severity of the alien's convictions, sentences imposed and time actually served, probation and criminal parole history, evidence of

11

recidivism, and other criminal history" is a "factor[] [that] should be weighed in considering whether to recommend further detention or release of a detainee." *See* 8 C.F.R. § 241.4.

Defendants should have thus considered whether the circumstances surrounding Y.Z.P.'s offense demonstrated a material change in his risk of danger. *See Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 814 (D.C. Cir. 1983) ("[An] agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." (citation modified)). But the record does not reflect that Defendants conducted any such analysis at the time of Y.Z.P.'s re-arrest and detention. Instead, it appears Defendants relied on the mere existence of a misdemeanor conviction without considering the underlying circumstances of the offense, including its nature, severity, or whether it demonstrated any ongoing danger to the community. *See* Pls.' Mot. Clarify & Enforce Ex. A.

Second, ICE now attempts to supply that missing analysis through a *post hoc* rationalization. According to ICE, Y.Z.P.'s misdemeanor conviction demonstrated that he "fail[ed] to take responsibility for his own actions, and a disregard for the law and for another person's property and safety." Defs.' Opp'n Ex. A, Griffin Decl. ¶ 16. But ICE advances this explanation only in response to Plaintiffs' motion to enforce, nearly seven months after Y.Z.P.'s re-arrest and detention. A justification provided *post hoc* cannot sustain an agency's action. *Overton Park*, 401 U.S. at 419; *Am. Textile Mfrs. Institute, Inc.*, 452 U.S. at 539.

Regardless, it would not cure the deficiencies in Defendants' decision-making. ICE did not account for the relevant circumstances surrounding Y.Z.P.'s offense. ICE's assertion that Y.Z.P. failed to take responsibility ignores that he pleaded guilty to the offense and thereby accepted responsibility. More fundamentally, the record does not reflect that Defendants

considered the underlying facts necessary to assess the severity of the offense. That omission is significant because the Montgomery County court documents upon which Defendants relied contain little factual detail regarding the circumstances of the offense. *See* Pls.' Mot. Seal Ex. B. Those documents identify only the existence of a misdemeanor conviction, but do not provide the factual context necessary to evaluate the nature and severity of the conduct or determine whether the offense reflected that Y.Z.P. posed a danger to the community.[4] *See id.* at 2, 5, 9.

That context matters. An offense for "collision involving damage to a vehicle" may encompass a broad range of conduct with materially different implications for dangerousness.[5] For instance, a high-speed collision involving substantial damage followed by immediate flight from the scene presents a markedly different assessment of dangerousness than an accident involving relatively minor damage where an individual initially stopped, departed only after the other driver failed to remain at the scene, and later cooperated fully with law enforcement. Determining whether Y.Z.P.'s offense demonstrated dangerousness therefore required Defendants to consider the underlying facts of the incident, not merely the fact of conviction.

The importance of that omission becomes apparent when considering the facts Defendants failed to examine. In his declaration, Y.Z.P. provides those underlying facts, which

---

[4] Those documents state only that Y.Z.P. was involved in a motor vehicle accident that resulted in damage to another vehicle, Y.Z.P. did not immediately stop his vehicle at the scene of the accident (or as close as possible to the scene), and the damage to all vehicles amounted to $200 or more. *See* Pls.' Mot. Seal Ex. B at 2, 5, 9.

[5] Tex. Transp. Code § 550.022(a) (collision involving damage to vehicle) requires a driver involved in a collision that causes only vehicle damage to: stop as close to the collision scene as possible, return to the scene if they did not stop, and remain at the scene until the drivers involved exchange contact and insurance information. The failure to do so constitutes a misdemeanor. § 550.022(c). If the collision results in vehicle damager greater than $200, the misdemeanor is characterized as a Class B misdemeanor. § 550.022(c)(2).

Defendants do not dispute.[6] The declaration explains that Y.Z.P. initially stopped at the collision scene but left only after the other driver failed to remain. *See* Pls.' Mot. Seal Ex. A, Y.Z.P. Decl. ¶¶ 4–5. He further states that when officers later initiated a traffic stop, he immediately pulled over, admitted his involvement in the accident, and complied with officers' instructions. *Id.* ¶¶ 6–7. These facts bear directly on the nature and severity of the offense and, consequently, whether it demonstrated danger to the community. Yet the record contains no indication that Defendants sought out and considered such facts before determining that the misdemeanor conviction warranted Y.Z.P.'s re-arrest and detention. *See* Pls. Mot. Clarify & Enforce Ex. A. Defendants therefore failed to consider relevant evidence and important aspects of the dangerousness inquiry, rendering their determination arbitrary and capricious. *See Int'l Dark-Sky Ass'n*, 106 F.4th at 1213.

---

[6] Defendants do not dispute Y.Z.P.'s account of the circumstances underlying the misdemeanor offense. Instead, Defendants contend that the Court should not consider Y.Z.P.'s declaration because those facts were not before the agency when it decided to detain him. That those facts were not before the agency underscores the deficiency in Defendants' decision-making. An agency's failure "to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of § 706." *Butte Cnty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010); *see also Morall v. DEA*, 412 F.3d 165, 178 (D.C. Cir. 2005) ("[The agency's] decision does not withstand review because the agency decisionmaker entirely ignored relevant evidence."). Therefore, courts may consider extra-record evidence in order to determine whether the agency considered all of the relevant factors. *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996); *Oceana, Inc. v. Ross*, 454 F. Supp. 3d 62, 69 (D.D.C. 2020).

Here, Y.Z.P.'s declaration is offered only for that limited purpose. The Court does not rely on the declaration to substitute its judgment for the agency's. *See Sw. Ctr. for Biological Diversity v. Babbitt*, 131 F. Supp. 2d 1, 8 (D.D.C. 2001); *see also Env'tl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981). By providing relevant context regarding the nature and severity of the offense, the declaration identifies the type of information Defendants failed to seek out for itself and consider in evaluating whether the offense reflected a danger to the community.

*b.  Risk of Flight*

Defendants' alternative rationale is equally unavailing. Defendants contend that Y.Z.P.'s alleged failure to attend an ICE check-in demonstrates that he poses a risk of flight. *See* Defs.' Opp'n 7–8. That rationale was not relied upon by Defendants when it re-arrested Y.Z.P. *See* Pls.' Mot. Clarify & Enforce Ex. A. It therefore cannot properly serve as a basis for the agency's decision. Even if considered, it nevertheless fails.

In assessing flight risk, relevant considerations include not only an individual's appearance history, as explained above, but also factors such as a fixed address, length of residence, and employment history. *See Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *8 (C.D. Cal. Mar. 5, 2026). Those are precisely the types of considerations Defendants failed to address. Y.Z.P. represents, and Defendants do not dispute, that before his re-arrest he maintained steady employment, rented a room from a member of his church, maintained a fixed residence, and regularly participated in his church community. *See* Pls.' Mot. Seal Ex. A, Y.Z.P. Decl. ¶¶ 10–11. The record also reflects that, before the alleged missed ICE check-in, Y.Z.P. had appeared for all prior check-ins and reported changes to his contact information. *See* Pls.' Mot. Seal Ex. C at 3. Even if Y.Z.P. missed one scheduled check-in, that fact must be evaluated alongside his prior compliance and substantial community ties, both of which bear directly on the likelihood that he would appear for future proceedings.

Defendants likewise failed to account for Y.Z.P.'s Special Immigrant Juvenile Status, *see* Pls. Mot. Seal Ex. C at 6, which affords him "significant benefits," including a statutory path to lawful permanent residency and, ultimately, United States citizenship, while also providing protections against removal. *See Walter A. v. Easterwood*, No. 26-CV-1393 (SRN/LIB), 2026 WL 836428, at *20 (D. Minn. Mar. 26, 2026) (quoting *Joshua M. v. Barr*, 439 F. Supp. 3d 632,

15

657 (E.D. Va. 2020)). Those benefits diminish any incentive to abscond. *See Matter of Andrade*, 19 I. & N. Dec. 488, 490 (BIA 1987) (stating that a noncitizen who is likely to be granted relief has a greater motivation to appear for a deportation hearing than one who has less potential to obtain relief).

Therefore, Defendants' belated reliance on a missed ICE check-in does not establish that Y.Z.P. posed a risk of flight. By failing to consider Y.Z.P.'s compliance history, community ties, and significant incentive to appear for future proceedings, Defendants again failed to consider relevant factors bearing on the flight risk inquiry. *See Int'l Ladies' Garment Workers' Union*, 722 F.2d at 814. Defendants' alternative rationale therefore cannot sustain the agency's detention determination. *See Int'l Dark-Sky Ass'n*, 106 F.4th at 1213.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Enforce (ECF No. 462) is **GRANTED**, and Plaintiffs' Motion for Leave to File Documents Under Seal (ECF No. 463) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 6, 2026                                              RUDOLPH CONTRERAS
                                                                           United States District Judge

16